# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
------------------------------------------------------- x
                                                        :
In re                                                   :        Chapter 11
                                                        :
BROOKS BROTHERS GROUP, INC., et al.,                    :        Case No. 20– _____
                                                        :
                        Debtors.¹                       :        (Joint Administration Requested)
                                                        :
------------------------------------------------------- x
```

## MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) CONTINUE TO MAINTAIN THEIR INSURANCE POLICIES AND PROGRAMS AND SURETY BOND PROGRAM, AND (B) HONOR ALL INSURANCE OBLIGATIONS, (II) MODIFYING THE AUTOMATIC STAY, AND (III) GRANTING RELATED RELIEF

Brooks Brothers Group, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):[2]

### Relief Requested

1.      By this Motion, pursuant to sections 105(a), 362(d), 363(b), 364, and 503(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors seek entry of

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Brooks Brothers Group, Inc. (8883); Brooks Brothers Far East Limited (N/A); BBD Holding 1, LLC (N/A); BBD Holding 2, LLC (N/A); BBDI, LLC (N/A); Brooks Brothers International, LLC (N/A); Brooks Brothers Restaurant, LLC (3846); Deconic Group LLC (0969); Golden Fleece Manufacturing Group, LLC (5649); RBA Wholesale, LLC (0986); Retail Brand Alliance Gift Card Services, LLC (1916); Retail Brand Alliance of Puerto Rico, Inc. (2147); and 696 White Plains Road, LLC (7265).  The Debtors' corporate headquarters and service address is 346 Madison Avenue, New York, New York 10017.

[2]   The facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration (as defined herein) filed contemporaneously herewith.  Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

interim and final orders (i) authorizing, but not directing, the Debtors to (a) continue to maintain their Insurance Policies and Programs (as defined herein), and (b) honor their Insurance Obligations (as defined herein) in the ordinary course of business during the administration of these chapter 11 cases, including paying any prepetition Insurance Obligations, including amounts owed to the Insurance Service Providers (as defined herein), (ii) modifying the automatic stay if necessary to permit the Debtors' employees to proceed with any claims they may have under the Workers' Compensation Program (as defined herein), whether they arose before or after the Petition Date, in the appropriate judicial or administrative forum to proceed against the proceeds of such policies only, and (iii) granting related relief.  In furtherance of the foregoing, the Debtors also seek authority to increase, renew, extend, or replace their insurance coverage if they determine, in their reasonable business judgment, that such action is necessary or appropriate.

2.      The Debtors further request that the Court (i) authorize all applicable financial institutions (collectively, the "**Banks**") to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing to the extent directed by the Debtors in accordance with this Motion and to the extent the Debtors have sufficient funds standing to their credit with such Bank, whether such checks were presented or electronic requests were submitted before or after the Petition Date (as defined herein), and (ii) authorize all Banks to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion, without any duty of further inquiry, and without liability for following the Debtors' instructions.

3.      A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "**Proposed Interim Order**"), and a proposed

form of order granting the relief requested herein on a final basis is annexed hereto as **Exhibit B** (the "**Proposed Final Order**" and, together with the Proposed Interim Order, the "**Proposed Orders**").

## Jurisdiction

4.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

5.      On the date hereof (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

6.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

7.      Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Stephen Marotta In Support of Debtors' Chapter 11 Petitions and*

*First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.

### Debtors' Insurance Policies and Programs

8.      In connection with the operation of the Debtors' businesses and the management of their properties, the Debtors maintain various insurance policies and a workers' compensation program (collectively, the "**Insurance Policies and Programs**" and all premiums and other obligations related thereto, including any broker or advisor fees, assessments, or other fees, collectively, the "**Insurance Obligations**") through several different insurance carriers (the "**Insurers**") including, but not limited to, those Insurance Policies and Programs and Insurers listed on **Exhibit C** annexed hereto (the "**Insurance Schedule**").[3]

**A.      The Insurance Policies**

9.      The Debtors maintain various liability, property and other insurance policies, which provide the Debtors with insurance related to, among other things, general liability, directors' and officers' liability, commercial automobiles, crime, property, foreign liability, terrorism, natural disaster, ocean cargo, and cyber security (collectively, the "**Insurance Policies**"). The Debtors maintain the Insurance Policies to help manage and limit the various risks associated with operating their businesses, which is essential to the preservation of the value of the Debtors' businesses and assets. Some of the Insurance Policies are required by certain regulations, laws, and contracts that govern the Debtors' commercial activities. Further, the Bankruptcy Code reinforces these requirements, as section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to

---

[3]   Due to the size and complexity of the Debtors' businesses, it is possible that certain of the Debtors' Insurance Policies and Programs may have been inadvertently omitted from the list of Insurance Policies and Programs set forth on Exhibit C hereto.  Accordingly, Exhibit C includes a non-exhaustive list of the Debtors' Insurance Policies and Programs.  Furthermore, the Debtors may, in the future, enter into new Insurance Policies and Programs not listed on Exhibit C.

