# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

---

|  |  |  |
|---|---|---|
| In re | : | **Chapter 11** |
| **BROOKS BROTHERS GROUP, INC.,** *et al.,* | : | **Case No. 20–11785 (CSS)** |
| **Debtors.**[1] | : | **(Joint Administration Requested)** |
|  | : | **Obj. Deadline: To be determined** |
|  | : | **Hearing Date: To be determined** |

---

## OMNIBUS MOTION OF
## DEBTORS FOR ENTRY OF ORDER
## (I) AUTHORIZING DEBTORS TO (A) REJECT
## CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL
## REAL PROPERTY AND (B) ABANDON *DE MINIMIS* PROPERTY
## IN CONNECTION THEREWITH AND (II) GRANTING RELATED RELIEF

> **THIS MOTION SEEKS TO REJECT CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY. PARTIES RECEIVING THIS OMNIBUS MOTION SHOULD REVIEW THE MOTION TO SEE IF THEIR NAME(S) AND/OR LEASE(S) ARE SET FORTH IN THE MOTION AND/OR THE EXHIBITS ATTACHED THERETO TO DETERMINE WHETHER THE MOTION AFFECTS THEIR LEASE(S).**

Brooks Brothers Group, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Brooks Brothers Group, Inc. (8883); Brooks Brothers Far East Limited (N/A); BBD Holding 1, LLC (N/A); BBD Holding 2, LLC (N/A); BBDI, LLC (N/A); Brooks Brothers International, LLC (N/A); Brooks Brothers Restaurant, LLC (3846); Deconic Group LLC (0969); Golden Fleece Manufacturing Group, LLC (5649); RBA Wholesale, LLC (0986); Retail Brand Alliance Gift Card Services, LLC (1916); Retail Brand Alliance of Puerto Rico, Inc. (2147); and 696 White Plains Road LLC (7265). The Debtors' corporate headquarters and service address is 346 Madison Avenue, New York, New York 10017.

[2] The facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration (as defined herein) filed contemporaneously herewith. Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

## Relief Requested

1.      By this Motion, the Debtors request, pursuant to sections 365 and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), and Rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), entry of an order (i) authorizing the Debtors to (a) reject the Vacant Store Leases (as defined herein), each effective *nunc pro tunc* to the Petition Date (as defined herein), (b) reject the Closing Store Leases and certain other Leases (as defined herein), each effective as of the Rejection Date (as defined herein), and (c) abandon any Remaining Property (as defined herein), and (ii) granting related relief.

2.      A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").  A schedule identifying and describing the Vacant Store Leases (as defined herein) is annexed to the Proposed Order as **Schedule 1**.[3]  A schedule identifying and describing the Closing Store Leases and certain other Leases (as defined herein) is annexed to the Proposed Order as **Schedule 2**.[4]

## Jurisdiction

3.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware

---

[3] The Debtors reserve all rights to modify the schedule of Vacant Store Leases, including by removing one or more leases from **Schedule 1** without prejudice to their rights to reject such leases at a later date.

[4] The Debtors reserve all rights to modify the schedule of other Leases (including Closing Store Leases), including by removing one or more leases from **Schedule 2** without prejudice to their rights to reject such leases at a later date.

(the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

4.       On the date hereof (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

5.       Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

6.       Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Stephen Marotta In Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.

## The Leases

7.       As part of their ongoing restructuring efforts, the Debtors have engaged in a comprehensive review and analysis of their store footprint, including their Brooks Brothers® and Deconic® stores.  This analysis includes, among other aspects, a review of the historical and projected revenue and profits of each store, considerations of the impact of the current COVID-19 global pandemic, local customer brand awareness and shopping patterns online or at other store locations, the likelihood of realizing future cost savings through, for example, negotiating lease

modifications with landlords, and the likelihood that a buyer in the Debtors' sale process would seek to have such store lease assigned to them.  Through such analysis, the Debtors determined that a number of their Brooks Brothers® and Deconic® stores were no longer economical to operate and began to close such stores prior to the Petition Date.  By this Motion, the Debtors seek to exercise their reasonable business judgment to reject 48 store leases (the "**Vacant Store Leases**") for Brooks Brothers® store locations that were closed prior to the Petition Date and are currently vacant (the "**Vacant Stores**").  The Debtors seek authority to reject the Vacant Store Leases *nunc pro tunc* to the Petition Date.

