## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
------------------------------------------------------- x
                                                        :
In re                                                   :        Chapter 11
                                                        :
BROOKS BROTHERS GROUP, INC., et al.,                    :        Case No. 20–11785 (CSS)
                                                        :
                              Debtors.¹                 :        (Jointly Administered)
                                                        :
                                                        :        Hearing Date: August 11, 2020 at 2:00 p.m. (ET)
                                                        :        Obj. Deadline: August 4, 2020 at 4:00 p.m. (ET)
                                                        :
------------------------------------------------------- x
```

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER
## (I) AUTHORIZING SALE OF SOUTHWICK MANUFACTURING
## FACILITY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES,
## AND OTHER INTERESTS AND (II) GRANTING RELATED RELIEF

Golden Fleece Manufacturing Group, LLC ("**Golden Fleece**") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

### Relief Requested

1.      By this Motion, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Brooks Brothers Group, Inc. (8883); Brooks Brothers Far East Limited (N/A); BBD Holding 1, LLC (N/A), BBD Holding 2, LLC (N/A), BBDI, LLC (N/A), Brooks Brothers International, LLC (N/A); Brooks Brothers Restaurant, LLC (3846); Deconic Group LLC (0969); Golden Fleece Manufacturing Group, LLC (5649); RBA Wholesale, LLC (0986); Retail Brand Alliance Gift Card Services, LLC (1916); Retail Brand Alliance of Puerto Rico, Inc. (2147); and 696 White Plains Road, LLC (7265). The Debtors' corporate headquarters and service address is 346 Madison Avenue, New York, New York 10017.

Rules"), the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit B** (the "**Proposed Order**"), authorizing Golden Fleece, subject to the receipt of higher or better bids, to consummate the sale (the "**Sale Transaction**") of its 148,000 square foot manufacturing facility (the "**Southwick Facility**") located at 25 Computer Drive in Haverhill, Massachusetts (together with the Southwick Facility, the "**Property**") to Eastern Opportunity Fund LLC (the "**Purchaser**"), for $14,000,000, free and clear of all liens, claims, encumbrances, and other interests, pursuant to that certain *Purchase and Sale Agreement* dated as of June 17, 2020 between Golden Fleece and the Purchaser (as amended, restated, or supplemented from time to time, the "**Purchase Agreement**" or "**PSA**"), attached hereto as **Exhibit A**.

2.      In support of this Motion, the Debtors rely on and incorporate the *Declaration of Stephen Marotta in Support of Debtors' Motion for Entry of an Order (I) Authorizing Sale of Southwick Manufacturing Facility Free of all Liens, Claims, Encumbrances, and Other Interests, and (II) Granting Related Relief* (the "**Sale Declaration**"), filed contemporaneously herewith.

3.      **Any party interested in making a higher or better offer for the Property should contact the Debtors' proposed investment banker, PJ Solomon, L.P ("PJ Solomon") at ProjectBlazer@PJSolomon.com by no later than August 5, 2020.**

### Background

4.      On July 8, 2020 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On July 21, 2020, the Office of the United States Trustee for Region 3 (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these chapter 11 cases.

2

5.      The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

6.      Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Stephen Marotta in Support of Debtors' Chapter 11 Petitions and First Day Relief* [D.I. 38] (the "**First Day Declaration**"), filed on the Petition Date.[2]

## Jurisdiction

7.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## The Property

9.      Prior to the Petition Date, Golden Fleece operated three (3) manufacturing facilities in the United States (including the Southwick Facility) that produced a portion of the suits, sport coats, shirts, and accessories (such as neckties) for sale by the Company through their e-commerce and retail channels.  However, the losses caused by the COVID-19 pandemic, among

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

other reasons, forced the Debtors to halt their clothing manufacturing operations.  The Debtors sought to continue manufacturing operations by producing facemasks for front line workers and consumers but were unable to receive the necessary government financing or otherwise generate sufficient revenue to continue to support such operation.  Accordingly, prior to the Petition Date, the Debtors announced the shutdown of all three of the Golden Fleece facilities.[3]  Since that time, the Southwick Facility has been effectively closed, save for limited wind-down activities to convert work-in-process into finished goods.[4]

10.     The Southwick Facility is located on a 21-acre, commercially zoned site located at 25 Computer Drive, in Haverhill Massachusetts.  The Southwick Facility is a 148,000 square foot facility that was originally constructed in 2007 as a Lowe's Home Improvement retail store.  Golden Fleece acquired the Property in 2016 and redeveloped the Southwick Facility for the Debtors' clothing manufacturing operations.  Renovations of the building included the construction of 450 sewing stations, a new storefront, an 8,500 square foot office mezzanine, and a cafeteria and locker room designed to accommodate up to 600 employees.  The total cost of the Property, including renovations, was approximately $13.6 million.

