**<u>Exhibit D</u>**

**Revised Proposed Bidding Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------- x
                                                           :
In re                                                      :          Chapter 11
                                                           :
BROOKS BROTHERS GROUP, INC., et al.,                       :          Case No. 20–11785 (CSS)
                                                           :
                            Debtors.¹                      :          (Jointly Administered)
                                                           :
--------------------------------------------------------- x          D.I. No. ___
```

### ORDER (I) APPROVING (A) BIDDING PROCEDURES, (B) DESIGNATION OF STALKING HORSE BIDDER AND STALKING HORSE BID PROTECTIONS, (C) SCHEDULING AUCTION AND SALE HEARING, (D) FORM AND MANNER OF NOTICE OF SALE, AUCTION, AND SALE HEARING, AND (E) ASSUMPTION AND ASSIGNMENT PROCEDURES AND (II) GRANTING RELATED RELIEF

Upon the (i) *Motion of Debtors for Entry of Orders (I) Approving (A) Bidding Procedures, (B) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (C) Assumption and Assignment Procedures, (II) Scheduling Auction and Sale Hearing, (III) Approving (A) Sale of Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (the "**Motion**") [D.I. No. 154]; (ii) the *Supplement to Motion of Debtors for Entry of Orders (I) Approving (A) Bidding Procedures, (B) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (C) Assumption and Assignment Procedures, (II) Scheduling Auction and Sale Hearing, (III) Approving (A) Sale of Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances,*

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Brooks Brothers Group, Inc. (8883); Brooks Brothers Far East Limited (N/A); BBD Holding 1, LLC (N/A); BBD Holding 2, LLC (N/A); BBDI, LLC (N/A); Brooks Brothers International, LLC (N/A); Brooks Brothers Restaurant, LLC (3846); Deconic Group LLC (0969); Golden Fleece Manufacturing Group, LLC (5649); RBA Wholesale, LLC (0986); Retail Brand Alliance Gift Card Services, LLC (1916); Retail Brand Alliance of Puerto Rico, Inc. (2147); and 696 White Plains Road, LLC (7265). The Debtors' corporate headquarters and service address is 346 Madison Avenue, New York, New York 10017.

*and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV)*
*Granting Related Relief* [D.I. No. [●]] (the "**Supplement**");[2] and (iii) the *Declaration of Derek*
*Pitts in Support of Motion of Debtors for Entry of Orders (I) Approving (A) Bidding Procedures,*
*(B) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (C) Assumption and*
*Assignment Procedures, (II) Scheduling Auction and Sale Hearing, (III) Approving (A) Sale of*
*Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances,*
*and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV)*
*Granting Related Relief, and the Supplement Related Thereto* [D.I. No. [●]] (the "**Pitts**
**Declaration**"), each filed by Brooks Brothers Group, Inc. and its debtor affiliates, as debtors and
debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"),
pursuant to sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code
(the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, 9008, and 9014 of the Federal Rules of
Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 2002-1, 6004-1, and 9006-1 of the Local
Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District
of Delaware (the "**Local Rules**") for entry of an order (i) approving the bidding procedures,
substantially in the form attached hereto as **Exhibit 1** (the "**Bidding Procedures**") in connection
with the sale of substantially all of the Debtors' assets (the "**Assets**") (subject to certain
exceptions); (ii) authorizing the Debtors to designate SPARC Group LLC as the stalking horse
bidder (the "**Stalking Horse Bidder**"); (iii) approving the Bid Protections (as defined in the
Supplement) proposed to be granted in accordance with the terms and conditions of the Bidding
Procedures and the Stalking Horse Agreement (as defined herein); (iv) authorizing and scheduling

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the
Motion and the Supplement, as applicable.

an auction (the "**Auction**") and scheduling a hearing (the "**Sale Hearing**") with respect to the approval of a proposed sale transaction (the "**Sale Transaction**"); (v) authorizing and approving the form and manner of notice of the (a) Debtors' entry into that certain *Asset Purchase Agreement*, executed July 23, 2020 (together with the exhibits thereto, as may be amended, modified, or supplemented from time to time in accordance with the terms thereof, the "**Stalking Horse Agreement**") attached hereto as **Exhibit 4**, for the sale of substantially all of the Debtors' Assets (as defined in the Stalking Horse Agreement, the "**Acquired Assets**") to the Stalking Horse Bidder (the "**Stalking Horse Bid**"); (b) Auction, if any; and (c) Sale Hearing, substantially in the form attached hereto as **Exhibit 2** (the "**Sale Notice**"); (vi) approving the procedures set forth herein (the "**Assumption and Assignment Procedures**") for the assumption and assignment of the Debtors' executory contracts and unexpired leases to the Stalking Horse Bidder or the Successful Bidder (the "**Assigned Contracts**") and the determination of the amount necessary to cure any defaults thereunder (the "**Cure Costs**"); (viii) authorizing and approving the form and manner of notice to each relevant non-Debtor counterparty to an executory contract or unexpired lease (collectively, the "**Contract Counterparties**") regarding the Debtors' assumption and assignment of the Assigned Contracts to the Successful Bidder (as defined herein) and of the Debtors' calculation of the Cure Costs, substantially in the form attached hereto as **Exhibit 3** (the "**Cure Notice**"); and (vii) granting related relief; all as more fully described in the Motion and the Supplement; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Sale

Notice Parties (as defined in the Motion), and such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion; and this Court having held a hearing to consider the relief requested in the Motion; and upon the Pitts Declaration and the record of the hearing; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.    <u>Jurisdiction</u>.  This Court has jurisdiction to hear and determine the Motion and to grant the relief requested herein pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    <u>Statutory and Legal Predicates</u>.  The statutory and legal predicates for the relief requested in the Motion are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014 and Local Rules 2002-1, 6004-1, and 9006-1.

C.    <u>Prepetition Marketing Process</u>.  The Debtors and their advisors, including PJ Solomon, L.P. ("**PJ Solomon**"), engaged in a robust and extensive sale process before and after

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

the commencement of these chapter 11 cases, over a period of fifteen (15) months, to solicit and develop the highest or best offer for the Assets.

       D.     <u>Bidding Procedures</u>.  The Debtors have articulated good and sufficient business reasons for the Court to approve the Bidding Procedures.  The Bidding Procedures are fair, reasonable, and appropriate under the circumstances and designed to maximize the recovery on, and realizable value of, the Assets, as determined by the Debtors' sound business judgment. The Bidding Procedures were negotiated in good faith and at arms' length and are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in all or part of the Debtors' assets and businesses resulting in the highest or otherwise best offer.   The Bidding Procedures comply with the requirements of Local Rule 6004-1(c).

