## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------- x

In re

BROOKS BROTHERS GROUP, INC., *et al.*,

Debtors.[1]

:
:
:
:
:
:
:
:

Chapter 11

Case No. 20-11785 (CSS)

(Jointly Administered)

---------------------------------------------------------- x   Re: D.I. 25

FINAL ORDER (I) AUTHORIZING THE DEBTORS TO
OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS
TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING
ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES,
(V) MODIFYING AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF

Upon the motion [D.I. 25] (the "DIP Motion") of Brooks Brothers Group, Inc. and

Golden Fleece Manufacturing Group, LLC (the "Borrowers"), and their chapter 11 affiliates

(collectively, the "Guarantors," and together with the Borrowers, the "DIP Loan Parties"), each

as a debtor and debtor in possession (collectively, the "Debtors") in the above-captioned Chapter

11 cases (collectively, the "Cases"), seeking entry of an order (this "Final Order") pursuant to

sections 105, 361, 362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of chapter

11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004,

and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule

4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware

(the "Local Rules"), *inter alia*:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Brooks Brothers Group, Inc. (8883); Brooks Brothers Far East Limited (N/A); BBD Holding 1, LLC (N/A), BBD Holding 2, LLC (N/A), BBDI, LLC (N/A), Brooks Brothers International, LLC (N/A); Brooks Brothers Restaurant, LLC (3846); Deconic Group LLC (0969); Golden Fleece Manufacturing Group, LLC (5649); RBA Wholesale, LLC (0986); Retail Brand Alliance Gift Card Services, LLC (1916); Retail Brand Alliance of Puerto Rico, Inc. (2147); and 696 White Plains Road, LLC (7265). The Debtors' corporate headquarters and service address is 346 Madison Avenue, New York, New York 10017.

(i)        authorizing the Debtors to obtain senior secured, superpriority postpetition financing on a superpriority basis consisting of a senior secured superpriority term loan facility (the "DIP Facility," and all amounts extended under the DIP Facility, the "DIP Loans") consisting of $80,000,000 in aggregate principal amount of DIP Loans, pursuant to the terms and conditions of that certain *Debtor-In-Possession Term Loan Agreement* (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time, the "DIP Agreement"), by and among the Borrowers, the Guarantors, and ABG-BB, LLC, as administrative agent (in such capacity, the "DIP Agent") for and on behalf of itself and the other lenders party thereto (such lenders, collectively with the DIP Agent, the "DIP Lender"), attached hereto as **Schedule 3**;[2]

(ii)        authorizing the DIP Loan Parties to execute and deliver the DIP Agreement and any other agreements, instruments, pledge agreements, guarantees, control agreements and other Loan Documents (as defined in the DIP Agreement) and documents related thereto (including any security agreements, intellectual property security agreements, control agreements, or notes) (as amended, restated, supplemented, waived, and/or modified from time to time, and collectively, with the DIP Agreement, the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)        granting to the DIP Agent, for the benefit of itself and the DIP Lenders on account of the DIP Facility and all obligations owing thereunder and under, or secured by, the DIP Documents (collectively, and including all "Obligations" as described in the DIP Agreement, the "DIP Obligations") allowed superpriority administrative expense claim status in

---

[2] On July 13, 2020, all Prepetition Term Loan Obligations (as defined herein) and all accrued and unpaid interest thereon and fees, costs, charges, expenses, and other obligations were paid in full in cash from proceeds of the DIP Facility in accordance with the Interim Order, which payment remains subject to paragraph (viii)P.47 of this Final Order.

2

each of the Cases and any Successor Cases (as defined herein), in each case subject to the Carve Out (as defined below) and the terms hereof;

(iv)    granting to the DIP Agent, for the benefit of itself and the DIP Lenders and the other Credit Parties (as defined in the DIP Agreement) under the DIP Documents, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), which liens shall be subject to the priorities set forth herein, including the Carve Out and the terms hereof;

(v)    authorizing and directing the Borrowers to incur, and for the Guarantors to guarantee on an unconditional joint and several basis, obligations to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become due, including, without limitation, closing fees, audit fees, appraisal fees, valuation fees, liquidator fees, structuring fees, arrangement fees, upfront fees, collateral monitoring fees, prepayment premiums, administrative agent's fees, the reasonable fees and disbursements of the DIP Agent's attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(vi)    authorizing the Debtors to use, on the terms described herein, the Prepetition Collateral (as defined herein), including the Cash Collateral (as such term is defined in section 363(a) of the Bankruptcy Code) of the Prepetition ABL Parties under the Prepetition ABL Documents and the Prepetition Term Loan Parties under the Prepetition Term Loan Documents (each as defined herein), and to use the proceeds of the DIP Facility, subject to the terms and conditions set forth in this Final Order and the DIP Documents;

(vii)    providing adequate protection, subject to the Carve Out and as and to the extent set forth herein, to the Prepetition ABL Parties and the Prepetition Term Loan Parties for

WEIL:\97590314\1\30950.0070

any diminution in value of their interests in the Prepetition Collateral, including Cash Collateral, including resulting from (a) the imposition of the automatic stay under section 362(a) of the Bankruptcy Code, (b) the Debtors' use, sale, or lease of the Prepetition Collateral, including Cash Collateral, and (c) to the extent permitted by this Final Order, the priming of their respective interests in the Prepetition Collateral, including Cash Collateral (including by the Carve Out) ("Diminution in Value"); and

(viii)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents, the Interim Order, and this Final Order, and waiving any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Final Order, and providing for the immediate effectiveness of this Final Order.

The Court having considered the DIP Motion, the exhibits attached thereto, the *Declaration of Derek C. Pitts in Support of Debtors' Motion for (I) Authority to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Liens and Provide Superpriority Administrative Expense Status, (D) Grant Adequate Protection, (E) Modify the Automatic Stay, and (F) Schedule a Final Hearing and (II) Related Relief* (the "DIP Declaration") and the *Declaration of Stephen Marotta in Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), the DIP Documents, and the evidence submitted and argument made at the interim hearing held on July 10, 2020 (the "Interim Hearing") and the final hearing held on August [●], 2020 (the "Final Hearing," and together with the Interim Hearing, the "Hearings"); and the Court having entered the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting*

4

*Adequate Protection to the Prepetition Secured Parties, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [D.I. 118] (the "<u>Interim Order</u>"); and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Final Hearing having been held and concluded; and all objections, if any, to the relief requested in the DIP Motion and this Final Order having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the relief requested in the DIP Motion and provided for in this Final Order is fair and reasonable and in the best interests of the Debtors, their estates and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the maximization of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE HEARINGS, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

    A.    **<u>Petition Date</u>**.  On July 8, 2020 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").

    B.    **<u>Debtors in Possession</u>**.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     **Jurisdiction and Venue**.  This Court has jurisdiction over the Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     **Committee Formation**.  On July 21, 2020, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (the "Committee").

E.     **Notice**.  Notice of the DIP Motion and the Final Hearing have been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the DIP Motion with respect to the relief requested at the Final Hearing or the entry of this Final Order shall be required.

F.     **Debtors' Stipulations**.  Without prejudice to the rights of parties-in-interest as set forth in paragraph 47 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(xi) below are referred to herein, collectively, as the "Debtors' Stipulations"):

(i)     *Prepetition ABL Facility*.  Pursuant to that certain Credit Agreement dated as of June 28, 2019 (as amended, restated, supplemented, waived, or otherwise modified from time to time, the "Prepetition ABL Agreement," and collectively with the Loan Documents (as defined in the Prepetition ABL Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition ABL Documents"), among (a) the Borrowers, (b) the Guarantors, (c) Wells Fargo Bank, National Association, as administrative agent, collateral agent, swing line lender, and letter of credit issuer

6

(in such capacity, the "Prepetition ABL Agent"); and (d) the several lenders from time to time party thereto (and including the Prepetition ABL Agent, the "Prepetition ABL Lenders," and collectively with the other Credit Parties (as defined in the Prepetition ABL Agreement), the "Prepetition ABL Parties"), the Prepetition ABL Lenders provided revolving credit and other financial accommodations to, and issued letters of credit for the account of, the Borrowers pursuant to the Prepetition ABL Documents (the "Prepetition ABL Facility").

   (ii) *Prepetition ABL Obligations*. The Prepetition ABL Facility provided the Borrowers with, among other things, up to $300 million aggregate principal amount of Revolving Loans (as defined in the Prepetition ABL Agreement), including letters of credit obligations, and up to $15 million aggregate principal amount of FILO Loans (as defined in the Prepetition ABL Agreement). As of the Petition Date, the aggregate principal amount outstanding under the Prepetition ABL Facility was approximately $182.9 million in outstanding Revolving Loans, approximately $15 million in outstanding FILO Loans, and approximately $7.9 million in issued and outstanding letter of credit obligations (collectively, together with accrued and unpaid interest, any reimbursement obligations (contingent or otherwise) in respect of letters of credit and bankers' acceptances, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), certain treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Borrowers' or the Guarantors' obligations pursuant to, or secured by, the Prepetition ABL Documents, including all "Obligations" as defined in the Prepetition ABL Agreement, and all interest, fees (including

amendment fees), prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition ABL Obligations").

(iii)     *Prepetition ABL Liens and Prepetition ABL Collateral*.  As more fully set forth in the Prepetition ABL Documents and the DIP Motion, prior to the Petition Date, the Borrowers and the Guarantors granted to the Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Parties, a first priority security interest in and continuing lien on (the "Prepetition ABL Liens") the "Collateral" (as defined in the Prepetition ABL Agreement, and as used herein, the "Prepetition ABL Collateral"), subject only to the Prepetition ABL Permitted Prior Liens (as defined herein).

(iv)     *Prepetition Term Loan Facility*.  In the weeks leading up to the commencement of these cases, the Debtors obtained urgently-needed financing pursuant to that certain Term Loan Agreement dated as of May 21, 2020 (as amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Term Loan Agreement," collectively with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Term Loan Documents," and together with the Prepetition ABL Documents, the "Prepetition Documents"), among (a) the Borrowers, (b) Brand Funding, LLC, as administrative and collateral agent (in such capacity, the "Prepetition Term Loan Agent," and together with the Prepetition ABL Agent, the "Prepetition Agents"), (c) the Guarantors, and (d) the lenders party thereto (the "Prepetition Term Loan Lenders," and collectively with the Prepetition Term Loan Agent, the "Prepetition Term Loan Parties," and together with the Prepetition ABL Parties, the "Prepetition Secured Parties").  The Prepetition Term Loan Lenders provided term loans to the Borrowers (the "Prepetition Term Loan Facility," and together with

8

the Prepetition ABL Facility, the "Prepetition Secured Facilities") in an original principal amount of $20,000,000.  On or about June 29, 2020, at the request of the Debtors, the Prepetition Term Loan Lenders provided additional emergency bridge financing in the principal amount of $12,500,000.

   (v) *Prepetition Term Loan Obligations*.  As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Term Loan Facility was $32.5 million (collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Borrowers' and the Guarantors' obligations pursuant to the Prepetition Term Loan Documents, including all "Obligations" as defined in the Prepetition Term Loan Agreement, and all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition Term Loan Obligations," and together with the Prepetition ABL Obligations, the "Prepetition Secured Obligations").

   (vi) *Prepetition Term Loan Liens and Prepetition Term Loan Collateral*.  As more fully set forth in the Prepetition Term Loan Documents and the DIP Motion, prior to the Petition Date, the Borrower and the Guarantors granted to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Lenders, a first priority security interest in and continuing lien on (the "Prepetition Term Loan Liens," and together with the Prepetition ABL Liens, the "Prepetition Liens") the "Term Loan Collateral" (as defined in the Prepetition Term Loan Agreement), including, without limitation, (a) all Intellectual Property

Collateral, (b) all books and records relating to the foregoing (including all books, databases, customer lists, engineer drawings, and records, whether tangible or electronic, which contain any information relating to any of the terms referred to in in the foregoing), and (c) all collateral security and guarantees with respect to, and all Proceeds of, any of the foregoing (collectively, and each as defined in the Prepetition Term Loan Documents, the "<u>Prepetition Term Loan Collateral</u>," and together with the Prepetition ABL Collateral, the "<u>Prepetition Collateral</u>"), subject only to the Prepetition Term Loan Permitted Prior Liens (defined below).

