## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

------------------------------------------------------------ x
                                                            :
In re                                                       :        **Chapter 11**
                                                            :
**BROOKS BROTHERS GROUP, INC.,** *et al.*,                  :        **Case No. 20–11785 (CSS)**
                                                            :
                                   Debtors.[1]              :        **(Jointly Administered)**
                                                            :
                                                            :        **Re: D.I. 154, 204, 285**
------------------------------------------------------------ x

## ORDER (I) APPROVING ASSET PURCHASE AGREEMENT, (II) AUTHORIZING SALE TO THE STALKING HORSE BIDDER OF THE ACQUIRED ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (III) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Sale Motion**"),[2] dated July 15, 2020 [D.I. 154], of Brooks Brothers Group, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to sections 105, 363, 365, 503, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking, among other things, entry of an order authorizing and approving the sale of substantially all of the Debtors' assets and the assumption and assignment of certain executory contracts and unexpired

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Brooks Brothers Group, Inc. (8883); Brooks Brothers Far East Limited (N/A); BBD Holding 1, LLC (N/A), BBD Holding 2, LLC (N/A), BBDI, LLC (N/A), Brooks Brothers International, LLC (N/A); Brooks Brothers Restaurant, LLC (3846); Deconic Group LLC (0969); Golden Fleece Manufacturing Group, LLC (5649); RBA Wholesale, LLC (0986); Retail Brand Alliance Gift Card Services, LLC (1916); Retail Brand Alliance of Puerto Rico, Inc. (2147); and 696 White Plains Road, LLC (7265).  The Debtors' corporate headquarters and service address is 346 Madison Avenue, New York, New York 10017.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Asset Purchase Agreement (as defined herein) or, if not defined in the Asset Purchase Agreement, the meanings ascribed to such terms in the Sale Motion.

leases of the Debtors in connection therewith; and this Court having held a hearing on August 3,

2020 (the "**Bidding Procedures Hearing**") and having taken into consideration this Court's prior

order, dated August 3, 2020 [D.I. 285] (the "**Bidding Procedures Order**"), approving bidding

procedures for the sale of substantially all of the Debtors' assets (the "**Bidding Procedures**") and

granting certain related relief; and SPARC Group LLC, a Delaware limited liability company,

together with its permitted assigns pursuant to Section 9.6 of the Asset Purchase Agreement (all

such entities, collectively "**Buyer**") having submitted the highest and best bid[3] for the Acquired

Assets and having been declared the Successful Bidder (as defined in the Bidding Procedures

Order) by the Debtors; and this Court having conducted a hearing to consider the Sale Transaction

(as defined herein) on August 14, 2020 (the "**Sale Hearing**"), during which time all interested

parties were offered an opportunity to be heard with respect to the Sale Motion; and this Court

having reviewed and considered (i) the Sale Motion and the exhibits thereto; (ii) the *Asset Purchase*

*Agreement*, dated as of July 23, 2020 and annexed to the Bidding Procedures Order, as amended

by the *First Amendment to the Asset Purchase Agreement,* dated as of August 11, 2020 and

annexed to the *Notice of Cancellation of Auction and Designation of the Stalking Horse Bid as the*

*Successful Bid*, filed on August 11, 2020 [D.I. 375], (as amended, supplemented or otherwise

modified, including all exhibits, schedules and other attachments thereto, the "**Asset Purchase**

**Agreement**"), by and among certain of the Debtors and Buyer, whereby the applicable Debtors

have agreed to, among other things, sell or cause to be sold the Acquired Assets to Buyer, including

the Transferred Contracts and Assumed Leases of the Debtors that will be assumed and assigned

to Buyer (the "**Assumed Contracts**"), on the terms and conditions set forth in the Asset Purchase

---

[3]    Copies of the Asset Purchase Agreement and the amendment thereto are annexed hereto as **Exhibit A-1** and **Exhibit A-2**, respectively.

Agreement (the "**Sale Transaction**"); (iii) the Bidding Procedures Order and the record of the Bidding Procedures Hearing, at which the Bidding Procedures Order was approved; (iv) *the Declaration of Derek Pitts in Support of Motion of Debtors for Entry of Orders (I) Approving (A) Bidding Procedures, (B) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (C) Assumption and Assignment Procedures, (II) Scheduling Auction and Sale Hearing, (III) Approving (A) Sale of Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief, and the Supplement Related Thereto* [D.I. 206] (the "**Sale Declaration**"); and (v) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and due notice of the Sale Motion, the Sale Hearing, and the form of this Order (the "**Sale Order**") having been provided; and all objections to the Sale Transaction and the Sale Order having been withdrawn, resolved, or overruled; and it appearing that the relief granted herein is in the best interests of the Debtors, their estates, creditors, and all parties in interest in these chapter 11 cases; and upon the record of the Sale Hearing and these chapter 11 cases; and after due deliberation and sufficient cause appearing therefor, it is hereby

## FOUND AND DETERMINED THAT:

A.      **Fed. R. Bankr. P. 7052**.  The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. The Court's findings shall also include any oral findings of fact and conclusions of law made by this Court during or at the conclusion of the Sale Hearing.  This Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

B.    __Jurisdiction and Venue__.  This Court has jurisdiction over the Sale Motion, the Asset Purchase Agreement, the Sale Transaction and the property of the Debtors' estates, including the Acquired Assets, pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) that this Court can decide by final order under the United States Constitution.  Venue of these chapter 11 cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.    __Statutory and Rule Predicates__.  The statutory and other legal predicates for the relief granted herein are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014.

D.    __Notice and Opportunity to Object__.  As evidenced by the Affidavit of Service Regarding Sale[4] and the Certificates of Publication[5] previously filed with the Court, a fair and reasonable opportunity to object to, and be heard with respect to, the Sale Motion and the Sale Transaction has been given to all Persons entitled to notice pursuant to the Bidding Procedures Order, including, but not limited to, the following:  (i) counsel for the Buyer, Paul, Weiss, Rifkind, Wharton & Garrison LLP; (ii) counsel to the Prepetition ABL Agent, Choate, Hall & Stewart LLP; (iii) proposed counsel for the Committee, Akin Gump Strauss Hauer & Feld LLP and Troutman Pepper Hamilton Sanders LLP; (iv) the United States Trustee for the District of Delaware; (v) all counterparties to the Assumed Contracts; (vi) all persons and entities known by the Debtors to have asserted any lien, claim, encumbrance, or other interest in any Acquired Asset; (vii) all affected federal, state and local regulatory and taxing authorities; (viii) all persons or entities known by the Debtors and their advisors to have recently expressed an interest in a transaction

---

[4]    See *Affidavit of Service* [D.I. 3364] (the "**Affidavit of Service Regarding Sale**").

[5]    See *Certificate of Publication* [D.I. 359]; and *Certificate of Publication* [D.I. 361] (the "**Certificates of Publication**").

with respect to any of the Acquired Assets; (ix) all of the Debtors' known creditors (for whom identifying information and addresses are available to the Debtors); and (x) all parties that have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

E. **Final Order**. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale Transaction as contemplated by the Asset Purchase Agreement. In the absence of a stay pending appeal, Buyer, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the sale contemplated by the Asset Purchase Agreement at any time after the entry of this Order and shall not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

F. **Sound Business Purpose**. The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of and entry into the Asset Purchase Agreement, and the other agreements, documents, and instruments deliverable thereunder or attached thereto or referenced therein (collectively, the "**Transaction Documents**"), and approval of the Sale Transaction. The Debtors' entry into and performance under the Transaction Documents (i) constitute a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties, (ii) provide value to and are beneficial to the Debtors' estates, and are in the best interests of the Debtors and their stakeholders, and (iii) are reasonable and appropriate under the circumstances. Business justifications for the Sale Transaction include, but are not limited to, the following: (a) the Purchase Price and the other terms set forth in the Asset Purchase Agreement constitute the highest and best offer received for the Acquired Assets; and (b) the Sale Transaction on the terms set forth in the Transaction Documents presents the best opportunity to maximize the value of the Acquired Assets on a going concern basis and avoids a

liquidation of the Acquired Assets, which would result in more Claims against the Debtors' estates and would result in significantly less value for all stakeholders of the relevant Debtors.

G.     **Compliance with Bidding Procedures Order**.  On August 3, 2020, this Court entered the Bidding Procedures Order approving the Bidding Procedures for, among other things, the Acquired Assets.  The Bidding Procedures provided a full, fair, and reasonable opportunity for any entity or Person to make an offer to purchase the Acquired Assets.  The Debtors and Buyer complied with the Bidding Procedures and the Bidding Procedures Order in all respects except as properly waived in the exercise of their fiduciary duties in accordance with the Bidding Procedures.  Buyer subjected its bid to competitive bidding in accordance with the Bidding Procedures and was designated the Successful Bidder (as defined in the Bidding Procedures) for the Acquired Assets in accordance with the Bidding Procedures and the Bidding Procedures Order.