the public," is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).

10.    Pursuant to the Insurance Policies, the Debtors pay premiums based upon a fixed rate established and billed by each Insurer (collectively, the "**Insurance Premiums**"). The Debtors pay approximately $3.15 million in Insurance Premiums each year, not including applicable taxes and surcharges, deductibles, broker and consulting fees, and commissions. These premiums are primarily prepaid annually in February.  However, the premiums related to the Debtors' workers' compensation, general liability and commercial automobile policies are paid monthly at a rate of approximately $56,000 per month.  As of the Petition Date, the Debtors' estimate that they owe approximately $140,000 in accrued Insurance Premiums, all of which is due and payable within the first thirty (30) days of these chapter 11 cases.

11.    By this Motion, the Debtors seek authority, but not direction, to maintain their Insurance Policies in the ordinary course of business and to pay their Insurance Obligations, as they come due, in the ordinary course of business, whether arising from the prepetition or postpetition period, throughout these chapter 11 cases.

B.    **The Workers' Compensation Program**

12.    The Debtors maintain workers' compensation insurance as required by statute in each of the states and territories in which they operate and provide coverage to employees for claims arising from or related to their employment by the Debtors (collectively, the "**Workers' Compensation Program**").  The Debtors' Workers' Compensation Program in each state—except for the programs the Debtors maintain in the states of Ohio and

5

Washington[4]—are all part of their high deductible workers' compensation insurance policy (the "**Workers' Compensation Policy**") with The Hartford Insurance Company ("**The Hartford**").[5]    Although The Hartford is the insurer under the Workers' Compensation Policy, Sedgwick Group, PLC (the "**Administrator**") administers the policy and is responsible for paying all workers' compensation claims and securing payment from the Debtors for their deductible obligations and from The Hartford for their coverage obligations.  In addition, Debtor Brooks Brothers Far East Limited maintains a zero deductible employee compensation insurance policy with Asia Insurance Co., Ltd.

13.    In 2019, the Debtors paid approximately $1.6 million in deductible payments to the Administrator on account of workers' compensation claims, inclusive of Administrative Fees (as defined below).  As of the Petition Date, there are 68 pending workers' compensation claims against the Debtors.

14.    Under the Workers' Compensation Policy, The Hartford is obligated to satisfy workers' compensation claims even if the Debtors fail to pay their deductible obligations. Accordingly, to secure payment of the Debtors' deductible obligations, the Debtors posted collateral in the form of a letter of credit totaling approximately $3.6 million in favor of The Hartford, and made a cash deposit of approximately $380,000 into an escrow account in favor of the Administrator (collectively, the "**Policy Collateral**").  The Debtors also posted a $432,000 letter of credit in favor of Liberty Mutual to support their obligations under the Liberty Policy (collectively with the Policy Collateral, the "**Collateral**").

---

[4]    For the Debtors' employees located in the states of Ohio and Washington, the Debtors have state-mandated workers' compensation insurance coverage through the State of Ohio Bureau of Workers' Compensation and the Washington State Department of Labor and Industries, respectively.

[5]    Seven (7) of the Debtors' historic Workers Compensation claims are pending against the Debtors' historic run-off workers' compensation policy with Liberty Mutual (the "**Liberty Policy**").

15.     As of the Petition Date, the Debtors estimate that they owe approximately $157,000 in prepetition Workers' Compensation Obligations (as defined below) (including Administrative Fees), all of which is due and payable within the first thirty (30) days of the these chapter 11 cases.

16.     By this Motion, the Debtors are requesting authority, but not direction, to continue and maintain the Workers' Compensation Program in the ordinary course of business, including the continued posting of any collateral in connection therewith.  Further, the Debtors seek authority to modify the automatic stay to permit employees who hold valid workers' compensation claims to proceed with such claims in the appropriate judicial or administrative forum; provided that such claims are limited solely to funds available on account of the Collateral and the proceeds under the Debtors' Workers' Compensation Policy, and not to other estate assets.