8.      Prior to the Petition Date, as they navigated the unprecedented impact of the COVID-19 pandemic, the Debtors also began to wind down approximately three (3) additional Brooks Brothers® and five (5) Deconic® stores (the "**Closing Stores**" and, together with the Vacant Stores, the "**Underperforming Stores**").  As part of this process, and in the ordinary course of business, the Debtors relocated their inventory from the Underperforming Stores to their distribution centers in Clinton, North Carolina and Enfield, Connecticut, as well as to other store locations.  By this Motion, the Debtors also seek to exercise their reasonable business judgment to reject (i) eight (8) store leases for the Closing Stores (the "**Closing Store Leases**"), (ii) two (2) storage space leases associated with two of the Debtors' stores, (iii) two (2) leases associated with locations that were anticipated to be utilized for a store or restaurant that were never opened, and (iv) one (l) lease associated with the Deconic® showroom (collectively with the Vacant Store Leases, the "**Leases**").  The Debtors seek authority to reject these Leases (except the Vacant Store Leases) as of the date that the Debtors surrender possession of such locations to their counterparties under the Leases (the "**Rejection Date**").

RLF1 23686432V.1

9.     After carefully evaluating the earnings, sales trends, occupancy costs, local customer brand awareness, capital- and business-planning variables, and the prospects for a post-COVID-19 pandemic recovery surrounding each Underperforming Store, as well as the likelihood that a buyer in the Debtors' sale process would seek to have the Leases assumed and assigned to them, the Debtors concluded that the Underperforming Stores and Leases do not meet the requisite performance criteria to justify their continued operation.  Given the rents and the current market conditions in connection with the Underperforming Stores and Leases—particularly in light of the COVID-19 pandemic-induced economic downturn—the Debtors have concluded that the Leases are not marketable and are unlikely to generate any value for the Debtors' estates.  As such, the Debtors have determined, in the exercise of their business judgment, that it is in the best interests of their estates to seek authority to reject the Leases.  Rejecting the Leases will allow the Debtors to avoid the accrual of unnecessary administrative expenses with no foreseeable benefits to the Debtors' estates.

### The Remaining Property

10.     During the ordinary course of business, the Debtors accumulated certain miscellaneous assets at the Underperforming Stores, including certain furniture, fixtures, and equipment of relatively inconsequential value.  The Debtors generally will remove such assets from the Underperforming Stores and transport the assets to the Debtors' remaining retail locations or distribution centers.  The Debtors have determined, in the exercise of their business judgment, that certain of these assets will be exceedingly difficult or expensive to remove or store prior to and after removal (the "**Remaining Property**").  The Debtors estimate that the Remaining Property is of *de minimis* value; therefore, the Debtors will not realize any economic benefit by

retaining the Remaining Property.  Accordingly, the Debtors request authority to abandon any Remaining Property at the Underperforming Stores.

<u>**Relief Requested Should Be Granted**</u>

**A.       Rejection of the Leases Reflects the Debtors' Sound Business Judgment**

11.       Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  The purpose behind section 365(a) is "to permit the trustee or debtor-in-possession to use valuable property of the estate and to renounce title to and abandon burdensome property." *In re Republic Airways Holdings Inc.*, 547 B.R. 578, 582 (Bankr. S.D.N.Y. 2016) (quoting *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993)); *see also In re Exide Techs.*, 607 F.3d 957, 967 (3d Cir. 2010) ("Courts may use § 365 to free a [debtor] from burdensome duties that hinder its reorganization"); *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization.").

12.       The standard applied by courts to determine whether the assumption or rejection of an unexpired nonresidential lease should be authorized is the "business judgment" test, which requires a debtor to have determined that the requested assumption or rejection would be beneficial to its estate.  *See Grp. of Institutional Inv'rs, Inc. v. Chi., Milwaukee, St. Paul & Pac. R.R.*, 318 U.S. 523, 550 (1943) (noting that "the question whether a lease should be rejected . . . is one of business judgment"); *NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *accord In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003).

13.      In applying the business judgment standard, bankruptcy courts give deference to a debtor's decision to assume or reject leases. *See e.g.*, *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989) (affirming the rejection of a service agreement as a sound exercise of the debtor's business judgment when the bankruptcy court found that such rejection would benefit the debtors' estate); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("[A] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of bad faith, or whim or caprice.").

14.      Rejection of the Leases is well within the Debtors' business judgment and will serve the best interests of their estates.  The Debtors seek authority to reject the Leases to avoid the incurrence of any additional, unnecessary expenses related to the Leases and the maintenance of the Underperforming Stores.  The Debtors have concluded that the cost of maintaining the Underperforming Stores and the Deconic® showroom lease, or opening an additional store or restaurant, given future economic uncertainty due to the COVID-19 pandemic, outweighs any revenues that the Underperforming Stores and the other properties currently generate or are likely to generate in the future.  Further, the Debtors seek to reject storage space leases that are no longer necessary because the Debtors have additional storage capacity in stores associated with such storage leases.