11.     Pursuant to that certain Term Loan and Security Agreement dated as of January 25, 2016, by and among Golden Fleece, as borrower, Brooks Brothers Group, Inc., as guarantor, and JP Morgan Chase Bank, N.A. ("**JPM**"), and that certain Mortgage and Security Agreement, dated as of January 25, 2016 (the "**Mortgage**"), among Golden Fleece, as grantor or mortgagor, and JPM as grantee or mortgagee, JPM agreed to provide to Golden Fleece a term loan

---

[3] On May 15, 2020, the Debtors issued notices pursuant to the Worker Adjustment and Retraining Notification Act (the "**WARN Act**") to the approximately 350 Brooks Brothers employees, employed primarily as pressers and sewers at the Southwick Facility and represented by *The 187, The New England Joint Board, Unite Here* (the "**Southwick Employees**").  The news with respect to the closure was well publicized in various national and local news outlets.

[4] Ten (10) Employees have remained working in the Southwick Facility to conduct wind-down operations.

of $10 million, to finance the purchase of the Property.  The obligations to JPM mature in January

2021 and bear an interest rate of approximately 4% per annum.  As of the date hereof, the aggregate

amount outstanding to JPM is approximately $7 million in unpaid principal, plus accrued and

unpaid interest, fees, and other amounts.

### Proposed Sale

12.    Starting in 2019, PJ Solomon began soliciting interest from parties for the

entire Brooks Brothers business, inclusive of the Company's operating and manufacturing

facilities.  To date, none of the potential purchasers that have submitted indications of interest or

offers have expressed an interest in acquiring the Debtors' manufacturing operations as a going

concern in connection with a sale of the Debtors' businesses or otherwise.

13.    Golden Fleece's decision to close the Southwick Facility has received

significant publicity, locally and nationally.  Following their announcement, the Debtors began to

receive a number of indications of interest from parties interested in purchasing the Property on a

stand-alone basis.[5]  The Debtors ultimately received multiple written offers to purchase the

Property and the offer submitted by the Purchaser provided for the highest and best offer received

for the Property.

14.    Accordingly, prior to the Petition Date, the Debtors and Purchaser engaged

in arm's-length negotiations that resulted in entry into the Purchase Agreement on June 17, 2020

and the delivery by the Purchaser of a $100,000 deposit.  The Debtors anticipated the sale closing

prior to commencing these chapter 11 cases;  however, the Purchaser exercised its right under the

Purchase Agreement to complete additional due diligence, and the transaction did not close prior

---

[5] None of the parties who expressed interest in purchasing the Property expressed interest in hiring the Debtors' employees, or therefore, in assuming the collective bargaining agreement covering the employees.

to the Petition Date.  On July 7, 2020, the Purchaser indicated that it had completed its due diligence review, would deliver an additional deposit of $200,000, and would proceed to close on or before July 31, 2020.  On July 13, 2020, Golden Fleece and the Purchaser entered into an amendment to the PSA to provide that the closing was subject to Bankruptcy Court approval, and that either party may terminate the PSA if such approval is not received by August 17, 2020.

15.     The Debtors believe that the contemplated Transaction reflects the highest and best value available to the Debtors.  The purchase price is consistent with an appraisal that was conducted on the Property.  As described above, the Property has been marketed along with the rest of the Debtors' business.  In addition, the closure of the Southwick Facility has been well publicized, and resulted in numerous parties indicating their interest in acquiring the Property on a stand-alone basis.