       E.     <u>Designation of Stalking Horse Bid</u>.  The Stalking Horse Bid as reflected in the Stalking Horse Agreement represents the highest and best offer the Debtors have received during their sale process to purchase the Acquired Assets in accordance with the Bidding Procedures.  The Stalking Horse Agreement provides the Debtors with the opportunity to sell the Acquired Assets in order to preserve and realize their going concern value and provide a floor for a further marketing and auction process.  Without the Stalking Horse Bid, the Debtors would likely realize a lower price for the Acquired Assets.  As such, the contributions of the Stalking Horse Bidder to the process have indisputably provided a substantial benefit to the Debtors, their estates, and creditors in these chapter 11 cases.  The Stalking Horse Bid will enable the Debtors to continue their operations, preserve jobs, minimize disruption to the Debtors' business, and secure a fair and adequate baseline price for the Acquired Assets at the Auction (if any), and, accordingly, will provide a clear benefit to the Debtors' estates, their creditors, and all other parties in interest.

       F.     <u>Designation of Stalking Horse Bidder</u>.  Stalking Horse Bidder shall act as the "stalking horse bidder" pursuant to the Stalking Horse Agreement and the Stalking Horse Bid

shall be subject to higher or better offers in accordance with the Bidding Procedures. The Stalking Horse Bidder is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders exists between the Stalking Horse Bidder and the Debtors. Pursuit of the Stalking Horse Bidder as a "stalking-horse" bidder and its Stalking Horse Bid as a "stalking-horse" purchase agreement is in the best interests of the Debtors and the Debtors' estates and creditors, and it reflects a sound exercise of the Debtors' business judgment.

G.    <u>Stalking Horse Bid Protections</u>.    The Bid Protections (i) have been negotiated by the Stalking Horse Bidder and the Debtors and their respective advisors at arm's-length and in good faith and (ii) are necessary to ensure that the Stalking Horse Bidder will continue to pursue its Stalking Horse Agreement and the Sale Transaction contemplated thereby. The Termination Payment (as defined in the Stalking Horse Agreement), to the extent payable under the Stalking Horse Agreement, (a)(x) is an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code and (y) shall be treated as an allowed superpriority administrative expense claim against the Debtors' estates pursuant to sections 105(a), 364, 503(b), and 507(a)(2) of the Bankruptcy Code; (b) is commensurate to the real and material benefits conferred upon the Debtors' estates by the Stalking Horse Bidder; and (c) is fair, reasonable, and appropriate, including in light of the size and nature of the Sale Transaction and the efforts that have been and will be expended by the Stalking Horse Bidder. The Stalking Horse Bid Protections are a material inducement for, and condition of, the Stalking Horse Bidder's execution of the Stalking Horse Agreement.

H.    <u>Assumption and Assignment Provisions</u>.    The Debtors have articulated good and sufficient business reasons for the Court to approve the Assumption and Assignment Procedures and the Assumption and Assignment Procedures, including the form of the Sale Notice

attached hereto as **Exhibit 2** and the form of the Cure Notice attached hereto as **Exhibit 3**, are fair, reasonable, and appropriate. The Assumption and Assignment Procedures provide an adequate opportunity for all Contract Counterparties to raise any objections to the proposed assumption and assignment or the proposed Cure Costs. The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

I.      Cure Notice. The Cure Notice, the form of which is attached hereto as **Exhibit 3**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Assumption and Assignment Procedures, as well as any and all objection deadlines related thereto, and no other or further notice shall be required for the Motion and the procedures described therein, except as expressly required herein.

J.      Sale Notice. The Sale Notice, the form of which is attached hereto as **Exhibit 2**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Assumption and Assignment Procedures, the Auction, the Sale Hearing, and the Sale Transaction (including the sale of the Acquired Assets as set forth under the Stalking Horse Bid) free and clear of any liens, claims, encumbrances, or interests pursuant to section 363(f) of the Bankruptcy Code (provided, however, that any such liens, claims, encumbrances, or interests shall attach to the proceeds of the sale of the applicable Acquired Assets), and any and all objection deadlines related thereto, and no other or further notice shall be required for the Sale Motion, the Sale Transaction, or the assumption and assignment of the Assigned Contracts except as expressly required herein.

K.      Notice. Good and sufficient notice of the relief sought in the Motion (including the Supplement) has been provided under the circumstances, and no other or further notice is required, except as set forth in the Bidding Procedures and the Assumption and Assignment Procedures. A reasonable opportunity to object and be heard regarding the relief

granted herein has been afforded to all parties in interest, including those persons and entities entitled to notice pursuant to Bankruptcy Rule 2002.

L.    The Debtors have articulated good and sufficient business reasons for the Court to approve (i) the Bidding Procedures, (ii) the Assumption and Assignment Procedures, (iii) the Stalking Horse Bid Protections, and (iv) the form and manner of notice of the Auction and the Sale Hearing for the Sale Transaction.

### IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    The Motion is granted to the extent set forth herein.

2.    All objections to the relief granted herein that have not been withdrawn with prejudice, waived, or settled, and all reservations of rights included in such objections, are hereby overruled and denied on the merits with prejudice.

3.    The Bidding Procedures are hereby approved in their entirety, are incorporated herein by reference, and shall govern the bids and proceedings related to the sale of the Assets and the Auction.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.  The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

### Stalking Horse Bid Protections

4.    The Stalking Horse Bid shall be subject to higher or better Qualified Bids, in accordance with the terms and procedures of the Bidding Procedures.

5.    The Stalking Horse Bid Protections are approved in their entirety.  The Termination Payment shall be payable in accordance with, and subject to the terms of, the Stalking Horse Agreement and the Bidding Procedures.

6.      The Break-Up Fee and the Expense Reimbursement shall constitute allowed superpriority administrative expense Claims pursuant to sections 105(a), 503(b), and 507(a)(2) of the Bankruptcy Code with priority over all other administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code, other than, and subject and subordinate in all respects to, the Carve Out and the DIP Obligations (each as defined in the DIP Interim Order (as defined in the Stalking Horse Agreement)).

## **The Bidding Procedures**

7.      The Bidding Procedures, attached hereto as **Exhibit 1**, are fully incorporated herein and approved, and shall apply with respect to any bids for, and the Auction and sale of, all of the Debtors' Assets, including the Acquired Assets set forth in the Stalking Horse Agreement.  The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a "Qualified Bid" (as defined herein), are fair, reasonable and appropriate, and are designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and other parties in interest.  The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures in accordance with the terms of this Order and the Bidding Procedures.