(vii)    *Validity, Perfection, and Priority of Prepetition ABL Liens and Prepetition ABL Obligations.*  The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition ABL Liens on the Prepetition ABL Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition ABL Parties for fair consideration and reasonably equivalent value; (b) the Prepetition ABL Liens were senior in priority over any and all other liens on the Prepetition ABL Collateral, subject only to liens senior by operation of law or permitted by the Prepetition ABL Documents (solely to the extent any such liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date, the "<u>Prepetition ABL Permitted Prior Liens</u>"); (c) the Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition ABL Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL Obligations exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise)

10

pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition ABL Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition ABL Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition ABL Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition ABL Obligations; and (g) the aggregate value of the Prepetition ABL Parties Collateral exceeds the amount of the Prepetition ABL Obligations and the Prepetition ABL Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(viii) *Validity, Perfection, and Priority of Prepetition Term Loan Liens and Prepetition Term Loan Obligations.* The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition Term Loan Liens on the Prepetition Term Loan Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Term Loan Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Term Loan Liens were senior in priority over any and all other liens on the Prepetition Term Loan Collateral, subject only to liens senior by operation of law or permitted by the Prepetition Term Loan Documents (solely to the extent any such liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Term Loan Liens as of the Petition Date, the "<u>Prepetition Term Loan Permitted Prior Liens</u>," and, together with the Prepetition ABL Permitted Prior Liens, the "<u>Permitted Prior Liens</u>"); (c) the Prepetition

Term Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Term Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations exist, and no portion of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Term Loan Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition Term Loan Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Term Loan Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Term Loan Obligations; and (g) the aggregate value of the Prepetition Term Loan Collateral exceeds the amount of the Prepetition Term Loan Obligations and the Prepetition Term Loan Obligations constitute allowed, secured claims within the meaning of section 502 and 506 of the Bankruptcy Code. Upon the occurrence of the Prepetition Term Payoff Date (defined below) following entry of the Interim Order, any and all Prepetition Term Loan Liens held by any person for the benefit of the Prepetition Term Loan Parties (but not, for the avoidance of doubt, the Prepetition Term Loan Adequate Protection Liens, until the Prepetition Term Loan

12

Obligations are Paid in Full) were irrevocably and automatically terminated, released, and discharged in full, subject to paragraph 47 hereof.

(ix)   *No Control.*   None of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties controls the Debtors or their properties or operations, has authority to determine the manner in which any of the Debtors' operations are conducted or is a control person or insider of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from this Final Order, the DIP Facility, the DIP Documents, the Prepetition Secured Facilities, and/or the Prepetition Documents.

(x)   *Cash Collateral.*   All of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties as provided herein.

(xi)   *No Other Liens*.   As of the Petition Date, other than Permitted Prior Liens, the prior mortgages and deeds of trust encumbering Real Estate Rights and Interests (as hereinafter defined) or as permitted by the Prepetition Documents, there was no security interests or liens on the Prepetition Collateral other than the Prepetition Liens.

(xii)   *Release.*   Subject to paragraph 47 hereof, the Debtors hereby forever, unconditionally and irrevocably release, discharge and acquit the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Secured Parties, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys advisors, professional and agents, past, present, and future, and their respective heirs, predecessors, successors and assigns (collectively, the "Releasees") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses, debts, liens, actions and causes of action of any and every nature whatsoever, whether arising in law or

otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the negotiations over and entry into the Prepetition Documents, the Prepetition Liens and/or the transactions contemplated hereunder or thereunder including, without limitation, (A) so-called "lender liability" or equitable subordination claims or defenses, (B) any and all claims and causes of action arising under the Bankruptcy Code, and (C) any and all claims, causes of action, challenges, objections and/or choses in action arising out of, based upon, or related to the validity, priority, perfection or avoidability of the DIP Documents, DIP Liens, DIP Obligations, Prepetition Documents, Prepetition Secured Obligations and the Prepetition Liens.  The Debtors further waive and release any defense, right of counterclaim, right of set-off or deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations that the Debtors now have or may claim to have against the Releasees, arising out of, connected with or relating to any and all acts, omissions or events occurring prior to the Bankruptcy Court entering the Interim Order and this Final Order.

G.      **Permitted Prior Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.   Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP Agent, the Prepetition Secured Parties, or the Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests.   Given the continuing liens of the Prepetition Secured Parties and the integrated nature of the transactions contemplated by this Final Order, the right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien; rather, any such alleged claim arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code

14

or otherwise) shall have the same rights and priority with respect to the DIP Liens as such claims had with respect to the Prepetition Liens.

H.     **Subordination Agreements**.  The Prepetition ABL Agent, Claudio Del Vecchio and The CDV Trust (collectively, "CDV") are party to that certain Subordination Agreement, dated as of June 28, 2019 (the "CDV Subordination Agreement") and the Prepetition ABL Agent and Castle Apparel Limited ("Castle" and, together with CDV, the "Subordinated Creditors") are party to that certain Subordination Agreement, dated as of June 28, 2019 (the "Castle Subordination Agreement" and, together with the CDV Subordination Agreement, the "Subordination Agreements").  Each of the Subordination Agreements is a "subordination agreement" within the meaning of Section 510(a) of the Bankruptcy Code.  The respective rights of the Subordinated Creditors and the Prepetition Secured Parties shall continue to be governed by the Subordination Agreements.

I.     **Default by the Debtors**.  As of the Petition Date, certain events of default have occurred and are continuing under the Prepetition ABL Agreement, including, without limitation, (a) the events of default set forth in that certain letter regarding Notice of Events of Default and Reservation of Rights, dated June 18, 2020, from the Prepetition ABL Agent, on behalf of the Prepetition ABL Lenders, to Brooks Brothers Group, Inc., (b) the event of default pursuant to Section 8.01(i) of the Prepetition ABL Agreement triggered by voluntary commencement of the Cases by the Debtors, and (c) any other events of default that have occurred and are continuing under the Prepetition ABL Agreement as of the Petition Date (such events of default, together with any default or event of default arising solely as a result thereof, collectively, the "Prepetition ABL Events of Default").  Further, additional events of default may occur and be continuing under the Prepetition ABL Agreement during the pendency of the Cases

15

(such events of default, together with any default or event of default arising solely as a result thereof, collectively, the "Postpetition ABL Events of Default"; the Postpetition ABL Events of Default, collectively with the Prepetition ABL Events of Default, the "ABL Events of Default"). The Prepetition ABL Parties have certain rights and remedies with respect to the ABL Events of Default under the Prepetition ABL Agreement and the other Prepetition ABL Documents as well as under applicable law.

J.      **Findings Regarding Corporate Authority.**   Each of the DIP Loan Parties has all requisite corporate power and authority to execute and deliver the DIP Documents to which it is a party and to perform its obligations thereunder.

K.      **Findings Regarding Postpetition Financing and Use of Cash Collateral.**

(i)      *Good Cause*.  Good and sufficient cause has been shown for entry of this Final Order and for authorization of the Debtors to obtain financing pursuant to the DIP Facility and the DIP Documents and to use Cash Collateral as set forth herein and upon the record at the Final Hearing and consistent with the Budget (as defined below) (subject to such variances as permitted by the DIP Agreement and this Final Order).

(ii)      *Request for Postpetition Financing and Use of Cash Collateral*. The Debtors seek authority on a final basis to (a) continue to use Cash Collateral on the terms described herein, and (b) enter into, and borrow under, the DIP Facility on the terms described herein and in the DIP Documents to administer their Cases, and to provide working capital and to fund the Debtors' operations.

(iii)      *Priming of the Prepetition Term Loan Liens*.  The priming of the Prepetition Term Loan Liens on the Prepetition Term Loan Collateral under section 364(d) of the

16

Bankruptcy Code, as contemplated by the DIP Facility and as further described below, will enable the Debtors to continue borrowing under the DIP Facility and to continue to operate their businesses to the benefit of their estates and creditors. To the extent any contingent Prepetition Term Loan Obligations remain outstanding after the Prepetition Term Payoff Date, the Prepetition Term Loan Parties are each entitled to receive adequate protection as set forth in this Final Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any Diminution in Value of their interests in the Prepetition Term Loan Collateral (including Cash Collateral) until such obligations are Paid in Full in accordance with the Interim Order and this Final Order.

(iv)     *Need for Postpetition Financing and Use of Cash Collateral.* The Debtors continue to have an immediate and critical need to use Cash Collateral and to obtain credit on a final basis pursuant to the DIP Facility in order to, among other things, (i) administer and preserve the value of their estates, (ii) maintain business relationships with their vendors, suppliers, and customers, including purchasing necessary materials and services to maintain compliance with all applicable regulatory and safety requirements; (iii) make payroll and pay their employees; (iv) satisfy working capital, capital improvement, and operational needs; (v) pay professional fees, expenses, and obligations benefitting from the Carve Out; (vi) pay costs, fees and expenses associated with or payable under the DIP Facility, subject to the terms of this Final Order and the DIP Documents, and (vii) make adequate protection payments as set forth herein. The ability of the Debtors to meet the Debtors' cash disbursement needs during this period to finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and parties-in-interest. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or

17

maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral. The terms of the proposed DIP Facility, pursuant to the DIP Documents, and this Final Order, including the terms by which the Debtors are authorized to use Cash Collateral, are fair and reasonable, reflect each Debtor's exercise of its prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

(v)     *No Credit Available on More Favorable Terms.* The DIP Facility is the best source of debtor-in-possession financing available to the Debtors. Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility. The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. As described in the DIP Declaration, financing on a postpetition basis on better terms is not otherwise available without granting the DIP Agent, for the benefit of itself and the DIP Lender: (1) perfected security interests in and liens on (each as provided herein) the DIP Collateral (as defined below) with the priorities set forth in this Final Order; (2) superpriority claims and liens; and (3) the other protections set forth in this Final Order. After considering all alternatives, the Debtors have properly concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to them at this time, and is the best interests of all of their stakeholders.

18

(vi)    *Use of Proceeds of the DIP Facility and Cash Collateral.*  As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Agent, the DIP Lender, and the Prepetition Secured Parties require, and the Debtors have agreed, that proceeds of the DIP Facility (together with the Cash Collateral) shall be used, in each case subject to the terms and conditions of this Final Order and the DIP Documents and in accordance with the budget (as the same may be modified from time to time consistent with the terms of the DIP Documents and this Final Order and subject to such variances as permitted by the DIP Agreement and this Final Order, the "Budget"),[4] solely for: (a) upon entry of and in accordance with the Interim Order, payment in full of cash of the Prepetition Term Loan Obligations in accordance with the Prepetition Term Payoff Letter (as defined in the Interim Order), subject to the rights preserved in paragraph 47 of this Final Order; (b) working capital; (c) permitted payment of costs of administering the Cases; (d) payment of interest, fees and expenses (including without limitation, legal and other professionals' fees and expenses of the DIP Agent) and all other "Obligations" owed under the DIP Documents; (e) payment of certain adequate protection; (f) funding the Carve Out, Winddown Account, and Professional Fees Account as set forth herein; and (g) other general corporate purposes of the Debtors permitted by the Budget and the DIP Documents.  The repayment of the Prepetition Term Loan Obligations in accordance with the Interim Order and the Prepetition Term Payoff Letter is a necessary condition of the Prepetition Term Loan Parties consenting to the use of Term Collateral and to the subordination of the Prepetition Term Loan Agent's liens (to the extent not released upon entry of the Interim Order and subject in all respects to the occurrence of the Prepetition Term Payoff Date) and the Prepetition Term Loan

---

[4]  A summary of the Budget is attached hereto as **Schedule 1**.

Adequate Protection Liens to the DIP Liens as provided in the Interim Order and this Final Order.

(vii)   *Application of Proceeds of Collateral*.  As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and authorization to use Cash Collateral, the Debtors, the DIP Agent, the DIP Lender, and the Prepetition Secured Parties have agreed that as of and commencing on the date of the Final Hearing, the Debtors shall apply the proceeds of DIP Collateral in accordance with this Final Order and as provided in the DIP Documents.

L.   **Adequate Protection**.   Until the Prepetition ABL Obligations or Prepetition Term Loan Obligations, as applicable, are Paid in Full,[5] the Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Parties, and the Prepetition Term Loan Agent, for the benefit of itself and the other Prepetition Term Loan Parties, are each entitled to receive adequate protection to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral) as set forth in this Final Order.  Based on the DIP Motion, the declarations, or other evidence filed in support of the DIP Motion, and the record presented to the Court in connection with the Final Hearing, the terms of the adequate protection arrangements and the use of Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute

---

[5] "Paid in Full" means the indefeasible repayment in full in cash of all obligations (including principal, interest, premium fees, expenses, indemnities) under the applicable credit facility, the cash collateralization of all treasury and cash management obligations, hedging obligations, and bank product obligations, and the cancelation, replacement, backing, or cash collateralization of letters of credit, in each case, in accordance with the terms of the applicable credit facility.  No facility shall be deemed to have been Paid in Full until such time as, with respect to the applicable facility, (a) the commitments to lend thereunder have been terminated; (b) (i) the Challenge Deadline (as defined in paragraph 47 of this Final Order) shall have occurred without the timely and proper commencement of a Challenge or (ii) if a Challenge is timely and properly asserted prior to the Challenge Deadline, upon the final, non-appealable disposition of such Challenge; and (c) the applicable Prepetition Agent or DIP Agent has received (i) a countersigned payoff letter in form and substance satisfactory to such Agent and (ii) releases from the Debtors (including any liquidator acting on behalf of any of the Debtors or their Estates, if applicable) in form and substance satisfactory to such DIP Agent or Prepetition Agent, as applicable, each in its sole discretion.

reasonably equivalent value and fair consideration for the use of Prepetition Collateral (including Cash Collateral).