H.     **Credit Bid**.[6]   Pursuant to the Bidding Procedures, applicable law, including Bankruptcy Code sections 363(b) and 363(k), and in accordance with the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Secured Parties; (V) Modifying the Automatic Stay; and (VI) Granting Related Relief*, dated August 14, 2020 [D.I. 443] (the "**DIP Order**"), the DIP Lenders were authorized to credit bid the DIP Claims for the Acquired Assets. No additional or further evidence of the Buyer's ability to include the Credit Bid as consideration for the Sale Transaction pursuant to the Asset Purchase Agreement is required. The Credit Bid,

---

[6]     Capitalized terms used in this paragraph but not otherwise defined herein shall have their respective meanings ascribed to such terms in the DIP Order.

plus the cash consideration and assumption of the Assumed Liabilities, was a valid and proper offer pursuant to the Bidding Procedures Order and Bankruptcy Code sections 363(b) and 363(k). There is no cause to limit the amount of the Credit Bid pursuant to section 363(k) of the Bankruptcy Code.

I.      **Marketing Process**.  As demonstrated by (a) the Sale Motion, (b) the Sale Declarations, (c) the testimony and other evidence proffered or adduced at the Bidding Procedures Hearing and the Sale Hearing, and (d) the representations of counsel made on the record at the Bidding Procedures Hearing and the Sale Hearing, in light of the exigent circumstances presented: (i) the Debtors and their investment banker, PJ Solomon, L.P., engaged in a robust and extensive marketing and sale process, both prior to the Petition Date and through the postpetition sale process pursuant to the Bidding Procedures Order and the Bidding Procedures; (ii) the Debtors and their advisors conducted a fair and open sale process; (iii) the sale process, and the Bidding Procedures were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets; and (iv) the process conducted by the Debtors pursuant to the Bidding Procedures Order and the Bidding Procedures obtained the highest and best value for the Acquired Assets for the Debtors and their estates, and there was no other transaction available or presented that would have yielded as favorable an economic result for the Acquired Assets.

J.      **Fair Consideration; Highest or Best Value**.  The consideration to be provided by Buyer under the Asset Purchase Agreement is fair and reasonable consideration for the Acquired Assets and constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration and fair value under any

other applicable laws of the United States, any state, territory or possession or the District of Columbia. Such consideration constitutes the highest and best bid for the Acquired Assets. No other person or entity, or group of persons or entities, has offered to purchase the Acquired Assets for an amount that would provide greater value to the Debtors than Buyer. Prompt approval of the Sale Transaction is the only means to preserve and maximize the value of the Acquired Assets. The Sale Transaction is supported by the DIP Agent (as defined in the DIP Order), the DIP Lender (as defined in the DIP Order, and together with the DIP Loan Parties and the DIP Agent, the "**DIP Parties**"), the Prepetition ABL Parties and the Committee.

K.    **No Successor or Other Derivative Liability**. Except as otherwise expressly provided herein, upon Closing, and to the greatest extent allowed by applicable law, Buyer shall not have any liability (including, but not limited to, any successor liability) or other obligation of any of the Debtors, including any liability or obligation arising under or related to the sale and transfer of the Acquired Assets owned by the Debtors to Buyer or with respect to the Excluded Liabilities (as defined in the Asset Purchase Agreement), provided that, upon Closing, Buyer shall remain liable for any Assumed Liabilities. Buyer is not, and the consummation of the Sale Transaction will not render Buyer, a mere continuation, and Buyer is not holding itself out as a mere continuation, of any of the Debtors or their respective estates, enterprise, or operations, and there is no continuity or common identity between Buyer and the Debtors. Accordingly, the Sale Transaction does not amount to a consolidation, merger, or de facto merger of Buyer with or into any of the Debtors or their estates and Buyer is not, and shall not be deemed, as a result of the consummation of the Sale Transaction: (i) to be a successor to any of the Debtors or their estates, (ii) to be the successor of or successor employer (as described under COBRA and applicable regulations thereunder) to the Debtors, including without limitation, with respect to any collective

bargaining agreements (including the Covered Collective Bargaining Agreements) and any employee benefit plans and any common law successorship liability, including with respect to withdrawal liability, (iii) to be the successor of or successor employer to the Debtors, and shall instead be, and be deemed to be, a new employer with respect to any and all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws, (iv) to be a mere continuation or substantial continuation of the Debtors or the enterprise(s) of the Debtors, or (v) to be liable for any acts or omissions of the Debtors in the conduct of the Business or arising under or related to the Acquired Assets owned by the Debtors, other than as set forth in the Asset Purchase Agreement.  Without limiting the generality of the foregoing, and except as otherwise provided in the Asset Purchase Agreement, the parties intend that the Buyer shall not be liable for any Claims (other than Assumed Liabilities) against any Debtor, or any of its predecessors or Affiliates, and the Buyer shall have no successor or vicarious liability of any kind or character whatsoever, whether known or unknown as of the Closing, whether now existing or hereafter arising, whether asserted or unasserted, or whether fixed or contingent, with respect to the Business, the Acquired Assets owned by the Debtors or any Liabilities of any Debtor. The Buyer would not have acquired the Acquired Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

L.    **<u>Good Faith</u>**.    The Transaction Documents and the Sale Transaction were negotiated, proposed, and entered into, and are being undertaken by the Debtors and Buyer in good faith, without collusion, and from arm's-length bargaining positions.  Likewise, the value that the relevant Debtors and their estates will receive on consummation of the Sale Transaction is the product of arm's-length negotiations between the Debtors, Buyer and their respective representatives and advisors.  Buyer is a "good faith purchaser" within the meaning of section

363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby. Buyer has proceeded in good faith in all respects in that, among other things, (i) Buyer agreed to subject the Acquired Assets to higher or better offers; (ii) Buyer complied with the provisions of the Bidding Procedures Order, including compliance with confidentiality obligations and restrictions under the Bidding Procedures and any applicable non-disclosure or confidentiality agreement; (iii) Buyer's bid was subjected to competitive Bidding Procedures as set forth in the Bidding Procedures Order; and (iv) all consideration to be provided by Buyer and all other material agreements or arrangements entered into by Buyer and the Debtors in connection with the Sale Transaction have been disclosed and are appropriate.  Other than agreements among the Debtors and Buyer, as reflected in the Asset Purchase Agreement and herein, the Purchase Price in respect of the Acquired Assets was not controlled by any agreement among potential bidders. Neither the Debtors nor Buyer have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.  The Transaction Documents were not entered into and the Sale Transaction is not being consummated for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors.  All consideration to be provided by Buyer in connection with the Sale Transaction has been disclosed.  Neither the Debtors nor Buyer is entering into the Transaction Documents, or proposing to consummate the Sale Transaction, fraudulently, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Colombia.

M.     The Sale of the Acquired Assets is consistent with the Debtors' policy concerning the transfer of personally identifiable information and the Debtors have, to the extent necessary,

satisfied section 363(b)(1) of the Bankruptcy Code.  Accordingly, the appointment of a consumer ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the relief requested in the Sale Motion.

N.    **Notice**.  As evidenced by the Affidavits of Service Regarding Sale filed with this Court: (i) proper, timely, adequate, and sufficient notice of the Sale Motion, the Bidding Procedures (including the bidding process and the deadline for submitting bids at the Auction), the Sale Hearing, the Sale Transaction, and the Sale Order was provided by the Debtors; (ii) such notice was good, sufficient, and appropriate under the particular circumstances and complied with the Bidding Procedures Order, Bankruptcy Code Section 363(b) and Bankruptcy Rules 2002, 6004, 6006, 9006, 9008 and 9014, and Local Rule 6004-1; and (iii) no other or further notice of the Sale Motion, the Sale Transaction, the Bidding Procedures, the Sale Hearing, or the Sale Order is required.  With respect to Persons whose identities are not reasonably ascertained by the Debtors, publication of the notice in the national editions of *The New York Times* and *USA Today* on August 6, 2020, as evidenced by the Affidavit of Publication, was sufficient and reasonably calculated under the circumstances to reach such Persons.

O.    **Cure Notice**.  As evidenced by the Affidavit of Service Regarding Cure Costs[7] filed with this Court, and in accordance with the provisions of the Bidding Procedures Order, the Debtors have served, prior to the Sale Hearing, the Cure Notice[8], which provided notice of the Debtors' executory contracts and unexpired Leases available for assumption and assignment to Buyer (the "**Available Contracts**") and of the related proposed Cure Costs upon each non-Debtor counterparty to such contracts.  The service of the Cure Notice was timely, good, sufficient, and

---

[7]    See *Affidavit of Service* [Docket No. 374]; (the "**Affidavit of Service Regarding Cure Costs**").