**C.     The Debtors' Insurance Service Providers**

17.     As discussed above, the Debtors employ the Administrator as a third-party administrator to investigate, administer, and pay claims arising under their Workers' Compensation Program.  The Debtors reimburse the Administrator each month for: (i) payments the Administrator makes in respect of the Debtors' workers' compensation claims (the "**Claim Reimbursements**"); and (ii) the Administrator's fee that it charges per claim (collectively, the "**Administrative Fees**" and, together with the Claim Reimbursements, the "**Workers' Compensation Obligations**").  The Debtors estimate that, on average, they pay approximately $112,000 annually on account of the Administrative Fees, and that they currently owe approximately $12,000 in prepetition Administrative Fees.

18.     Further, in connection with maintaining the Insurance Policies, the Debtors have retained certain service providers to help them procure, negotiate, and evaluate the

7

Insurance Policies and process claims related thereto.  Specifically, the Debtors utilize National Financial Partners, Corp. ("**NFP**" and, together with the Administrator, the "**Insurance Service Providers**"), and its various affiliates as their insurance broker to assist with the procurement and negotiation of certain Insurance Policies, and, in certain circumstances, to remit payment to the Insurance Carriers on behalf of the Debtors.  In exchange for these services, the Debtors pay NFP a quarterly fee of approximately $40,375, reduced for any commissions NFP receives on certain policies (the "**Broker Fees**" and, together with the Workers' Compensation Obligations, the "**Insurance Fees**").  As of the Petition Date, the Debtors estimate that they owe approximately $29,000 in prepetition Broker Fees, all of which is due and payable within the first thirty (30) days of the these chapter 11 cases.

19.    By this Motion, the Debtors are requesting authority to continue honoring their obligations to the Insurance Service Providers in the ordinary course of business, including authority to pay any Insurance Fees that may be due and owing or that come due and owing to the Insurance Service Providers.

### Debtors' Surety Bond Program

20.    In the ordinary course of business, the Debtors, for themselves and on behalf of their non-Debtor affiliates, are required to provide surety bonds (the "**Surety Bonds**") to certain third parties, often governmental units or other public agencies, to secure the payment or performance of certain obligations (the "**Surety Bond Program**").  These obligations include, among others, duties, taxes, and fees on account of merchandise imported from foreign countries, and utility expenses. The Surety Bonds, which include, but are not limited to, those listed on **Exhibit D** annexed hereto, are issued by certain sureties (each, a "**Surety**").

21.    Customs Surety Bonds.  Certain statutes or ordinances require the Debtors to post surety bonds to secure obligations.  For example, in the ordinary course of business,

8

pursuant to 19 U.S.C § 1623, which grants the United States Customs and Border Protection ("**U.S. Customs**") the authority to require bonds as they "may deem necessary for the protection of the revenue or to assure compliance with any provision of law, regulation, or instruction which the Secretary of the Treasury of the Customs Service may be authorized to enforce," the Debtors are required to provide Surety Bonds to U.S. Customs to secure the Debtors' payment or performance of certain obligations, including duties, taxes, and fees on account of merchandise imported from foreign countries. 19 U.S.C. § 1623(a). As such, failing to provide, maintain, or timely replace the Surety Bonds will prevent the Debtors from importing merchandise that is essential to replenishing the Debtors' store and e-commerce inventory and, thus, continuing the Debtors' operations. The Debtors estimate that as of the Petition Date, the total principal amount of these customs Surety Bonds (which are cash collateralized by the Debtors) is approximately $1.9 million. Because these Surety Bonds are cash collateralized, the Debtors do not pay premiums thereon.

22.      Utility Surety Bonds. Further, the Debtors currently have Surety Bonds posted to secure their payment of obligations to certain utility providers. The Debtors estimate that as of the Petition Date, the total principal amount of these utility Surety Bonds is approximately $150,000. The Debtors remit annual premium payments to the applicable Surety when the Surety Bonds are issued or renewed at various times throughout the year. The Debtors estimate that the premiums associated with these utility Surety Bonds total approximately $3,800 per year in the aggregate. The Debtors do not believe any Surety Premiums are outstanding as of the Petition Date.

23.      By this Motion, the Debtors seek authority to continue the Surety Bond Program in the ordinary course of business, and, out of an abundance of caution, to pay any

related prepetition obligations on account of the Surety Bonds that may become due and payable during the chapter 11 cases.  The Debtors also seek authority to provide additional or new Surety Bonds to third parties as necessary to operate their business in the ordinary course.

**Relief Requested Should Be Granted**

A.      **Maintaining the Debtors' Insurance Policies and Programs and Surety Bond Program and Payment of Obligations Related Thereto is Warranted Under Section 363(b)(1) of the Bankruptcy Code and Doctrine of Necessity**

24.      A bankruptcy court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code.  Section 363(b) provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.,* (*In re Montgomery Ward Holding Corp.*), 242 B.R. 147, 153 (D. Del. 1999); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).