15.      After evaluation and analysis, the Debtors, with the assistance of their advisors, have determined, in the exercise of their sound business judgment, that there is no net benefit that is likely to be realized from the Debtors' continued efforts to retain and market the Leases and that there is little, if any, likelihood that the Debtors will be able to realize value from the Leases.  Accordingly, the Debtors have concluded that rejection of the Leases is in the best interest of the Debtors' estates, their creditors, and other parties in interest.

**B.     Rejection of the Vacant Store Leases as of the Petition Date Is Appropriate**

16.     Authorizing the rejection of the Vacant Store Leases *nunc pro tunc* to the Petition Date is consistent with prior rulings of courts in this and other circuits, which have held that a bankruptcy court may authorize the retroactive rejection of a nonresidential lease if the balance of the equities favors such retroactive rejection. See *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (acknowledging that a bankruptcy court may approve a rejection retroactive to the date the motion is filed after balancing the equities in the particular case); *In re Fleming Cos.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) (stating that rejection has been allowed *nunc pro tunc* to the date of the motion or the date the premises were surrendered); *see also Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995) (finding that, in the context of rejections of executory contracts, "bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation").  Courts in this jurisdiction recently have authorized debtors to reject unexpired nonresidential leases *nunc pro tunc* to the date that the debtors filed their petitions for bankruptcy protection.  *See, e.g.*, *In re BL Rest. Holdings, LLC*, Case No. 20-10156 (MFW) (Bankr. D. Del. Feb. 28, 2020) [D.I. 225]; *In re Forever 21, Inc.*, Case No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) [D.I. 329]; *In re Mac Acquisition LLC*, Case No. 17-12224 (MFW) (Bankr. D. Del. Nov. 13, 2017) [D.I. 177]; *In re Marsh Supermarkets Holding, LLC*, Case 17-11066 (BLS) (Bankr. D. Del. June 7, 2017) [D.I. 239]; *In re Ltd. Stores Co.*, Case No. 17-10124 (KJC) (Bankr. D. Del. Jan. 30, 2017) [D.I. 158].

17.     In this instance, the balance of the equities favors approval of the rejection of the Vacant Store Leases as of the Petition Date.  Rejection of the Vacant Store Leases *nunc pro tunc* to the Petition Date will allow the Debtors to avoid the unnecessary economic burden of

paying rent for the Vacant Stores—which currently are closed and unoccupied—on an administrative expense basis.

## C.    Abandonment of Any Remaining Property Is Authorized by Section 554(a) of the Bankruptcy Code

18.    Under section 554(a) of the Bankruptcy Code, a debtor, after notice and a hearing, is authorized to "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  The right to abandon property is virtually unfettered, unless (a) abandonment of the property will contravene laws designed to protect public health and safety or (b) the property poses an imminent threat to the public's welfare.  *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986).  Neither of these limitations is relevant under the instant facts.

19.    Any Remaining Property left at the Underperforming Stores is of inconsequential value to the Debtors' estates, and the costs to the Debtors of removing or storing the Remaining Property will exceed any realistic economic benefit that might be realized by retaining such property.  Accordingly, the Debtors have determined, in the exercise of their sound business judgment, that abandonment of any Remaining Property will be in the best interest of the Debtors and their estates.

### Reservation of Rights

20.    Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an approval, assumption, adoption, or rejection of any agreement,

RLF1 23686432V.1

contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

### Bankruptcy Rules 6004(a) and (h)

21.    To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid potential additional administrative costs to the Debtors' estates for stores that are closed and/or unoccupied.  Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

### Notice

22.    Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to the DIP Agent, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004 (Attn: Gary Kaplan, Esq.); (iv) counsel to the Prepetition ABL Agent, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: Kevin Simard, Esq. and Jonathan Marshall, Esq.); (v) counsel to the Prepetition Term Loan Agent, Morgan, Lewis & Bockius LLP, One Federal Street, Boston, MA 02110 (Attn: Julia Frost-Davies, Esq.); (vi) the Internal Revenue Service; (vii) the United States Attorney's Office for the District of Delaware; (viii) the Securities and Exchange Commission; (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002; (x) the landlords and any sublease counterparties under the Leases; and (xi) any party known to assert an ownership

interest in, or that has filed a UCC-1 statement against personal property located at the leased premises for each Lease (collectively, the "**Notice Parties**").

23.    While Bankruptcy Rule 6007 requires the Debtors to serve a motion to abandon property on, among others, all of the Debtors' creditors, Local Rule 2002-1(b) abrogates that rule.  Accordingly, the Debtors respectfully submit that no further notice is required.  No previous request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: July 8, 2020
        Wilmington, Delaware

/s/ Zachary I. Shapiro
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:        collins@rlf.com
                     shapiro@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP
Garrett A. Fail (*pro hac vice* admission pending)
David J. Cohen (*pro hac vice* admission pending)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
E-mail:        garrett.fail@weil.com
                     davidj.cohen@weil.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

RLF1 23686432V.1