16.     Notwithstanding that the Debtors believe the Transaction is the best available to the Debtors and their estates, the Debtors intend to conduct a further market test with respect to the Property prior to hearing on the Motion.  The Debtors intend to (i) provide notice of this Motion to all parties that have expressed an interest in purchasing the Property, (ii) distribute this Motion to other parties that may be interested in purchasing the Property, and (iii) publish a notice of the proposed Sale Transaction in *The Boston Globe*.  In each case, interested parties will be advised that they may contact PJ Solomon to submit a superior bid by no later than August 5, 2020 (the proposed bid deadline in the Debtors' proposed bidding procedures for all of their assets)[6] if they are interested in making a higher or better offer for the Property.

---

[6] *See Motion to Approve //Motion of Debtors for Entry of Orders (I) Approving (A) Bidding Procedures, (B) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (C) Assumption and Assignment Procedures, (II) Scheduling Auction and Sale Hearing, (III) Approving (A) Sale of Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief Filed by Brooks Brothers Group, Inc.* [D.I. 154].

## <u>Summary of Sale Terms and Local Rule Disclosures</u>

17.    A summary of the principal terms of the PSA are as follows (qualified in its entirety by the provisions of the PSA):

| Seller | Golden Fleece Manufacturing Group, LLC |
|---|---|
| Buyer | Eastern Opportunity Fund LLC |
| Purchased Assets | a) those certain tracts of real estate containing approximately 21 acres of land located in the City of Haverhill, Commonwealth of Massachusetts, which real estate is more particularly described in (i) Exhibit A to (ii) the PSA, together with all right, title and interest of Seller in and to all easements, covenants, agreements, rights, privileges, tenements, hereditaments and appurtenances thereunto now or hereafter belonging or appertaining thereto (collectively, the "**Land**"); <br><br> b) all right, title and interest of Seller (whether now or hereafter existing) in and to any land lying in the bed of any street, alley, road or avenue (whether open, closed or proposed) within, in front of, behind or otherwise adjoining the Land or any of it, and all right, title and interest of Seller (whether now or hereafter existing) in and to any award made or to be made after the Effective Date as a result or in lieu of condemnation, and in and to any award for damage to the Property or any part thereof after the Effective Date by reason of casualty (all of the foregoing being included within the term "**Land**"); <br><br> c) all of the buildings, structures, fixtures, facilities, installations and other improvements of every kind and description now or hereafter in, on, over and under the Land, including, without limitation, any and all plumbing, air-conditioning, heating, ventilating, mechanical, electrical and other utility systems, parking lots and facilities, landscaping, roadways, sidewalks, recreational facilities, security devices, signs and light fixtures (collectively, the "**Improvements**") (the Land and Improvements being collectively referred to as the "**Premises**"); and <br><br> d) to the extent transferable, all right, title and interest of Seller in and to (i) all existing surveys, blue prints, construction drawings, plans and specifications (including, without limitation, structural, HVAC, mechanical and plumbing plans and specifications), architect and contractor agreements, warranties and guaranties and other documentation for or with respect to the construction or operation of the Premises or any part thereof; and (ii) all licenses, permits, approvals |

|  | or other like instruments applicable to the operation, use or enjoyment of the Premises (collectively, "**General Intangibles**"). *See* Purchase and Sale Agreement § 2 |
|---|---|
| **Excluded Assets** | For the avoidance of doubt, the Property does not, and shall not, include any of Seller's furniture, furnishings or other personal property, or any of Seller's trade fixtures, equipment or machinery used in connection with the operation of Seller's business at the Premises. *See* Purchase and Sale Agreement § 2 |
| **Consideration** | $14,000,000 *See* Purchase and Sale Agreement § 1 |

18.     Local Rule 6004-1(b)(iv) requires that a sale motion highlight certain material terms that are either present in the purchase agreement or proposed form of sale order. Each of the subparts of Local Rule 6004-1(b)(iv) is discussed in turn below.