8.      The deadline for submitting Bids (the "**Bid Deadline**") is **August 5, 2020 at 10:00 a.m. (prevailing Eastern Time)**; provided, that the Debtors shall have the right to extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment, for all or certain Potential Bidders, without further order of the Court, subject to providing prior notice to the Stalking Horse Bidder, counsel to the Committee (as defined in the Motion) and Prepetition ABL Agent, and all Potential Bidders (as defined in Bidding Procedures).  Any party that does not submit a Qualified Bid by the Bid Deadline in accordance with the Bidding Procedures will not be allowed to (a) submit any offer after the Bid Deadline or (b) participate in the Auction.

9.      The Stalking Horse Bidder is a Qualified Bidder and the bid reflected in the Stalking Horse Bid (including as may be increased at the Auction (if any)) is a Qualified Bid, as set forth in the Bidding Procedures.  Subject to the terms of the Bidding Procedures, in the event of a competing Qualified Bid, the Stalking Horse Bidder will be entitled, but not obligated, to submit overbids and will be entitled in any such overbids (a) to credit bid all or a portion of the value of the secured portion of its claims (if any) pursuant to section 363(k) of the Bankruptcy Code; and (b) receive dollar-for-dollar credit for the amount of the Termination Payment.

10.     All Potential Bidders submitting bids determined by the Debtors to be "**Qualified Bids**" in accordance with the Bidding Procedures are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the sale or transfer of the Acquired Assets.

11.     To qualify as a Qualified Bid, each such bid must be accompanied by information supporting the Potential Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code (the "**Adequate Assurance Information**"), including the bidder's financial wherewithal and willingness to perform under any contracts that will be assumed and assigned to such bidder.  In addition to the other requirements of a Qualified Bid as set forth in the Bidding Procedures, each such bid must be accompanied by a written statement confirming that (a) the bidder has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction and (b) its Qualified Bid is a good faith bona fide offer that it intends to consummate if selected as the Successful Bidder.

12.     Subject to the rights of the Stalking Horse Bidder under the Stalking Horse Agreement, the Bidding Procedures, and this Order, the Debtors shall have the right as they may reasonably determine to be in the best interests of their estates to carry out the Bidding Procedures,

including, without limitation, to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best purchase price and/or terms received prior to the Auction; (d) determine which Qualified Bid(s) is the Successful Bid; (e) designate the second and third highest or otherwise best bids as Back-Up Bids, each as it relates to the Auction; (f) reject any bid (other than the Stalking Horse Bid) that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of this Order, the Bidding Procedures, or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (g) adjourn and/or cancel the Auction and/or the Sale Hearing in open court without further notice or as provided in the Bidding Procedures; (h) modify the Bidding Procedures consistent with their fiduciary duties and the Bankruptcy Code, and as set forth in the Bidding Procedures; and (i) withdraw the Motion at any time with or without prejudice.

13.     The Debtors shall have the right, in their reasonable business judgment, in a manner consistent with their fiduciary duties, and applicable law, to modify the Bidding Procedures, including (a) waive terms and conditions with respect to any Potential Bidder or Qualified Bid; (b) extend the deadlines set forth in the Bidding Procedures; and (c) announce at the Auction modified or additional procedures for conducting the Auction, in each case, to the extent not materially inconsistent with the Bidding Procedures and this Order; provided, that any such modification or other adjustment to the Bidding Procedures shall not disproportionately affect the Stalking Horse Bidder in any material and adverse way. Except as provided in the Stalking Horse Agreement, nothing in this Order or the Bidding Procedures shall obligate the Debtors to consummate or pursue any transaction with respect to any Asset with a Qualified Bidder.

14.     The Debtors shall identify those bids that qualify as Qualified Bids (each bidder that submits such a Qualified Bid being a "**Qualified Bidder**") by **August 6, 2020 at 4:00 p.m. (prevailing Eastern Time)**. If more than one Qualified Bid is timely received (in addition

to the Stalking Horse Bid), the Auction shall be conducted either (i) at the offices of Weil, Gotshal & Manges LLP; 767 Fifth Avenue, New York, New York 10153, or (ii) virtually pursuant to procedures to be timely filed on the Bankruptcy Court's docket, on **August 7, 2020 at 10:00 a.m. (prevailing Eastern Time)** or at such other time and location as the Debtors, after consultation with the Stalking Horse Bidder and counsel to the Committee and the Prepetition ABL Agent, after providing notice to the Qualified Bidders and Sale Notice Parties, may determine in their reasonable business judgment.

15.      Only Qualified Bidders will be eligible to participate in the Auction, subject to such limitations as the Debtors may impose in good faith; provided, however, that all creditors may attend (but not participate in) the Auction if such creditor provides the Debtors with written notice of its intent to attend the Auction one (1) business day prior to the Auction, which written notice shall be sent to proposed counsel for the Debtors via electronic mail, to Garrett Fail, Esq. (garrett.fail@weil.com) and David J. Cohen, Esq. (davidj.cohen@weil.com).  The Debtors may, in their sole discretion, also establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany Qualified Bidders or other creditors at the Auction.  The proceedings of the Auction shall be transcribed or videotaped, at the Debtors' option.

16.      Absent further order of the Court, no Qualified Bidder (other than the Stalking Horse Bidder solely as provided herein) shall be entitled to any expense reimbursement, break-up fee, termination fee, or other similar fee or payment in connection with any Sale Transaction, and by submitting a bid, such Qualified Bidder is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

17.     If the Stalking Horse Bid, as reflected in the Stalking Horse Agreement is the only Qualified Bid in respect of the Acquired Assets that is received by the Debtors by the Bid Deadline, the Debtors' shall not conduct an Auction for the Acquired Assets, and the Stalking Horse Bidder shall be deemed the Successful Bidder and the Stalking Horse Bid shall be deemed the Successful Bid.  In such circumstances, the Debtors shall notify the Court and publish such notice on the Claims Agent Website prior to the date on which the Auction was scheduled to occur.

18.     The Debtors may, in the exercise of their business judgment, identify the highest or otherwise best Qualified Bid(s) as the successful bid(s) (a "**Successful Bid**" and, the bidder submitting such bid, a "**Successful Bidder**").  Subject to the Bidding Procedures, the Debtors may also identify which Qualified Bid(s) constitute the second highest or otherwise best bid(s) and, if applicable, the third highest or otherwise best bid(s) and deem such second and third highest or otherwise best bid(s) each a back-up bid (such bid(s) shall each be a "**Back-Up Bid**" and, the bidder submitting such bid, a "**Back-Up Bidder**").