M. **Consent or Court-Authorized Use**.  The Prepetition ABL Parties have either consented or the Court has authorized the Debtors' use of Prepetition Collateral (including Cash Collateral) and the DIP Loan Parties' entry into the DIP Facility and the DIP Documents, in each case, in accordance with and subject to the terms and conditions of this Final Order and the DIP Documents.

N. **Sections 506(c) and 552(b).**  In light of: (i) the DIP Agent's and the DIP Lender's agreement that their liens and superpriority claims shall be subject to the Carve Out as set forth herein, (ii) the Prepetition ABL Parties' agreement that their adequate protection liens on the DIP Collateral constituting Term Loan Collateral shall be subject to the Carve Out, and (iii) the Prepetition Term Loan Parties' agreement that their liens (following the occurrence of the Prepetition Term Payoff Date) shall be subject to the Carve Out and subordinate to the DIP Liens, each as set forth herein, (a) the Prepetition ABL Parties are entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code and of the equitable doctrine of "marshaling" or any other similar doctrine, and (b) the DIP Agent, DIP Lenders, and Prepetition Term Loan Parties are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

O. **Good Faith of the DIP Agent and DIP Lender and Prepetition Secured Parties**.

(i) *Willingness to Provide Financing and Permit Use of Cash Collateral*.  The DIP Lenders have indicated a willingness to provide financing to the Debtors, and the Prepetition Secured Parties have consented to the Debtors' use of Cash Collateral,

subject to: (a) entry of this Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and (d) findings by this Court that the DIP Facility and the Debtors' use of Cash Collateral as provided for herein are essential to the Debtors' estates, that the DIP Agent and DIP Lenders are extending credit to the Debtors, and the Prepetition Secured Parties are making other financial accommodations, pursuant to the DIP Documents and this Final Order in good faith, and that the DIP Agent's, DIP Lenders', and Prepetition Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Final Order and the DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

       (ii)    *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms and conditions of the DIP Facility, the DIP Documents, and this Final Order, and the interest and fees paid and to be paid thereunder and hereunder, as applicable, are fair, reasonable, and the best available to the Debtors under the circumstances, are appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties, with the assistance and counsel of their respective advisors. Use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties within the meaning of section 364(e) of the Bankruptcy Code.

P.      **Final Hearing**.  Notice of the Final Hearing and the relief requested in the DIP Motion and this Final Order has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to the Notice Parties (as defined in the DIP Motion).  Such notice of the Final Hearing and the relief requested in the DIP Motion complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (c), and Local Rules 2002-1 and 4001-1.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and no other notice is required in connection with the relief set forth in this Final Order.

Based upon the foregoing findings and conclusions, the DIP Motion, the DIP Declaration, the First Day Declaration and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.      <u>Final Financing Approved</u>.  The DIP Motion is granted on a final basis as set forth herein, the Final Financing (as defined herein) is authorized and approved, and the use of Cash Collateral on a final basis is authorized, subject to the terms and conditions set forth in the DIP Documents and this Final Order.  All objections to this Final Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled.

**DIP Facility Authorization**

2.      <u>Authorization of the DIP Facility</u>.  The DIP Facility is hereby approved on a final basis.  The DIP Loan Parties are expressly and immediately authorized and empowered to (i) execute and deliver the DIP Documents, (ii) to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final Order and the DIP Documents, (iii) to deliver all instruments, certificates, agreements, and documents which may be required or

necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined herein) described in and provided for by this Final Order and the DIP Documents, including, without limitation, each Guarantor providing its joint and several guarantee of all of the DIP Obligations, and (iv) to repay in full in cash the Prepetition Term Loan Obligations in accordance with the Prepetition Term Payoff Letter.  The DIP Loan Parties are hereby authorized and directed to pay, in accordance with this Final Order, the principal, interest, fees, payments, expenses, and other amounts described in the DIP Documents as such amounts become due and payable and without need to obtain further Court approval, including, without limitation, closing fees, arrangement fees, collateral monitoring fees, servicing fees, audit fees, appraisal fees, liquidator fees, structuring fees, prepayment premiums, administrative agent's fees and collateral agent's fees, subject to paragraph 39 herein, the reasonable fees and disbursements of the DIP Agent's attorneys, advisors, accountants, and other consultants, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in this Final Order or the DIP Documents.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be deposited and applied as required by this Final Order and the DIP Documents. Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the DIP Loan Parties, enforceable against each of the DIP Loan Parties and their estates in accordance with their terms.  Upon the Debtors' payment in satisfaction of the Prepetition Term Loan Obligations in accordance with the Prepetition Term Payoff Letter, the Prepetition Term Loan Agent shall be authorized to make distributions to the Prepetition Term Loan Lenders in

accordance with the Prepetition Term Loan Documents, and any and all of the Prepetition Term Loan Liens on the Prepetition Collateral (but not, for the avoidance of doubt, the Prepetition Term Loan Adequate Protection Liens until the Prepetition Term Loan Obligations are Paid in Full) shall be irrevocably terminated, released, and discharged in full on such date, subject to paragraph 47 below.

3.      <u>Authorization to Borrow</u>.  From the entry of this Final Order through and including the Termination Date (as defined below), and subject to the terms, conditions, limitations on availability and reserves (as applicable) set forth in the DIP Documents and this Final Order, the Debtors are hereby authorized to request extensions of credit up to an aggregate outstanding principal amount of not greater than $80,000,000 at any one time outstanding under the DIP Facility (the "<u>Final Financing</u>").

4.      <u>DIP Obligations</u>.  The DIP Documents and this Final Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which shall be enforceable against the DIP Loan Parties, their estates and any successors thereto, including without limitation, any trustee appointed in the Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing or upon dismissal of the Cases (collectively, the "<u>Successor Cases</u>").  Upon entry of this Final Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the DIP Loan Parties to the DIP Agent or any of the DIP Lenders, in each case, under, or secured by, the DIP Documents or this Final Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owing under the DIP Documents.  The DIP Loan Parties shall be jointly and severally liable for the DIP

25

Obligations.  Subject to paragraph 38 of this Final Order and after expiration of the Remedies

Notice Period (as defined below), the DIP Obligations shall be due and payable, without notice

or demand, on the DIP Termination Date and the use of Cash Collateral shall automatically cease

(i) if the DIP Obligations and Prepetition Term Loan Obligations are then outstanding, on the

Termination Date (as defined herein), except as provided in paragraph 38 herein, or (ii) the ABL

Termination Date (as defined herein).  No obligation, payment, transfer, or grant of collateral

security under the DIP Documents or this Final Order (including any DIP Obligations or DIP

Liens (as defined below), and including, subject to paragraph 47 herein, in connection with any

adequate protection provided to the Prepetition Secured Parties hereunder) shall be stayed,

restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any

applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the

Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform

Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common

law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization,

subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense,

or any other challenge under the Bankruptcy Code or any applicable law or regulation by any

person or entity.

5.      DIP Liens.  In order to secure the DIP Obligations, effective upon entry of

the Interim Order, and on a final basis pursuant to this Final Order, pursuant to sections 361, 362,

364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, and subject and subordinate only to the

Carve Out and prior mortgages, deeds of trust and similar liens encumbering Real Property

Rights and Interests (as each term is defined herein), as set forth more fully in this Final Order,

the DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted, continuing, valid,

26

binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "DIP Liens") all personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the DIP Loan Parties (the "DIP Collateral"), including, without limitation: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable, all Pledged JV Interests (as defined in, and subject to the limitation in, the DIP Agreement), hedge agreements, furniture, fixtures, equipment (including documents of title); (b) goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, fee interests in real property owned by the Debtors ("Owned Real Estate") (including all improvements thereon—including fixtures—and appurtenances thereto), books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (c) all owned real property interests (including all improvements thereon—including fixtures—and appurtenances thereto) and all proceeds of leased real property (but, notwithstanding anything to the contrary herein, DIP Collateral shall not include nonresidential real property leases) ("Leased Real Estate," and, together with Owned Real Estate, and any other real property rights or interests held by the Debtors, collectively, "Real Estate Rights and

27

Interests");[6] (d) all proceeds of actions brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral; (e) the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents (other than actions brought pursuant to section 549 of the Bankruptcy Code) (subparagraph (e), the "Avoidance Actions"); (f) proceeds of the Debtors' rights under sections 506(c) (solely to the extent such rights result from the use of the DIP Facility or the DIP Collateral, and are, therefore, enforceable against parties other than the DIP Agent, DIP Lenders, or Prepetition Secured Parties) and 550 of the Bankruptcy Code; (g) the ABL Collateral and proceeds thereof; and (h) all other personal property assets of the Debtors that were not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date.  DIP Collateral that is (x) of a type that would be Prepetition Term Loan Collateral and postpetition assets of the Debtors that would otherwise constitute Prepetition Term Loan Collateral, (y) all personal property assets of the Debtors, including without limitation equity interests, that were not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date, and (z) the proceeds of Avoidance Actions, shall, in each case, constitute "Term Collateral."  DIP Collateral that is Prepetition ABL Collateral, now owned or hereinafter acquired, and proceeds thereof shall constitute "ABL Collateral."

6.      **DIP Lien Priority**.  The DIP Liens securing the DIP Obligations are valid, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, or claim to any of the DIP Collateral, except that the DIP Liens shall be subject to the Carve Out and shall otherwise be junior only to: (a) as to the Term Collateral,

---

[6] Notwithstanding anything to the contrary herein, nothing in this Final Order shall impact, alter, or prejudice the rights of landlords with respect to any non-residential real property leases of the Debtors under the Bankruptcy Code and applicable law, including but not limited to rights of setoff (if any).

(i) until the Prepetition Term Payoff Date, the Prepetition Term Loan Liens, and (ii) the Prepetition Term Loan Permitted Prior Liens; (b) as to ABL Collateral, (i) the Permitted Prior Liens, (ii) the Prepetition ABL Liens, and (iii) the Prepetition ABL Adequate Protection Liens; and (c) as to the Real Estate Rights and Interests, prior mortgages, deeds of trust and similar liens encumbering Real Estate Rights and Interests.  Other than as set forth herein or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases.  The DIP Liens shall not be subject to section 510, 549 or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.  For the avoidance of doubt, upon repayment in full in cash of the Prepetition Term Loan Obligations and the occurrence of the Prepetition Term Payoff Date, and to the extent not previously provided pursuant to the Interim Order, any and all Prepetition Term Loan Liens (but not the Prepetition Term Loan Adequate Protection Liens, until the Prepetition Term Loan Obligations are Paid in Full) will be irrevocably and automatically terminated, released, and discharged in full, subject to paragraph 47 hereof.

7. <u>DIP Superpriority Claims</u>.  Upon entry of this Final Order and continuing hereunder on a final basis, the DIP Agent, on behalf of itself and the DIP Lenders, is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the DIP Loan Parties' Cases and any Successor Cases

29

(collectively, the "DIP Superpriority Claim") for all DIP Obligations. Except as set forth herein, the DIP Superpriority Claim shall have priority over any and all other obligations, liabilities and indebtedness of each Debtor other than the Carve Out, including without limitation any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, the Adequate Protection Superpriority Claim (defined below) and administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 328, 330, 331, 364, 503(a), 503(b), 507(a) (other than 507(a)(1)), 507(b), 546(c), 726 (to the extent permitted by law), 1113 and 1114, and any other provision of the Bankruptcy Code, to the extent provided under section 364(c)(1) of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Superpriority Claim.

8.     No Obligation to Extend Credit.  The DIP Agent and DIP Lenders shall have no obligation to make any loan or advance under the DIP Documents unless all of the conditions precedent to the making of such extension of credit under the DIP Documents and this Final Order have been satisfied in full or waived by the DIP Agent and in accordance with the terms of the DIP Agreement.

9.     Use of Proceeds of DIP Facility.  From and after the Petition Date, and continuing hereunder on a final basis, the Debtors shall use advances of credit under the DIP Facility, in accordance with the Budget (subject to such variances as permitted in this Final Order and in the DIP Agreement), only for the purposes specifically set forth in this Final Order, the DIP Documents and the Budget, and in compliance with the terms and conditions in this Final Order and the DIP Documents.