[8]    See *Notice of Cure Costs and Proposed Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale Transaction* [D.I. 306] (the "**Cure Notice**").

appropriate under the circumstances and no further notice need be given with respect to the Cure Costs for the assumption and assignment of the Available Contracts. All non-Debtor counterparties to the Available Contracts have had a reasonable opportunity to object both to the Cure Costs listed on the applicable Cure Notice, as applicable, and to the assumption and assignment to Buyer of any Available Contract. No defaults exist in the Debtors' performance under the Assumed Contracts as of the date of this Order other than the failure to pay the Cure Costs, as may be required, or such defaults that are not required to be cured. The list of Available Contracts may be updated by the Debtors from time to time to add additional Contracts or Leases. Following any such update, the Debtors shall file and serve a supplemental notice in accordance with the terms of the Bidding Procedures Order on any counterparty to a Contract or Lease that was added to the list of Available Contracts.

P.      **Satisfaction of Section 363(f) Standards**. Except as otherwise expressly provided herein, the Debtors are authorized to sell the Acquired Assets owned by the Debtors to Buyer free and clear of all liens, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), property interests, rights, liabilities, encumbrances, pledges, and other interests of any kind or nature whatsoever against the Debtors or the Acquired Assets owned by the Debtors, including, without limitation, all Excluded Liabilities (as defined in the Asset Purchase Agreement) and any debts, claims, rights, causes of action, and/or suits arising under or out of, in connection with, or in any way relating to, any acts, omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employee retirement or benefit plan claims, severance claims, retiree healthcare or life insurance claims, and/or claims for taxes of or against the Debtors and/or the Acquired Assets owned by the Debtors to the maximum extent available under applicable law, and any derivative,

vicarious, transferee, or successor liability claims, rights, or causes of action (whether in law or in equity, under any law, statute, rule, or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), whether arising prior or subsequent to the commencement of these chapter 11 cases, whether known or unknown, whether fixed or contingent, whether anticipated or unanticipated, whether yet accrued or not, and whether imposed by agreement, understanding, law, equity or otherwise arising under or out of, in connection with, or in any way related to the Debtors, the Debtors' interests in the Acquired Assets owned by the Debtors, the Debtors' operation of the Business before the Closing, or the transfer of the Debtors' interests in the Acquired Assets owned by the Debtors to Buyer, (collectively, all such liens, claims, property interests, rights, liabilities, encumbrances, pledges, other interests and other matters described above in this paragraph P, but excluding any Assumed Liabilities, the "**Claims**"), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  Those holders of Claims who did not object (or who ultimately withdrew their objections, if any) to the Sale Transaction or the Sale Motion have either consented to or are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.  In addition, one or more of the other subsections of section 363(f) of the Bankruptcy Code apply and, therefore, holders of Claims with an interest in the Acquired Assets owned by the Debtors are adequately protected by having their Claims that constitute interests in such Acquired Assets owned by the Debtors attach solely to the proceeds of the Sale Transaction in the same order of priority and with the same extent, validity, force, and effect that such holders had prior to the Sale Transaction and by providing for the distributions provided for herein.  All Persons having Claims of any kind or nature whatsoever against the Debtors or the Acquired Assets owned by the Debtors shall be forever barred, estopped, and permanently

enjoined from pursuing or asserting such Claims against Buyer or any of its assets, property, Affiliates, successors, assigns, or the Acquired Assets owned by the Debtors.

Q.      Each of (i) the DIP Parties and (ii) the Prepetition ABL Parties (each as defined in the DIP Order) has consented to the sale of the Acquired Assets to Buyer pursuant to the Asset Purchase Agreement free and clear of any Claims of the DIP Parties and the Prepetition ABL Parties against the Acquired Assets, subject to the terms and conditions of the DIP Credit Agreement, the DIP Order, the Prepetition ABL Agreement (as defined in the DIP Order) and the Sale Order, as applicable.

R.      Buyer would not have entered into the Transaction Documents and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors and their estates and their creditors, (i) if the sale of the Acquired Assets was not free and clear of all Claims, liens, encumbrances and other interests, including, without limitation, any rights or Claims based on any successor or transferee liability (other than, in each case, the Assumed Liabilities) pursuant to Bankruptcy Code section 363(f), or (ii) if Buyer would, or in the future could, be liable for any such Claims, liens, interests and encumbrances including, without limitation, any rights or Claims based on any successor or transferee liability (other than, in each case, the Assumed Liabilities owned by the Debtors).

S.      Buyer would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors and their estates and their creditors, if the sale of the Acquired Assets owned by the Debtors was not free and clear of all Claims, or if Buyer would, or in the future could, be liable for any such Claims.

T.      The total consideration to be provided under the Asset Purchase Agreement reflects Buyer's reliance on this Order to provide it with title to and possession of the Acquired Assets

owned by the Debtors free and clear of all Claims pursuant to sections 105(a) and 363(f) of the Bankruptcy Code.

      U.    **Assumption and Assignment of Assumed Contracts; Rejection**.  The subset of the Assumed Contracts to be assumed by the Debtors and assigned to Buyer at the Closing are set forth on **Exhibit B** annexed hereto.  The assumption and assignment of the Assumed Contracts is integral to the Sale Transaction, is in the best interests of the Debtors and their estates, and represents the valid and reasonable exercise of the Debtors' sound business judgment. Specifically, the assumption and assignment of the Assumed Contracts (i) is necessary to sell the Acquired Assets to Buyer, (ii) is an integral part of the Acquired Assets being purchased by Buyer, (iii) limits the losses suffered by non-Debtor counterparties to the Assumed Contracts, and (iv) maximizes the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' estates by avoiding the rejection of the Assumed Contracts; and, in light of the foregoing, such assumption and assignment of the Assumed Contracts is reasonable and enhances the value of the relevant Debtors' estates.

      V.    With respect to each of the Assumed Contracts, the Debtors have met all requirements of section 365(b) of the Bankruptcy Code because Buyer has agreed to cure or will cure on or before the Closing or the effective date of the assumption and assignment to Buyer of such Assumed Contract during the Designation Rights Period, as applicable, any monetary default required to be cured with respect to the Assumed Contracts under section 365(b)(1) of the Bankruptcy Code and Buyer has provided adequate assurance of future performance under the Assumed Contracts in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code to the extent that any such assurance is required.  Accordingly, the Assumed Contracts may be assumed by the Debtors and assigned to Buyer as provided for in the Asset Purchase Agreement and herein

(subject, in the case of Assumed Contracts to be so assumed and assigned during the Designation Rights Period, to the procedures set forth herein).  The assumption and assignment of each Assumed Contract is approved notwithstanding any provision in such Assumed Contract or other restrictions prohibiting its assignment or transfer.  The applicable Cure Notice, or Notice of Assumption and Assignment provided by the Debtors is sufficient to advise the non-Debtor counterparties to the Assumed Contracts that, pursuant to the Asset Purchase Agreement, Buyer's decision on which executory contracts and unexpired Leases will be assumed and assigned may not be made until after the entry of this Order.  The authority hereunder for the Debtors to assume and assign any Assumed Contract to Buyer includes the authority to assume and assign an Assumed Contract, as amended.

        W.      **<u>Validity of Transfer</u>**.  The transfer of the Acquired Assets to Buyer will be a legal, valid, and effective transfer of the Acquired Assets, and will vest Buyer with all any legal, equitable and beneficial right, title, and interest of the applicable Debtors in and to the Acquired Assets, free and clear of all Claims (other than Assumed Liabilities and Post-Closing Liens).  The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction.

        X.      The Debtors (i) have full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Transactions have been duly and validly authorized by all necessary corporate action of the Debtors; and (ii) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement.  Upon entry of this Order, other than any consents identified

in the Asset Purchase Agreement, the Debtors need no consent or approval from any other Person to consummate the Transactions.

Y.    The Transaction Documents are valid and binding contracts between the Debtors and Buyer and shall be enforceable pursuant to their terms.  None of the Transaction Documents were entered into and none of the Debtors or Buyer have entered into the Asset Purchase Agreement or proposed to consummate the Sale Transaction for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under laws of the United States, any state, territory, possession, or the District of Columbia.  The Transaction Documents, the Sale Transaction itself, and the consummation thereof, shall be specifically enforceable against and binding upon (without posting any bond) the applicable Debtors, and any chapter 7 or chapter 11 trustee appointed in these chapter 11 cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.  None of the Debtors nor Buyer entered into the Asset Purchase Agreement or proposed to consummate the Sale Transaction fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to any of the foregoing.