25.      In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*,

10

<blockquote>

</blockquote>

273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

26.    Further, in a long line of well-established cases, courts consistently have permitted payment of prepetition obligations where such payment is necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See, e.g., Miltenberger v. Logansport, C&S W.R. Co*., 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of the continuance of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to reorganization is essential to the continued operation of the . . . [business] during reorganization, payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases), *cert. denied*, 325 U.S. 873 (1945); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

27.    In addition, the Court may rely on the doctrine of necessity and its equitable powers under section 105(a) of the Bankruptcy Code to authorize the payment of prepetition claims when such payment is essential to the continued operation of a debtor's business.  *See*, *e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of Bankruptcy Code provides statutory basis for payment of prepetition claims under the doctrine of necessity particularly when such payment is necessary for the debtor's

RLF1 23678785v.1

survival during chapter 11); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is standard for enabling a court to authorize payment of prepetition claims prior to confirmation of a reorganization plan).

28.     Paying the Insurance Obligations are necessary costs of preserving the Debtors' estates.  In addition, the Debtors are contractually and legally obligated to maintain certain types of insurance, and the Debtors must maintain certain of the Insurance Policies and Programs in order to comply with the operating guidelines of the Office of the United States Trustee for Region 3.  For example, applicable state law mandates that certain Debtors maintain workers' compensation coverage for their employees, or the Debtors could be prohibited from operating their stores.  The Debtors' failure to maintain the Workers' Compensation Program could jeopardize their coverage and expose the Debtors to fines and other adverse actions by state workers' compensation boards.  In addition, the risk that eligible workers' compensation claimants would not receive timely payments for prepetition employment-related injuries could negatively impact the financial well-being and morale of not just those claimants, but also the Debtors' active employees.  In addition, the Insurance Programs are essential to the Debtors' operations, as the Debtors would be exposed to significant liability if the Insurance Programs were allowed to lapse or terminate.  Such exposure could have a materially adverse impact on the Debtors' chapter 11 strategy and their ability to maximize value for their stakeholders.

29.     Finally, failing to maintain the Surety Bond Program will prevent the Debtors from importing merchandise that is essential to replenishing the Debtors' store and e-commerce inventory and, may result in violations of applicable law, which could be disruptive to the Debtors' operations and impair value for the Debtors' stakeholders.  Accordingly, the

continuation of the Surety Bond Program is essential to preserving the Debtors' business and the value of the Debtors' estates for all parties in interest.

30.      The Court should also authorize the Debtors to continue paying their Insurance Service Providers in the ordinary course of business.  The Insurance Service Providers are intimately familiar with the Debtors' Insurance Policies and Programs and Insurance Obligations.  Losing the services provided by the Insurance Service Providers would result in a costly disruption to the Debtors' businesses and would detract from efficient administration of these chapter 11 cases.

31.      Accordingly, authority to continue maintaining the Insurance Policies and the Surety Bond Program and to pay any unpaid Insurance Obligations and unpaid amounts related to the Surety Bond Program arising prior to the Petition Date, is critical to the Debtors' ability to preserve the going-concern value of their businesses, which will inure to the benefit of all parties in interest.

32.      Moreover, the relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is justified under sections 363(b) and 105(a) of the Bankruptcy Code. Authorizing the Debtors to pay prepetition amounts related to maintaining the Insurance Policies and Surety Bond Program and to pay all prepetition amounts related to the Insurance Obligations is in the best interests of the Debtors, their estates, and their economic stakeholders.

**B.        The Automatic Stay Should Be Modified for Workers' Compensation Claims**

33.      Section 362(a)(1) of the Bankruptcy Code operates to stay:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this

> title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1).  Section 362(d)(1), however, permits a debtor or other party in interest to request a modification or termination of the automatic stay for "cause."  11 U.S.C. § 362(d)(1).

34.    Pursuant to section 362(d) of the Bankruptcy Code, the Debtors seek authority to modify the automatic stay to permit employees who hold valid workers' compensation claims to proceed with such claims in the appropriate judicial or administrative forum; provided that such claims are limited solely to funds available on account of the Collateral and the proceeds under the Debtors' Workers' Compensation Policy.