| **Sale to Insider** Local Rule 6004-1(b)(iv)(A) | None. |
|---|---|
| **Agreements with Management** Local Rule 6004-1(b)(iv)(B) | None. |
| **Releases** Local Rule 6004-1(b)(iv)(C) | None. |
| **Private Sale/No Competitive Bidding** Local Rule 6004-1(b)(iv)(D) | The transaction is a private sale. No auction is contemplated currently. However, as discussed herein, the formal transaction is subject to higher or better offers, and the Debtors intend to present the highest and best offer at the hearing. |
| **Closing and Other Deadlines** Local Rule 6004-1(b)(iv)(E) | If Bankruptcy Court Approval is not received by August 17, 2020, then either party shall have the right to terminate the Agreement upon written notice to the other party prior to Bankruptcy Court Approval being obtained. *See First Amendment to Purchase and Sale Agreement* §2.3 |

| | |
|---|---|
| **Good Faith Deposit**<br><br>Local Rule 6004-1(b)(iv)(F) | Buyer shall deposit Three Hundred Thousand and 00/100 Dollars ($300,000.00) with the escrow agent, to be held and disbursed pursuant to the PSA.<br><br>*See* Purchase and Sale Agreement §§ 3.2(a), 3.2(b) |
| **Interim Arrangements with Proposed Buyer**<br><br>Local Rule 6004-1(b)(iv)(G) | None. |
| **Use of Proceeds**<br><br>Local Rule 6004-1(b)(iv)(H) | The proceeds from the Sale Transaction shall be distributed as follows: (i) first paid to JPM until the Mortgage is satisfied in full; and (ii) any proceeds from the Sale Transaction that exceed the Mortgage shall be paid to the Debtors' estates.<br><br>*See* Proposed Order at ¶ 6 |
| **Tax Exemption**<br><br>Local Rule 6004-1(b)(iv)(I) | None. |
| **Record Retention**<br><br>Local Rule 6004-1(b)(iv)(J) | None. |
| **Sale of Avoidance Actions**<br><br>Local Rule 6004-1(b)(iv)(K) | None. |
| **Requested Findings as to Successor Liability**<br><br>Local Rule 6004-1(b)(iv)(L) | None. |
| **Sale Free and Clear of Unexpired Leases**<br><br>Local Rule 6004-1(b)(iv)(M) | None. |
| **Credit Bid**<br><br>Local Rule 6004-1(b)(iv)(N) | None. |
| **Relief from Bankruptcy Rule 6004(h)**<br><br>Local Rule 6004-1(b)(iv)(O) | *See* Proposed Order at ¶ 12 |

### Relief Requested Should Be Granted

**A.     The Sale of the Property is an Exercise of Sound Business Judgment**

19.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  In order to approve the sale of property outside the ordinary course of business, a Bankruptcy Court must "find from the evidence presented before him at the hearing a good business reason to grant such an application." *See, e.g., In re Abbotts Dairies of Pa., Inc.,* 788 F.2d 143 (3d Cir. 1986); *see also In re Chateaugay Corp.*, 973 F.2d 141, 144–45 (2d Cir. 1992) (affirming that the Bankruptcy Court correctly approved an asset sale under 363(b) using the "good business reason" standard); *In re Borders Grp., Inc.*, 453 B.R. 477, 482 (Bankr. S.D.N.Y. 2011) ("a debtor often satisfies the business judgment standard if 'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'") (quoting *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992)); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (approving a sale pursuant to section 363 where there was a "legitimate business justification") (citing *In re Schipper*, 933 F.2d 513 (7th Cir. 1991)); *In re ICL Holding Co. Inc.*, 802 F.3d 547, 551 (3d Cir. 2015).