19.     By **August 9, 2020 at 4:00 p.m. (prevailing Eastern Time)**, or as soon as reasonably practicable after the conclusion of the Auction, if one is held, the Debtors shall (i) file with the Court and post on the Claims Agent Website a notice of the Successful Bid(s), Successful Bidder(s), Back-Up Bid(s), and Back-Up Bidder(s), and (ii) provide or cause to be provided to affected Counterparties information supporting the Successful Bidder's ability to comply with the requirements to provide adequate assurance of future performance under Bankruptcy Code section 365(f)(2) and, if applicable, Bankruptcy Code section 365(b)(3), including, to the extent reasonably available and applicable, the Successful Bidder's financial wherewithal and willingness to perform under applicable Proposed Assigned Contracts, as provided in such Successful Bidder's bid.  For the avoidance of doubt, nothing in this paragraph shall alter the requirement that, if the Debtors receive no Qualified Bids other than the Stalking Horse Bid, the

Stalking Horse Bidder shall be deemed the Successful Bidder and the Stalking Horse Bid shall be deemed a Successful Bid.

<u>**Sale Hearing and Sale Objection Deadline**</u>

20.     If the Debtors elect to proceed with a Sale Transaction pursuant to a sale under § 363 of the Bankruptcy Code, the Debtors will seek the entry of an order authorizing and approving, among other things, the Sale Transaction in which all or some of the assets of the Debtors or the Debtors' business will be sold to the applicable Successful Bidder at a hearing before the Court to be held on **August 11, 2020 at 2:00 p.m. (prevailing Eastern Time)** (the "**Sale Hearing**").  The Sale Hearing may be adjourned by this Court or the Debtors from time to time without further notice other than by announcement in open court or through the filing of a notice or other document on this Court's docket.

21.     The Successful Bidder (which may be the Stalking Horse Bidder) shall appear at the Sale Hearing and be prepared, if necessary, to have a representative(s) testify in support of the Successful Bid and the Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all executory contracts and unexpired leases to be assumed and assigned as part of the proposed Sale Transaction.

22.     Objections to the Sale Transaction with the Stalking Horse Bidder (each, a "**Sale Objection**") must:  (i) be in writing; (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; (iv) conform to the Bankruptcy Code, Bankruptcy Rules, and Local Rules; and (v) be filed with the Bankruptcy Court and be served on the Objection Notice Parties (as defined in the Sale Notice) by the deadline provided in the applicable Sale Notice.  All Sale Objections will be heard by this Court at the Sale Hearing.

23.     Objections to (i) the conduct of the Auction (if held), (ii) the Successful

Bidder (other than the Stalking Horse Bidder), (iii) the Sale to the Successful Bidder (other than

the Stalking Horse Bidder), (iv) the adequate assurance of future performance of any Assigned

Contract, or (v) the Debtors' proposed Cure Costs of any Assigned Contract (collectively,

"**Supplemental Objections**") must be (i) filed in accordance with the Bidding Procedures, (ii)

filed with the Bankruptcy Court, and (iii) served on the Objection Notice Parties (as defined herein)

on or before **August 10, 2020 at 11:59 p.m. (prevailing Eastern Time)** (the "**Supplemental**

**Objection Deadline**").

24.     The failure of any objecting person or entity to timely file and serve a Sale

Objection on the Objection Notice Parties shall be a bar to the assertion, at the Sale Hearing or

thereafter, of any objection to the Motion, or to the consummation and performance of the Sale

Transaction contemplated by the Stalking Horse Bid or, if the Auction is held, any purchase

agreement with the Successful Bidder, including the transfer of the Acquired Assets to the Stalking

Horse Bidder or the Successful Bidder, free and clear of all liens, claims, encumbrances, and

interests pursuant to section 363(f) of the Bankruptcy Code; provided, however, that any such

liens, claims, encumbrances, or interests shall attach to the proceeds of the sale of the applicable

Acquired Assets.  Failure to object shall constitute consent for the purposes of sections 363(f),

1123 and 1141(c), as applicable, of the Bankruptcy Code.

### Notice of Sale Transaction

25.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is

approved, and no other or further notice of the Assumption and Assignment Procedures, the

Auction, the Sale Hearing, the Sale Objection Deadline, the Supplemental Objection Deadline,

and the Sale Transaction shall be required if the Debtors serve and publish such notice, in the

manner provided in the Bidding Procedures and this Order.  The Sale Notice contains the type of

information required under Bankruptcy Rule 2002 and Local Rule 6004-1, and complies in all

respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

26.     All parties in interest shall receive or be deemed to have received good and

sufficient notice of (a) the Motion; (b) the Assumption and Assignment Procedures, including the

proposed assumption and assignment of the Assigned Contracts to the Successful Bidder; (c) the

Auction; (d) the Sale Objection Deadline and Supplemental Objection Deadline, (e) the Sale

Transaction, including the sale of the Acquired Assets (as set forth under the Stalking Horse Bid);

and (f) the Sale Hearing, and no further notice of the foregoing shall be required, if:

(a)     As soon as practicable, but no later than one (1) calendar day after entry of this Order, the Debtors cause the Sale Notice to be filed with this Court and served by email, mail, facsimile, or overnight delivery on: (1) counsel for the Stalking Horse Bidder; (2) counsel to the Committee; (3) all Persons known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to the Acquired Assets in whole or in part during the past twelve (12) months; (4) all entities known by the Debtors to have asserted any lien, claim, encumbrance, or other interest in the Acquired Assets (for whom identifying information and addresses are available to the Debtors); (5) all non-Debtor parties to the Assigned Contracts (for whom identifying information and addresses are available to the Debtors); (6) any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) known to have a claim in these chapter 11 cases; (7) the United States Attorney for the District of Delaware; (8) the Office of the Attorney General in each state in which the Debtors operate; (9) the Office of the Secretary of State in each state in which the Debtors operate or are organized; (10) the Debtors' known creditors (for whom identifying information and addresses are available to the Debtors); and (11) all other Persons requesting notice under Bankruptcy Rule 2002 or as directed by this Court (for whom identifying information and addresses are available to the Debtors); and

(b)     As soon as practicable, but no later than three (3) business days after entry of this Order, the Debtors shall cause the Sale Notice to be published on the Claims Agent Website and once in the national edition of *The New York Times* and *USA Today*.

**Assumption and Assignment Procedures**

27.    The Assumption and Assignment Procedures are reasonable and appropriate under the circumstances, fair to all non-Debtor parties, comply in all respects with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and are approved.