WEIL:\97590314\1\30950.0070

10. <u>Repayment of Prepetition Term Loan Obligations</u>. Upon entry of the Interim Order, the Debtors were authorized, and are hereby authorized on a final basis, subject to paragraph 47 herein, without any further action by the Debtors or any other party, to repay the Prepetition Term Loan Obligations in accordance with the Prepetition Term Payoff Letter. The Debtors were authorized and directed pursuant to the Interim Order, and are hereby authorized and directed on a final basis to (a) execute and deliver the Prepetition Term Payoff Letter and (b) use proceeds of the DIP Facility to (i) pay in full in cash outstanding Prepetition Term Loan Obligations, including, without limitation, all principal, interest, fees, and expenses due and chargeable under the Prepetition Term Loan Documents through the date of payment and (ii) pay such other reasonable amounts in respect of or related to the Prepetition Term Loan Documents, as more fully set forth in the Prepetition Term Payoff Letter (the amounts set forth in clauses (b)(i) and (ii) in this paragraph shall be referred to in this Final Order as, collectively, the "<u>Prepetition Term Payoff Amount</u>," and the date of payment of the Prepetition Term Payoff Amount shall be referred to as the "<u>Prepetition Term Payoff Date</u>").

## <u>Authorization to Use Cash Collateral</u>

11. <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Final Order, the DIP Facility, and the DIP Documents and in accordance with the Budget (subject to such variances as permitted by this Final Order and the DIP Agreement), the Debtors are authorized to use Cash Collateral until (i) if the DIP Obligations and Prepetition Term Loan Obligations are then outstanding, the DIP Termination Date (as provided herein) or (ii) the ABL Termination Date (as provided herein); *provided, however*, that during the Remedies Notice Period (as defined herein), the Debtors are authorized to use Cash Collateral (x) solely to pay expenses necessary to avoid immediate and irreparable harm to the Debtors' estates, in

accordance with the Budget or (y) as otherwise agreed by the DIP Agent; *provided, further,* that with respect to use of Cash Collateral from the proceeds of ABL Collateral during the Remedies Notice Period, only with the consent of the Prepetition ABL Agent.  Nothing in this Final Order shall otherwise authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order, the DIP Facility, the DIP Documents, and in accordance with the Budget, or, with respect to the ABL Collateral, consent of the Prepetition ABL Agent.

12.     <u>Adequate Protection Liens</u>.

(a)     *Prepetition ABL Adequate Protection Liens*.  Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Parties in the Prepetition ABL Collateral against any Diminution in Value of such interests in the Prepetition ABL Collateral, the Debtors hereby grant to the Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on all DIP Collateral (the "<u>Prepetition ABL Adequate Protection Liens</u>").

(b)     *Prepetition Term Adequate Protection Liens.*  Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Term Loan Parties in the Prepetition Term Loan Collateral against any Diminution in Value of such interests in the Prepetition Term Loan Collateral, the Debtors hereby grant to the Prepetition Term Loan Agent, for the benefit of itself and the other Prepetition Term Loan Parties, until such time as the Prepetition Term Loan Obligations are Paid in Full, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on all DIP

32

Collateral (the "Prepetition Term Adequate Protection Liens," and together with the Prepetition ABL Adequate Protection Liens, the "Adequate Protection Liens").

        13.    <u>Priority of Adequate Protection Liens</u>.

        (a)    The Prepetition ABL Adequate Protection Liens shall be junior only to: (i) with respect to the ABL Collateral, (1) the Prepetition ABL Permitted Prior Liens; and (2) the Prepetition ABL Liens; (ii) with respect to Term Collateral, (1) the Carve Out, (2) Prepetition Term Loan Permitted Prior Liens, (3) the DIP Liens, (4) the Prepetition Term Loan Liens, and (5) the Prepetition Term Adequate Protection Liens; and (iii) with respect to Real Estate Rights and Interests, prior mortgages, deeds of trust and similar liens encumbering Real Estate Rights and Interests.  The Prepetition ABL Adequate Protection Liens shall otherwise be senior to all other security interests in or liens on any DIP Collateral.

        (b)    The Prepetition Term Adequate Protection Liens shall be junior only to: (i) with respect to the Term Collateral, (1) the Carve Out, (2) Prepetition Term Loan Permitted Prior Liens, (3) the DIP Liens, and (4) the Prepetition Term Loan Liens; (ii) with respect to the ABL Collateral, (1) the Prepetition ABL Permitted Prior Liens, (2) Prepetition ABL Liens, (3) the Prepetition ABL Adequate Protection Liens, (4) the Carve Out, and (5) the DIP Liens; and (iii) with respect to Real Estate Rights and Interests, prior mortgages, deeds of trust and similar liens encumbering Real Estate Rights and Interests.  The Prepetition Term Adequate Protection Liens shall otherwise be senior to all other security interests in or liens on any DIP Collateral.

        (c)    Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in

WEIL:\97590314\1\30950.0070

any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases. The Adequate Protection Liens shall not be subject to sections (a) 510 of the Bankruptcy Code with respect to the Prepetition Secured Obligations, and (b) 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

14. <u>Adequate Protection Superpriority Claims</u>.

(a) *Prepetition ABL Superpriority Claim*. As further adequate protection of the interests of the Prepetition ABL Parties in the Prepetition ABL Collateral against any Diminution in Value of such interests in the Prepetition ABL Collateral, the Prepetition ABL Agent, on behalf of itself and the other Prepetition ABL Parties, is hereby granted an allowed superpriority administrative expense claim in each of the DIP Loan Parties' Cases and any Successor Cases against the Debtors' estates pursuant to section 503(b) of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the Debtors and their estates as provided for by section 507(b) of the Bankruptcy Code (the "<u>Prepetition ABL Superpriority Claim</u>").

(b) *Prepetition Term Loan Superpriority Claim*. As further adequate protection of the interests of the Prepetition Term Loan Parties in the Prepetition Term Loan Collateral against any Diminution in Value of such interests in the Prepetition Term Loan Collateral, to the extent applicable, the Prepetition Term Loan Agent, on behalf of itself and the other Prepetition Term Loan Parties, is hereby granted an allowed superpriority administrative expense claim in each of the DIP Loan Parties' Cases and any Successor Cases against the Debtors' estates pursuant to section 503(b) of the Bankruptcy Code with priority over all

34

administrative expense claims and unsecured claims against the Debtors and their estates as provided for by section 507(b) of the Bankruptcy Code (the "Prepetition Term Loan Superpriority Claim," and together with the Prepetition ABL Superpriority Claim, the "Adequate Protection Superpriority Claims").

15.     Priority of the Adequate Protection Superpriority Claims.  Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 328, 330, 331, 503(a), 503(b), 507(a) (other than 507(a)(1)), 506(c), 507(b), 546(c), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code; *provided, however*, that the Adequate Protection Superpriority Claims shall be subject to the Carve Out (subject to and in accordance with the provisions of paragraph 44 below), junior to the DIP Superpriority Claim, and subject the lien priorities set forth in paragraph 12 hereof.

16.     Adequate Protections for Prepetition ABL Parties.  As further adequate protection, the Debtors were authorized and directed and provided adequate protection to the Prepetition ABL Parties in the form of payment in cash of interest, Letter of Credit Fees and all other fees at the Default Rate (as each term is defined in the Prepetition ABL Credit Documents) for July 2020, which payments were made as and when required under the Prepetition ABL Documents, and remain subject to the rights preserved in paragraph 47 below.  Upon closing of the Sale Transaction (as defined in the Sale Order), solely in accordance with the *Order (I) Approving Asset Purchase Agreement, (II) Authorizing Sale to the Stalking Horse Bidder of the Acquired Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests,*

35

*(III) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (IV) Granting Related Relief* (D.I. [●]) (the "Sale Order"), the Prepetition ABL Parties shall receive a payment of $205,807,243 ("Payment Amount") from the Debtors.

17.    Adequate Protection Payments and Protections for Prepetition Term Loan Parties.  As further adequate protection, and solely to the extent that any Prepetition Term Loan Obligations have not been Paid in Full, the Debtors are authorized and directed to provide adequate protection to the Prepetition Term Loan Parties in the form of payment in cash (and as to fees and expenses, without the need for the filing of a formal fee application) of, (i) current payment of interest (at the non-default rate) due under the Prepetition Term Loan Documents, subject to the rights preserved in paragraph 47 below and (ii) payment of the reasonable and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third party consultants, and other vendors) incurred by the Prepetition Term Loan Agent arising prior to the Petition Date, including reasonable and documented fees and expenses of Morgan, Lewis & Bockius LLP and Reed Smith LLP (the "Term Advisors"), and (iii) in accordance with the procedures set forth in paragraph 43 hereof, the reasonable and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third party consultants, and other vendors) incurred by the Prepetition Term Loan Agent and arising subsequent to the Petition Date, including reasonable and documented fees and expenses of the Term Advisors.

WEIL:\97590314\1\30950.0070

18.    <u>Adequate Protection Reservation</u>.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and protects the interests of the Prepetition Secured Parties; provided that nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases.  The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected.   Further, this Final Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection in a manner consistent with the DIP Documents, Prepetition Documents, paragraphs  13 and 15 hereof, and all parties-in-interests' rights are reserved with respect thereto.

19.    Each of the Prepetition ABL Parties shall forbear from taking any "Enforcement Actions" against Brooks Brothers Canada Ltd. as a result of the occurrence and continuation of any of the ABL Events of Default, and the Prepetition ABL Lenders shall not direct the Prepetition ABL Agent to take any such Enforcement Actions until the earlier of (x) fifty-three (53) days from the Petition Date, or if such assets are included in a Sale (as defined herein), the closing of such Sale, unless otherwise agreed to by the Prepetition ABL Agreement Agent; and (y) the occurrence of an ABL Cash Collateral Termination Event. "Enforcement Actions" means, with respect to Brooks Brothers Canada Ltd., (1) commencing and prosecuting any suits, actions or proceedings at law or in equity in any court of competent

37

jurisdiction against Brooks Brothers Canada Ltd., (2) foreclosing on the ABL Collateral or any portion thereof (including, for the avoidance of doubt, sweeping any proceeds of any DIP Loan), (3) enforcing any other right in respect of any ABL Collateral, (4) the exercise of any or all other remedies available to the Prepetition ABL Parties under any Prepetition ABL Document, or otherwise, or (5) the exercising of rights of cash dominion.

**Provisions Common to DIP Financing
and Use of Cash Collateral**

20.     <u>Amendment of the DIP Documents</u>.  The DIP Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if the amendment, modification, or supplement is (a) immaterial or non-adverse to the Debtors and (b) in accordance with the DIP Documents.  In the case of a material amendment, modification, or supplement to the DIP Documents that is adverse to the Debtors' estates, the Debtors shall provide notice (which shall be provided through electronic mail) to counsel to the Prepetition ABL Agent, counsel to the Committee, and the U.S. Trustee (collectively, the "<u>Notice Parties</u>"), each of whom shall have five (5) days from the date of such notice to object in writing to such amendment, modification or supplement, *provided* that approval of the Court (which, if there are no objections, may be approved upon the submission of a proposed form of order under certification of counsel or, if there are objections, may be approved after notice and a hearing) will be necessary to effectuate any such amendment, modification or supplement.

21.     <u>Budget Maintenance</u>.  The use of borrowings under the DIP Facility and the use of Cash Collateral shall be in accordance with the provisions of this Final Order and the DIP Documents, including as described in this paragraph 21 and paragraph 22 herein, and otherwise consistent with the Budget (subject to permitted variances and exceptions), which shall be in form and substance reasonably satisfactory to the Prepetition ABL Agent.  The initial

Budget may be revised in accordance with the DIP Documents and this Final Order to account for the opening of any of the Debtors' stores, or as otherwise agreed to by the DIP Agent, in each case after consultation with the Prepetition ABL Agent; *provided*, that any Budget, or revision to the initial Budget, for a period after the Initial Measurement Period (as defined herein) shall be reasonably acceptable to the Prepetition ABL Agent. A copy of any Budget (or updated Budget) shall be delivered to counsel to the Prepetition ABL Agent, counsel for the Committee and the U.S. Trustee after (or if) it has been approved by the DIP Agent.