Z.    **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**.  The sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets.  Therefore, time is of the essence in consummating the Sale Transaction, and the Debtors and Buyer intend to close the Sale Transaction as soon as reasonably practicable.  The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale Transaction

as contemplated by the Asset Purchase Agreement. Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regard to the transactions contemplated by this Order.

AA.    **Backup Bid**. Ralph Lauren Corporation (the "**Back-Up Bidder**") was designated as the Back-Up Bidder for that certain license agreement, effective as of June 15, 1981 (the "**License**"). The bid submitted by the Back-Up Bidder (the "**Back-Up Bid**") is the Back-Up Bid for the License and shall remain open as the Back-Up Bidder in accordance with the terms of the Bidding Procedures.

BB.    **Legal and Factual Bases**. The legal and factual bases set forth in the Sale Motion, the Sale Declarations, and at the Sale Hearing establish just cause for the relief granted herein.

CC.    **Necessity of Order**. Buyer would not consummate the transactions absent the relief provided for in this Order.

**NOW THEREFORE, IT IS ORDERED THAT**:

1.    **Motion is Granted**. To the extent not already approved pursuant to the Bidding Procedures Order, the Sale Motion and the relief requested therein is granted and approved as set forth herein.

2.    **Objections Overruled**. Except in the case of objections described in paragraph 3, 44 and 45 below, all objections, if any, and any and all joinders thereto, to the Sale Motion or the relief granted herein that have not been previously overruled, withdrawn with prejudice, waived, or settled as announced to this Court at the Sale Hearing, by stipulation filed with this Court, or as provided in this Order, and all reservations of rights included therein, are hereby overruled on the merits and with prejudice.

3.    **Contract Objections**. If a counterparty to any Available Contract timely files, in accordance with the Bidding Procedures Order and paragraph 29 of this Sale Order, an

objection to the assumption and assignment to Buyer of such Available Contract, then such Available Contract shall be deemed a "**Disputed Contract**." The Debtors shall be authorized to resolve or settle any objections to the assumption and assignment of Disputed Contracts in accordance with the terms of the Asset Purchase Agreement (including section 2.8(c) thereof), including with respect to Cure Costs or necessary consents, and without need for any further order or action from this Court.  All disputes regarding the assumption and assignment of executory contracts and unexpired Leases that have not been resolved, withdrawn or overruled are hereby adjourned to the next omnibus hearing, scheduled for September 11, 2020 at 2:00 p.m. EST.

4.    **Notice**.  Notice of the Sale Motion and Sale Hearing was adequate, appropriate, fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006 and the Bidding Procedures Order.

5.    **Fair Purchase Price**.  The consideration provided by Buyer under the Asset Purchase Agreement is fair and reasonable, is the highest and best offer for the Acquired Assets, and constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession or the District of Columbia.

6.    **Approval of the Transaction Documents**.  The Transaction Documents, including all of the transactions contemplated thereby, and all of the terms and conditions thereof, are hereby authorized and approved in their entirety.  The failure specifically to include

any particular provision of the Transaction Documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Transaction Documents, and the relevant Debtors' entry therein, be authorized and approved in their entirety.

7.    **Consummation of Sale Transaction**.    Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, the Debtors are authorized and empowered to transfer the Acquired Assets in accordance with the terms of the Asset Purchase Agreement and the terms of this Order.  The relevant Debtors, as well as their directors, officers, employees, and agents, are authorized to execute, deliver, and perform their obligations under and comply with the terms of the Transaction Documents and to consummate the Sale Transaction, including by taking any and all actions as may be reasonably necessary or desirable to implement the Sale Transaction and each of the transactions contemplated thereby pursuant to and in accordance with the terms and conditions of the Transaction Documents and this Order.  For the avoidance of doubt, all Persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to Buyer in accordance with the Asset Purchase Agreement and this Order.

8.    The relevant Debtors, their affiliates, and their respective directors, officers, employees, and agents, are authorized to execute and deliver, and authorized to perform under, consummate, and implement all additional notices, assumptions, conveyances, releases, acquittances, instruments and documents that may be reasonably necessary or desirable to implement the Transaction Documents, including the transfer and, as applicable, the assignment of all the Acquired Assets, the assumption of the Assumed Liabilities, and the assumption and assignment of all the Assumed Contracts, and to take all further actions as

may be (i) reasonably requested by Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to Buyer, or reducing to Buyer's possession, the Acquired Assets and/or (ii) necessary or appropriate to the performance of the obligations contemplated by the Transaction Documents, all without further order of this Court.

9.      All Persons that are currently in possession of some or all of the Acquired Assets are hereby directed to surrender possession of such Acquired Assets to Buyer upon the Closing Date or at such later time as Buyer reasonably requests.

10.      All Persons are prohibited from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to Buyer in accordance with the Asset Purchase Agreement and this Order, provided that the foregoing restriction shall not prevent any party from appealing this Order in accordance with applicable law or opposing any appeal of this Order.

11.      Buyer has provided or will provide, as applicable, adequate assurance of future performance of and under the Assumed Contracts, within the meaning of 365(b)(1) and 365(f)(2) of the Bankruptcy Code.  Except as otherwise expressly provided herein, the Debtors' creditors and the holders of any Claims are authorized and directed to execute such documents and take all other actions as may be necessary to terminate, discharge or release their Claims in the Acquired Assets, if any, as such Claims may otherwise exist.

12.      Each and every federal, state, local, or foreign government or governmental or regulatory authority, agency, board, bureau, commission, court, department, or other governmental entity is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Transaction Documents.

13. **Transfer of Acquired Assets Free and Clear; Injunction**. Pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets in accordance with the terms of the Asset Purchase Agreement and this Order. The transfer of the Acquired Assets owned by the Debtors to Buyer in accordance with the Asset Purchase Agreement shall: (i) be valid, legal, binding, and effective; (ii) vest Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets; and (iii) be free and clear of all Claims against the Debtors and the Acquired Assets owned by the Debtors (except as otherwise expressly provided herein and including Claims of any Governmental Authority), but excluding Assumed Liabilities and Permitted Post-Closing Liens) in accordance with section 363(f) of the Bankruptcy Code.

14. Except as otherwise provided in the Asset Purchase Agreement or herein, all Persons (and their respective successors and assigns) including, without limitation, the Debtors, the Debtors' estates, all debt security holders, equity security holders, governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trustees, trade creditors, and any other creditors (or agent of any of the foregoing) who may or do hold Claims (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated) against the Debtors or the Acquired Assets owned by the Debtors, arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets owned by the Debtors, the operation or ownership of the Acquired Assets by the Debtors prior to the Closing, or the Sale Transaction, are hereby forever barred, estopped, and permanently enjoined from asserting or pursuing such Claims against Buyer, its Affiliates, successors, assigns, its property or the Acquired Assets, including, without limitation, taking any of the following actions with

respect to any Claims: (i) commencing or continuing in any manner any action, whether at law or in equity, in any judicial, administrative, arbitral, or any other proceeding, against Buyer, its affiliates, successors, assigns, assets (including the Acquired Assets), and/or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Buyer, its Affiliates, successors, assigns, assets (including the Acquired Assets), and/or properties; (iii) creating, perfecting, or enforcing any Claim against Buyer, its affiliates, any of their respective successors, assigns, assets (including the Acquired Assets), and/or properties; (iv) asserting a Claim as a setoff, right of subrogation, or recoupment of any kind against any obligation due against Buyer, its affiliates or any of their respective successors or assigns; or (v) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order or the agreements or actions contemplated or taken in respect thereof.  No such Person shall assert or pursue against Buyer or its Affiliates, successors or assigns any such Claim.

15.    Except as expressly set forth in the Asset Purchase Agreement and the Transaction Documents, this Order (i) shall be effective as a determination that, as of the Closing all Claims have been unconditionally released, discharged and terminated as to Buyer and the Acquired Assets owned by the Debtors and that the conveyances and transfers described herein and in the Asset Purchase Agreement and the Transaction Documents have been effected, and (ii) is and shall be binding upon and govern the acts of all Persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, county and local officials and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise

record or release any documents or instruments that reflect that Buyer is the assignee and owner of the Acquired Assets, free and clear of all Claims, or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "**Recording Officers**").  All Recording Officers are authorized to strike recorded encumbrances, claims, liens, and other interests against the Acquired Assets owned by the Debtors recorded prior to the date of this Order.  A certified copy of this Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, claims, liens, pledges, and other interests against the Acquired Assets owned by the Debtors recorded prior to the date of this Order.  All Recording Officers are hereby authorized to accept for filing any and all of the documents and instruments necessary, advisable or appropriate, and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

16.     Except as otherwise expressly provided herein, following the Closing, no holder of any Claim shall interfere with Buyer's title to or use or enjoyment of the Acquired Assets based on or related to any Claim or based on any actions or omissions by the Debtors, including any actions or omissions the Debtors may take in these chapter 11 cases.