35.    There is cause to modify the automatic stay because staying the workers' compensation claims could result in employee departures or otherwise harm employee morale, at a time when the Debtors need their workforce to be operating at peak efficiency.  Unnecessary distractions—or heavy attrition—could jeopardize the Debtors' chapter 11 strategy and result in irreversible harm to the Debtors' businesses.  Accordingly, the Debtors respectfully request that the Court modify the automatic stay as it relates to valid workers' compensation claims to allow employees holding any such claims to pursue resolution and collection from the applicable Insurance Providers and other non-Debtor sources.

## C.    Cause Exists to Authorize Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers

36.    The Debtors have sufficient funds to pay the Insurance Obligations and amounts related to the Surety Bond Program in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral and debtor-in-possession financing.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the obligations addressed in this Motion.  Accordingly, the

14

Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, inadvertently may not be honored and that the Court should authorize the Banks, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the relief requested herein, solely to the extent that the Debtors have sufficient funds standing to their credit with such Banks, and such Banks may rely on the representations of the Debtors without any duty of further inquiry and without liability for following the Debtors' instructions.

### Reservation of Rights

37.    Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### Debtors Have Satisfied Bankruptcy Rule 6003(b)

38.    Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a Bankruptcy Court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before thirty (30) days after filing of the petition.  Fed. R. Bankr. P. 6003(b).  As described above, the

15

lapse, termination, or non-renewal of any of the Insurance Policies and Programs as a result of the Debtors' failure to pay their Insurance Obligations could subject the Debtors to substantial administrative liability and a potential cessation of operations.  Accordingly, the Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm to their estates, and, therefore, Bankruptcy Rule 6003 is satisfied.

## **Bankruptcy Rules 4001(a)(3), 6004(a) and 6004(h)**

39.    To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) and an order authorizing relief from the automatic stay under Bankruptcy Rule 4001(a).  As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h) and 4001(a)(3), to the extent such notice requirements and such stay apply.

## **Notice**

40.    Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to the DIP Agent, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY, 10004 (Attn: Gary Kaplan, Esq.); (iv) counsel to the Prepetition ABL Agent, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: Kevin Simard, Esq. and Jonathan Marshall, Esq.); (v) counsel to the Prepetition Term Loan Agent, Morgan, Lewis & Bockius LLP, One Federal

Street, Boston, MA 02110 (Attn: Julia Frost-Davies); (vi) the Internal Revenue Service; (vii) the United States Attorney's Office for the District of Delaware; (viii) the Securities and Exchange Commission; (ix) the Insurers; (x) the Insurance Service Providers; (xi) the Sureties; and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").  As this Motion is seeking "first day" relief, the Debtors will serve copies of this Motion and any order entered in respect of the Motion as required by Local Rule 9013-1(m).  The Debtors respectfully submit that no further notice is required.  No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of page intentionally left blank*]

17

WHEREFORE the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: July 8, 2020
      Wilmington, Delaware

*/s/ Zachary I. Shapiro*
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:      collins@rlf.com
              shapiro@rlf.com

- and -

WEIL, GOTSHAL & MANGES LLP
Garrett A. Fail (*pro hac vice* admission pending)
David J. Cohen (*pro hac vice* admission pending)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
E-mail:      garrett.fail@weil.com
              davidj.cohen@weil.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

```
-------------------------------------------------------- x
                                    :
In re                               :        Chapter 11
                                    :
BROOKS BROTHERS GROUP, INC., et al.,:        Case No. 20– _____
                                    :
                 Debtors.¹          :        (Jointly Administered)
                                    :
-------------------------------------------------------- x
```

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO
(A) CONTINUE TO MAINTAIN THEIR INSURANCE
POLICIES AND PROGRAMS AND SURETY BOND PROGRAM,
AND (B) HONOR ALL INSURANCE OBLIGATIONS, (II) MODIFYING
THE AUTOMATIC STAY, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of Brooks Brothers Group, Inc. and its debtor

affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**"), pursuant to sections 105(a), 362(d), 363, 364 and 503(b) of title 11

of the United States Code (the "**Bankruptcy Code**"), for entry of an interim order (the "**Interim**

**Order**") (i) authorizing, but not directing, the Debtors to (a) continue maintaining their

Insurance Policies and Programs and (b) honor their Insurance Obligations in the ordinary course

of business during the administration of these chapter 11 cases, including paying any prepetition

Insurance Obligations, including amounts owed to the Insurance Service Providers,

(ii) modifying the automatic stay if necessary to permit the Debtors' employees to proceed with

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, as applicable, are Brooks Brothers Group, Inc. (8883); Brooks Brothers Far East Limited (N/A); BBD
Holding 1, LLC (N/A); BBD Holding 2, LLC (N/A); BBDI, LLC (N/A); Brooks Brothers International, LLC
(N/A); Brooks Brothers Restaurant, LLC (3846); Deconic Group LLC (0969); Golden Fleece Manufacturing
Group, LLC (5649); RBA Wholesale, LLC (0986); Retail Brand Alliance Gift Card Services, LLC (1916); Retail
Brand Alliance of Puerto Rico, Inc. (2147); and 696 White Plains Road, LLC (7265).  The Debtors' corporate
headquarters and service address is 346 Madison Avenue, New York, New York 10017.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such
terms in the Motion.