20.     Courts in the Third Circuit generally have applied four factors in connection with evaluating whether there is a "sound business purpose" for a sale under section 363: (1) whether a sound business justification exists for the proposed sale; (2) whether adequate and reasonable notice of the sale has been provided to interested parties; (3) whether the sale will produce a fair and reasonable price for the property; and (4) whether the parties have acted in good faith.  *See In re Decora Indus., Inc.*, 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In*

*re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)).  After a debtor demonstrates a valid

business purpose for the sale of estate property, courts generally presume that the decision was

made "on an informed basis, in good faith and in the honest belief that the action was in the best

interests of the company."  *In re Integrated Res., Inc.*, 147 B.R. at 656 (quoting *Smith v. Van*

*Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

21.    The sale of the Property under the PSA is a sound exercise of the Debtors'

business judgment.  **_First_**, it is no longer economical for the Debtors to operate the Southwick

Facility and, to date, no potential purchaser of the Debtors' businesses as a whole has expressed

an interest in acquiring the Facility.  Accordingly, the Debtors determined in their business

judgment to sell the Property separately for the highest purchase price and otherwise on the best

terms available.  To date, the Debtors have not received an offer that matches or exceeds the $14

million sale price under the Purchase Agreement.  Notably, the Transaction does not involve

payment of any fee for any broker, which is typically 1.5-2.0% of the purchase price.

22.    *Second*, the Debtors conducted an extensive prepetition marketing process

for their assets for over a year.  Between that process and the significant publicity generated both

by the prepetition closing of the Property and the Debtors' chapter 11 cases, along with the notice

provided in these chapter 11 cases, the Debtors submit that they have provided fair and reasonable

notice to interested persons of their efforts to market and sell the Property.  Further, consistent

with their fiduciary duties to maximize value, and although the Debtors need to expeditiously move

forward with the Sale Transaction, the Debtors have provided notice of this Motion to any parties

that have previously expressed interest, and will continue to evaluate any bids for the Property.

23.    *Third*, importantly, an efficient sale of the Property through the Sale

Transaction (or otherwise) will allow the Debtors to generate cash proceeds for the benefit of their

estates and creditors.  To date, no party that has expressed an interest in the Debtors' business has offered to purchase the Property and to continue the Debtors' manufacturing operations. The Sale Transaction is the highest and best offer the Debtors have received for the Property.  The Debtors' DIP Budget contemplates the receipt of the net sale proceeds from the Property, and such proceeds are necessary to help the estate bridge to a value-maximizing sale of substantially all of the Debtors' assets.  The sooner the Debtors can consummate a sale of the property and repay JPM, the sooner the estate can cease incurring interest expenses associated with the Mortgage.

24.    ***Fourth***, the Debtors submit that they and the Purchaser have engaged in good faith, arm's length negotiations for a value-maximizing sale of the Property through the Sale Transaction.  The parties' good faith is discussed further below.

25.    Accordingly, the Debtors submit that the sale of the Property to the Purchaser pursuant to the PSA (or a higher or better offer) is a sound exercise of their business judgment and in the best interests of the estates.

## B.    A Private Sale Is Warranted Under the Circumstances

26.    Bankruptcy Rule 6004(f)(1) permits private sales or sales conducted without an auction.  Fed. R. Bankr. P. 6004(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction.").  Further, courts have generally held that a debtor has broad discretion in determining the manner in which assets are sold.  *Berg v. Scanlon (In re Alisa P'ship)*, 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("[T]he manner of sale is within the discretion of the trustee . . . .");  *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (noting that a trustee has "'ample discretion to administer the estate, including authority to conduct public or private sales of estate property.'")  (citing *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991)).  As long as a debtor maximizes the return to its estate, a court should defer to a debtor's

business judgment regarding how to structure an asset sale. *Bakalis*, 220 B.R. at 532 (recognizing that although a trustee's business judgment enjoys great judicial deference, a duty is imposed on the trustee to maximize the value obtained from a sale); *In re NEPSCO, Inc.*, 36 B.R. 25, 26 (Bankr. D. Me. 1983) ("Clearly, the thrust of th[e] statutory scheme [governing 363 sales] is to provide maximum flexibility to the trustee, subject to the oversight of those for whose benefit he acts, *i.e.*, the creditors of the estate.").

27.    Accordingly, if the Debtors conclude that conducting a private sale, as opposed to a public auction, is in the best interests of their estates according to a sound business reason, the Debtors should be permitted to do so. *See Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect to sales of estate property, "[t]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction.").