28.    The Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is reasonable, fair, and appropriate, contains the type of information required under Bankruptcy Rule 2002 and 6006, and complies in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and is hereby approved.  It is reasonably calculated to provide sufficient notice to the Contract Counterparties of the Debtors' intent to assume and assign the Assigned Contracts to the Stalking Horse Bidder (or as otherwise contemplated by the Stalking Horse Bid) or to a Successful Bidder other than the Stalking Horse Bidder, in connection with the Sale Transaction and constitutes adequate notice thereof.

29.    The Debtors shall file the Cure Notice with this Court and serve the Cure Notice on the Contract Counterparties no later than seven (7) calendar days before the Supplemental Objection Deadline.  Service of the Cure Notice in accordance with this Order on all Contract Counterparties is hereby deemed to be good and sufficient notice of the Cure Costs for, and the proposed assumption and assignment of, the Assigned Contracts to the Successful Bidder (or as otherwise contemplated by the Successful Bid).  As soon as reasonably practicable after serving the Cure Notice, the Debtors shall post a copy of the Cure Notice on the Claims Agent Website.

30.    Upon service of the Cure Notice, all Contract Counterparties shall receive or be deemed to have received good and sufficient notice of the Cure Costs for, and the proposed

assumption and assignment of, the Assigned Contracts to the Successful Bidder or as otherwise contemplated by the Successful Bid.

31.     All objections to any proposed Cure Costs (each, a "**Cure Objection**") and to the provision of adequate assurance of future performance (each, an "**Adequate Assurance Objection**") must:  (a) be in writing; (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules; (c) state, with specificity, the legal and factual basis thereof, including, with respect to a Cure Objection, what Cure Costs the objecting party believes are required; (d) include any appropriate documentation in support thereof; and (e) be filed with this Court and served on the Objection Notice Parties (as defined in the Cure Notice) by the deadline set forth in the applicable Cure Notice.

32.     Any Cure Objection or Adequate Assurance Objection must be filed and served by the Sale Objection Deadline.  If a timely Cure Objection or Adequate Assurance Objection is received and such objection cannot otherwise be resolved by the parties, such objection shall be heard at the Sale Hearing or such later date as the Debtors determine prior to or after the scheduled closing of the Sale Transaction.

33.     To the extent the Debtors identify at any time after the Cure Notice is served, additional Assigned Contracts to be assumed and assigned to the Successful Bidder (or as otherwise contemplated by the Successful Bid), the Debtors shall file with this Court and serve by first class mail on the relevant Contract Counterparty to such Assigned Contract a supplemental Cure Notice (each, a "**Supplemental Cure Notice**," the form of which shall be substantially similar to the form of Cure Notice attached hereto as **Exhibit 3**).  Any (x) Cure Objection with respect to Cure Costs set forth in a Supplemental Cure Notice and (y) Adequate Assurance Objection with respect to the assumption and assignment of the Assigned Contract(s) set forth in

such Supplemental Cure Notice must be filed within ten (10) calendar days of service of that Supplemental Cure Notice.

34.     If no timely Cure Objection is filed and served in respect of an Assigned Contract, the Cure Cost identified on the Cure Notice or a Supplemental Cure Notice, as applicable, will be the only amount necessary under section 365(b) of the Bankruptcy Code to cure all defaults under such Assigned Contract.  Any party failing to timely file a Cure Objection shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtors, their estates, or the Successful Bidder(s).

35.     If no timely Adequate Assurance Objection is filed and served with respect to an Assigned Contract, the Successful Bidder (or any other entity contemplated by the Successful Bid) will be deemed to have provided adequate assurance of future performance for such Assigned Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code.

36.     If no timely Cure Objection or Adequate Assurance Objection is filed and served with respect to an Assigned Contract, the relevant Contract Counterparty shall be deemed to have consented to the assumption and assignment of the Assigned Contract to the Successful Bidder (or as otherwise contemplated by the Successful Bid).

37.     The Debtors' assumption and assignment of the Assigned Contracts to the Successful Bidder (or as otherwise contemplated by the Successful Bid) is subject to approval of this Court at the Sale Hearing and the consummation of the Sale Transaction.  Accordingly, absent the closing of such sale, the Assigned Contracts shall not be deemed assumed or assigned, and shall in all respects be subject to further administration under the Bankruptcy Code.

38.     The inclusion of a contract, lease, or other agreement on the Cure Notice or any Supplemental Cure Notice shall not constitute or be deemed a determination or admission by the Debtors or any other party in interest that such contract or other document is an executory

contract or unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Cost is due (all rights with respect thereto being expressly reserved). The Debtors reserve all of their rights, claims, defenses, and causes of action with respect to each contract, lease, or other document listed on the Cure Notice or any Supplemental Cure Notice. The Debtors' inclusion of an executory contract or unexpired lease on the Cure Notice or any Supplemental Cure Notice shall not be a guarantee that such executory contract or unexpired lease ultimately will be assumed or assumed and assigned.

### **General Provisions**

39.     All persons or entities (whether or not Qualified Bidders) that participate in the bidding process, including submitting a bid for any of the Assets during the sale process and/or Auction, shall be deemed to have knowingly and voluntarily (a) submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of Assets, the Auction, and any Sale Transaction, (b) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes related to the bidding process, the Auction, and/or any Sale Transaction) to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution, and (c) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

40.     Notwithstanding the applicability of any of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or any other provisions of the Bankruptcy Rules or the Local Rules stating the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

41.     The Debtors are authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

42.     The Debtors are authorized to take all steps necessary or appropriate to carry out this Order.

43.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

## **Exhibit 1**

**Bidding Procedures**

[See attached.]

**<u>Exhibit 2</u>**

**Sale Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------- x
                                              :
In re                                         :        Chapter 11
                                              :
BROOKS BROTHERS GROUP, INC., et al.,          :        Case No. 20–11785 (CSS)
                                              :
                        Debtors.1             :        (Jointly Administered)
                                              :
------------------------------------------------------------- x
```