22. <u>ABL Budget Variance Covenant</u>. It shall be an ABL Cash Collateral Termination Event if the Debtors deviate in an amount greater than the applicable Permitted Variance (as defined below) for the applicable Measurement Period (as defined below) (the "<u>ABL Budget Variance Covenant</u>") with respect to (i) "Total Operating Disbursements", exclusive of disbursements made with respect to inventory (the "<u>Inventory Disbursements</u>"), for the (x) Initial Measurement Period (as defined below) the lesser of (1) $2,000,000 and (2) ten percent (10%) of the cumulative amounts budgeted or forecasted for the applicable Measurement Period; and (y) for any subsequent Measurement Period ten percent (10%) of amounts budgeted or forecasted in the Budget for the applicable Measurement Period; (ii) "Other Restructuring Costs," ten percent (10%) of amounts budgeted or forecasted in the applicable Measurement Period, including, for the avoidance of doubt, the Initial Measurement Period; and (iii) Inventory Disbursements ten percent (10%) of amounts budgeted or forecasted in the applicable Measurement Period, including, for the avoidance of doubt, the Initial Measurement Period (each a "<u>Permitted Variance</u>"); provided that each of the foregoing "Total Operating Disbursements," "Inventory Disbursements" and "Other Restructuring Costs" shall be exclusive of fees and restructuring charges of Case Professionals (defined below) arising on account of the Cases

39

(including U.S. Trustee fees).  The Debtors shall deliver to the DIP Agent and the Prepetition ABL Agent on the fourth (4th) business day of each week commencing on the third week after the Petition Date, a weekly report (the "Weekly Variance Report") that sets forth as of the preceding Saturday of each such week, for the prior week and on a cumulative basis from the Petition Date through the eighth (8th) full week after the Petition Date (the "Initial Measurement Period") and then on a rolling four (4) week basis at all times thereafter (each such period referred to herein as a "Measurement Period"), the actual results of the (i) "Total Operating Disbursements", exclusive of Inventory Disbursements; (ii) "Other Restructuring Cost"; and Inventory Disbursements to the Budget; provided that the Debtors shall be permitted to revise the Budget depending on the timing of store openings or as otherwise agreed to by the DIP Agent in its reasonable discretion after consultation with the Prepetition ABL Agent; provided further that any such revisions to the Budget after the Initial Measurement Period shall be reasonably acceptable to the Prepetition ABL Agent.

23.     ABL Segregated Reserve Account.[7]  If at any time the Total Revolving Outstandings exceed the sum of the Revolving Borrowing Base (which, for the avoidance of doubt, shall include the value of replacement collateral of the type included in the ordinary course in the Borrowing Base) minus the Excess Availability (as defined in the Prepetition ABL Agreement) required to be maintained pursuant to Section 7.15 of the Prepetition ABL Agreement (an "Overadvance"), that the Debtors shall fund into a segregated reserve account at Wells Fargo Bank, N.A (the "Reserve Account") in an amount up to such Overadvance; provided, however, that the Debtors shall be authorized to borrow under the DIP Facility to fund such amounts required to be deposited into the Reserve Account.  The Debtors may subsequently

---

[7] For the purposes of this paragraph 23, all capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Prepetition ABL Agreement.

WEIL:\97590314\1\30950.0070

request the Prepetition ABL Agent to remit funds out of the Reserve Account to the extent the Borrowing Base minus the Excess Availability required to be maintained pursuant to Section 7.15 of the Prepetition ABL Agreement exceeds the Total Revolving Outstandings.   The Prepetition ABL Agent shall agree to calculate the Borrowing Base using the NOLVs as applicable for the month of June 2020.   The amount of the Overadvance, if any, shall be calculated as of Wednesday of each week based upon a Borrowing Base Certificate delivered by the Debtors to the Prepetition ABL Agent on Wednesday of each week starting with the week ending July 18, 2020; provided, for the avoidance of doubt, that the Borrowing Base Certificate for the week ending July 11, 2020 was permitted to be provided on Monday July 20, 2020.   The deposits into the Reserve Account or the release of funds from the Reserve Account shall be completed by Friday of each week.   The Prepetition ABL Agent shall not implement any reserves that were not in effect as of June 29, 2020 (other than fluctuations resulting from existing mathematical calculations, including with respect to the FILO Reserve).   For the avoidance of doubt, the reserves in effect as of June 29, 2020 are (i) the $5 million restructuring reserve, (ii) the approximately $10.8 million gift card / merchandise credit reserve, (iii) the approximately $600,000 thousand deposit reserve, (iv) the approximately $500,000 in-transit delivery cost reserve, (v) the approximately $300,000 Canada WEPPA reserve, (vi) the approximately $200,000 Canada tax & payable reserve, (vii) the approximately $1.4 million landlord lien reserve, (viii) the approximately $1.4 million other rent reserve, and (ix) the approximately $1.5 million FILO reserve.   Notwithstanding anything to the contrary herein, the Debtors' obligations to fund the Reserve Account in accordance with the Interim Order and this Final Order shall cease, and the Debtors shall no longer be required to fund the Reserve Account, following consummation of the Sale Transaction and payment of the Payment Amount.

24.    <u>Modification of Automatic Stay</u>.  The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claim, and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Agent, the Prepetition ABL Agent, and the Prepetition Term Agent each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agent, DIP Lenders, and Prepetition Secured Parties under the DIP Documents, the DIP Facility, and this Final Order, as applicable; and (d) authorize the Debtors to pay, and the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Final Order and the DIP Documents.

25.    <u>Winddown Account</u>.  Upon the consummation of any sales of the Prepetition Collateral and the DIP Collateral, the DIP Loan Parties shall deposit or cause to be deposited the net aggregate cash proceeds in receipt of such sales into the Winddown Account until $750,000 in the aggregate has been funded into the Winddown Account (the "<u>Winddown Account Cap</u>").  "Winddown Account" shall mean a deposit account that, prior to discharge in full of all DIP Obligations under the DIP Facility, may only be used to pay winddown costs of the DIP Loan Parties in accordance with the DIP Agreement.

26.    <u>Perfection of DIP Liens and Adequate Protection Liens</u>.  This Final Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, deed of trust, intellectual

42

property security agreement or filing, control agreement, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or physically delivering possessory collateral) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to evidence or entitle the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Agent and the Prepetition Agents are authorized to file, in the applicable registries of deeds and other appropriate public records, as it in its sole discretion deems necessary or advisable, (i) notice of this Final Order, and (ii) such financing statements, security agreements, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, security agreements, notices of liens, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens. The Debtors are authorized to execute and deliver promptly upon demand and, with respect to the DIP Agent, in accordance with the DIP Loan Documents to the DIP Agent and the Prepetition Agents all such financing statements, security agreements, notices of liens, and other documents as the DIP Agent or the Prepetition Agents may reasonably request. Each of the DIP Agent and the Prepetition Agents, in its discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument. To the extent that the Prepetition Term Loan Agent is the secured party under any security agreement

WEIL:\97590314\1\30950.0070

(including any intellectual property security agreement), landlord waiver, bailee letters, financing statement, account control agreements, or any other collateral documents or relevant Prepetition Term Loan Documents then automatically and without further action, (i) the DIP Agent shall be deemed to be a secured party under such documents, (ii) the DIP Facility, together with any refinancings or replacements thereof, shall be deemed to be secured obligations under such documents, and (iii) the applicable provisions of such documents shall apply to the DIP Facility; all as fully and completely as if the DIP Agent was an original secured party in such documents and the DIP Facility was an original secured obligation in such documents.  To the extent either of the Prepetition Agents are listed as loss payee, lender loss payee, or additional insured under any of the Debtors' insurance policies, the DIP Agent shall also be deemed to be the secured party under such documents or to be the loss payee, lender loss payee, or additional insured, as applicable.  The Prepetition Term Loan Agent shall serve as agent for the DIP Agent for purposes of perfecting the DIP Agent's liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this Final Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party; provided, however, the Prepetition Term Loan Agent shall cooperate to promptly deliver possession or control of such collateral to the DIP Agent.

27.     <u>Application of Proceeds of Collateral</u>.  As a condition to the entry of the DIP Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the Debtors have agreed that as of and commencing on the date of the Final Hearing, all net proceeds of DIP Collateral, including whether sold in the ordinary course, liquidated, or otherwise, shall be applied in accordance with the priorities provided for in Section 6.24 of the DIP Agreement (with respect to the Term Loan Collateral) and this Final Order.  Upon closing of

the Sale Transaction, solely in accordance with the Sale Order, the Prepetition ABL Agent shall be paid the Payment Amount.

        28.     <u>Protections of Rights of DIP Agent, DIP Lenders and Prepetition Secured Parties</u>.

        (a)     Unless the DIP Agent and the Prepetition Agents, as applicable, shall have provided their prior written consent, or all DIP Obligations and all Prepetition Secured Obligations (excluding contingent indemnification obligations for which no claim has been asserted) have been, or contemporaneously will be, Paid in Full and the lending commitments under the DIP Facility have terminated, in any of these Cases or any Successor Cases, the Debtors shall neither seek entry of, nor support any motion or application seeking entry of, and otherwise shall object to any motion or application seeking entry of, any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, and/or the Adequate Protection Superpriority Claims; (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Final Order; (iii) except as set forth in the DIP Documents, the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code; or (iv) any modification of any of the DIP Agent's, the DIP Lenders', or the

Prepetition Secured Parties' rights under this Final Order, the DIP Documents or the Prepetition Documents, as applicable, with respect to any DIP Obligations or Prepetition Secured Obligations.  It shall be an Event of Default under the DIP Documents and this Final Order if, in any of these Cases or any Successor Cases, any order is entered granting any of the relief enumerated in provisions (i) through (iv) of the previous sentence.

29.     No Debtor shall object to the DIP Agent, any DIP Lenders or any Prepetition Secured Parties credit bidding up to the full amount of the applicable outstanding DIP Obligations, Prepetition ABL Obligations (as applicable), and Prepetition Term Loan Obligations (as applicable), in each case including any accrued interest and expenses, in any sale of any DIP Collateral or Prepetition Collateral, as applicable, whether such sale is effectuated through section 363 or section 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

30.     Credit Bidding.  In connection with any sale process authorized by the Court, (i) the DIP Agent and the DIP Lenders and (ii) subject to the rights preserved in paragraph 47, Prepetition ABL Agent, Prepetition Term Loan Agent and Prepetition Secured Parties, or any assignee or designee of any of the foregoing, shall be authorized to credit bid, consistent with the applicable DIP Documents and/or Prepetition Documents, some or all of their claims for their respective collateral (each a "Credit Bid") pursuant to section 363(k) of the Bankruptcy Code, subject in each case to the provision of consideration sufficient to indefeasibly pay in full in cash any senior liens on the collateral that is subject to the Credit Bid except to the extent otherwise agreed by the holder of such senior lien in their sole and absolute discretion.  Upon entry of this Final Order, the DIP Agent shall be deemed a "Qualified Bidder" with respect to its rights to acquire all or any assets securing the DIP Loan by Credit Bid, subject to the rights provided in

46

paragraph 47.  Each of the Prepetition Agents, the Prepetition Secured Parties and the DIP Agent shall be deemed a "Qualified Bidder" with respect to their rights to acquire all or any assets securing their respective facilities by Credit Bid.

31.     <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c), or 364(d) in violation of the DIP Documents at any time prior to the DIP Obligations and the Prepetition Term Loan Obligations being Paid in Full, unless otherwise agreed to by the DIP Lenders in their discretion, and the termination of the DIP Agent's and the DIP Lenders' obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then, after satisfaction of the Carve Out, unless otherwise ordered by the Court, all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied in accordance with this Final Order and the DIP Documents; *provided, however*, that if such facilities are secured solely by ABL Collateral, then, unless otherwise ordered by the Court, all cash proceeds derived from such credit or debt attributable to such ABL Collateral shall immediately be turned over to the Prepetition ABL Agent to be applied in accordance with the Prepetition ABL Documents.

32.     <u>Cash Collection</u>.  Unless otherwise agreed to in writing by the DIP Agent and the Prepetition ABL Agent, the Debtors shall maintain no accounts except those identified in, and subject to the terms of, the one or more orders, in form and substance reasonably satisfactory to the DIP Agent and the Prepetition ABL Agent, each in its sole discretion, approving the Debtors' cash management systems and arrangements (the "<u>Cash Management</u>

Order"), and all accounts shall be used for the purposes and on the terms and conditions set forth in the Budget and the DIP Agreement. For the avoidance of doubt, (a) the Prepetition ABL Parties and the Debtors shall not, without the prior written consent of the DIP Agent, apply any of the DIP Loans to make any payment in reduction of the revolving credit loans under the Prepetition ABL Agreement other than amounts deposited into the Reserve Account in accordance with paragraph 23 hereof, and, (b) funds of the DIP Facility and the Debtors' rights under the DIP Facility shall not constitute ABL Collateral, and (c) except as otherwise provided herein (including after the occurrence of an ABL Cash Collateral Termination Event and expiration of the Remedies Notice Period) the Prepetition ABL Parties shall not exercise dominion over deposit accounts of the Debtors in a manner in which would cause the application of funds maintained in the Debtors deposit accounts (including in any zero-balance disbursement account that holds funds advanced under the DIP Facility to pay expenses under the Budget) to the payment of any Prepetition ABL Obligations. Notwithstanding the foregoing, until all DIP Obligations have been Paid in Full, and the DIP Agent's and the DIP Lenders' obligation to extend credit under the DIP Facility has terminated, the Prepetition ABL Agent shall not, and the Prepetition ABL Lenders shall not direct the Prepetition ABL Agent to, (a) sweep any proceeds of the DIP Loans from the any of the Debtors' accounts or (b) for thirty (30) days after the Petition Date, otherwise exercise any rights of cash dominion pursuant to the Prepetition ABL Documents in respect of the Debtors' account ending with the last four digits -2944 at Bank of New York in which DIP Facility proceeds (but not ABL Collateral proceeds) will be deposited.