17.     Except as expressly set forth in the Asset Purchase Agreement and the Transaction Documents, Buyer and each of its affiliates, successors, assigns, members, partners, officers, directors, principals, and shareholders shall have no liability whatsoever for any Claims, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether liquidated or unliquidated, whether asserted derivatively or vicariously, whether asserted based on Buyer's status as a transferee, successor, or otherwise, of any kind, nature, or character whatsoever,  including Claims based on, relating

to, and/or arising under, without limitation: (i) any employment, labor, or collective bargaining agreement, or any employee pension or welfare plan participation agreement, employee pension or benefit plan trust agreement; (ii) any pension, multiemployer plan (as such term is used in Section 3(37) or Section 4001(a)(3) of ERISA (as defined below)), health or welfare, compensation or other employee plan, agreements, practices, and programs, including, without limitation, any pension or employee plan (including any Employee Benefit Plan) of or related to any of the Debtors or any Debtor's affiliates or predecessors or any current or former employees of any of the foregoing; (iii) the Debtors' business operations or the cessation thereof; (iv) any litigation involving one or more of the Debtors; (v) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law, including, without limitation, any claims, rights, or causes of action that might arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), (b) the Multi-Employer Pension Plan Amendments Act of 1980, including all amendments thereto, (c) the Fair Labor Standards Act, (d) Title VII of the Civil Rights Act of 1964, (e) the Federal Rehabilitation Act of 1973, (f) the National Labor Relations Act, (g) the Worker Adjustment and Retraining Notification Act of 1988, (h) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (i) the Americans with Disabilities Act of 1990, (j) the Consolidated Omnibus Budget Reconciliation Act of 1985, (k) state and local discrimination laws, (l) state and local unemployment compensation laws or any other similar state and local laws, (m) state workers' compensation laws, and/or (n) any other state, local, or federal employee benefit laws, regulations or rules or other state, local or federal laws, regulations or rules relating to, wages, benefits, employment, or termination of employment with any or all Debtors or any of their

predecessors; (vi) any antitrust laws; (vii) any product liability or similar laws, whether state, federal, or otherwise; (viii) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes (subject to paragraph 18); (ix) any bulk sales or similar laws; (x) any federal, state, or local tax statutes, rules, regulations, or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (xi) any federal or state common law doctrine of *de facto* merger, successor, transferee, or vicarious liability, substantial continuity liability, successor-in- interest liability theory, and/or any other theory of or related to successor liability; and (xii) any Excluded Liabilities.  For the avoidance of doubt, Buyer shall not have (i) any liability with respect to any defined benefit pension plan, including the Pension Plans, or (ii) any withdrawal liability or liability with respect to any multiemployer plan, whether under a collective bargaining agreement or otherwise.

18.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets owned by the Debtors sold, transferred, or conveyed to Buyer on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale Transaction contemplated by the Asset Purchase Agreement and the Transaction Documents.

19.    Immediately upon the later of (a) the indefeasible receipt by the Prepetition ABL Agent (as defined in the DIP Order) of the sum of $205,807,243, which shall be paid in full and complete satisfaction of the Prepetition ABL Obligations (as defined in the DIP Order), and (b) the Closing (the "**ABL Lien Release Date**"), the Prepetition ABL Parties (i)

shall be deemed to have automatically released all of the security interests, liens and pledges (including the Prepetition ABL Liens and any other Claims on the ABL Collateral) securing the Prepetition ABL Obligations or evidenced by the Prepetition ABL Documents with no further action (the "**ABL Release**") and (ii) are authorized and directed to take any such actions as may be reasonably requested by the Debtors to evidence the release of such security interests, liens and pledges, including the execution, delivery and filing or recording of such releases as may be reasonably requested by the Debtors or Buyer or as may be required in order to terminate any related financing statements, mortgages, mechanic's liens, or *lis pendens*.  Upon the ABL Lien Release Date (x) the Debtors shall be authorized and directed to execute and file such statements, instruments, or releases on behalf of the Prepetition ABL Parties with respect to the ABL Release, and (y) Buyer shall be authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the ABL Release.  For the avoidance of doubt, upon the occurrence of and subsequent to the ABL Lien Release Date, the Prepetition ABL Agent shall be deemed to have released all claims and liens against the Credit Parties (as defined in the Prepetition ABL Agreement).  Subject to the Closing occurring, no costs or expenses of administration which have been or may be incurred in any of the Chapter 11 Cases at any time shall be charged against the Prepetition ABL Lenders, any of the Prepetition ABL Lenders' claims, or the ABL Collateral pursuant to sections 506(c) or 105(a) of the Bankruptcy Code, or otherwise, without the prior written consent of the Prepetition ABL Agent.  Upon the occurrence of and subsequent to the ABL Lien Release Date, neither the Debtors nor the Committee shall commence a Challenge (as such term is defined in the DIP Order) with respect to the Prepetition ABL Obligations, Prepetition ABL Liens or Prepetition ABL Collateral (as

each term is defined in the DIP Order) and the Prepetition Lien and Claim Matters (as such term is defined in the DIP Order) as to the Prepetition ABL Parties (as such term is defined in the DIP Order) shall become binding, conclusive, and final on any person, entity, or party in interest in the Cases (as such term is defined in the DIP Order), and their successors and assigns, and in any Successor Case (as such term is defined in the DIP Order) for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates. Upon the occurrence of the ABL Lien Release the Debtors shall be deemed to have forever, unconditionally and irrevocably released, discharged and acquitted, the Prepetition ABL Agent and the Prepetition ABL Parties, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys advisors, professional and agents, past, present, and future, and their respective heirs, predecessors, successors and assigns of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses, debts, liens, actions and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the negotiations over and entry into the Prepetition ABL Documents, the Prepetition ABL Liens and/or the transactions contemplated hereunder or thereunder.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.  Notwithstanding the foregoing, the Prepetition ABL Parties consent to the Sale Transaction and this Order is conditioned upon the Closing occurring on or before September 18, 2020, unless otherwise extended by the Prepetition ABL Agent (whose consent shall not be unreasonably withheld)

(the "**ABL Outside Date**").  In the event the Closing does not occur on or before the ABL Outside Date, such consent shall be of no force or effect and all rights of the Debtors, the Creditors' Committee and the Prepetition ABL Parties are reserved.

20.     Immediately upon the later of (a) the indefeasible receipt by the DIP Agent (as defined in the DIP Order) of an amount sufficient to pay the DIP Obligations (as defined in the DIP Order) in full in cash (or pursuant to a credit bid in accordance with the Asset Purchase Agreement), and (b) the Closing (the "**DIP Lien Release Date**"), the DIP Parties (i) shall be deemed to have automatically released all of the security interests, liens and pledges (including the DIP Liens and any other Claims on the DIP Collateral) securing the DIP Obligations or evidenced by the DIP Documents with no further action (the "**DIP Release**") and (ii) are authorized and directed to take any such actions as may be reasonably requested by the Debtors to evidence the release of such security interests, liens and pledges, including the execution, delivery and filing or recording of such releases as may be reasonably requested by the Debtors or Buyer or as may be required in order to terminate any related financing statements, mortgages, mechanic's liens, or *lis pendens*.  Upon the DIP Lien Release Date (i) the Debtors shall be authorized and directed to execute and file such statements, instruments, or releases on behalf of the DIP Parties with respect to the DIP Release and (ii) Buyer shall be authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the DIP Release and (iii) the DIP Parties shall be deemed to have released all claims and liens against the Credit Parties (as defined in the DIP Agreement).  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

21.     On the Closing Date, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets, transferring good and marketable, indefeasible title and interest in all of the Acquired Assets to Buyer with effect at Closing of the Sale Transaction in accordance with the Transaction Documents.

22.     To the maximum extent available under applicable law and to the extent provided for under the Asset Purchase Agreement, Buyer shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Acquired Assets and, to the maximum extent available under applicable law and to the extent provided for under the Transaction Documents, all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to Buyer as of the Closing.  All existing licenses or permits applicable to the business shall remain in place for Buyer's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures.