any claims they may have under the Workers' Compensation Program, and (iii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties under the circumstances, and it appearing that no other or further notice need be provided; and this Court having held a hearing to consider the interim relief requested in the Motion (the "**Hearing**"); and upon the First Day Declaration; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the interim relief granted herein; and it appearing that the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor

## IT IS HEREBY ORDERED THAT

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, to pay, in the ordinary course of business as such obligations become due, all Insurance Obligations (including amounts owed to the Insurance Service Providers) arising under or relating to the Insurance Policies and Programs, including any new Insurance Policies and Programs, without regard to whether such

2

Insurance Policies and Programs are listed on **Exhibit C** to the Motion, and without regard to whether accruing or relating to the period before or after the Petition Date, without further order of the Court; *provided*, *however*, that the total amount of payments made by the Debtors pursuant to this Interim Order shall not exceed $326,000 in the aggregate on account of prepetition Insurance Obligations without further order of the Court.

3.      The Debtors are further authorized, but not directed, to maintain their Insurance Policies and Programs in accordance with practices and procedures that were in effect before the commencement of these chapter 11 cases, and to maintain and post any collateral in connection therewith.

4.      The Debtors are authorized, but not directed, to revise, extend, supplement, or otherwise modify their insurance coverage as needed, including through the purchase or renewal of new or existing Insurance Policies and Programs.

5.      The Debtors are authorized, but not directed, to continue their Surety Bond Program in the ordinary course of business, including to satisfy any prepetition Surety Premiums and to provide additional or new surety bonds to third parties to secure the Debtors' payment or performance of certain obligations, including duties, taxes, and fees on account of merchandise imported from foreign countries, and to take all appropriate actions in connection therewith, including providing any cash collateral, as required in the ordinary course of business.

6.      The automatic stay is modified solely to the extent necessary to permit employees who hold valid workers' compensation claims to proceed with such claims in the appropriate judicial or administrative forum; *provided* that the automatic stay shall be modified solely for the limited purpose of allowing workers' compensation claimants to seek proceeds from the Collateral and the Debtors' Workers' Compensation Policy.

3

7.      Each of the Banks at which the Debtors maintain their accounts relating to the payment of the Insurance Obligations and are authorized to (i) receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts and (ii) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of the Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise.

8.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of the Insurance Obligations, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

9.      Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order, is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

10.      Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

4

11.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

12.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

13.     Notwithstanding Bankruptcy Rules 4001(a)(3) and 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

14.     The Final Hearing shall be held on _____, 2020, at _____ (prevailing Eastern Time) and any objections or responses to the Motion shall be in writing, filed with the Court, and served upon (i) the proposed attorneys for the Debtors, (a) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Garrett A. Fail, Esq. (garrett.fail@weil.com), and David J. Cohen, Esq. (davidj.cohen@weil.com)), and (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. (Collins@rlf.com) and Zachary I. Shapiro, Esq. (Shapiro@rlf.com)).

15.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Interim Order.

5