28.    Here, sound business justifications exist for a private sale. Specifically, (i) the Debtors have conducted a solicitation of the market through the Debtors' broader marketing process, (ii) news of the closure of the Southwick Facility has been well publicized to any potential buyer that might be interested in purchasing the Property on a stand-alone basis, and (iii) the Purchaser has agreed to provide valuable consideration in exchange for the Property. A private sale will ensure that the Debtors are able to consummate a value-maximizing transaction for the benefit of all parties in interest on a timely basis and use the proceeds to fund these chapter 11 cases and bridge to a broader value-maximizing transaction.

29.    In addition, the Debtors have scheduling a hearing on this motion following the deadline proposed for submission of bids for any or all parts of the Debtors' business. As a result, by August 5, 2020, the Debtors will know if there are any higher or better offers for the

Property, either as part of a larger sale transaction or on a stand-alone basis. Accordingly, the Debtors' decision to sell the Property to the Purchaser (or to a higher or better bidder) is supported by the Debtors' business judgment and should be approved.

**C.    The Sale of the Property Free and Clear of Liens is Warranted Under Section 363(f)**

30.    Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property under section 363(b) free and clear of any liens, claims, encumbrances, and other interests of an entity other than the estate if one of the following conditions is satisfied:

> (1)    applicable non-bankruptcy law permits the sale of such property free and clear of such interest;
>
> (2)    such entity consents;
>
> (3)    the interest is a lien and the sales price of the property exceeds the value of all liens on the property;
>
> (4)    the interest is in bona fide dispute; or
>
> (5)    the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.

11 U.S.C. § 363(f)(1)-(5). Section 363(f) is stated in the disjunctive; therefore, it is only necessary to meet one of the five conditions listed in that section when selling property of the estate. 11 U.S.C. § 363(f); *see also In re Pacific Energy Res Ltd.*, Case No. 09-10785 (KJC) (Bankr. D. Del. Aug. 18, 2009); *In re Flying J Inc.*, Case No. 08-13384 (MFW) (Bankr. D. Del. July 27, 2009); *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

14

31.    The sale of the Property free and clear of all liens, claims, encumbrances, and other interests is appropriate under section 363(f) of the Bankruptcy Code.  To facilitate the sale for the benefit of all creditors, it is necessary to authorize the sale of the Property free and clear of any and all liens, claims, encumbrances, or other interests, including rights or claims based on any successor or transferee liability, other than the liabilities assumed by the Purchaser, with any such liens, claims, encumbrances, or other interests to transfer to and attach to the proceeds of the Sale with the same rights and priorities therein.

32.    Further, any known entities holding liens, claims, encumbrances, or other interests on the Property will have received notice of this Motion and will be given sufficient opportunity to object to the relief requested.  Any such entity that does not object to the sale should be deemed to have consented.  *See Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent.  It could not be otherwise; transaction costs would be prohibitive if everyone who *might* have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted) (emphasis in original); *Hargrave v. Twp. of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *In re Elliot*, 94 B.R. at 345 (same).

33.    Accordingly, the Debtors request that the Property be transferred to the Purchaser, free and clear of all liens, claims, encumbrances and other interests (to the extent set forth in the Purchase Agreement), with such liens, claims, encumbrances, and other interests to attach to the sale proceeds.