## <u>NOTICE OF SALE, BIDDING, PROCEDURES, AUCTION AND SALE HEARING</u>

On [●], 2020 Brooks Brothers Group, Inc. and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") a motion (D.I. No. [●]) (the "**Motion**")2 for the entry of an order (the "**Bidding Procedures Order**"):  (i) approving the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order as **<u>Exhibit 1</u>**; (ii) authorizing the Debtors to designate a stalking horse bidder; (iii) approving certain protections for the stalking horse bidder; (iv) setting the deadline for potential bidders to submit a proposal to purchase the Debtors' business (the "**Bid Deadline**"), scheduling an auction (the "**Auction**"), and scheduling the hearing with respect to the approval of the sale (the "**Sale Hearing**"); (iv) authorizing and approving the form and manner of the Sale Notice; (v) authorizing and approving the Cure Notice to the Contract Counterparties regarding the Debtors' potential assumption and assignment of the Assigned Contracts and of the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "**Cure Costs**"); (vi) authorizing and approving procedures for the assumption and assignment of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "**Assumption and Assignment Procedures**"); and (vii) granting related relief.

On [●], 2020, the Bankruptcy Court entered the Bidding Procedures Order (D.I. No. [●]) approving, among other things, the Bidding Procedures, which establishes the key dates and times

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Brooks Brothers Group, Inc. (8883); Brooks Brothers Far East Limited (N/A); BBD Holding 1, LLC (N/A); BBD Holding 2, LLC (N/A); BBDI, LLC (N/A); Brooks Brothers International, LLC (N/A); Brooks Brothers Restaurant, LLC (3846); Deconic Group LLC (0969); Golden Fleece Manufacturing Group, LLC (5649); RBA Wholesale, LLC (0986); Retail Brand Alliance Gift Card Services, LLC (1916); Retail Brand Alliance of Puerto Rico, Inc. (2147); and 696 White Plains Road, LLC (7265).  The Debtors' corporate headquarters and service address is 346 Madison Avenue, New York, New York 10017.

[2]  Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion or Bidding Procedures, as applicable.

related the Auction and Sale Hearing.  All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

## Stalking Horse Bid

A binding stalking horse bid (the "**Stalking Horse Bid**") has been submitted by SPARC Group LLC (the "**Stalking Horse Bidder**").  The Stalking Horse Bidder has executed an asset purchase agreement (the "**Stalking Horse Agreement**")[4] for the purchase of substantially all of the Debtors' assets (the "**Stalking Horse Bid**").  The Stalking Horse Bid is subject to higher or otherwise better offers submitted in accordance with the terms and provisions of the Bidding Procedures.

## Important Dates and Deadlines

- **Bid Deadline**. Any person or entity interested in participating in the Auction for the sale of the Debtors' business must submit a Qualified Bid on or before **August 5, 2020 at 10:00 a.m. (prevailing Eastern Time)** (the "**Bid Deadline**").

- **Auction**. If the Debtors receive more than one Qualified Bid (in addition to the Stalking Horse Bid), the Debtors will conduct the Auction, which has been scheduled for **August 7, 2020 at 10:00 a.m. (prevailing Eastern Time)** either (i) at the offices of Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 or (ii) virtually pursuant to procedures to be timely filed on the Bankruptcy Court's docket, or such other, date, time, and location as shall be timely communicated to all entities entitled to attend the Auction.

- **Auction Objection and Sale Objection Deadlines**. Objections to the sale (a "**Sale Objection**"), including any objection to the sale of the Debtors' business free and clear of all claims and interests pursuant to section 363(f) of the Bankruptcy Code, must be (i) filed in accordance with the Bidding Procedures, (ii) filed with the Bankruptcy Court, and (iii) served on the Objection Notice Parties (as defined herein) on or before **August 7, 2020 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**").  Objections to (i) the conduct of the Auction (if held), (ii) the Successful Bidder, (iii) the Sale with the Successful Bidder (other than the Stalking Horse Bidder), (iv) the adequate assurance of future performance of any Assigned Contract, or (v) the Debtors' proposed Cure Costs of any Assigned Contract (collectively, "**Supplemental Objections**") must be (i) filed in accordance with the Bidding Procedures, (ii) filed with the Bankruptcy Court, and (iii) served on the Objection Notice Parties (as defined herein) on or before **August 10, 2020 at 11:59 p.m. (prevailing Eastern Time)** (the "**Supplemental Objection Deadline**").

- **Sale Hearing**. A hearing to approve and authorize the sale of the Debtors' business to the Successful Bidder (which may be the Stalking Horse Bidder) will be held before the Court

---

[3]    To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms in the Bidding Procedures shall control in all respects.

[4]    The Stalking Horse Agreement is attached as **Exhibit B** to the Bidding Procedures Order.

on or before **August 11, 2020 at 2:00 p.m. (prevailing Eastern Time)** or such other date as determined by the Court.

## Filing Objections

Sale Objections and Supplemental Objections, if any, must (i) be in writing, (ii) state, with specificity, the legal and factual bases thereof, (iii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (iv) be filed with the Court by no later than the Sale Objection Deadline, and (v) be served on (a) Brooks Brothers Group, Inc., 346 Madison Avenue, New York, New York 10017 (Attn: Rachel Barnett, Esq.); (b) proposed counsel for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10053 (Attn: Garrett Fail, Esq., and David J. Cohen, Esq.) and Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Zachary I. Shapiro, Esq.); (c) counsel for the Stalking Horse Bidder, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Kelley A. Cornish (KCornish@paulweiss.com), Edward T. Ackerman (EAckerman@paulweiss.com), Brian Bolin (BBolin@paulweiss.com), and Jeffrey L. Stricker (JStricker@paulweiss.com)); (d) counsel to the Prepetition ABL Agent, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: Kevin Simard, Esq. and Jonathan Marshall, Esq.); and (e) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Richard Schepacarter, Esq.) (collectively, the "**Objection Notice Parties**").