33. <u>Maintenance of DIP Collateral</u>. Until all DIP Obligations and all Prepetition Term Loan Obligations have been Paid in Full, and the DIP Agent's and the DIP Lenders' obligation to extend credit under the DIP Facility has terminated, the Debtors shall

WEIL:\97590314\1\30950.0070

(a) continue to maintain all property, operational, and other insurance as required and as specified in the DIP Documents or the Prepetition Documents, as applicable; and (b) maintain the cash management system in effect as of the Petition Date, as modified by this Final Order, any cash management order entered by the Court, and any other order that may be entered by the Court in accordance with this Final Order (which has been agreed to by the DIP Agent or as otherwise required by the DIP Documents and the Prepetition Documents).

34.     <u>DIP Termination Date</u>.   On the DIP Termination Date: (a) all DIP Obligations shall be immediately due and payable, all commitments to extend credit under the DIP Facility will terminate, other than as required in paragraph 44 with respect to the Carve Out; (b) all authority to use Cash Collateral shall cease, *provided, however*, that during the Remedies Notice Period (as defined herein), the Debtors are authorized use Cash Collateral  solely to (x) pay expenses necessary to avoid immediate and irreparable harm to the Debtors' estates, in accordance with the terms and provisions of the Budget, (y) to seek non-consensual use of Cash Collateral, and (z) as otherwise agreed by the DIP Agent; *provided* that, with respect to Cash Collateral from proceeds of ABL Collateral, with the consent of the Prepetition ABL Agent; and (c) upon the expiration of the Remedies Notice Period, unless otherwise ordered by the Court, the DIP Agent shall be entitled to exercise rights and remedies under the DIP Documents in accordance with this Final Order (including paragraph 38).  For the purposes of this Final Order, "<u>DIP Termination Date</u>" shall mean the "Maturity Date" as defined in the DIP Agreement.

35.     <u>Events of Default</u>.  The occurrence of any of the following events, unless waived by the DIP Agent in writing and in accordance with the terms of the DIP Agreement, shall constitute an event of default (an "<u>Event of Default</u>") of this Final Order: (i) the failure of the Debtors to perform, in any respect, any of the terms, provisions, covenants, or obligations

49

under this Final Order, including the failure to comply with the Case Milestones (as defined herein), or (ii) the occurrence of an "Event of Default" under the DIP Agreement.

36.     <u>ABL Cash Collateral Termination Event</u>.   An "ABL Cash Collateral Termination Event" shall mean:

(a)     Eighty-eight (88) calendar days after the Petition Date;

(b)     failure to comply with the Case Milestones (defined below and in effect as of the date hereof) unless otherwise agreed to by the Prepetition ABL Agent in its sole discretion;

(c)     termination of the Remedies Notice Period following delivery of a Termination Declaration (as defined herein) by the DIP Agent, unless the Court orders otherwise;

(d)     the termination of all Commitments (as defined in the DIP Agreement) or the acceleration of the unpaid principal amount of all outstanding DIP Loans;

(e)     [Reserved];

(f)     the Debtors have failed to perform with respect to their adequate protection obligations in favor of the Prepetition ABL Parties to the extent required under this Final Order, in each case within three (3) business days of the date of notice from the Prepetition ABL Agent that such respective obligation has become due and owing;

(g)     the occurrence of an Overadvance and corresponding failure of the Debtors to fund the Reserve Account in the amount of the Overadvance; *provided*, that the Debtors shall have three (3) business days to cure such default by funding the Reserve Account as set forth in paragraph 23 hereof;

(h)     the Debtors shall have filed a motion or pleading with the Court to (i) stay, vacate, or reverse this Final Order; or (ii) amend or modify this Final Order in a manner adverse to the Prepetition ABL Parties and such motion shall have not been withdrawn after two (2) business days of such filing;

(i)     the Debtors shall attempt to invalidate, reduce, or otherwise impair the Prepetition ABL Liens or the Prepetition ABL Obligations, in each case pursuant to a pleading filed with the Court that is not withdrawn after two (2) business days of such filing;

(j)     the entry of an order (i) appointing a trustee, receiver, or examiner with expanded powers with respect to any of the Debtors; (ii) dismissing any of the Debtors' chapter 11 cases; (iii) converting any of the Debtors' cases to cases under chapter 7 of the Bankruptcy Code; of (iv) terminating the Debtors' right to use Cash Collateral, in each case where the Prepetition ABL Agent has not otherwise consented to entry of such order and where such order has become a final order not subject to appeal;

(k)     the entry of an order applying (i) the "equities of the case" exception under section 552(b) of the Bankruptcy Code to any of the Prepetition Secured Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral; or (ii) requiring any of the Prepetition Secured Parties to be subject to the equitable doctrine of "marshaling";

(l)     the failure to deliver (i) all Borrowing Base Certificates, as defined in the DIP Agreement and the Prepetition ABL Agreement, as and when required by paragraph 23 of this Final Order; or (ii) all other reports and certificates as and when required by this Final Order, or the delivery of such reports and certificates with any material misrepresentations;

51

*provided*, that in each case the Debtors shall have the opportunity to cure such default within two (2) business days upon notice from the Prepetition ABL Agent;

(m)     prior to the occurrence of the Sale Transaction, the Debtors' failure to receive the consent of the Prepetition ABL Agent, not to be unreasonably withheld, other than with respect to stores already in the process of closing as of the Petition Date, (i) to conduct any store closing sale or similarly-styled sales of ABL Collateral, or (ii) to permanently close any store and remove the ABL Collateral therefrom;

(n)     breach of the ABL Budget Variance Covenant;

(o)     without the prior written consent of the Prepetition ABL Agent (not to be unreasonably withheld), the granting of any lien on the Intellectual Property Collateral (as defined in the Prepetition Term Loan Documents) securing obligations in excess of the amount authorized by the Final Financing;

(p)     the effective date of a chapter 11 plan in any of the Cases that is confirmed pursuant to an order of the Bankruptcy Court; and

(q)     any stay, reversal, vacatur, rescission, or other modification of the terms in this Final Order in any matter that is adverse to the Prepetition ABL Parties and that this is not consented to by the Prepetition ABL Agent.

37.     <u>Milestones</u>.  As a condition to the DIP Facility and the use of Cash Collateral, the Debtors shall comply with the Milestones (as defined in Schedule 6.22 to the DIP Agreement), which are set forth on **Schedule 2** hereto (as amended, and as may be further amended from time to time in accordance with the DIP Documents and this Final Order, the "<u>Case Milestones</u>").  For the avoidance of doubt, the failure of the Debtors to comply with any of the Case Milestones shall (a) constitute an ABL Cash Collateral Termination Event and an Event

52

of Default under the DIP Agreement and this Final Order; (b) subject to the expiration of the Remedies Notice Period (as defined below), result in the automatic termination of the Debtors' authority to use Cash Collateral under this Final Order; and (c) permit the DIP Agent or the Prepetition ABL Agent, as applicable, and in each instance, subject to paragraph 38, to exercise the rights and remedies provided for in this Final Order and the DIP Documents.

38. <u>Rights and Remedies Upon Event of Default or ABL Cash Collateral Termination Event</u>.

(a) Immediately upon the occurrence and during the continuation of an Event of Default under any of the DIP Documents or this Final Order, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order, after the expiry of the Remedies Notice Period, the DIP Agent may declare (any such declaration shall be referred to herein as a "<u>Termination Declaration</u>") (a) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (b) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (c) the termination of the DIP Facility and any other DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, (d) that the application of the Carve Out has occurred through the delivery of the Carve Out Trigger Notice to the Borrowers, and (e) a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral other than proceeds of the ABL Collateral (the date which is the earliest to occur of the DIP Termination Date or any date a Termination Declaration is delivered by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Prepetition ABL Agent, counsel to

the Committee, and the U.S. Trustee, shall be referred to herein as the "Termination Date"). Upon the occurrence of an ABL Cash Collateral Termination Event, the Prepetition ABL Agent shall be entitled to make a Termination Declaration with respect to the foregoing clause (e) in accordance with the same procedures set forth herein; *provided*, that the Prepetition ABL Agent shall be entitled to terminate, reduce or restrict the ability of the Debtors to use Cash Collateral solely from proceeds of the ABL Collateral (the date upon which the Prepetition ABL Agent makes such Termination Declaration, the "ABL Termination Date").  The automatic stay in the DIP Loan Parties' Cases otherwise applicable to the DIP Agent, the DIP Lenders and the Prepetition Secured Parties is hereby modified so that five (5) business days after the date a Termination Declaration is delivered (the "Remedies Notice Period") unless otherwise ordered by the Court: (a) the DIP Agent and the DIP Lenders shall be entitled to exercise their rights and remedies in accordance with the DIP Documents and this Final Order to satisfy the DIP Obligations, DIP Superpriority Claim and DIP Liens, subject to the Carve Out; (b) the Prepetition Term Loan Parties shall be entitled to exercise their rights and remedies in accordance with the Prepetition Term Loan Documents and this Final Order to satisfy the Prepetition Term Loan Obligations, Prepetition Term Loan Adequate Protection Superpriority Claim and Prepetition Term Loan Adequate Protection Lien, subject to the Carve Out; and (c) provided the Court has not ordered otherwise, the Prepetition ABL Agent shall be entitled to apply any amounts on deposit in the Reserve Account and any other deposit account (but, for the avoidance of doubt, not the Professional Fees Account (as defined herein)) and other cash on hand to satisfy the Prepetition ABL Obligations, Prepetition ABL Adequate Protection Superpriority Claim, and Prepetition ABL Adequate Protection Lien, without further notice or order (an "ABL Cash Collateral Sweep").

54

(b)       During the Remedies Notice Period, the Debtors, the Committee, and/or any party in interest shall be entitled to seek an emergency hearing before the Court, solely to contest whether an Event of Default or ABL Cash Collateral Termination Event has occurred or to seek to use of the Prepetition Secured Parties' Cash Collateral on a nonconsensual basis.  Unless the Court orders otherwise, the automatic stay, as to each of the DIP Agent, DIP Lenders, and Prepetition Secured Parties, as applicable, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order as set forth in this paragraph 38.  Upon expiration of the Remedies Notice Period, the DIP Agent, DIP Lenders, and the Prepetition Secured Parties, as applicable, shall be permitted to exercise all remedies set forth herein, in the DIP Documents, the Prepetition Documents, and as otherwise available at law without further order of or application or motion to the Court consistent with paragraph 47 of this Final Order; *provided, however*, that, without limiting the right of the Prepetition ABL Agent to effect an ABL Cash Collateral Sweep without further notice or order, upon expiration of the Remedies Notice Period, the Prepetition ABL Agent shall be entitled to (i) seek an emergency hearing with the Court for the purpose of seeking further relief from the automatic stay and (ii) unless otherwise ordered by the Court, exercise all remedies set forth herein, in the Prepetition ABL Documents and as otherwise available at law.

39.       Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order.  The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties have acted at arms' length in good faith in connection with this Final Order and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code.