23.     **Distribution and Application of Sale Proceeds**.  In accordance with the Asset Purchase Agreement, prior to the Closing, the Debtors shall provide to Buyer the Pre-Closing Statement, which shall indicate, among other things, that, at the Closing, Buyer shall pay to (i) the DIP Agent, a portion of the Purchase Price in an amount sufficient to pay the DIP Obligations (each as defined in the DIP Order) in full in cash; (ii) subject to the Closing occurring before the ABL Outside Date, the ABL Agent, the sum of $205,807,243, which amount shall be a full and complete satisfaction of the Prepetition ABL Obligations (as defined in the DIP Order); and (iii) the Debtors (in accordance with the terms of the Asset Purchase

Agreement), the balance of the Purchase Price remaining due and owing under the Asset Purchase Agreement.  Following the payments provided for in this paragraph 23, subject to paragraphs 19 and 20 herein, all Liens that existed prior to Closing in the Acquired Assets owned by the Debtors shall attach to the remaining proceeds of the Sale Transaction in the same order of priority and with the same extent, validity, force, and effect that such Liens had prior to the Sale Transaction.

24.    **Wind-Down Funding**. Notwithstanding the foregoing, upon the Closing, the Debtors are authorized to: (i) fund the Wind-Down Account (each as defined in the DIP Order) with a portion of the proceeds from the Sale in accordance with Section 6.24 of the DIP Agreement, and (ii) fund into the Professional Fees Account an amount equal to $12,000,000 in proceeds from the Sale (in excess of any amounts already in the Professional Fees Account) in accordance with paragraph 44(a)(ii) of the DIP Order.

25.    **No Successor or Other Derivative Liability**.  By virtue of the Sale Transaction, neither Buyer nor any of its Affiliates shall be deemed to: (i) be a legal successor, or otherwise deemed to be a successor, to any of the Debtors under any theory of law or equity; (ii) have, de facto or otherwise, merged with or into any or all Debtors or their estates; (iii) have a common identity or a continuity of enterprise with the Debtors; or (iv) be a mere continuation or substantial continuation, or be holding itself out as a mere continuation, of the Debtors or any business, enterprise, or operation of the Debtors; (v) to be the successor of or successor employer (as described under COBRA and applicable regulations thereunder) to the Debtors, including without limitation, with respect to any collective bargaining agreements (including Covered Collective Bargaining Agreements) and any employee benefit plans and any common law successorship liability, including with respect to withdrawal liability, (vi) be

the successor of or successor employer to the Debtors, and shall instead be, and be deemed to be, a new employer with respect to any and all federal or state unemployment laws, including any unemployment compensation or tax laws, or any other similar federal or state laws, or (vii) to be liable for any acts or omissions of the Debtors in the conduct of the Business or arising under or related to the Acquired Assets, other than as set forth in the Asset Purchase Agreement.  To the maximum extent available under applicable law, Buyer's acquisition of the Acquired Assets owned by the Debtors shall be free and clear of any "successor liability" claims and other types of transferee liability of any nature whatsoever, whether known or unknown and whether asserted or unasserted at the time of the Closing (other than, to the extent applicable, any Assumed Liabilities), and the Acquired Assets shall not be subject to any Claims arising under or in connection with any Excluded Liability.  The operations of Buyer and its Affiliates shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Acquired Assets.

26.    **Assumption and Assignment of Assumed Contracts**.  Except as otherwise expressly provided herein, the Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Assumed Contracts to Buyer free and clear of all Claims, and to execute and deliver to Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to Buyer as provided in the Asset Purchase Agreement.  Upon the assumption and assignment to Buyer of the applicable Assumed Contract at the Closing or during the Designation Rights Period, as applicable, and the payment of the applicable Cure Costs, Buyer shall be fully and irrevocably vested with all right, title, and interest of the relevant Debtors in, to, and under the Assumed Contracts and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be

relieved from any further liability with respect to the Assumed Contracts, except as provided in the Asset Purchase Agreement and the Transaction Documents. Buyer acknowledges and agrees that, from and after the Closing, it shall comply with the terms of each Assumed Contract in its entirety, including, without limitation, any indemnification obligations expressly contained in such Assumed Contract that could arise as a result of events or omissions that occur either before or after the Closing and any security deposit and/or maintenance reserve obligations pursuant to such Assumed Contracts.

27.    All Cure Costs that have not been waived shall be determined in accordance with the Bidding Procedures Order or this Order and paid by Buyer in accordance with the terms of the Asset Purchase Agreement. Assumption and payment of the Cure Costs by Buyer shall be in full satisfaction and cure of any and all monetary defaults under the Assumed Contracts and is deemed to fully satisfy the Debtors' obligations under sections 365(b) and 365(f) of the Bankruptcy Code. Upon the assumption by a Debtor and the assignment to Buyer of any Assumed Contract, and the payment of any applicable Cure Costs, each non-Debtor counterparty to the Assumed Contracts is forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Buyer, their Affiliates, successors, or assigns, or the property of any of them, any default existing as of the effective date of such assumption and assignment, and (ii) exercising any rights or remedies against any Debtor or Buyer based on an asserted default that occurred on, prior to, or as a result of, the effective date of such assumption and assignment, including the type of default specified in section 365(b)(1)(A) of the Bankruptcy Code. Buyer has provided adequate assurance of future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(c) and 365(f)(2)(B) of the Bankruptcy Code. Accordingly, all of the requirements of sections 365(b) and 365(f) of the

Bankruptcy Code have been satisfied for the assumption by the Debtors, and the assignment by the Debtors to Buyer, of each of the Assumed Contracts.  For the avoidance of doubt and notwithstanding anything to the contrary contained herein or in the Asset Purchase Agreement, the Buyer shall be liable for all obligations and liabilities under the Assumed Leases to the extent such obligations or liabilities arise or are (as required by the applicable lease) billed after the Closing, including, but not limited to any and all liabilities or obligations arising under the Leases with respect to any accruing and not yet due adjustments or reconciliations (including, without limitation, for royalties, percentage rent, utilities, taxes, common area or other maintenance charges, promotional funds, insurance, fees or other charges) when billed in the ordinary course regardless of whether such obligations or liabilities are attributable to the period prior to the Closing, in each case subject to the terms and conditions of the Assumed Lease.  Nothing in the foregoing sentence shall limit the Debtors' obligations to the Buyer under the Asset Purchase Agreement with respect to rent or other charges that accrue prior to closing.

28.     To the extent a non-Debtor counterparty to the Assumed Contracts has failed to timely object to a Cure Cost, such Cure Cost has been and shall be deemed to be finally determined and any such non-Debtor counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Cost at any time.  Consistent with the Bidding Procedures Order, the non-Debtor counterparty to an Assumed Contract is forever bound by the applicable Cure Cost and, upon payment of such Cure Cost as provided herein and in the Asset Purchase Agreement, is hereby enjoined from taking any action against Buyer with respect to any claim for cure under the Assumed Contract.  To the extent no timely Cure Objection or Adequate Assurance Objection has been filed and served with respect to an

Assumed Contract, the non-Debtor counterparty to such Assumed Contract is deemed to have consented to the assumption and assignment of the Assumed Contract to Buyer.

29.    At the Closing, the Debtors shall assume and assign to Buyer each Assumed Contract designated by Buyer for assumption at the Closing pursuant to Schedule 2.8(b) to the Asset Purchase Agreement, and which Assumed Contracts are set forth on Exhibit B annexed hereto.  In accordance with the terms of the Asset Purchase Agreement, during the Designation Rights Period, Buyer may deliver written notices (each, a "**Designation Notice**") to the Debtors designating any Designated Contract or Designated Lease that has not previously been designated for assumption and assignment or rejection for either (i) assumption and assignment to Buyer, or (ii) rejection.  Any such Designation Notice must be provided by the Buyers to the Debtors at least five (5) days prior to expiration of the applicable Designation Rights Period.  Within three (3) Business Days following the Debtors' receipt of any such Designation Notice, the Debtors shall provide written notice to the counterparty to such Designated Contract or Designated Lease of the Debtors' intent to assume and assign or reject such Designated Contract or Designated Lease, which notice shall include, among other things, a deadline (the "**Objection Deadline**") no less than seven (7) calendar days from the service of such notice to object to the assumption and assignment of such Designated Contract or Designated Lease.  Upon the expiration of this Objection Deadline, no further Court approval shall be required for the transfer of such Contracts or Leases in accordance with the terms of the Asset Purchase Agreement beyond this Order unless (1) the Designation Counterparty timely serves an objection upon the Debtors and Buyer that relates to adequate assurance of future performance or a cure issue that could not have been raised in an objection to any Cure Notice prior to the Sale Hearing and pertains to matters arising after the Closing,

or (2) the Designation Counterparty otherwise consents to the assumption and assignment on terms mutually agreed by Buyer and the Designation Counterparty. To the extent a counterparty to a Contract or Lease timely files an objection with respect to the assumption and assignment or rejection of such Contract or Lease, the Debtors shall be authorized to settle or resolve such objection pursuant to the terms of the Asset Purchase Agreement and this Order without further order from this Court unless the objecting Designation Counterparty requests in writing that the Debtors seek an order of the Court enter a separate order confirming the terms of the assumption and assignment or rejection of the applicable Contract or Lease; provided, however, that if the Debtors, Buyer and objecting Designation Counterparty are unable to resolve such objection timely served, the Debtors shall schedule the matter for hearing on no less than five (5) Business Days' notice.