16.    The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and/or enforcement of this Interim Order.


Dated: _____, 2020
         Wilmington, Delaware


_____
UNITED STATES BANKRUPTCY JUDGE

6

**<u>Exhibit B</u>**

**Proposed Final Order**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

------------------------------------------------------------- x
                                                              :
In re                                                         :          **Chapter 11**
                                                              :
**BROOKS BROTHERS GROUP, INC.,** *et al.*,                    :          **Case No. 20– _____**
                                                              :
               **Debtors.**[1]   :          **(Jointly Administered)**
                                                              :
------------------------------------------------------------- x

## FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) CONTINUE TO MAINTAIN THEIR INSURANCE POLICIES AND PROGRAMS AND SURETY BOND PROGRAM, AND (B) HONOR ALL INSURANCE OBLIGATIONS, (II) MODIFYING THE AUTOMATIC STAY, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Brooks Brothers Group, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105(a), 363, 364 and 503(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), for entry of a final order (the "**Final Order**") (i) authorizing, but not directing, the Debtors to (a) continue maintaining their Insurance Policies and Programs and (b) honor their Insurance Obligations in the ordinary course of business during the administration of these chapter 11 cases, including paying any prepetition Insurance Obligations, including amounts owed to the Insurance Service Providers, (ii) modifying the automatic stay if necessary to permit the Debtors' employees to proceed with certain claims they

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Brooks Brothers Group, Inc. (8883); Brooks Brothers Far East Limited (N/A); BBD Holding 1, LLC (N/A); BBD Holding 2, LLC (N/A); BBDI, LLC (N/A); Brooks Brothers International, LLC (N/A); Brooks Brothers Restaurant, LLC (3846); Deconic Group LLC (0969); Golden Fleece Manufacturing Group, LLC (5649); RBA Wholesale, LLC (0986); Retail Brand Alliance Gift Card Services, LLC (1916); Retail Brand Alliance of Puerto Rico, Inc. (2147); and 696 White Plains Road, LLC (7265).  The Debtors' corporate headquarters and service address is 346 Madison Avenue, New York, New York 10017.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

may have under the Workers' Compensation Program, and (iii) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties, and it appearing that no other or further notice need be provided; and this Court having held hearings to consider the relief requested in the Motion on an interim and final basis, if necessary; and upon the First Day Declaration; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the final relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor

## IT IS HEREBY ORDERED THAT

1.      The Motion is granted on a final basis to the extent set forth herein.

2.      The Debtors are authorized, but not directed, to pay, in the ordinary course of business as such obligations become due, all Insurance Obligations (including amounts owed to the Insurance Service Providers) arising under or relating to the Insurance Policies and Programs, including any new Insurance Policies and Programs, without regard to whether such Insurance Policies and Programs are listed on **<u>Exhibit C</u>** to the Motion, and without regard to whether accruing or relating to the period before or after the Petition Date, without further order of the Court.

2

3.      The Debtors are further authorized, but not directed, to maintain their Insurance Policies and Programs in accordance with practices and procedures that were in effect before the commencement of these chapter 11 cases, and to maintain and post any collateral in connection therewith.

4.      The Debtors are authorized, but not directed, to revise, extend, supplement, or otherwise modify their insurance coverage as needed, including through the purchase or renewal of new or existing Insurance Policies and Programs.

5.      The Debtors are authorized, but not directed, to continue their Surety Bond Program in the ordinary course of business, including to satisfy any prepetition Surety Premiums and to provide additional or new surety bonds to third parties to secure the Debtors' payment or performance of certain obligations, including duties, taxes, and fees on account of merchandise imported from foreign countries, and to take all appropriate actions in connection therewith, including providing any cash collateral, as required in the ordinary course of business.

6.      The automatic stay is modified solely to the extent necessary to permit employees who hold valid workers' compensation claims to proceed with such claims in the appropriate judicial or administrative forum; provided that the automatic stay shall be modified solely for the limited purpose of allowing workers' compensation claimants to seek proceeds from the Collateral and the Debtors' Workers' Compensation Policy.

7.      Each of the Banks at which the Debtors maintain their accounts relating to the payment of the Insurance Obligations are authorized to (i) receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts and (ii) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires,

or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of the Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Petition Date, without any duty to inquire otherwise.

8.     The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of the Insurance Obligations, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

9.      Nothing contained in the Motion or this Final Order, nor any payment made pursuant to the authority granted by this Final Order, is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

10.     Notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

11.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

12.     Notwithstanding Bankruptcy Rules 4001(a)(3) and 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

13.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Final Order.

4