**D.      Purchaser Should Be Entitled to the Protections of Section 363(m)**

34.      Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).   Section 363(m) fosters the "policy of not only affording finality to the judgment of the bankruptcy court, but . . . give[s] finality to those orders and judgments upon which third parties rely."  *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (quoting *Hoese Corp. v. Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 55 (7th Cir. 1983)); *see Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal."); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. §363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

35.      The Purchaser is a good faith purchaser for value and, as such, is entitled to the protections afforded to such purchaser under section 363(m) of the Bankruptcy Code and has otherwise acted in good faith in connection with the sale of the Property.   The Purchaser was represented by qualified counsel and the Debtors believe that the Purchaser has not engaged in any conduct that would indicate or constitute a lack of good faith.  *See In re Gucci*, 126 F.3d 380, 392 (2d Cir. 1997) ("Good faith of a purchaser is shown by the integrity of his conduct during the course of sale proceedings . . . ."); *In re Tempo Tech. Corp.*, 202 B.R. 363, 367 (D. Del. 1996)

(stating that a purchaser's good faith status would be destroyed only by conduct involving "'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'") (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)). Specifically, (i) the Purchaser is not an "insider" of the Debtors, as that term is defined in the Bankruptcy Code, (ii) the PSA was negotiated at arm's length, (iii) the consideration to be paid by the Purchaser pursuant to the PSA is fair and reasonable, as it is the highest and best offer the Debtors have received after a thorough marketing process, and (iv) the PSA is not the result of fraud or collusion.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the transaction contemplated by the PSA to be avoided or result in the imposition of any costs or damages under section 363(n) of the Bankruptcy Code.  Accordingly, the Debtors believe that the Purchaser is entitled to the protections of section 363(m) of the Bankruptcy Code.

### Bankruptcy Rule 6004(h)

36.    Bankruptcy Rule 6004(h) provides that, provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  The Debtors believe that in order to maximize value, the sale of the Property must be consummated as soon as practicable.  Accordingly, the Debtors request that the Proposed Order be effective submit immediately upon entry of each such order and that the fourteen (14) day stay period under Bankruptcy Rule 6004(h) be waived.

### Proposed Notice of the Sale and Sale Hearing

37.    Bankruptcy Rule 2002(c)(1) requires that a notice of a proposed sale include the date, time, and place of the sale hearing, the terms and conditions of any private sale, and the time fixed for filing objections.  Fed. R. Bankr. P. 2002(c).  For a proposed sale of real estate, the notice is sufficient "if it generally describes the property."  *Id.*

38.    Contemporaneously with the filing of this Motion, the Debtors intend to serve a notice of the hearing to consider this Motion (the "**Sale Hearing**"), substantially in the form attached hereto as **<u>Exhibit C</u>**, by first-class mail, postage prepaid and email (if known) upon the following parties: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) *The 187, The New England Joint Board, Unite Here* union that represents employees at the Southwick Facility; (iv) any party that has expressed an interest in the Property; (v) all parties known to the Debtors to have asserted any lien, claim, encumbrance, or other interest in the Property; (vi) any governmental unit which has a known interest in or jurisdiction over the Property; (vii) the Office of the Attorneys General for the State of Delaware and the Commonwealth of Massachusetts; (viii) the Internal Revenue Service; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**").    As discussed above, the Debtors also will publish a notice of the proposed Sale Transaction in *The Boston Globe*.

39.    The notice of the Sale Hearing will include, among other things, the proposed date, time, and place (including telephonic hearing information) of the Sale Hearing, the deadline for filing any objections to the relief requested herein, and a general description of the Property.    The Debtors therefore submit that the forms and methods of notice of the proposed Sale Transaction and the Sale Hearing comply constitute good and adequate notice under the Bankruptcy Rules.

## <u>No Previous Request</u>

40.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated:  July 21, 2020
        Wilmington, Delaware

                        _/s/ Christopher M. De Lillo_
                        RICHARDS, LAYTON & FINGER, P.A.
                        Mark D. Collins (No. 2981)
                        Zachary I. Shapiro (No. 5103)
                        Christopher M. De Lillo (No. 6355)
                        One Rodney Square
                        920 N. King Street
                        Wilmington, Delaware 19801
                        Telephone:  (302) 651-7700
                        Facsimile:  (302) 651-7701
                        E-mail:       collins@rlf.com
                                      shapiro@rlf.com
                                      delillo@rlf.com

                        -and-

                        WEIL, GOTSHAL & MANGES LLP
                        Garrett A. Fail (admitted *pro hac vice*)
                        David J. Cohen (admitted *pro hac vice*)
                        767 Fifth Avenue
                        New York, New York  10153
                        Telephone:  (212) 310-8000
                        Facsimile:   (212) 310-8007
                        E-mail:       garrett.fail@weil.com
                                      davidj.cohen@weil.com

                        *Proposed Attorneys for Debtors*
                        *and Debtors in Possession*