## Additional Information

The Bidding Procedures set forth the requirements for becoming a Qualified Bidder and submitting a Qualified Bid, and any party interested in making an offer to purchase the Debtors' business must comply with the Bidding Procedures. Only Qualified Bids will be considered by the Debtors, in accordance with the Bidding Procedures.

Any party interested in submitting a bid should contact the Debtors' investment banker, PJ Solomon (Attn: projectblazer@pjsolomon.com), as soon as possible.

Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures, as well as all related exhibits, including the Stalking Horse Bid and all other agreements filed with the Court, may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent, Prime Clerk, located at One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, or can be requested by e-mail at brooksbrothersinfo@primeclerk.com.

## Reservation of Rights

Except as otherwise set forth herein and in the Bidding Procedures, the Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, to modify the Bidding Procedures; waive terms and conditions set forth therein with respect to all Potential Bidders; extend the deadlines set forth therein; announce at the Auction modified or additional procedures for conducting the Auction; alter the assumptions set forth therein; provided that the Debtors shall not be authorized to make material modifications to the Bidding Procedures without further order of the Court. The Debtors may provide reasonable

WEIL:\97562307\7\30950.0070

accommodations to any Potential Bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids on the Debtors' business, in each case, to the extent not materially inconsistent with the Bidding Procedures and the Bidding Procedures Order. All parties reserve their rights to seek Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER, OR ANY OTHER ORDER OF THE BANKRUPTCY COURT IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER BY THE SALE OBJECTION DEADLINE SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING ANY OBJECTION TO THE MOTION, THE ORDER APPROVING THE SALE TRANSACTION, THE PROPOSED SALE TRANSACTION, OR THE DEBTORS' CONSUMMATION OF THE STALKING HORSE BID OR ANY OTHER AGREEMENT EXECUTED BY THE DEBTORS AND A SUCCESSFUL BIDDER AT THE AUCTION.**

[*Remainder of page intentionally left blank*]

Dated:  [●], 2020
     Wilmington, Delaware

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:     collins@rlf.com
          shapiro@rlf.com
-and-

WEIL, GOTSHAL & MANGES LLP
Garrett A. Fail (admitted *pro hac vice*)
David J. Cohen (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
E-mail:     garrett.fail@weil.com
          davidj.cohen@weil.com

*Proposed Attorneys for Debtors
and Debtors in Possession*

WEIL:\97562307\7\30950.0070

**<u>Exhibit 3</u>**

**Cure Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
                                                           :
In re                                                      :          **Chapter 11**
                                                           :
**BROOKS BROTHERS GROUP, INC.,** *et al.*,                 :          **Case No. 20–11785 (CSS)**
                                                           :
                                    Debtors.[1]            :          **(Jointly Adminisered)**
                                                           :
---------------------------------------------------------- x

### NOTICE OF CURE COSTS AND POTENTIAL
### ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
### AND UNEXPIRED LEASES IN CONNECTION WITH SALE TRANSACTION

On [●], 2020 Brooks Brothers Group, Inc. and its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") filed with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") a motion [D.I. No. [●]] (the "**Motion**")[2] for the entry of an order (the "**Bidding Procedures Order**"): (i) approving the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order as **Exhibit 1**; (ii) authorizing the Debtors to designate a stalking horse bidder; (iii) approving certain protections for the stalking horse bidder; (iv) setting the deadline for potential bidders to submit a proposal to purchase the Debtors' business (the "**Bid Deadline**"), scheduling an auction (the "**Auction**"), and scheduling the hearing with respect to the approval of the sale (the "**Sale Hearing**"); (iv) authorizing and approving the form and manner of the Sale Notice; (v) authorizing and approving the Cure Notice to the Contract Counterparties regarding the Debtors' potential assumption and assignment of the Assigned Contracts and of the Debtors' calculation of the amount necessary to cure any defaults thereunder (the "**Cure Costs**"); (vi) authorizing and approving procedures for the assumption and assignment of the Assigned Contracts and the determination of Cure Costs with respect thereto (collectively, the "**Assumption and Assignment Procedures**"); and (vii) granting related relief.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Brooks Brothers Group, Inc. (8883); Brooks Brothers Far East Limited (N/A); BBD Holding 1, LLC (N/A); BBD Holding 2, LLC (N/A); BBDI, LLC (N/A); Brooks Brothers International, LLC (N/A); Brooks Brothers Restaurant, LLC (3846); Deconic Group LLC (0969); Golden Fleece Manufacturing Group, LLC (5649); RBA Wholesale, LLC (0986); Retail Brand Alliance Gift Card Services, LLC (1916); Retail Brand Alliance of Puerto Rico, Inc. (2147); and 696 White Plains Road, LLC (7265).  The Debtors' corporate headquarters and service address is 346 Madison Avenue, New York, New York 10017.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion or Bidding Procedures, as applicable.

On [●], 2020, the Bankruptcy Court entered the Bidding Procedures Order [D.I. No. [●]] approving, among other things, the Bidding Procedures, which establishes the key dates and times related the Auction and Sale Hearing.[3]

**You are receiving this Notice because you may be a counterparty to an executory contract or unexpired lease of the Debtors that may be assumed and assigned to the Successful Bidder, or as otherwise contemplated in the Successful Bid (collectively, the "Assigned Contracts").**  Each of the Assigned Contracts that may be assumed and assigned in connection with a Sale Transaction with a Successful Bidder and the Debtors' calculation of the Cure Costs with respect thereto are set forth on **Exhibit A** hereto.  The Cure Costs are the only amounts proposed to be paid upon the assumption and assignment of the Assigned Contracts.

## Stalking Horse Bid

A binding stalking horse bid (the "**Stalking Horse Bid**") has been submitted by SPARC Group LLC (the "**Stalking Horse Bidder**").  The Stalking Horse Bidder has executed an asset purchase agreement (the "**Stalking Horse Agreement**")[4] for the purchase of substantially all of the Debtors' assets (the "**Stalking Horse Bid**").  The Stalking Horse Bid is subject to higher or otherwise better offers submitted in accordance with the terms and provisions of the Bidding Procedures.