40.     <u>DIP and Other Expenses; Procedures for Payment of DIP Agent's, DIP Lenders' and Prepetition Secured Parties' Professional Fees and Expenses</u>.  The DIP Loan Parties are authorized to pay all reasonable and documented prepetition and postpetition fees and expenses of the DIP Agent and DIP Lenders in connection with the DIP Facility, as provided in the DIP Documents, or incurred in connection with any proposed exit or acquisition financing, chapter 11 plan or transactions contemplated thereunder or sale transaction (including the preparation and negotiation of the documentation relating to any such exit or acquisition financing, plan or sale transaction), whether or not the transactions contemplated hereby are consummated, as well as all reasonable and documented prepetition and postpetition fees and expenses of the Prepetition Secured Parties, in each case including reasonable and documented attorneys' fees, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of reasonable and documented fees and expenses, including the fees and expenses of the Term Advisors.  Payment of all professional fees and expenses of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties addressed in this Final Order (including the Term Advisors and the ABL Advisors) shall not be subject to allowance by the Court.  Any time that professionals for the DIP Agent, DIP Lenders and the Prepetition Secured Parties (including the Term Advisors and the ABL Advisors) seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its invoices (which shall not be required to contain time entries or otherwise comply with the Guidelines of the United States Trustee, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the

WEIL:\97590314\1\30950.0070

provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee and counsel for the Committee contemporaneously with the delivery of such fee and expense statements to the Debtors (collectively with the U.S. Trustee and the Committee, the "Fee Notice Parties"). Any objections raised by the Fee Notice Parties with respect to the Debtors' payment of the amounts in such invoices must be served upon the applicable DIP Agent, DIP Lender, or Prepetition Secured Party within ten (10) days of the objecting Fee Notice Party's receipt of such invoice. Any objection that cannot be consensually resolved by the applicable DIP Agent, DIP Lender, or Prepetition Secured Party and the applicable Fee Notice Party shall be subject to resolution by the Court. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors. Notwithstanding the foregoing, the Debtors are authorized and directed to pay (or authorize the reimbursement from any prepetition retainers) on the Closing Date (as defined in the DIP Agreement) all reasonable, undisputed and documented fees, costs and expenses, including fees and expenses of counsel, of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties incurred on or prior to such date without the need for any professional engaged by the DIP Agent, the DIP Lenders or the Prepetition Secured Parties to first deliver a copy of its invoice as provided for herein. No attorney or advisor to the DIP Agent, DIP Lenders or the Prepetition Secured Parties shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court and any and all fees and expenses payable pursuant to the DIP Documents shall not be subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

41.    Proofs of Claim. Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Cases or any Successor Cases to the

contrary, the DIP Agent, the DIP Lenders, and Prepetition Secured Parties will not be required to file proofs of claim in any of the Cases or Successor Cases for any claims arising under the DIP Documents or the Prepetition Documents. The Debtors' stipulations, admissions, and acknowledgments and the provisions of this Final Order shall be deemed to constitute a timely filed proof of claim for the DIP Agent, the DIP Lenders and the Prepetition Secured Parties with regard to all claims arising under the DIP Documents or the Prepetition Documents. Notwithstanding the foregoing, each of (a) the Prepetition ABL Agent on behalf of itself and the other Prepetition ABL Parties and (b) the Prepetition Term Loan Agent on behalf of itself and the other Prepetition Term Loan Parties is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate or master proofs of claim in each of the Cases or Successor Cases for any claim described herein (with any such aggregate or master proof of claim filed in the Cases deemed to be filed in all Cases of the Debtors and asserted against all of the Debtors). Any proof of claim filed by the Prepetition ABL Agent or Prepetition Term Loan Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition ABL Parties or Prepetition Term Loan Parties, respectively. Any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases shall not apply to any claim of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties. The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

42. <u>Rights of Access and Information</u>. The Debtors and their agents and advisors shall be, and hereby are, required to, reasonably cooperate, consult with, and provide to

the Prepetition ABL Agent all such information as may be reasonably requested, including all reports and other information as required in the DIP Agreement, the Prepetition ABL Agreement, and this Final Order. In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants, to cooperate, consult with, and provide to the DIP Agent, the Prepetition ABL Agent, and their respective advisors all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the Borrowers or Guarantors.

43.     <u>Professional Fees Account</u>.   Starting with the first full calendar week following the Petition Date, each Case Professional shall deliver to the Debtors a statement (each such statement, a "<u>Weekly Statement</u>") setting forth a good-faith estimate (the "<u>Estimated Fees and Expenses</u>") of the amount of unpaid fees and expenses incurred during the preceding week such Case Professional (through Saturday of each week, the "<u>Calculation Date</u>"), along with the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (the "<u>Cumulative Total Unpaid Fees and Expenses</u>").   No later than one (1) business day after the delivery of a Carve Out Trigger Notice (defined below) (the "<u>Carve Out Trigger Declaration Date</u>"), each Case Professional shall deliver one additional statement (the "<u>Final Statement</u>") to the Debtors setting forth a good-faith estimate of the amount of unpaid fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has already been delivered and concluding on the Carve Out Trigger Declaration Date, and the Debtors shall transfer such amounts to the Professional Fees Account (as defined herein).   The Debtors shall, on a weekly basis, transfer cash proceeds from the DIP Facility or cash on hand, other than proceeds of ABL Collateral, in

an amount equal to the Cumulative Total Unpaid Fees and Expenses included in the most recent Weekly Statement timely received by the Debtors less the amount of cash already deposited in the Professional Fees Account, or if a report is not provided, the total budgeted weekly fees of Case Professionals for the prior week set forth in the Budget, in each case into a segregated account not subject to the control of the DIP Agent, any DIP Lender or any Prepetition Secured Party (the "Professional Fees Account").  The Debtors shall cause funds held in the Professional Fees Account to be used to pay Professional Fees solely as they become allowed and payable pursuant to any interim or final orders of the Bankruptcy Court or otherwise; *provided* that when all accrued and unpaid fees, disbursements, costs and expenses, allowed at any time by this Court (the "Allowed Professional Fees") and incurred by professionals retained by the Debtors or the Committee (collectively, the "Case Professionals") have been paid in cash in full (regardless of when such Professional Fees are allowed by the Bankruptcy Court), any funds remaining in the Professional Fees Account shall revert to the Debtors for use in accordance with the DIP Agreement and this Final Order; *provided further* that the Debtors' obligations to pay Allowed Professional Fees shall not be limited or be deemed limited to funds held in the Professional Fees Account.  The Professional Fees Account, and all funds held in the Professional Fees Account, shall be held in trust exclusively for the benefit of Case Professionals (as defined below), including with respect to obligations arising out of the Carve Out.  For the avoidance of doubt, after the occurrence of the Sale, or repayment of the DIP Obligations or Prepetition Secured Obligations in full, the Debtors' obligations to fund the Professional Fees Account as set forth in this Final Order shall remain in effect and shall continue until all Allowed Professional Fees are paid in full (regardless of when such Professional Fees are allowed by the Bankruptcy Court).

44.    <u>Carve Out</u>.

(a)    Other than as expressly set forth in this Final Order, the Debtors' obligations to the DIP Agent and DIP Lenders and Prepetition Secured Parties and the liens, security interests, and superpriority claims granted herein, under the DIP Documents and/or under the Prepetition Documents, including, without limitation, the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens, and the Prepetition Liens, shall be subject in all respects and subordinate to the Carve Out.  For the avoidance of doubt, after the occurrence of the DIP Termination Date, an Event of Default, an ABL Cash Collateral Termination Event, or repayment of the DIP Obligations in full, the Carve Out shall remain in effect as to the Prepetition Secured Facilities as set forth in this Final Order, with respect to Allowed Professional Fees incurred prior to and after such date, and any funding by the DIP Loan Parties shall be made in relation to the Carve Out in accordance with the terms of this Final Order.  For the avoidance of doubt, and notwithstanding anything to the contrary contained in this Final Order, the Prepetition ABL Liens and the Prepetition ABL Adequate Protection Liens on the Prepetition ABL Collateral shall not be subject or subordinate to the Carve Out, and the Carve Out shall not be funded with proceeds of ABL Collateral.

(b)    As used in this Final Order, the term "<u>Carve Out</u>" means the sum of:

(i)    Allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6) for fees payable to the Office of the United States Trustee, as determined by agreement of the U.S. Trustee or by final order of this Court and 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of this Court;

61

(ii)     An amount equal to $12.0 million (in excess of any amounts in the Professional Fees Account), which shall be funded into the Professional Fees Account from the proceeds of the DIP Collateral other than ABL Collateral on the closing of any sale of all or substantially all of the Term Loan Collateral, or by the DIP Lender upon any foreclosure or credit bid, and which shall be senior in all respects to the Prepetition ABL Secured Parties; and

(iii)     All accrued and unpaid fees, disbursements and expenses incurred by the Case Professionals from and after the date of service of a Carve Out Trigger Notice, to the extent allowed at any time, in an aggregate amount not to exceed $750,000 (the "Wind-Down Carve Out Amount").

(c)     So long as no Carve Out Trigger Notice has been issued by the DIP Agent, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable and otherwise allowed and payable by order of the Court, and the same shall not reduce the Wind-Down Carve Out Amount.  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by the DIP Agent (or the Prepetition Secured Parties after the indefeasible repayment of the DIP Obligations in full) to the Debtors and their counsel, the U.S. Trustee, the Prepetition ABL Agent and its counsel, and lead counsel to any Committee, which notice may be delivered at any time by the DIP Agent (i) at the time the DIP Obligations and the Prepetition Term Loan Obligations are to be Paid in Full or (ii) following the occurrence and continuance of any Event of Default and, in any case, shall specify that it is a "Carve Out Trigger Notice."  The DIP Agent and DIP Lenders shall have no liability whatsoever for the Carve Out (including any amounts described in subsections (b)(i)-(iii) above) following

WEIL:\97590314\1\30950.0070

the earlier of (x) such time as the DIP Obligations are Paid in Full and (y) funding of the Carve Out following delivery of a Carve Out Trigger Notice; *provided, however*, that the DIP Obligations shall not be deemed Paid in Full prior to such time as the DIP Agent and DIP Lenders have satisfied their obligations to fund the Professional Fees Account and Carve Out as set forth herein.   Any payment or reimbursement made on or after the Carve Out Trigger Declaration Date in respect of any fees or expenses of the Case Professionals shall permanently reduce the Wind-Down Carve Out Amount on a dollar-for-dollar basis.   For the avoidance of doubt, any funding of the Carve Out from the proceeds of the DIP Facility shall be a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under the Final Order, the DIP Documents, the Bankruptcy Code and applicable law.

(d)     Delivery of a Carve Out Trigger Notice shall be deemed, to the extent not previously funded into the Professional Fees Account, a demand to the Debtors to (a) fund into the Professional Fees Account an amount equal to the difference between the aggregate amount of unpaid Estimated Fees and Expenses in each timely delivered Final Statement and the amount of cash already funded into the Professional Fees Escrow Account as of the Carve Out Trigger Declaration Date; and (b) utilize all cash on hand (including proceeds of DIP Collateral but excluding proceeds of ABL Collateral) after funding the Professional Fees Account to fund a cash reserve in an amount equal to all obligations benefitting from the Carve Out, including the amount described in subsection (b)(ii) above and the Wind-Down Carve Out Amount.   The Debtors will deposit and hold such amounts in a segregated account outside the control of any DIP Agent, DIP Lender, or any Prepetition Secured Party exclusively to pay such obligations (the "Carve Out Reserve Account," and together with the Professional Fees Account, the "Carve Out Reserves"), *provided* that the Carve Out Reserve Account may be the

63

Professional Fees Account.  Notwithstanding anything to the contrary in the DIP Documents, or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 44, then any excess funds in the Professional Fees Account following the payment of Allowed Professional Fees pursuant to clause (ii) of the definition of Carve Out, and the Carve Out Reserve Account following the payment of the Allowed Professional Fees pursuant to clause (iii) of the definition of Carve Out, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 44, prior to making any payments to the DIP Agent or the Prepetition Term Loan Parties, as applicable. Notwithstanding anything to the contrary in the DIP Documents or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agent and the Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets but excluding any ABL Cash Collateral Sweep as and when provided for by this Final Order) of the Debtors until the Carve Out Reserves have been fully funded to the Professional Fees Account or Carve Out Reserve Account, as applicable, and any excess shall be paid to the DIP Agent for application in accordance with the DIP Loan Documents. Further, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute DIP Loans or increase or reduce the DIP Obligations, and (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out.  For avoidance of doubt, the Carve Out Reserves shall not be funded with proceeds of ABL Collateral and shall not be subject to any liens or claims asserted by the Prepetition ABL Lenders, other than with respect to the Prepetition ABL Adequate Protection Liens as set forth herein, and no proceeds of the Carve Out

Reserves shall be used to pay any claim of the Prepetition ABL Lenders, other than in satisfaction of the Prepetition ABL Adequate Protection Liens as set forth herein.

(e)     Notwithstanding anything to the contrary in this Final Order, (i) the failure of the Professional Fees Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (ii) in no way shall the Budget, Carve Out, Wind-Down Carve Out Amount, Professional Fees Account, or any of the foregoing be construed as a cap or limitation on the amount of Allowed Professional Fees due and payable by the Debtors.

(f)     Nothing herein, including the inclusion of line items in the Budget for Case Professionals, shall be construed as consent to the allowance of any particular professional fees or expense of the Debtors, of any Committee, or of any other person or shall affect the right of the DIP Agent, the Prepetition Agents, or the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.  The DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders or the Prepetition Secured Parties in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

45.     <u>Limitations on Use of DIP Proceeds, Cash Collateral, and Carve Out</u>.  The DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral and the Carve Out may not be used in connection with: (a) preventing, hindering, or delaying any of the DIP

Agent's, the DIP Lenders', or the Prepetition Secured Parties' permitted enforcement or realization upon any of the DIP Collateral or Prepetition Collateral; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral or ABL Collateral without the consent of the DIP Agent, (in the case of DIP Collateral constituting Term Loan Collateral), or the Prepetition ABL Agent, (in the case of ABL Collateral (including the proceeds thereof)), or as permitted by the DIP Documents, Prepetition ABL Documents, or this Final Order, as applicable, or in the Remedies Notice Period; (c) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agent; (d) incurring Indebtedness (as defined in the DIP Agreement) without the prior consent of the DIP Agent, except to the extent permitted under the DIP Agreement and this Final Order; (e) seeking to amend or modify any of the rights granted to the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties under this Final Order, the DIP Documents, or the Prepetition Documents, including seeking to use Cash Collateral and/or DIP Collateral or ABL Collateral on a contested basis; (f) objecting to or challenging in any way the DIP Liens, DIP Obligations, Prepetition Liens, Prepetition Secured Obligations, DIP Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, respectively; (g) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; (h) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any

of the DIP Obligations, the DIP Liens, the Prepetition Liens, Prepetition Secured Obligations or any other rights or interests of any of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties; or (i) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations or the Prepetition Secured Obligations; *provided, however*, that the Carve Out and such collateral proceeds and loans under the DIP Documents may be used for allowed fees and expenses, in an amount not to exceed $50,000 in the aggregate (the "Investigation Budget Amount"), incurred solely by the Committee in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition Liens within sixty (60) days from the date of formation of the Committee unless otherwise extended by the Court.