30.     Notwithstanding Section 2.8(c) of the Asset Purchase Agreement, during the Designation Rights Period, Buyer may deliver a written notice to the Debtors of Buyer's entry into an agreement with a Designation Counterparty to any Designated Contract or Designated Lease pursuant to which such Designation Counterparty consents to the assumption and assignment to Buyer or its designee of such Designated Contract or Designated Lease on the terms set forth in such agreement (each, an "**Amended Designated Contract**" or "**Amended Designated Lease**", as applicable). The assumption and assignment of such Amended Designated Contract or Amended Designated Lease shall be effective on the date set forth in the written notice provided to the Debtors without further order of the Bankruptcy Court, unless the counterparty to the Designated Contract or Designated Lease requests in writing that the Debtors seek an order confirming the terms of the assumption and assignment of the applicable Contract or Lease.

31.     The assignments of each of the Assumed Contracts are made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

32.     Nothing in paragraphs 29 and 30 of this Order or in the Asset Purchase Agreement shall override the limitations of Section 365(d)(4) of the Bankruptcy Code with respect to any unexpired Lease without further order of the Bankruptcy Court.

33.     The Debtors' obligations to counterparties of unexpired Leases of non-residential real property pursuant to Section 365(d)(3) (as may be modified by other orders of the Court) through the effective date of assumption and assignment or rejection of such leases in accordance with the designation rights procedures in the Asset Purchase Agreement shall not be affected or modified by this Order.

34.     **Ipso Facto Clauses**.  Except as otherwise specifically provided for by order of this Court, the Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, Buyer in accordance with their respective terms, including all rights of Buyer as the assignee of the Assumed Contracts, notwithstanding any provision in any Assumed Contract (including, without limitation, those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer, including any provision that prohibits or conditions the assignment or sublease of a Assumed Contract (including without limitation, the granting of a lien therein) or allows the non-Debtor counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, which shall constitute an unenforceable anti-assignment provision that is void and of no force and effect in connection with the transactions contemplated pursuant to this Order and the Asset Purchase Agreement.  There shall be no, and all non-Debtor counterparties to any Assumed Contract

are forever barred and permanently enjoined from raising or asserting against the Debtors or Buyer any default, breach, termination, claim, penalty, pecuniary loss, rent or other acceleration of amount due thereunder, escalation, assignment fee, increase, or any other fee charged to Buyer or the Debtors as a result of (i) any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assumed Contracts; or (ii) the assumption or assignment of the Assumed Contracts in accordance with this Order and the Asset Purchase Agreement.

35.     The failure of the Debtors or Buyer to enforce at any time one or more terms or conditions of any of the Assumed Contracts shall not be a waiver of such terms or conditions, or of the Debtors' and Buyer's rights to enforce every term and condition of the Assumed Contracts.

36.     **<u>Statutory Mootness</u>**.  The transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents are undertaken by Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and were negotiated by the parties at arm's-length and, accordingly, the reversal or modification on appeal of the authorization provided herein of the Sale Transaction shall neither affect the validity of the Sale Transaction nor the transfer of the Acquired Assets to Buyer free and clear of Claims, unless such authorization is duly stayed before the Closing Date pending such appeal.  Buyer is a good faith purchaser of the Acquired Assets and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.  The Debtors and Buyer will be acting in good faith if they proceed to consummate the Sale Transaction at any time after entry of this Order.

37.    **No Avoidance of Asset Purchase Agreement**.  Neither the Debtors nor Buyer has engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. Accordingly, the Asset Purchase Agreement and the Sale Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Asset Purchase Agreement or the Sale Transaction.

38.    **Modification of Asset Purchase Agreement**.  Subject to the terms of the Transaction Documents, including the Asset Purchase Agreement, and any related agreements, documents, or other instruments, may be modified, amended, or supplemented by the parties thereto, in a writing signed by the party against whom enforcement of any such modification, amendment, or supplement is sought, and in accordance with the terms thereof, without further order of this Court but upon notice to the Creditors' Committee; provided that notwithstanding any such modification, amendment, or supplement, the sale of the Acquired Assets to Buyer will still comply with the requirements of section 363 of the Bankruptcy Code; and, provided further, that no material modifications, amendments or supplements adversely affecting the Debtors' estates shall be made without notice to the Court and the Creditors' Committee and such material modifications, amendments or supplements shall be subject to Court order while the Chapter 11 Cases remain pending.

39.    **Local Taxing Entities**.  To the extent that Dickinson Independent School District, Harris County MUD #358, Harris County WCID #155, Woodlands Metro MUD, Woodlands RUD #1, City of Mercedes, Mercedes ISD, Arlington ISD, the Maricopa County Treasurer; Allen, Allen ISD, Bexar County, Cypress-Fairbanks ISD, Dallas County, El Paso,

Galveston County, Harris County, Hidalgo County, Montgomery County, Northwest ISD, Nueces County, San Marcos CISD, and Tarrant County (each, a "**Local Taxing Entity**", and collectively the "**Local Taxing Entities**") has a valid, perfected, enforceable, senior and non-avoidable lien on any proceeds from the Sale Transaction, and as adequate protection for the Local Taxing Entity's claims, proceeds sufficient to satisfy such Claims shall be segregated (for record-keeping purposes only) and maintained by the Debtors and may, in the Debtors' discretion, may be used to pay the Local Taxing Entity on account of such claims promptly following the sale.  The liens asserted by the Local Taxing Entities (the "**Tax Liens**") shall attach to such proceeds to the same extent and with the same priority as the liens the Local Taxing Entities assert against such assets of the Debtors.  Any funds maintained by the Debtors in accordance with the foregoing shall be solely for the purpose of providing adequate protection for the Tax Liens and shall neither constitute allowance of the claims of the Local Taxing Entities (the "**Tax Claims**"), nor a floor or cap on the amounts the Local Taxing Entities may be entitled to receive.  Furthermore, all parties' rights to object to the priority, validity, amount and extent of the Tax Claims and the asserted Tax Liens are fully preserved. These funds may not be paid to any other party prior to payment of the claims of the Local Taxing Authorities absent their consent or on an order entered after notice to the Local Taxing Authorities.

40.    **UniCredit**.  To the extent that UniCredit S.p.A. – New York Branch ("**UniCredit**") has valid, perfected, enforceable, senior and non-avoidable liens on the Collateral (as defined in the *Limited Objection of UniCredit S.P.A. – New York Branch to the Debtors' Proposed Sale Transaction*, filed on August 7, 2020 [D.I. 340]), as adequate protection (i) the liens asserted by UniCredit (the "**UniCredit Liens**") in the Collateral shall

attach to the proceeds of the sale of the Collateral to the same extent and with the same priority, validity, and enforceability as the liens UniCredit asserts against the Collateral, and (ii) proceeds from the sale of the Collateral may be used by the Debtor to satisfy UniCredit's claim (the "**UniCredit Claim**").  The foregoing shall be solely for the purpose of providing adequate protection for the UniCredit Liens and shall neither constitute allowance of the UniCredit Claim, nor a floor nor cap on the amounts UniCredit may be entitled to receive.  Furthermore, all parties' rights to object to the priority, validity, amount and extent of the asserted UniCredit Claim and UniCredit Liens are fully preserved.  The adequate protection lien provided to UniCredit hereunder will not be waived, lost or diminished as a consequence of the proceeds of the Collateral being commingled with other assets of the Debtors' estates.

41.    **Dixie Development**.  As adequate protection (i) the liens (the "**Dixie Liens**") asserted by Dixie Development Company ("**Dixie**") in the Dixie Property (as defined in Dixie's *Limited Objection* filed on August 8, 2020 [D.I. 346]) shall attach to the proceeds of the sale of the Dixie Property to the same extent and with the same priority, validity, and enforceability as the liens Dixie asserts against the Dixie Property, and (ii) proceeds from the sale of the Dixie Property may be used by the Debtor to satisfy Dixie's claim (the "**Dixie Claim**").  The foregoing shall be solely for the purpose of providing adequate protection for the Dixie Liens and shall neither constitute allowance of the Dixie Claim, nor a floor nor cap on the amounts Dixie may be entitled to receive.  Furthermore, all parties' rights to object to the priority, validity, amount and extent of the asserted Dixie Claim and Dixie Liens and to seek or object to satisfaction of the Dixie Claim are fully preserved.  Proceeds from the sale in an amount sufficient to satisfy the Unpaid Note Obligations, shall be segregated (for record-keeping purposes only), and held until agreement of the parties or order of the Court regarding

the priority, validity, amount and extent of the asserted Dixie Claim and Dixie Liens, or satisfaction of the Dixie Claim.

42.     **Certain Union Objection Rights Preserved**.  Notwithstanding the procedures for assumption by the Debtors and assignment to Buyer of Assumed Contracts set forth in the Bidding Procedures Order and this Sale Order, in the event that the Debtors intend to assume and assign to the Buyer any non-residential real property lease underlying a retail store (a "**Store**") covered by a Specified Collective Bargaining Agreement, the Debtors shall provide written notice to Workers United of such intent and of the deadline to object to such assumption and assignment, which deadline shall be no earlier than ten (10) days following the service of such notice.  To the extent Workers United timely files an objection with respect to the assumption and assignment of such lease, the Debtors shall be authorized to settle or resolve such objection without further order from this Court; provided, however, that if the Debtors, Buyer, and Workers United are unable to resolve such objection timely served, the Debtors shall schedule the matter for hearing on no less than five (5) Business Days' notice. For purposes of this paragraph 43, "Specified Collective Bargaining Agreements" means each of the following collective bargaining agreements of the Debtors: (i) that certain collective bargaining agreement involving the 188, The Mid-Atlantic Regional Joint Board of Workers United Washington DC Union, (ii) that certain collective bargaining agreement involving the 352, Philadelphia Joint Board, Worker's United, (iii) that certain collective bargaining agreement involving the 42J, Western States Regional Joint Board, (iv) that certain collective bargaining agreement involving the 5, Chicago and Midwest Regional Joint Board, Workers United A/W SEIU, and (v) that certain collective bargaining agreement involving the 55D, Workers United, Western States Regional Joint Board.  The litigation of any objection by

Workers United following a notice at the time and as provided in this Paragraph, and any discussions that the parties may have in attempting to resolve it, shall be without prejudice to the position or rights of any party.

43.    **Brooks Sports**.  Consideration of the *Limited Objection of Brooks Sports, Inc. to Motion of Debtors for Entry of Orders (I) Approving (A) Bidding Procedures, (B) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (C) Assumption and Assignment Procedures, (II) Scheduling Auction and Sale Hearing, (III) Approving (A) Sale of Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 347] (the "**Brooks Objection**"), is hereby adjourned to September 11, 2020 at 2:00 p.m. EST.  Nothing herein shall be deemed to alter, modify or otherwise prejudice any rights and remedies of Brooks Sports, Inc., nor any of the arguments and positions, in each case set forth in the Brooks Objection, all of which are reserved.

44.    **Ralph Lauren**.  Consideration of the *Limited Objection and Reservation of Rights of Ralph Lauren Corporation to (I) Motion of Debtors for Entry of Order Approving (A) Sale of Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases; and (II) Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts or Unexpired Leases in Connection with Sale Transaction* [D.I. 348] (the "**Ralph Lauren Objection**"), is hereby adjourned to September 11, 2020 at 2:00 p.m. ET, and the License shall not be deemed assumed and assigned, sold, or otherwise transferred to Buyer unless and until such objection is resolved or overruled.  Nothing herein shall be deemed to

alter, modify or otherwise prejudice any rights and remedies of Ralph Lauren Corporation, nor any of the arguments and positions, in each case set forth in the Ralph Lauren Objection, all of which are reserved.

45.    **PBGC**. Notwithstanding anything to the contrary, no provision contained in the Asset Purchase Agreement or this Order shall alter any rights or obligations under applicable law, government policy, or regulatory provision with respect to the Brooks Brothers Pension Plan or the Retail Brand Alliance, Inc. Pension Plan (collectively, the "**Pension Plans**") by, among other things, discharging, releasing, exculpating or relieving any Person other than Buyer and its affiliates existing before the Closing, and its and their respective successors and assigns (but not including any individuals who were employees, directors, officers, or shareholders of the Debtors prior to the Closing) from any liability with respect to the Pension Plans.  The Pension Benefit Guaranty Corporation ("**PBGC**") and the Pension Plans shall not be enjoined or precluded from enforcing such liability or responsibility against any Person except Buyer and its affiliates, and its and their respective successors and assigns.

46.    **Records Retention**.  The Debtors are either the contributing sponsor or member of the contributing sponsor's controlled group with respect to the Pension Plans.  All documents and records of the Pension Plans (the "**Pension Plan Documents**") shall be stored and preserved by the Debtors until the PBGC has completed its investigation regarding the Pension Plans.  If any Pension Plan Documents are transferred to the Buyer, the Debtors shall retain copies to comply with this provision of the Sale Order.  Pension Plan Documents may be in hard copy or electronic form and may include, but are not limited to, any Pension Plan governing documents, actuarial documents, records and statements of the Pension Plans' assets, board resolutions relating to the Pension Plans, and employee and personnel records of

the employees who participate in the Pension Plans.  The Debtors shall not abandon or destroy any Pension Plan Documents and shall make the Pension Plan Documents available to the PBGC for inspection and copying.

47.    **Infor (US), Inc**.  Notwithstanding anything to the contrary contained in this Order or the Purchase Agreement, this Order does not (i) approve the sale or transfer of (a) the software (the "**Infor Software**") of Infor (US), Inc. ("**Infor**") or (b) any rights under the Infor Agreements[9] or (ii) grant any rights to possess or use the Infor Software to any purchaser of any of the Debtors' assets.  For the avoidance of doubt, no purchaser of the Debtors' assets shall receive any rights to possess, use, or otherwise benefit from the Infor Software as a result of entry of this Order; provided, however, a purchaser and Infor may agree to enter into a license (or licenses) for such purchaser's possession and use of the Infor Software.  Absent further order of the Court or the written agreement of Infor, the Buyer shall have no right, by virtue of this Order, the Asset Purchase Agreement, or the occurrence of the Closing, to possess, use, or otherwise benefit from the Infor Software.

48.    **Adequate Assurance Deposit**.  For the avoidance of doubt, and notwithstanding anything else to the contrary herein or in the Asset Purchase Agreement, the Adequate Assurance Deposit (as defined in D.I. 10) and any deposits provided to and held by a Utility Provider (as defined in D.I. 10) as adequate assurance of future payment shall not be Acquired Assets transferred to the Buyer as part of the Sale Transaction.

49.    **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**.  Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any applicable provisions of the Local

---

[9]    Capitalized Terms used in this paragraph but not otherwise defined herein shall have the meanings ascribed to them in the *Limited Objection and Reservation of Rights of Infor (Us), Inc. With Respect To Proposed Sale Of Substantially All Of The Debtors' Assets And Proposed Assumption And Assignment Of Executory Contracts* [D.I. 347].

Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.  Time is of the essence in closing the Sale Transaction and the Debtors and Buyer intend to close the Sale Transaction as soon as practicable.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing, or risk its appeal will be foreclosed as moot.

50.     **Binding Effect of this Order**.  The terms and provisions of the Asset Purchase Agreement and this Order shall be binding in all respects upon, or shall inure to the benefit of, the Debtors, their estates and their creditors, Buyer and its affiliates, successors, and assigns, and any affected third parties, including all Persons asserting Claims, notwithstanding any subsequent appointment of any trustee, examiner, or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner, or receiver and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner, or receiver. Any trustee appointed for the Debtors under any provision of the Bankruptcy Code, whether the Debtors are proceeding under chapter 7 or chapter 11 of the Bankruptcy Code, shall be authorized to (i) operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of the Transaction Documents and (ii) perform under the Transaction Documents without the need for further order of this Court.

51.     **Conflicts; Precedence**.  In the event that there is a direct conflict between the terms of this Order and the terms of the Transaction Documents, the terms of this Order shall control.

52.     **Automatic Stay**.  Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Transaction Documents or any other sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Order.

53.     **Provisions Non-Severable**.  The provisions of this Order are non-severable and mutually dependent.

54.     **Discharge of Indebtedness**.  Any discharge of indebtedness that might otherwise be recognized for U.S. income tax purposes as income from discharge of indebtedness by the Debtors as a result of the performance of any obligation or taking of any other action contemplated by the Asset Purchase Agreement, and any discharge or release of indebtedness as result of the Asset Purchase Agreement, is hereby granted by the Court.

55.     **Retention of Jurisdiction**.This Court shall retain jurisdiction to, among other things, (i) interpret, enforce, and implement the terms and provisions of this Order and the Asset Purchase Agreement (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith) and (ii) adjudicate disputes related to this Order and the Asset Purchase Agreement (including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith).

**Dated: August 14th, 2020**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**