14.     The Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation, and/or enforcement of this Final Order.

Dated: _____, 2020
         Wilmington, Delaware


                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit C</u>**

**Insurance Schedule**

**Insurance Schedule**

| Type of Coverage | Insurer | Policy Number | Policy Term |
|---|---|---|---|
| Workers' Compensation Policies | | | |
| Workers' Compensation | The Hartford | 12WNJ80406 | 2/1/2020 - 2/1/2021 |
| Workers' Compensation- Wisconsin | The Hartford | 12WBRJ80407 | 2/1/2020 - 2/1/2021 |
| Foreign Liability Policies | | | |
| Foreign Master Controlled Program Casualty | Travelers | ZPP 12R89826 | 2/1/2020 - 2/1/2021 |
| Travel Insurance | Asia Insurance | 10-20-GT001879(0002) | 2/1/2020-1/31/2021 |
| Property All Risks | Asia Insurance | ADC/FAR/20-0240000535 | 2/1/2020-1/31/2021 |
| Public Liability Insurance | Asia Insurance | ADC/APL/20-1140001957 | 2/1/2020-1/31/2021 |
| Employees' Compensation | Asia Insurance | ADC/ECI/20-0760000970 | 2/1/2020-1/31/2021 |
| General Liability and Property Insurance Policies | | | |
| General Liability | The Hartford | 12CSEJ80408 | 2/1/2020 - 2/1/2021 |
| Commercial Automobile | The Hartford | 12ABJ80409 | 2/1/2020 - 2/1/2021 |
| Excess Umbrella Liability | Great American (lead) | UMB 9999753 | 2/1/2020 - 2/1/2021 |
| Excess Umbrella Liability | Fireman's Fund | SHX 00058127027 | 2/1/2020 - 2/1/2021 |

2

| Type of Coverage | Insurer | Policy Number | Policy Term |
|---|---|---|---|
| Excess Umbrella Liability | Fireman's Fund | SHX 00058217027 | 2/1/2020 - 2/1/2021 |
| Excess Umbrella Liability | Ohio Casualty | 1000332602-01 | 2/1/2020 - 2/1/2021 |
| Commercial Property | Travelers | KTJCMB5P32044820 | 2/1/2020 - 2/1/2021 |
| Excess High Hazard Flood | Navigators Specialty | B020HCMZ04LACIC | 2/1/2020 - 2/1/2021 |
| Excess California Quake | Lloyd's, London | LLO18478 | 2/1/2020 - 2/1/2021 |
| Ocean Marine | Travelers | ZOC14P5542020ND | 2/1/2020 - 2/1/2021 |
| Privacy and Network Liability | Lloyds (Beazley) | W1B97D180301 | 6/1/2019 - 8/31/2020 |
| Group Travel Accident | Federal Ins. - Chubb | 99079401 | 2/1/2019 - 2/1/2022 |
| Professional Liability Policies | | | |
| Executive Risk Package | Federal Ins. - Chubb | 82602769 | 10/1/2019 - 10/1/2020 |
| Directors and Officers Liability | Berkley Professional Liability | 99079401 | 6/12/2020 - 6/12/2021 |

3

**<u>Exhibit D</u>**

**Surety Bond Schedule**

**Surety Bond Schedule**

| Principal | Surety Writing Company | Bond No. | Expiration Date |
|---|---|---|---|
| Brooks Brothers Group, Inc. | Fidelity and Deposit Company of Maryland | LPM899220509 | 9/30/2020 |
| Brooks Brothers Group, Inc. | Fidelity and Deposit Company of Maryland | LPM899222108 | 11/19/2020 |
| Brooks Brothers Group, Inc. | Fidelity and Deposit Company of Maryland | LPM399221608 | 1/27/2021 |
| Brooks Brothers Group, Inc. | Fidelity and Deposit Company of Maryland | LPM8992204 | 9/10/2020 |
| Brooks Brothers Group, Inc. | Fidelity and Deposit Company of Maryland | LPM9194749 | 12/11/2020 |
| Brooks Brothers Group, Inc. | Fidelity and Deposit Company of Maryland | LPM899221009 | 3/17/2021 |
| Brooks Brothers Group, Inc. | Fidelity and Deposit Company of Maryland | LPM89923506 | 5/19/2021 |
| Brooks Brothers Group, Inc. | Fidelity and Deposit Company of Maryland | LPM892208 | 12/31/2020 |
| Brooks Brothers Group, Inc. | Fidelity and Deposit Company of Maryland | LPM899221309 | 3/17/2021 |
| Brooks Brothers Group, Inc. | Fidelity and Deposit Company of Maryland | LPM899220909 | 2/13/2021 |
| Brooks Brothers Group, Inc. | Fidelity and Deposit Company of Maryland | LPM899220309 | 10/20/2020 |
| Retail Brand Alliance of PR, Inc. | Fidelity and Deposit Company of Maryland | LPM08992238 | 8/1/2020 |
| Brooks Brothers Group, Inc. | Fidelity and Deposit Company of Maryland | LPM0899212 | 4/5/2021 |
| Brooks Brothers Group, Inc. | Fidelity and Deposit Company of Maryland | LPM931065901 | 3/15/2021 |

2

| Principal | Surety Writing Company | Bond No. | Expiration Date |
|---|---|---|---|
| Brooks Brothers Group, Inc. | Fidelity and Deposit Company of Maryland | LPM931066100 | 10/9/2020 |
| Brooks Brothers Group, Inc. | Southwest Marine and General Insurance Company | 20C000Q8H | 6/20/2021 |

3