## Key Dates

The key dates for the sale process are as follows.  Such dates may be extended or otherwise modified by the Debtors, after consultation with the professionals to the Committee and the Prepetition ABL Agent, by filing a notice of such extension or modification on the Court's docket:

- **Cure Objection Deadline**. Objections to the Debtors' proposed Cure Costs of any Assigned Contract listed on **Exhibit A** must be (i) filed in accordance with the Bidding Procedures, (ii) filed with the Bankruptcy Court, and (iii) served on the Objection Notice Parties (as defined herein) on or before **August 10, 2020 at 11:59 p.m. (prevailing Eastern Time)**.

- **Adequate Assurance Objection Deadline**. Objections to the adequate assurance of future performance of any Assigned Contract listed on **Exhibit A** must be (i) filed in accordance with the Bidding Procedures, (ii) filed with the Bankruptcy Court, and (iii) served on the Objection Notice Parties on or before **August 10, 2020 at 11:59 p.m. (prevailing Eastern Time)**.

- **Sale Hearing**. A hearing to approve and authorize the sale of the Debtors' business to the Successful Bidder (which may be the Stalking Horse Bidder) will be held before the Court

---

[3]     To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms in the Bidding Procedures shall control in all respects.

[4]     The Stalking Horse Agreement is attached as **Exhibit B** to the Bidding Procedures Order.

on or before **August 11, 2020 at 2:00 p.m. (prevailing Eastern Time)** or such other date as determined by the Court.

<u>**Filing Objections**</u>

### A.    Cure Objections

Any objection to the potential assumption, assignment, or designation of an Assigned Contract identified on <u>**Exhibit A**</u>, the subject of which objection is the Debtors' proposed Cure Costs, if any, must (i) be in writing, (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (iii) state, with specificity, the legal and factual basis thereof, including, what Cure Costs the objecting party believes are required, (iv) include any appropriate documentation in support thereof, (v) be filed with the Court by no later than **August 10, 2020 at 11:59 p.m. (prevailing Eastern Time)**, and (vi) served on (a) Brooks Brothers Group, Inc., 346 Madison Avenue, New York, New York 10017 (Attn: Rachel Barnett, Esq.); (b) proposed counsel for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10053 (Attn: Garrett Fail, Esq. and David J. Cohen, Esq.) and Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark. D. Collins, Esq. and Zachary I. Shapiro, Esq.); (c) counsel for the Stalking Horse Bidder, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Kelley A. Cornish (KCornish@paulweiss.com), Edward T. Ackerman (EAckerman@paulweiss.com), Brian Bolin (BBolin@paulweiss.com), and Jeffrey L. Stricker (JStricker@paulweiss.com)); (d) counsel to the Prepetition ABL Agent, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: Kevin Simard, Esq. and Jonathan Marshall, Esq.); and (e) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Richard Schepacarter, Esq.) (collectively, the "**Objection Notice Parties**").

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY CURE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE AMOUNT TO CURE ANY DEFAULT UNDER THE APPLICABLE ASSIGNED CONTRACT. THE CURE COSTS SET FORTH ON <u>EXHIBIT A</u> HERETO SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE APPLICABLE ASSIGNED CONTRACT UNDER BANKRUPTCY CODE SECTION 365(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE ASSIGNED CONTRACT, OR ANY OTHER DOCUMENT, AND THE APPLICABLE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO SUCH ASSIGNED CONTRACT AGAINST THE DEBTORS, ANY SUCCESSFUL BIDDER, OR THE PROPERTY OF ANY OF THEM.**

### B.    Adequate Assurance Objections

Adequate Assurance Objections with respect to the assumption and assignment of any Assigned Contracts identified on <u>**Exhibit A**</u> to a Successful Bidder or as otherwise contemplated by a Successful Bid must (i) be in writing, (ii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (iii) state, with specificity, the legal and factual basis thereof, (iv) include

3

any appropriate documentation in support thereof, (v) be filed with the Court by no later than **August 10, 2020 at 11:59 p.m. (prevailing Eastern Time)**, and (vi) served the Objection Notice Parties.

**IF A COUNTERPARTY FAILS TO FILE WITH THE BANKRUPTCY COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF THE APPLICABLE ASSIGNED CONTRACT. THE SUCCESSFUL BIDDER (OR ANY OTHER ENTITY CONTEMPLATED BY THE SUCCESSFUL BID) SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE APPLICABLE ASSIGNED CONTRACT IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 365(F)(2)(B), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE ASSIGNED CONTRACT OR ANY OTHER DOCUMENT.**

### Sale Hearing

The Debtors will seek to assume and assign certain of the Assigned Contracts at a hearing to approve the Sale Transaction (the "**Sale Hearing**") that is scheduled to commence on **August 11, 2020 at 2:00 p.m. (prevailing Eastern Time)** before the Honorable Christopher S. Sontchi, in the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 6th Floor, Wilmington, DE 19801.  If a timely Cure Objection or Adequate Assurance Objection is received and such objection cannot otherwise be resolved by the parties, such objection shall be heard at the Sale Hearing or such later date as the Debtors determine.

### Additional Information

Copies of the Motion, the Bidding Procedures Order, and the Bidding Procedures, as well as all related exhibits, including the Stalking Horse Bid and all other agreements filed with the Court, may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent, Prime Clerk, located at One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, or can be requested by e-mail at brooksbrothersinfo@primeclerk.com.

### Other

The inclusion of any contract or lease on **Exhibit A** shall not constitute or be deemed a determination or admission by the Debtors that such contract or other document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Notwithstanding the inclusion of any lease or contract on **Exhibit A**, a Successful Bidder is not bound to accept assignment of any Assigned Contract.

*[Remainder of page intentionally left blank]*

Dated:  [●], 2020
      Wilmington, Delaware

                              RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:        collins@rlf.com
                 shapiro@rlf.com
-and-

WEIL, GOTSHAL & MANGES LLP
Garrett A. Fail (admitted *pro hac vice*)
David J. Cohen (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
E-mail:        garrett.fail@weil.com
                 davidj.cohen@weil.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

5

**Exhibit 4**

**Stalking Horse Agreement**

[See attached.]

WEIL:\97562307\7\30950.0070