46.     Payment of Compensation.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professional or shall affect the right of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.  So long as an unwaived Event of Default has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable by final order (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, but solely to the extent the same are incurred in accordance with (and not in excess of those amounts set forth in) the Budget and are reflected as estimates in, and maintained as a reserve under, the most recent borrowing base report delivered to the DIP Agent and the Prepetition ABL Agent by the Debtors.

47.     Effect of Stipulations on Third Parties.

(a)     *Generally*.  The admissions, stipulations, agreements, releases, and waivers set forth in this Final Order (collectively, the "Prepetition Lien and Claim Matters") are

and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including, without limitation, the Committee, unless, and solely to the extent that, a party in interest or the Committee has sought and obtained standing and the authority to commence a Challenge (as defined below) (other than the Debtors, as to which any Challenge is irrevocably waived and relinquished) (i) has timely commenced the proceeding required under the Bankruptcy Code and Bankruptcy Rules, challenging the Prepetition Lien and Claim Matters (each such proceeding or pleading commencing a proceeding or other contested matter, a "Challenge") by no later than (A) for the Committee, sixty (60) days from the date of formation of the Committee, or (B) seventy-five (75) days following the entry of the Interim Order for any other party in interest with requisite standing (the earlier to occur of (A) and (B), the "Challenge Deadline"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition ABL Agent (with respect to the Prepetition ABL Documents) and the Prepetition Term Loan Agent (with respect to the Prepetition Term Loan Documents), or by this Court for cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal. Notwithstanding the foregoing, if a chapter 11 trustee is appointed or the Cases are converted to chapter 7 prior to the expiration of the Challenge Deadline, (1) the chapter 11 trustee or chapter 7 trustee, as applicable, shall have until the later of the Challenge Deadline or the tenth (10th) day after the appointment of the chapter 11 trustee or the conversion of the Case to chapter 7, as applicable, to commence a Challenge, subject to any further extension by order of the Court for

cause, and (2) if the Committee has asserted a Challenge prior to the Challenge Deadline, the chapter 11 trustee or chapter 7 trustee shall stand in the shoes of the Committee in such Challenge.  For the avoidance of doubt, notwithstanding anything to the contrary herein, the repayment of the Prepetition Term Loan Obligations remains subject to Challenge by the Challenge Deadline.

(b)      *Binding Effect*.  To the extent no Challenge is timely commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall, pursuant to this Final Order, become binding, conclusive, and final on any person, entity, or party in interest in the Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates.  Notwithstanding anything to the contrary herein, if any such proceeding is timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Prepetition Lien and Claim Matters is expressly the subject of a timely filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (a) above.  To the extent any such Challenge proceeding is timely commenced, the Prepetition Secured Parties shall be entitled, subject to paragraph 39 herein, to payment of the reasonable related costs and expenses, including, but not limited to reasonable attorneys' fees, incurred under the Prepetition Documents in defending

themselves in any such proceeding as adequate protection.  Upon a successful Challenge brought pursuant to this paragraph 47, the Court may fashion any appropriate remedy.

48.     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

49.     <u>Section 506(c) Claims</u>.  Except as to the ABL Collateral, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Agent, the DIP Lenders, or the Prepetition Term Loan Parties or any of their respective claims, the DIP Collateral, or the Prepetition Term Loan Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Agent, the DIP Lenders, or the Prepetition Term Loan Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.  For the avoidance of doubt, notwithstanding anything to the contrary herein, the Prepetition ABL Parties are not granted a waiver of surcharges pursuant to sections 105 or 506(c) of the Bankruptcy Code or any similar principle of law under this order.

50.     <u>No Marshaling/Applications of Proceeds</u>.  The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Final Order and the DIP Documents notwithstanding any other agreement or provision to the contrary.

51.     <u>Section 552(b)</u>.  The Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the

70

case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

52.     Access to DIP Collateral and Prepetition Collateral.  Upon expiration of the Remedies Notice Period, the DIP Agent, DIP Lenders and the Prepetition Secured Parties shall be permitted, as applicable, to (a) access and recover any and all DIP Collateral or Prepetition Collateral, and (b) enter onto any leased premises of any Debtor and exercise all of the Debtors' rights and privileges as lessee under such lease in connection with an orderly liquidation of the DIP Collateral and/or Prepetition Collateral, *provided*, *however*, in the case of clause (b), the DIP Agent, DIP Lenders and/or Prepetition Secured Parties can only enter upon a leased premises after an Event of Default in accordance with (i) a separate written agreement by and between the DIP Agent, DIP Lenders and the Prepetition Secured Parties, as applicable, and any applicable landlord, (ii) pre-existing rights of the DIP Agent, DIP Lenders and the Prepetition Secured Parties, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) entry of an order of this Court obtained by motion of the applicable DIP Agent, DIP Lender, or Prepetition Secured Party on such notice to the landlord as shall be required by this Court; *provided*, *however*, that nothing herein shall relieve the Debtors of their obligations pursuant to section 365(d)(3) of the Bankruptcy Code for the payment of rent that accrues prior to delivery of the Termination Declaration through and including any assumption and/or rejection of any lease, subject to any defenses.  Nothing herein shall require the DIP Agent, DIP Lenders or the Prepetition Secured Parties to assume any lease as a condition to the rights afforded in this paragraph.

WEIL:\97590314\1\30950.0070

53.     <u>Limits on Lender Liability</u>.  Nothing in this Final Order, any of the DIP Documents, the Prepetition Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Cases.  The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not, solely by reason of having made loans under the DIP Facility or permitting the use of Cash Collateral, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).  Nothing in this Final Order or the DIP Documents, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

54.     <u>Insurance Proceeds and Policies</u>.  Upon entry of this Final Order and to the fullest extent provided by applicable law, the DIP Agent (on behalf of the DIP Lenders) and the Prepetition Agents (on behalf of the Prepetition Secured Parties) shall be, and shall be deemed to be, without any further action or notice, named as additional insured, lender loss payee, mortgagee and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral (which shall not include directors and officers policies).

55.     <u>Committee Reservation of Rights</u>.  For the avoidance of doubt, all rights of the Committee to object to any of the provisions of any future financing or cash collateral

order are hereby reserved and all rights of the Committee are reserved to object to any provision of this Final Order in the event the Sale Transaction does not close. Further, the time period for the Committee to file a Challenge as set forth in paragraph 47 of this Final Order shall be tolled until such time as the Sale Transaction either closes or is terminated by notice filed with the Court.

56.     <u>Taxing Authorities</u>.  Notwithstanding any provisions of this Final Order, to the extent the liens currently held by certain Local Tax Authorities[8] for prepetition taxes arising under state law on any DIP Collateral are valid, perfected, enforceable, and non-avoidable (the "<u>Local Tax Authority Liens</u>") the DIP Liens and Adequate Protection Liens shall be junior in priority and subject to such valid, perfected, and enforceable Local Tax Authority Liens. To the extent any of the Debtors' assets subject to the Local Tax Authority Liens are sold, transferred, or otherwise disposed of, the Local Tax Authority Liens shall attach to such proceeds to the same extent and with the same priority as existed prior to such sale, transfer, or other disposition. All parties' rights to object to the priority, validity, amount, and extent of the claims and liens asserted by the Local Tax Authorities are fully preserved.

57.     <u>Joint and Several Liability</u>.  Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the DIP Loan Parties shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Facility and the DIP Documents.

---

[8] The "**Local Tax Authorities**" means (i) in Texas: Williamson County, Hays County, Denton County, Allen, Allen ISD, Bexar County, Cypress-Fairbanks ISD, Dallas County, El Paso, Galveston County, Harris County, Hidalgo County, Montgomery County, Northwest ISD, Nueces County, San Marcos CISD, and Tarrant County, Dickinson ISD, Harris County, Woodlands Metro, Woodlands RUD, City of Mercedes, Mercedes ISD, and Arlington OSD; and (ii) in Arizona: Maricopa County.

58.    <u>No Superior Rights of Reclamation</u>.  Based on the findings and rulings herein regarding the integrated nature of the DIP Facility and the Prepetition Documents, the right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien; rather, any such alleged claims arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Liens as such claim had with the Prepetition Liens.

59.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Agent's, DIP Lenders' and Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Agent, DIP Lenders and/or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Agent, DIP Lenders or Prepetition Secured Parties.   Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', the DIP Loan Parties', or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence, except as expressly

set forth in this Final Order, or to seek non-consensual use of Cash Collateral of the Prepetition Secured Parties.

60.     <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Agent, DIP Lenders, or Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Order, the DIP Documents, the Prepetition Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, DIP Lenders, Prepetition Secured Parties, the Committee, or any party in interest.

61.     <u>Binding Effect of Final Order</u>.  Subject to paragraph 47, immediately upon execution by this Court, the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, DIP Agent, DIP Lenders, Prepetition Secured Parties, all other creditors of any of the Debtors, any Committee (or any other court appointed committee) appointed in the Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

62.     <u>No Modification of Final Order</u>.  Until and unless the DIP Obligations and the Prepetition Secured Obligations have been Paid in Full and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Agent or the Prepetition Agents, as applicable, (i) any modification, stay, vacatur or amendment to this Final Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b),

506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claim or Adequate Protection Superpriority Claims, other than the Carve Out and except to the extent expressly provide in this Final Order or the DIP Agreement; (b) without the prior written consent of the DIP Agent or the Prepetition Agents, for any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from DIP Collateral or Prepetition Collateral in a manner inconsistent with this Final Order; (c) without the prior written consent of the DIP Agent, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents; or (d) without the prior written consent of the Prepetition Agents, any lien on any of the DIP Collateral or Prepetition Collateral with priority equal or superior to the Prepetition Liens or Adequate Protection Liens.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP Agent or the Prepetition Agents, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent or the Prepetition Agents.

63.  <u>Final Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Documents and of this Final Order, the provisions of this Final Order shall govern and control.

64.  <u>Discharge</u>.  The DIP Obligations, and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been Paid in Full, on or

76

before the effective date of such confirmed plan of reorganization, or each of the DIP Agent, DIP Lenders, and each of the Prepetition Agents, as applicable, has otherwise agreed in writing.

65. <u>Survival</u>. The provisions of this Final Order, including, without limitation, (a) the Carve Out and (b) all of the rights, privileges, benefits and protections afforded herein and in the DIP Documents, and any actions taken pursuant hereto, shall survive, shall continue in full force and effect, shall remain binding on all parties in interest, and shall maintain their priorities, and shall not be modified, impaired, or discharged by, entry of any order which may be entered: (i) confirming any plan of reorganization in any of the Cases; (ii) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (iii) dismissing any of the Cases or any Successor Cases; or (iv) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases. The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Agent, DIP Lenders and Prepetition Secured Parties granted pursuant to this Final Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until: (x) in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Documents and this Final Order, have been Paid in Full (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility are terminated; (y) in respect of the Prepetition ABL Facility, all of the Prepetition ABL Obligations pursuant to the Prepetition ABL Documents and this Final Order, have been Paid in Full; and (z) in respect of the Prepetition Term Loan Agreement, all of the Prepetition Term Loan Obligations pursuant to the Prepetition Term Loan Documents and this Final Order have been Paid in Full. The terms

and provisions concerning the indemnification of the DIP Agent and DIP Lenders shall continue in the Cases, in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Documents and/or the DIP Obligations being Paid in Full.  In addition, the terms and provisions of this Final Order shall continue in full force and effect for the benefit of the Prepetition ABL Parties notwithstanding the DIP Obligations and the Prepetition Term Loan Obligations being Paid in Full.  Further, the terms and provisions of this Final Order concerning the Debtors' obligations to fund the Professional Fees Account shall continue in full force and effect notwithstanding a Sale, the DIP Obligations being Paid in Full, and/or the Prepetition Secured Obligations being Paid in Full.

66.     _Nunc Pro Tunc_ Effect of this Final Order.   This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), and 6006(d), and 7062 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of effectiveness of this Final Order.

67.     Retention of Jurisdiction.   The Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Facility, and/or this Final Order.

Dated: August 14th, 2020
Wilmington, Delaware

CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE