## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------------- x
                                                               :
**In re**                                                      :        **Chapter 11**
                                                               :
**BBGI US, INC.,** *et al.,*                                    :        **Case No. 20–11785 (CSS)**
                                                               :
                              **Debtors.**[1]                   :        **(Jointly Administered)**
                                                               :
-------------------------------------------------------------- x

## AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR
## BBGI US, INC. AND ITS AFFILIATED DEBTORS

**WEIL, GOTSHAL & MANGES LLP**
Garrett A. Fail (admitted *pro hac vice*)
David J. Cohen (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Zachary I. Shapiro (No. 5103)
Christopher M. De Lillo (No. 6355)
One Rodney Square
910 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile:  (302) 651-7701

*Attorneys for Debtors*
*and Debtors in Possession*

Dated: January 22, 2021
Wilmington, Delaware

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are BBGI US, Inc. (f/k/a Brooks Brothers Group, Inc.) (8883); Brooks Brothers Far East Limited (N/A); BBD Holding 1, LLC (N/A); BBD Holding 2, LLC (N/A); BBDI, LLC (N/A); BBGI International, LLC (f/k/a Brooks Brothers International, LLC) (N/A); BBGI Restaurant, LLC (f/k/a Brooks Brothers Restaurant, LLC) (3846); Deconic Group LLC (0969); Golden Fleece Manufacturing Group, LLC (5649); RBA Wholesale, LLC (0986); Retail Brand Alliance Gift Card Services, LLC (1916); Retail Brand Alliance of Puerto Rico, Inc. (2147); 696 White Plains Road, LLC (7265); and BBGI Canada Ltd. (f/k/a Brooks Brothers Canada Ltd.) (4709). The Debtors' corporate headquarters and service address is 100 Phoenix Ave., Enfield, CT 06082.

# TABLE OF CONTENTS

SECTION 1.      DEFINITIONS AND INTERPRETATION. ...................................................1

SECTION 2.      ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS ...................................16

    2.1    *Administrative Expense Claims.* ...........................................................16
    2.2    *Fee Claims.* ..............................................................................16
    2.3    *Priority Tax Claims.* ....................................................................17

SECTION 3.      CLASSIFICATION OF CLAIMS AND INTERESTS. ...........................................18

    3.1    *Classification in General.* ...............................................................18
    3.2    *Formation of Debtor Groups for Convenience Only.* ......................................18
    3.3    *Summary of Classification.* ..............................................................18
    3.4    *Special Provision Governing Unimpaired Claims* ..........................................19
    3.5    *Elimination of Vacant Classes.* ..........................................................19
    3.6    *Voting Classes; Presumed Acceptance by Non-Voting Classes.* ...........................19
    3.7    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.* .............................................................................19

SECTION 4.      TREATMENT OF CLAIMS AND INTERESTS. ....................................................20

    4.1    *Other Priority Claims (Class 1).* ........................................................20
    4.2    *Secured Claims (Class 2).* ...............................................................20
    4.3    *PBGC Claims (Class 3).* ..................................................................21
    4.4    *General Unsecured Claims (Class 4).* .....................................................21
    4.5    *Intercompany Claims (Class 5).* ..........................................................21
    4.6    *Debtor Interests (Class 6).* .............................................................22
    4.7    *Subordinated Claims (Class 7).* ..........................................................22

SECTION 5.      MEANS FOR IMPLEMENTATION. .....................................................................22

    5.1    *Joint Chapter 11 Plan.* ..................................................................22
    5.2    *Limited Substantive Consolidation.* ......................................................22
    5.3    *PBGC Settlement.* ........................................................................24
    5.4    *Liquidation Trust.* ......................................................................24
    5.5    *Litigation Trust.* .......................................................................31
    5.6    *Plan Trusts Tax Matters.* ................................................................37
    5.7    *Merger of Debtors.* ......................................................................39
    5.8    *Elimination of Duplicate Claims.* ........................................................40
    5.9    *Dissolution of BB Parent.* ...............................................................40
    5.10   *Corporate Action.* .......................................................................40
    5.11   *Directors, Officers, Managers, Members and Authorized Persons of the Debtor* ..........40
    5.12   *Withholding and Reporting Requirements* ..................................................40
    5.13   *Exemption From Certain Transfer Taxes.* ..................................................41
    5.14   *Effectuating Documents; Further Transactions.* ..........................................41
    5.15   *Preservation of Rights of Action.* .......................................................41
    5.16   *Stock Restrictions.* .....................................................................42
    5.17   *Closing of the Chapter 11 Cases.* ........................................................42

SECTION 6.      DISTRIBUTIONS. ...............................................................................42

    6.1    *Distributions Generally.* ................................................................42
    6.2    *Distribution Record Date* ................................................................43

# TABLE OF CONTENTS
## (continued)

| | | |
|---|---|---|
| 6.3 | *Delivery of Distributions.* | 43 |
| 6.4 | *Disputed Administrative Claims Holdback* | 43 |
| 6.5 | *Manner of Payment Under Plan.* | 44 |
| 6.6 | *Minimum Cash Distributions.* | 44 |
| 6.7 | *Setoffs.* | 44 |
| 6.8 | *Distributions After Effective Date* | 44 |
| 6.9 | *Allocation of Distributions Between Principal and Interest.* | 45 |
| 6.10 | *No Postpetition Interest on Claims.* | 45 |
| 6.11 | *No Distribution in Excess of Amount of Allowed Claim.* | 45 |
| 6.12 | *Securities Registration Exemption.* | 45 |

SECTION 7. PROCEDURES FOR DISPUTED CLAIMS. ...45

| | | |
|---|---|---|
| 7.1 | *Objections to Claims.* | 45 |
| 7.2 | *Allowance of Claims.* | 45 |
| 7.3 | *Estimation of Claims.* | 46 |
| 7.4 | *No Distributions Pending Allowance.* | 46 |
| 7.5 | *Reserve on Account of Disputed Claims.* | 46 |
| 7.6 | *Resolution of Claims.* | 47 |
| 7.7 | *Late Filed Claims.* | 48 |
| 7.8 | *Amendments to Claims.* | 48 |
| 7.9 | *Insured Claims.* | 48 |

SECTION 8. EXECUTORY CONTRACTS AND UNEXPIRED LEASES. ...48

| | | |
|---|---|---|
| 8.1 | *Assumption and Assignment of Executory Contracts and Unexpired Leases.* | 48 |
| 8.2 | *Indemnification Obligations.* | 48 |
| 8.3 | *Claims Based on Rejection of Executory Contracts and Unexpired Leases.* | 49 |
| 8.4 | *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.* | 49 |
| 8.5 | *Modifications, Amendments, Supplements, Restatements, or Other Agreements.* | 50 |
| 8.6 | *Reservation of Rights.* | 50 |

SECTION 9. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE. ...50

| | | |
|---|---|---|
| 9.1 | *Conditions Precedent to the Effective Date.* | 50 |
| 9.2 | *Waiver of Conditions Precedent.* | 51 |
| 9.3 | *Substantial Consummation.* | 51 |
| 9.4 | *Effect of Vacatur of Confirmation Order.* | 51 |

SECTION 10. SETTLEMENT, RELEASES, INJUNCTIONS, AND RELATED PROVISIONS. ...51

| | | |
|---|---|---|
| 10.1 | *Release of Liens.* | 51 |
| 10.2 | *Binding Effect.* | 51 |
| 10.3 | *Term of Injunctions or Stays.* | 52 |
| 10.4 | *Releases by the Debtors.* | 52 |
| 10.5 | *Releases By Holders of Claims and Interests.* | 53 |
| 10.6 | *Exculpation.* | 54 |
| 10.7 | *Injunction.* | 54 |
| 10.8 | *Waiver of Statutory Limitation on Releases.* | 55 |
| 10.9 | *Solicitation of the Plan.* | 55 |
| 10.10 | *PBGC Release.* | 56 |

ii

**TABLE OF CONTENTS**
**(continued)**

SECTION 11.        RETENTION OF JURISDICTION...........................................................................56

SECTION 12.        MISCELLANEOUS PROVISIONS. ...........................................................................58

    12.1      *No Revesting of Assets.* .................................................................................58
    12.2      *Subordinated Claims.*....................................................................................58
    12.3      *Payment of Statutory Fees.* ...........................................................................58
    12.4      *Dissolution of Creditors' Committee.* ...........................................................59
    12.5      *Amendments.*...................................................................................................59
    12.6      *Revocation or Withdrawal of the Plan.*..........................................................59
    12.7      *Severability of Plan Provisions upon Confirmation.* ......................................59
    12.8      *Governing Law.* ..............................................................................................60
    12.9      *Time.* ...............................................................................................................60
    12.10     *Additional Documents.*...................................................................................60
    12.11     *Immediate Binding Effect.*..............................................................................60
    12.12     *Successor and Assigns.* ..................................................................................61
    12.13     *Entire Agreement.* ..........................................................................................61
    12.14     *Notices.* ...........................................................................................................61

WEIL:\97779461\12\30950.0071

Each of the Debtors proposes the following joint chapter 11 plan of liquidation pursuant to section 1121(a) of the Bankruptcy Code.  Capitalized terms used herein shall have the meanings set forth in Section 1.A.

## SECTION 1.    DEFINITIONS AND INTERPRETATION.

### A.    **Definitions.**

1.1.    ***Administration Charge*** means the charge granted by the Canadian Court in the Recognition Proceedings on the Canadian Assets to secure certain professional fees and disbursements incurred in respect of the Recognition Proceedings.

1.2.    ***Administrative Expense Claim*** means any Claim for costs and expenses of administration during the Chapter 11 Cases pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b) or 507(a)(2) of the Bankruptcy Code, including, (i) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (ii) Fee Claims; and (iii) all fees and charges assessed against the Estates pursuant to section 1911 through 1930 of chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

1.3.    ***Administrative Expense Claims Bar Date*** means (i) December 18, 2020 at 5:00 p.m. (Eastern Time) for Administrative Expense Claims arising on or prior to August 31, 2020; and (ii) such date that is thirty (30) days following the Confirmation Date for Administrative Expense Claims arising on and after September 1, 2020 and prior to the Effective Date.

1.4.    ***Affiliate*** has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.5.    ***Allowed*** means, with reference to any Claim or Interest, a Claim or Interest (i) arising on or before the Effective Date as to which (A) no objection to allowance or priority, and no request for estimation or other challenge, including, without limitation, pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law, or (B) any objection has been determined in favor of the holder of the Claim or Interest by a Final Order; (ii) that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors (if prior to the Effective Date, with the consent of the Creditors' Committee) or the Liquidation Trustee, as applicable; (iii) as to which the liability of the Debtors or the Liquidation Trust, as applicable, and the amount thereof are determined by a Final Order of a court of competent jurisdiction; (iv) that is listed in the Schedules as liquidated, non-contingent, and undisputed, and is not superseded by a Proof of Claim; or (v) expressly allowed hereunder; *provided,* notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to, and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, and (y) the Liquidation Trustee shall retain all claims and defenses with respect to Allowed Claims that are Unimpaired pursuant to the Plan.

1.6.    ***Allowed General Unsecured Claims Distribution Amount*** means, for the purpose of calculating Distributions of Liquidation Trust Assets or proceeds of the Litigation Trust Assets, as applicable, to be received by holders of Allowed General Unsecured Claims on account of such holders' Liquidation Trust Beneficial Interests or Litigation Trust Beneficial Interests, the amount determined based on the following formula:

$$(a - b) \; \times \; \frac{y}{z}$$

$a$ = The amount of the Distribution to be made by the Liquidation Trustee or the Litigation Trustee, as applicable, to holders of the Liquidation Trust Beneficial Interests or Litigation Trust Beneficial Interests, respectively.
$b$ = The PBGC Claims Distribution Amount.
$y$ = The aggregate amount of Allowed amount of General Unsecured Claims.
$z$ = The aggregate amount of Allowed and Disputed General Unsecured Claims against the Debtors.

1.7.    ***APA*** means that certain Asset Purchase Agreement entered into by and among certain of the Debtors and SPARC, dated July 23, 2020, as amended by that certain First Amendment to the Asset Purchase Agreement dated as of August 11, 2020, as further amended by that certain Second Amendment to the Asset Purchase Agreement dated as of August 31, 2020, as may be amended, modified, or supplemented from time to time in accordance with the Sale Order.

1.8.    ***Assumption Schedule*** means the schedule of Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Debtors pursuant to the Plan, which will be (i) in form and substance reasonably acceptable to the Creditors' Committee, and (ii) included in the Plan Supplement, as may be amended, modified, or supplemented from time to time in accordance with the Confirmation Order.

1.9.    ***Avoidance Action*** means any action commenced, or that may be commenced, before or after the Effective Date pursuant to the Bankruptcy Code, CCAA, BIA or applicable non-bankruptcy law, including actions or remedies under sections 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code.

1.10.    ***Ballot*** means each of the ballots distributed to the holders of Claims in Class 3 and Class 4.

1.11.    ***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.12.    ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

1.13.    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States

WEIL:\97779461\12\30950.0071

Code, as amended from time to time, applicable to the Chapter 11 Cases, and any Local Rules of the Bankruptcy Court.

1.14.    ***Bar Date*** means the dates fixed by order(s) of the Bankruptcy Court (including the Bar Date Orders, the Administrative Expense Claims Bar Date, or otherwise in this Plan or the Confirmation Order) by which any Persons, asserting a Claim against any Debtor must have filed a Proof of Claim or application for allowance of such Claim (as applicable) with the Bankruptcy Court against any such Debtor or be forever barred from asserting such Claim.

1.15.    ***Bar Date Orders*** means that certain (i) *Order (I) Establishing a General Bar Date to File Proofs of Claim, (II) Establishing a Bar Date to file Proofs of Claim by Governmental Units, (III) Establishing an Amended Schedules Bar Date, (IV) Establishing A Rejection Damages Bar Date, (V) Approving the Form and Manner for Filing, (VI) Approving the Proposed Notice of Bar Date, and (VII) Granting Related Relief*, entered by the Bankruptcy Court in the Chapter 11 Cases on August 11, 2020 [D.I. 366]; and (ii) *Order (I) Establishing Bar Dates for (A) Filing Proofs of Claim Against BBGI Canada Ltd., (B) Assertion of Certain Administrative Expense Claims, and (C) Filing Proofs of Claim for Alexis Bittar Customer Programs, (II) Approving the Form and Manner for Filing Proofs of Claim, (III) Approving the Proposed Notice Thereof, and (IV) Granting Related Relief* entered by the Bankruptcy Court in these Chapter 11 Cases on November 16, 2020 [D.I. 727].

1.16.    ***BB Canada*** means BBGI Canada Ltd. (f/k/a Brooks Brothers Canada Ltd.).

1.17.    ***BB Parent*** means BBGI US, Inc. (f/k/a Brooks Brothers Group, Inc.).

1.18.    ***BIA*** means the Bankruptcy and Insolvency Act R.S.C., 1985, c. B-3, as amended.

1.19.    ***Business Day*** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.20.    ***Canadian Assets*** means the assets, undertakings and properties of BB Canada at the applicable time, excluding any Canadian Collateral Proceeds.

1.21.    ***Canadian Collateral Proceeds*** means the BB Canada asset sale proceeds as defined in the Debtors' *Stipulation and Agreement with Wells Fargo N.A. Regarding Sale Order and Release of Liens and Claims* dated August 30, 2020, paid or to be paid to BB Parent in accordance with the terms thereof and the Canadian Sale Order.

1.22.    ***Canadian Court*** means the Ontario Superior Court of Justice (Commercial List).

1.23.    ***Canadian Sale Order*** means the recognition, approval and vesting order issued by the Canadian Court dated September 25, 2020 in the Recognition Proceedings.

1.24.    ***Cash*** means legal tender of the United States of America.

1.25.    ***Causes of Action*** means any action, Claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law; *provided* that, for the avoidance of doubt, Causes of Action shall not include the Purchased Actions.  Cause of Action also includes: (i) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (ii) the right to object to Claims or Interests; and (iii) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

1.26.    ***CCAA*** means Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended.

1.27.    ***Chapter 11 Cases*** means the jointly administered cases of the Debtors under chapter 11 of the Bankruptcy Code styled *In re Brooks Brothers, Inc.*, *et al.*, Case No. 20-11785 (CSS).

1.28.    ***Claim*** has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.29.    ***Claims Objection Bar Date*** means the first Business Day that is 180 days after the Effective Date or such later date as may be permitted pursuant to an order of the Bankruptcy Court.

1.30.    ***Class*** means any group of Claims or Interests classified pursuant to Section 3.1 of the Plan.

1.31.    ***Confirmation*** means the entry on the docket of the Chapter 11 Cases of the Confirmation Order.

1.32.    ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.33.    ***Confirmation Hearing*** means the hearing held by the Bankruptcy Court regarding Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.34.    ***Confirmation Recognition Order*** means the order granted by the Canadian Court recognizing the Confirmation Order in the Recognition Proceedings.

1.35.    ***Confirmation Order*** means an order of the Bankruptcy Court in form and substance acceptable to the Debtors and reasonably acceptable to the Creditors' Committee confirming the Plan.

1.36.    ***Consummation*** means the occurrence of the Effective Date of the Plan.

1.37.    ***Creditors' Committee*** means the statutory committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as the same may be constituted from time to time.

1.38.    ***Creditors' Committee Counsel*** means Akin Gump Strauss Hauer & Feld LLP and Troutman Pepper Hamilton Sanders LLP in their respective capacities as counsel to the Creditors' Committee.

1.39.    ***Cure Obligation*** means all (a) amounts required to cure any monetary defaults, and (b) other obligations required to cure any non-monetary defaults, in each case under any Executory Contract or Unexpired Lease that is to be assumed by the Debtors pursuant to the Plan and sections 365 and 1123 of the Bankruptcy Code.

1.40.    ***D&O Policy*** means any insurance policy for, among others, directors, members, trustees, and officers liability (or any equivalents) maintained by the Debtors' Estates, and all agreements, documents or instruments relating thereto, including any runoff policies or tail coverage.

1.41.    ***Debtor Affiliates*** means the Debtors other than BB Parent.

1.42.    ***Debtors*** means BB Parent; Brooks Brothers Far East Limited; BBD Holding 1, LLC; BBD Holding 2, LLC; BBDI, LLC; BBGI International, LLC (f/k/a Brooks Brothers International, LLC) (N/A); BBGI Restaurant, LLC (f/k/a Brooks Brothers Restaurant, LLC); Deconic Group LLC; Golden Fleece Manufacturing Group, LLC; RBA Wholesale, LLC; Retail Brand Alliance Gift Card Services, LLC; Retail Brand Alliance of Puerto Rico, Inc.; 696 White Plains Road, LLC; and BB Canada.

1.43.    ***DIP Agent*** means ABG-BB, LLC, solely in its capacity as agent under the DIP Credit Agreement.

1.44.    ***DIP Credit Agreement*** means that certain Debtor-in-Possession Term Loan Agreement dated as of July 10, 2020 among BB Parent, as the lead borrower, and the lenders party thereto.

1.45.    ***DIP Lender*** shall have the meaning ascribed to the term "Lender" in the DIP Credit Agreement.

1.46.    ***Directors' Charge*** means the charge granted by the Canadian Court in the Recognition Proceedings on the Canadian Assets to indemnify the Debtors' directors and officers against obligations and liabilities that they may incur as directors and officers in connection with the business in Canada, in each case incurred in respect of the Recognition Proceedings.

WEIL:\97779461\12\30950.0071

1.47.    ***Disallowed*** means a Claim against a Debtor, or any portion thereof, (i) that has been disallowed by a Final Order of the Bankruptcy Court, a settlement, or the Plan, (ii) that is listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or applicable law, or (iii) that is not listed in the Debtors' Schedules and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or under applicable law.

1.48.    ***Disclosure Statement*** means the Disclosure Statement for the Plan, which is prepared and distributed in accordance with sections 1125, 1126(b) and/or 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and/or other applicable law.

1.49.    ***Disputed*** means, with respect to a Claim, a Claim against a Debtor (i) neither Allowed nor Disallowed, or (ii) held by a Person or Entity against whom or which any of the Debtors, the Liquidation Trust or the Liquidation Trustee has commenced a proceeding, including an objection to such Claim or an Avoidance Action.

1.50.    ***Disputed Claims Reserve*** means Liquidation Trust Assets or Litigation Trust Assets allocable to Disputed Claims.

1.51.    ***Distribution*** means payment or distribution of consideration to holders of Allowed Claims, or Liquidation Trust Beneficiaries or Litigation Trust Beneficiaries pursuant to this Plan.

1.52.    ***Distribution Date*** means a date or dates, including the Initial Distribution Date, as determined by the Debtors or the Liquidation Trustee, as applicable, in accordance with the terms of the Plan, on which the Debtors or the Liquidation Trustee makes a Distribution to holders of the Liquidation Trust Beneficial Interests or the Litigation Trust Interests, as applicable, on account of Allowed Claims.

1.53.    ***Distribution Record Date*** means the Effective Date of the Plan.

1.54.    ***DV Claims*** means any of the Debtors' or the Estates' Causes of Action against the DV Entities, including, but not limited to, Avoidance Actions or recharacterization, contractual subordination or equitable subordination of any Claims of any of the DV Entities, and all rights to object to Claims of any DV Entities.

6

1.55.    ***DV Entities***  means (i) Claudio Del Vecchio; (ii) Matteo Del Vecchio; (iii) any present or former member of Claudio Del Vecchio or Matteo Del Vecchio's immediate families; (iv) the CDV Trust; (v) the CDV 2010 Annuity Trust; (vi) the Del Vecchio Family Trust; (vii) Delfin S.Á R.L.[2]; (viii) DV Family LLC; (ix) the CDV 2015 Annuity Trust; (x) the CDV 2015 Annuity Trust U/A/D 9-16-2015; (xi) the CDV 2015 Annuity Trust U/A/D 2-9-2006; (xii) 346 Madison Avenue, LLC; (xiii) 11 East 44th Street, LLC; (xiv) CDV Holdings LLC; (xv) 2015 Omega Trust U/A/D 9-16-2015; (xvi) DV Family, LLC; and (xvii) with respect to each of the foregoing entities in clauses (i) through (xvi), such entities' respective trustees, beneficiaries, heirs, executors, estates, devisees, members, managers, transferees and assigns that are not Debtors.

1.56.    ***Effective Date*** means the date on which all conditions to the effectiveness of the Plan set forth in Section 9 hereof have been satisfied or waived in accordance with the terms of the Plan.

1.57.    ***Entity*** has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.58.    ***Estate or Estates*** means individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.59.    ***Exculpated Parties*** means collectively: (i) the Debtors; (ii) the Estates; (iii) the Creditors' Committee and the members of the Creditors' Committee; and (iv) with respect to each of the foregoing entities in clauses (i) through (iv), such entities' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, Estates, servants and nominees, in each case in their capacity as such; *provided, however,* that Exculpated Parties shall not include any Former D&Os.

1.60.    ***Executory Contract*** means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.61.    ***Fee Claim*** means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by professional persons retained by the Debtors, the Creditors' Committee, or any other official committee appointed in these Chapter 11 Cases pursuant to sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code; *provided* that the foregoing excludes Claims for compensation for services rendered by professionals retained under that certain *Order (I) Authorizing Debtors to Employ Professionals Utilized in the Ordinary Course of Business and (II) Granting Related Relief*, entered by the Bankruptcy Court in the Chapter 11 Cases on August 7, 2020 [D.I. 333].

1.62.    ***Final DIP Order***  means that certain *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying Automatic Stay, and (VI)*

---

[2] Inclusive of any alternative spellings, including Delfin SARL, Delfin S.À R.L., and Delfin S.a.r.l.

*Granting Related Relief*, entered by the Bankruptcy Court in the Chapter 11 Cases on August 14, 2020 [D.I. 443].

1.63.    ***Final Order*** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

1.64.    ***Former D&Os*** means each former director or former officer of any Debtor who was not a director or officer of a Debtor as of the Petition Date.

1.65.    ***Former D&O and Shareholder Causes of Action*** means any and all of the Debtors' or the Estates' Causes of Action against any Former D&O or Shareholder.

1.66.    ***Former Non-Debtor Subsidiaries*** means (i) Brooks Brothers Europe S.r.l.; (ii) Brooks Brothers Spain Srl; (iii) Brooks Brothers France SARL; (iv) Brooks Brothers Germany GmbH; and (v) Brooks Brothers Switzerland SAGL.

1.67.    ***General Unsecured Claim*** means any unsecured Claim against any Debtor that is not an Administrative Expense Claim, Intercompany Claim, Fee Claim, Priority Tax Claim, Other Priority Claim, Secured Claim, Subordinated Claim, or PBGC Claim.

1.68.    ***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.69.    ***Impaired*** means, with respect to a Claim, Interest or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.70.    ***Indemnification Obligations*** means each of the Debtors' indemnification obligations in place immediately prior to the Effective Date, whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, management or indemnification agreements, or employment or other contracts, or otherwise, for the directors and officers that are currently employed by, or serving on the board of directors of, any of the Debtors, as of the date immediately prior to the Effective Date, and the attorneys, accountants, investment bankers, and other Professionals that are retained by any of the Debtors as of the date immediately prior to the

Effective Date; *provided,* that the foregoing shall not include the Debtors' indemnification obligations, if any, to (i) the DV Entities, or (ii) any Former D&Os.

1.71.    ***Information Officer*** means the information officer appointed by the Canadian Court in the Recognition Proceedings.

1.72.    ***Initial Distribution*** means the first Distribution that either the Debtors or the Liquidation Trustee, as applicable, makes to holders of Allowed Claims.

1.73.    ***Initial Distribution Date*** means the date selected by the Debtors or the Liquidation Trustee, as applicable, on or as soon as reasonably practicable after the Effective Date, on which the Debtors or the Liquidation Trustee, as applicable, will make the Initial Distribution.

1.74.    ***Insured Claim*** means any Claim or portion of a Claim that is, or may be, insured under any of the Debtors' insurance policies.

1.75.    ***Intercompany Claim*** means a Claim against any Debtor by another Debtor.

1.76.    ***Interest*** means any equity security (as defined in section 101(16) of the Bankruptcy Code) of a Debtor, including all shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in any Debtor, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, whether fully vested or vesting in the future, including, without limitation, equity or equity-based incentives, grants, or other instruments issued, granted or promised to be granted to current or former employees, directors, officers, or contractors of the Debtors, to acquire any such interests in the Debtors that existed immediately before the Effective Date.

1.77.    ***Interim Compensation Order*** means that certain *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals and (II) Granting Related Relief* entered by the Bankruptcy Court in the Chapter 11 Cases on August 11, 2020 [D.I. 367].

1.78.    ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.79.    ***Liquidation Trust*** means that certain trust established pursuant to Section 5.4 hereof to, among other things, hold the Liquidation Trust Assets and make Distributions to holders of Allowed Claims pursuant to this Plan.

1.80.    ***Liquidation Trust Agreement*** means the trust agreement governing the Liquidation Trust, which shall be in form and substance reasonably acceptable to the Debtors and the Creditors' Committee and shall be filed with the Plan Supplement.

1.81.    ***Liquidation Trust Assets*** means all of the assets of the Estates (excluding the Professional Fees Account, any Canadian Collateral Proceeds in the possession of BB Canada pursuant to the Canadian Sale Order to support the Administration Charge and the Directors' Charge, the Canadian Assets and the Litigation Funding Amount) that are not Litigation Trust Assets.

WEIL:\97779461\12\30950.0071

1.82.    *Liquidation Trust Beneficial Interests* means the beneficial interests in the Liquidation Trust.

1.83.    *Liquidation Trust Beneficiaries* shall mean all holders of Allowed Class 3 PBGC Claims and Allowed Class 4 General Unsecured Claims.

1.84.    *Liquidation Trust Expenses* means any and all reasonable fees, costs and expenses incurred by the Liquidation Trust or the Liquidation Trustee (or any professional or other Person retained by the Liquidation Trustee) on or after the Effective Date in connection with any of their duties under the Plan and the Liquidation Trust Agreement, including any administrative fees, attorneys' fees and expenses, insurance fees, taxes and escrow expenses.

1.85.    *Liquidation Trustee* means Adrian Frankum of Ankura Consulting Group, LLC, who is to serve as trustee of the Liquidation Trust, as contemplated by Section 5.4(c) of this Plan and the Liquidation Trust Agreement.

1.86.    *Litigation Fees Amount* means the Cash remaining in that certain segregated bank account funded by the Debtors for the benefit of the Litigation Trust in the amount of $1,930,000, *less* any fees and expenses actually incurred by Creditors' Committee Counsel between September 4, 2020 and the Effective Date (which amounts shall be funded into the Professional Fees Account), and subject to adjustment by the Debtor or the Liquidation Trustee, as applicable, as set forth in Section 5.5(c).

1.87.    *Litigation Trust* means the trust that is created pursuant to Section 5.5 of the Plan and pursuant to the Litigation Trust Agreement, for the benefit of the Litigation Trust Beneficiaries.

1.88.    *Litigation Trust Agreement* means the trust agreement governing the Litigation Trust, which shall be in form and substance reasonably acceptable to the Debtors and the Creditors' Committee and filed with the Plan Supplement.

1.89.    *Litigation Trust Assets* means (i) the DV Claims; (ii) the Litigation Trust Funding; (iii) Former D&O and Shareholder Causes of Action and all rights to object to Claims of any of the Former D&Os or Shareholders; and (iv) any additional Causes of Action as explicitly agreed upon by the Liquidation Trustee and the Litigation Trustee.

1.90.    *Litigation Trust Beneficial Interests* means the beneficial interests in the Litigation Trust.

1.91.    *Litigation Trust Beneficiaries* shall mean all holders of Allowed Class 3 PBGC Claims and Allowed Class 4 General Unsecured Claims.

1.92.    *Litigation Trust Expenses* means the reasonable fees, costs and expenses incurred by the Litigation Trust or the Litigation Trustee (or any professional or other Person retained by the Litigation Trustee) on or after the Effective Date in connection with any of their duties under the Plan and the Litigation Trust Agreement, including but not limited to any administrative fees, attorneys' fees and expenses, expert witness fees, financial advisor fees, insurance fees, taxes and escrow expenses.

1.93.    ***Litigation Trust Funding*** means, (i) the Litigation Trust Minimum Funding, plus (ii) the Litigation Fees Amount, plus (iii) any other amounts funded to the Litigation Trust by express written agreement of the Liquidation Trustee and the Litigation Trustee.

1.94.    ***Litigation Trust Minimum Funding*** means $500,000 in Cash funded by the Debtors from the Professional Fees Account into the Litigation Trust on the Effective Date of the Plan.

1.95.    ***Litigation Trust Oversight Board*** means a board comprised of all the members of the Creditors' Committee, whose responsibilities and duties are as set forth in the Litigation Trust Agreement and this Plan.

1.96.    ***Litigation Trustee*** means William T. Reid, IV, who is to administer the Litigation Trust in accordance with the provisions of Section 5.5(f) of the Plan and pursuant to the Litigation Trust Agreement.

1.97.    ***Non-Debtor Subsidiaries*** means (i) Brooks Brothers (Japan) Ltd; (ii) Brooks Brothers Greater China Limited; (iii) Brooks Brothers (Shanghai) Commercial Co. Ltd.; (iv) Brooks Brothers Hong Kong Limited; (v) Brooks Brothers Macau Limited; (vi) Brooks Brothers India Private Limited; (vii) Q.C Service Limited; (viii) Brooks Brothers Singapore Pte. Ltd; (ix) Brooks Brothers Malaysia SDN. BHD.; (x) Brooks Brothers UK Limited; (xi) Brooks Brothers Korea Ltd; (xii) Brooks Brothers Ireland Limited; (xiii) Brooks Brothers Australia Pty Limited; and (xiv) Brooks Brothers Austria GmbH.

1.98.    ***Non-Debtor Subsidiary Claims*** means the Claims of the Non-Debtor Subsidiaries and the Former Non-Debtor Subsidiaries, which shall be Allowed in the amounts and priority set forth in the Plan Supplement.

1.99.    ***Other Priority Claim*** means any Claim against any of the Debtors entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

1.100.    ***Original Debtors*** means BB Parent; Brooks Brothers Far East Limited; BBD Holding 1, LLC; BBD Holding 2, LLC; BBDI, LLC; BBGI International, LLC (f/k/a Brooks Brothers International, LLC) (N/A); BBGI Restaurant, LLC (f/k/a Brooks Brothers Restaurant, LLC); Deconic Group LLC; Golden Fleece Manufacturing Group, LLC; RBA Wholesale, LLC; Retail Brand Alliance Gift Card Services, LLC; Retail Brand Alliance of Puerto Rico, Inc.; and 696 White Plains Road, LLC.

1.101.    ***PBGC*** means the Pension Benefit Guaranty Corporation.

1.102.    ***PBGC Claims*** means the Claims of the PBGC, which shall be Allowed as a prepetition unsecured claim in the amount of $62,000,000 in accordance with Section 5.3(a) herein.

1.103.    **PBGC Claims Distribution Amount** means, for the purpose of calculating any Distribution of Liquidation Trust Assets or proceeds of the Litigation Trust Assets, as applicable, to be received by the PBGC as holder of an Allowed Class 3 PBGC Claim on account Liquidation Trust Beneficial Interests or Litigation Trust Beneficial Interests, the amount determined based on the following formula:

$$\left[ \frac{a}{b} \times 2.25 \times c \right] - d$$

$a$ = The Allowed amount of the PBGC Claims.

$b$ = The sum of (i) the aggregate amount of Allowed and Disputed General Unsecured Claims against the Debtors and (ii) the Allowed amount of the PBGC Claims.

$c$ = The sum of (i) the amount of the Distribution to be made by the Liquidation Trustee and the Litigation Trustee, as applicable, to holders of the Liquidation Trust Beneficial Interests or Litigation Trust Beneficial Interests, respectively, and (ii) the aggregate amount of all prior Distributions made by the Liquidation Trustee and the Litigation Trustee, as applicable, to holders of the Liquidation Trust Beneficial Interests or Litigation Trust Beneficial Interests, respectively.

$d$ = The aggregate amount of all prior Distributions made to the PBGC.

1.104.    **PBGC Settlement** means the settlement between the Debtors and the PBGC, to which the Creditors' Committee has concurred, the agreed terms of which are incorporated in this Plan (including Section 5.3 hereof) and described in the Disclosure Statement.

1.105.    **Pension Plans** means The Brooks Brothers Pension Plan (originally effective as of April 29, 1988) and the Retail Brand Alliance, Inc. Pension Plan (originally effective as of October 1, 1995), each as amended, restated, supplemented, or otherwise modified from time to time.

1.106.    **Person** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit or other entity.

1.107.    **Petition Date** means (i) July 8, 2020 with respect to the Original Debtors; and (ii) September 10, 2020 with respect to BB Canada.

1.108.    **Plan** means this joint chapter 11 plan, including the exhibits hereto, as the same may be amended or modified from time to time in accordance with Section 8.5 herein.

1.109.    **Plan Supplement** means the compilation of documents containing (i) information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; (ii) the Liquidation Trust Agreement; (iii) the Litigation Trust Agreement; (iv) the Schedule of Alternative Plan Debtors; (v) the Schedule of Retained Causes of Action; (vi) the identities of the members of the Litigation Trust Oversight Board; and (vii) the Schedule of Allowed Non-Debtor Subsidiary Claims, as each document may be amended from time to time.

1.110.    **Plan Trusts** means the Liquidation Trust and the Litigation Trust.

WEIL:\97779461\12\30950.0071

1.111.    ***Plan Trustees*** means the Liquidation Trustee and the Litigation Trustee.

1.112.    ***Prepetition ABL Agent*** shall have the meaning ascribed to such term in the Final DIP Order.

1.113.    ***Prepetition ABL Lenders*** shall have the meaning ascribed to such term in the Final DIP Order.

1.114.    ***Priority Tax Claim*** means any secured or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.115.    ***Pro Rata*** means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims and Disputed Claims within such Class, or the proportion that Allowed Claims in a particular Class bears to the aggregate amount of Allowed Claims in multiple Classes, as applicable.

1.116.    ***Proof of Claim*** means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

1.117.    ***Professional*** means an Entity retained in the Chapter 11 Cases pursuant to and in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

1.118.    ***Professional Fee Escrow*** means an interest-bearing escrow account to be funded by the Debtors on the Effective Date in an amount equal to an estimate of all unpaid Fee Claims.

1.119.    ***Professional Fees Account*** shall have the meaning ascribed to such term in the Final DIP Order.

1.120.    ***Purchased Actions*** shall have the meaning ascribed to such term in the Sale Order.

1.121.    ***Recognition Proceedings*** means the proceedings commenced by the Debtors under Part IV of the CCAA in the Canadian Court to recognize the Chapter 11 Cases as "foreign main proceedings" in Canada.

1.122.    ***Released Parties*** means collectively: (i) the Debtors; (ii) the Creditors' Committee and the members of the Creditors' Committee solely in their capacities as such, and not individually; (iii) the DIP Lender; (iv) the DIP Agent; (v) the ABL Agent; (vi) the ABL Lenders; (vii) the Information Officer; (viii) with respect to any Person or Entity in the foregoing clauses (i) through (vii), such Person or Entity's predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees each solely in its

WEIL:\97779461\12\30950.0071

capacity as such; *provided*, *however*, that the (i) DV Entities, and (ii) Former D&Os and Shareholders shall not be Released Parties; *provided, further* that any holder of a Claim that opts out of the releases set forth in Section 10.5 of the Plan or files with the Bankruptcy Court an objection to the releases set forth Section 10.5 of this Plan by the deadline established to file objections to this Plan shall not be a Released Party.

1.123.    ***Releasing Parties*** means collectively, and in each case, in their respective capacities as such: (i) the Released Parties; (ii) all holders of Claims and Interests that are deemed to accept this Plan; (iii) all holders of Claims who vote to accept the Plan; (iv) all holders of Claims that are entitled to vote on the Plan who abstain from voting on the Plan or who vote to reject the Plan, but in either case, do not opt out of granting the releases set forth in Section 10.5 of the Plan; (v) holders of Claims or Interests that are deemed to reject this Plan and do not timely file with the Bankruptcy Court an objection to the releases set forth in Section 10.5 of this Plan by the deadline established to file objections to this Plan; and (vi) with respect to any Person or entity in the foregoing clauses (i) through (v), such Person or Entities' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

1.124.    ***Sale Order*** means the *Order (I) Approving Asset Purchase Agreement, (II) Authorizing Sale to the Stalking Horse Bidder of the Acquired Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, (III) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (IV) Granting Related Relief* entered by the Bankruptcy Court in the Chapter 11 Cases on August 14, 2020 [D.I. 444].

1.125.    ***Sale Transaction*** means the sale of substantially all of the Debtors' assets pursuant to the Sale Order and the Canadian Sale Order.

1.126.    ***Schedule of Allowed Non-Debtor Subsidiary Claims*** means the schedule of Allowed Non-Debtor Subsidiary Claims, which shall be included in the Plan Supplement and which shall be reasonably acceptable to the Creditors' Committee.

1.127.    ***Schedule of Alternative Plan Debtors*** means the list of Debtors, if any, who will be decoupled from this Plan in accordance with Section 5.2(c), which list which shall be filed with the Plan Supplement.

1.128.    ***Schedule of Retained Causes of Action*** means the list of any Causes of Action to be retained by the Debtors, including the DV Claims, which list shall be filed with the Plan Supplement and shall be reasonably acceptable to the Creditors' Committee.

1.129.    ***Schedules*** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.130.    ***Secured Claim*** means a Claim to the extent, under applicable non-bankruptcy law, it is (i) secured by property of the Estate, the amount of which is equal to or less than the value of such property (A) as agreed to by the holder of such Claim and the Debtors, or (B) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code, and includes any Claim against the Canadian Assets secured by (x) the Administration Charge, or (y) the Directors' Charge.

1.131.    ***Shareholders*** means the direct shareholders of BB Parent.

1.132.    ***SPARC*** means SPARC GROUP LLC.

1.133.    ***Subordinated Claim*** means a Claim that is subject to subordination in accordance with sections 510 of the Bankruptcy Code or otherwise.

1.134.    ***Tax Code*** means the Internal Revenue Code of 1986, as amended from time to time.

1.135.    ***Unexpired Lease*** means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.136.    ***Unimpaired*** means, with respect to a Claim, Interest or Class of Claims or Interests, not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

1.137.    ***Unsecured Claims*** means General Unsecured Claims and PBGC Claims.

1.138.    ***Wind-Down Reserve*** means a cash reserve sufficient to fund the Liquidation Trust's activities, including the Liquidation Trust Expenses, pursuant to a budget reasonably acceptable to the Debtors and the Creditors' Committee, as may be amended from time to time by the Liquidation Trustee.

B.    **Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (iv) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (v) any term used in capitalized form herein that is not otherwise defined

but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

> C.      **Controlling Document.**

In the event of an inconsistency between the Plan and any other document, the terms of the Plan shall control (unless stated otherwise in such other document).  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided* that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## SECTION 2.      ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS.

> 2.1      *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim and the Debtors or the Liquidation Trustee agree to different treatment, the Debtors (or the Liquidation Trustee, as the case may be) shall pay to each holder of an Allowed Administrative Expense Claim Cash in an amount equal to such Claim on, or as soon thereafter as is reasonably practicable, the later of (i) forty five (45) calendar days after the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim is Allowed.

Holders of Administrative Expense Claims that were required to file and serve a request for payment of such Administrative Expense Claims and that did not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors or their property, or the Liquidation Trust or the Liquidation Trust Assets, or the Litigation Trust or the Litigation Trust Assets, and such Administrative Expense Claims shall be deemed compromised, settled, and released as of the Effective Date.  The Debtors or the Liquidation Trustee, as applicable, may file and serve objections to Administrative Expense Claims on or before the Claims Objection Bar Date.

> 2.2      *Fee Claims.*

> > (a)      *Professional Fee Escrow.* No later than five (5) days after the Effective Date, the Debtors or the Liquidation Trustee shall establish and fund the Professional Fee Escrow, and the Debtors shall be authorized to transfer custody of the Professional Fees Account to the Liquidation Trust for this purpose. Fee Claims shall be paid in Cash from funds held in the Professional Fee Escrow when such Claims are Allowed by a Final Order of the Bankruptcy Court.   Neither the Debtors' nor the Liquidation Trust's obligations to pay Professional Fee Claims shall be limited nor be deemed limited to funds held in the Professional Fee Escrow.

16

(b)     *Estimation of Fee Claims*.  No later than five (5) days before the anticipated Effective Date, Professionals shall provide a good faith estimate of their Fee Claims projected to be outstanding as of the Effective Date and shall deliver such estimate to the Debtors. Such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may, after consulting with the Committee, estimate the unbilled fees and expenses of such Professional.  The total amount so estimated shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow.  The Liquidation Trust shall use Cash on hand to increase the amount of the Professional Fee Escrow to the extent fee applications are filed after the Effective Date in excess of the amount held in the Professional Fee Escrow based on such estimates.

(c)     *Payment of Fee Claims*.  All entities seeking an award by the Bankruptcy Court of Fee Claims (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date, and (ii) shall be paid in full from the Professional Fees Account or the Professional Fee Escrow, as applicable, in such amounts as are Allowed by the Bankruptcy Court (A) in accordance with the Interim Compensation Order, (B) upon the later of the Effective Date and the date upon which the order relating to any such Allowed Fee Claim is entered or (C) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Fee Claim and the Debtors or the Liquidation Trustee, as applicable.  The Liquidation Trustee is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.  When all Allowed Fee Claims have been paid in full, any remaining amount in the Professional Fee Escrow shall promptly be released from such escrow and revert to, and ownership thereof shall vest in, the Liquidation Trust without any further action or order of the Bankruptcy Court.

(d)     *Professional Fee Escrow Not Property of the Liquidation Trust*.  Funds held in the Professional Fee Escrow shall not be considered Liquidation Trust Assets or Litigation Trust Assets or otherwise property of the Liquidation Trust or the Litigation Trust, the Debtors, or their Estates.  The Professional Fee Escrow shall be treated as a trust account for the benefit of holders of Fee Claims and for no other parties until all Allowed Fee Claims have been paid in full in Cash.  No Liens, claims, or interests shall encumber the Professional Fee Escrow or Cash held in the Professional Fee Escrow in any way.

2.3     *Priority Tax Claims*.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtors or the Liquidation Trustee, as applicable, (i) Cash in an amount equal to such Allowed Priority Tax Claim on the later of (a) forty five (45) calendar days after the Effective Date (or as soon as reasonably practicable thereafter), (b) the first Business Day after the date that is thirty (30) days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course, or as soon thereafter as is reasonably practicable, or (b) equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable

rate under section 511 of the Bankruptcy Code, over a period not exceeding five (5) years from and after the Petition Date. The holders of Allowed Priority Tax Claims shall retain their tax liens on their collateral to the same validity, extent and priority as existed on the Petition Date until all validly determined taxes and related interest, penalties, and fees (if any) have been paid in full. To the extent a holder of an Allowed Priority Tax Claim is not paid in the ordinary course of business, payment of the Allowed Priority Tax Claim shall include interest through the date of payment at the applicable state statutory rate, as set forth in sections 506(b), 511, and 1129 of the Bankruptcy Code.

## SECTION 3.    CLASSIFICATION OF CLAIMS AND INTERESTS.

### 3.1    *Classification in General*.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided* that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

### 3.2    *Formation of Debtor Groups for Convenience Only*.

This Plan (including, but not limited to, Section 2 and Section 3 of the Plan) groups the Debtors together solely for the purpose of describing treatment under this Plan, confirmation of this Plan, and Plan Distributions to be made in respect of Claims against and Interests in the Debtors under this Plan. Except as provided in Section 5 of the Plan, such groupings shall not affect each Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger of consolidation of any legal entities, or cause the transfer of any assets.

### 3.3    *Summary of Classification*.

The following table designates the Classes of Claims against and Interests in each of the Debtors and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code and (iii) deemed to reject the Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Section 3. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Section 3.5.

| Class | Designation | Treatment | Entitled to Vote |
|:---:|---|:---:|:---:|
| 1 | Other Priority Claims | Unimpaired | No (Presumed to accept) |
| 2 | Secured Claims | Unimpaired | No (Presumed to accept) |
| 3 | PBGC Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Intercompany Claims | Impaired | No (Presumed to accept) |
| 6 | Debtor Interests | Impaired | No (Deemed to reject) |
| 7 | Subordinated Claims | Impaired | No (Deemed to reject) |

3.4     *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the Liquidation Trustee, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

3.5     *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

3.6     *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court at the Confirmation Hearing to deem the Plan accepted by the holders of such Claims or Interests in such Class.

3.7     *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Section 12.5 hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

WEIL:\97779461\12\30950.0071

**SECTION 4.        TREATMENT OF CLAIMS AND INTERESTS.**

   4.1  *Other Priority Claims (Class 1).*

     (a)  *Classification*:  Class 1 consists of Allowed Other Priority Claims against the Debtors.

     (b)  *Treatment*:  Except to the extent that a holder of an Allowed Other Priority Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Claim, payable on the later of the (i) forty five (45) calendar days after the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the first Business Day after thirty (30) days from the date on which such Other Priority Claim becomes and Allowed Priority Claim, or as soon as reasonably practical thereafter.

     (c)  *Voting*:  Class 1 is Unimpaired, and the holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Other Priority Claims.

   4.2  *Secured Claims (Class 2).*

     (a)  *Classification*:  Class 2 consists of the Secured Claims.

     (b)  *Treatment*:  Except to the extent that a holder of an Allowed Secured Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each such holder shall receive, at the option of the Debtors (after consultation with the Creditors' Committee if prior to the Effective Date) or the Liquidation Trustee, (i) payment in full in Cash in full and final satisfaction of such Claim, payable on the later of (A) forty five (45) calendar days after the Effective Date (or as soon as reasonably practicable thereafter) and (B) the first Business Day after thirty (30) days from the date on which such Secured Claim becomes an Allowed Secured Claim, or as soon as reasonably practical thereafter, (ii) delivery of the collateral securing such Allowed Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code, or (iii) such other treatment necessary to satisfy section 1129 of the Bankruptcy Code.

     (c)  *Voting*:  Class 2 is Unimpaired, and the holders of Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Secured Claims.

WEIL:\97779461\12\30950.0071

4.3     *PBGC Claims (Class 3)*.

(a)     *Classification*:  Class 3 consists of the PBGC Claims.

(b)     *Treatment*:  The PBGC Claims shall be Allowed as a prepetition general unsecured claim in the amount of $62,000,000.  In full and final satisfaction of the PBGC Claims, holders of the Allowed PBGC Claims shall receive (i) a Pro Rata Share of the Liquidation Trust Beneficial Interests and (ii) a Pro Rata Share of the Litigation Trust Beneficial Interests.  With respect to any Distribution of Liquidation Trust Assets or Litigation Trust Assets to be made by the Liquidation Trustee or the Litigation Trustee (as applicable), holders of the Allowed PBGC Claims shall receive the PBGC Claims Distribution Amount.  For the avoidance of doubt, the PBGC Claims shall be the only Claims on which the PBGC shall be entitled to any Distribution in connection with the Debtors or this Plan.

(c)     *Voting*:  Class 3 is Impaired and the PBGC, as holder of the PBGC Claims in Class 3, is entitled to vote to accept or reject the Plan.

4.4     *General Unsecured Claims (Class 4)*.

(a)     *Classification*:  Class 4 consists of General Unsecured Claims against the Debtors.

(b)     *Treatment*:  Except to the extent that a holder of an Allowed General Unsecured Claim against the Debtors has agreed to less favorable treatment of such Claim, and except as provided in section 5.11 of the APA with respect to the Claims of Former Non-Debtor Subsidiaries, each such holder shall receive, in full and final satisfaction of such Claim, (i) a Pro Rata Share of the Liquidation Trust Beneficial Interests and (ii) a Pro Rata Share of the Litigation Trust Beneficial Interests.  With respect to any Distribution of Liquidation Trust Assets or proceeds of the Litigation Trust Assets to be made by the Liquidation Trustee or the Litigation Trustee (as applicable), holders of Allowed General Unsecured Claims shall receive their Pro Rata share of the Allowed General Unsecured Claims Distribution Amount.

(c)     *Voting*:  Class 4 is Impaired, and the holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

4.5     *Intercompany Claims (Class 5)*.

(a)     *Classification*:  Class 5 consists of Intercompany Claims against the Debtors.

(b)     *Treatment*:  On or after the Effective Date, all Allowed Intercompany Claims shall be adjusted, continued, settled, reinstated, discharged, or eliminated, in each case to the extent determined to be appropriate by the Debtors or the Liquidation Trustee (as applicable).

(c)     *Voting*:  Class 5 is Impaired. The holders of Intercompany Claims are plan proponents and are conclusively presumed to accept the Plan.  Therefore, holders

21

of Intercompany Claims are not entitled to vote to accept or reject this Plan, and the votes of such holders will not be solicited with respect to Intercompany Claims.

4.6    *Debtor Interests (Class 6)*.

(a)    *Classification*:   Class 6 consists of all Interests in the Debtors.

(b)    *Treatment*:   The Debtor Interests shall be cancelled when merged or dissolved pursuant to the terms of the Plan.   Each holder of a Debtor Interest shall neither receive nor retain any property of the Debtors' estates or direct interest in property of the Debtors' estates.

(c)    *Voting*:   Class 6 is Impaired, and the holders of Debtor Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.   Therefore, the holders of Debtor Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Interests.

4.7    *Subordinated Claims (Class 7)*.

(a)    *Classification*: Class 7 consists of all Subordinated Claims.

(b)    *Treatment*:   All Subordinated Claims, if any, shall be discharged, cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect.   Each holder of Allowed Subordinated Claims shall neither receive nor retain any property of the Debtors' estates or any interest in property of the Debtors' estates.

(c)    *Voting*:   Class 7 is Impaired, and the holders of Subordinated Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the holders of Subordinated Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Subordinated Claims.

## SECTION 5.    MEANS FOR IMPLEMENTATION.

5.1    *Joint Chapter 11 Plan*.

The Plan is a joint chapter 11 plan for each of the Debtors, with the Plan for each Debtor being non-severable and mutually dependent on the Plan for each other Debtor.

5.2    *Limited Substantive Consolidation*.

(a)    *Limited Substantive Consolidation*.   The Plan shall serve as a motion by the Debtors seeking entry of a Bankruptcy Court order deeming the substantive consolidation of the Debtors' Estates into a single Estate for certain limited purposes related to the Plan, including voting, confirmation, and distribution and the Bankruptcy Court's findings that the substantive consolidation of the Estates to the extent set forth herein is (i) in exchange for good and valuable consideration provided by each of the Estates (including, without limitation, performance of the terms of the Plan), and a good-faith settlement and compromise of the released claims, (ii) in the best interests of the Debtors, the Estates and all holders of Claims, (iii) fair,

WEIL:\97779461\12\30950.0071

equitable, and reasonable, and (iv) effected after due notice and opportunity for hearing. As a result of the limited substantive consolidation of the Estates, each Class of Claims and Interests shall be treated as against a single consolidated Estate without regard to the separate legal existence of the Debtors. The Plan shall not result in the merger or otherwise affect the separate legal existence of each Debtor, other than with respect to voting and distribution rights under the Plan, and otherwise in satisfying the applicable requirements of section 1129 of the Bankruptcy Code. The limited substantive consolidation of the Debtors under the Plan shall not (other than for purposes related to funding Distributions under the Plan) affect (u) the legal and organizational structure of the Debtors, (v) executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed or rejected, (w) any agreements entered into by the Liquidation Trust on or after the Effective Date, (x) the Debtors' or the Liquidation Trust's ability to subordinate or otherwise challenge Claims on an entity-by-entity basis, (y) any causes of action or Avoidance Actions or defenses thereto, which in each case shall survive entry of the Confirmation Order and the Confirmation Recognition Order as if there had been no substantive consolidation of the Estates of the Debtors, and (z) distributions to the Debtors or the Liquidation Trust from any insurance policies or the proceeds thereof.

(b)    *Effect on Distributions*. On and after the Effective Date, solely for Distribution purposes (i) all assets and liabilities of the Debtors shall be treated as though they were pooled; (ii) each Claim filed or to be filed against any Debtor shall be deemed filed as a single Claim against, and a single obligation of, the Debtors; (iii) all Intercompany Claims shall be reinstated, settled, offset, cancelled, extinguished or eliminated in accordance with Section 4.5 herein; (iv) no Distributions shall be made under the Plan on account of any Intercompany Interest; (v) any Claims on account of a guarantee provided by a Debtor of the obligations of another Debtor shall be eliminated so that any Claim against any Debtor and any Claim based upon a guarantee thereof by any other Debtor shall be treated as one consolidated Claim against the substantively-consolidated Debtors, and (vi) any joint or several liability of any of the Debtors shall be one obligation of the substantively-consolidated Debtors and any Claims based upon such joint or several liability shall be treated as one consolidated Claim against the substantively-consolidated Debtors.

(c)    *Alternative Plan Debtors*. Notwithstanding the foregoing in this Section 5.2, the Debtors, after consulting with the Creditors' Committee, reserve the right to examine the Claims asserted against the various Entities and to withdraw the Plan with respect to any particular Debtor Entity if the total dollar amount of the Administrative Expense Claims against such Entity would result in the Debtors not being able to satisfy all Allowed Administrative Expense Claims, Secured Claims, Priority Tax Claims and Other Priority Claims against such Debtor in full. In the event that the Debtors elect to withdraw the Plan with respect to any Entity, such Entity shall be listed on the Schedule of Alternative Plan Debtors included in the Plan Supplement and the Debtors, after consulting with the Creditors' Committee, may proceed to seek confirmation of this Plan as to the remaining Debtors on a limited substantively consolidated basis in accordance with Section 5.2(a) above; *provided*, however, that to the extent the Creditors' Committee does not agree with the withdrawal of the Plan with respect to any Debtor, the Creditors' Committee reserves all rights to object to confirmation on the basis of such withdrawal.

WEIL:\97779461\12\30950.0071

5.3     *PBGC Settlement.*

This Plan includes a settlement of the PBGC Claims pursuant to the PBGC Settlement, which provides for the following:

(a)     *Allowance and Treatment of the PBGC Claims.*  The PBGC Claims shall be Allowed as general unsecured claims against the Debtors in the Amount of $62,000,000, and classified in accordance with and entitled to the treatment provided for in Section 4.3 of this Plan.  The PBGC Claims shall be treated as against a single consolidated estate without regard to the separate legal existence of the Debtors and the PBGC Claims shall be deemed as a single Claim against, and a single obligation of, the Debtors.  For the avoidance of doubt, the PBGC Claims shall be the only Claims on which the PBGC shall be entitled to any distribution in connection with the Debtors or this Plan.

(b)     *Preservation of Pension Plan Records.*  If the PBGC is not the trustee of the Pension Plans (or has not completed the transition of the Pension Plans to the PBGC) by the Effective Date, the Debtors will transfer the documents and records necessary for the administration of the Pension Plans to the Liquidation Trustee on the Effective Date or as soon as reasonably practicable thereafter.  With respect to any records transferred in accordance with this Section 5.3(b), the Liquidation Trustee shall (i) store and preserve such records for twelve (12) months after the Effective Date, and (ii) make such documents available to the PBGC for inspection and copying upon reasonable notice.

5.4     *Liquidation Trust.*

(a)     *Liquidation Trust Generally.*   On or prior to the Effective Date, the Liquidation Trust shall be established in accordance with the Liquidation Trust Agreement for the purpose of being vested with and liquidating the Liquidation Trust Assets, reconciling Claims and making Distributions to Holders of Allowed Claims in accordance with the terms of this Plan and the Liquidation Trust Agreement.  Subject to and to the extent set forth in this Plan, the Confirmation Order, the Liquidation Trust Agreement or any other order of the Bankruptcy Court entered in connection therewith, the Liquidation Trust and the Liquidation Trustee shall be empowered, without the need for Bankruptcy Court Approval or Canadian Court approval, to:

(i)     perform all actions and execute all agreements, instruments and other documents necessary to effectuate the purpose of the Liquidation Trust;

(ii)     establish, maintain and administer trust accounts, which shall be segregated to the extent appropriate in accordance with this Plan;

(iii)     accept, preserve, receive, collect, manage, invest, sell, liquidate, transfer, abandon, supervise, prosecute, settle and protect, as applicable, the Liquidation Trust Assets in accordance with this Plan;

(iv)     except to the extent any other Claims have already been Allowed, control and effectuate the Claims reconciliation process with

24

respect to all Claims that are not Claims of the DV Entities or of any of the Former D&Os or Shareholders, including to object to, seek to subordinate, recharacterize, compromise or settle any and all such Claims against the Debtors, including the Disputed Claims (except for the Claims of the DV Entities or of any of the Former D&Os or Shareholders), pursuant to the procedures prescribed in this Plan;

(v)     pursue Causes of Action that are Liquidation Trust Assets, elect not to pursue any such Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as is in the best interests of the Liquidation Trust Beneficiaries;

(vi)     calculate and make Distributions of the proceeds of the Liquidation Trust Assets to holders of Allowed Claims;

(vii)     prepare and file appropriate tax returns and other reports on behalf of the Liquidation Trust and pay taxes or other obligations owed by the Debtors or the Liquidation Trust;

(viii)     retain, compensate and employ professionals to represent the Liquidation Trust;

(ix)     direct and control the wind down, liquidation, sale or abandonment of the remaining assets of the Debtors under the Plan and in accordance with applicable law as necessary to maximize Distributions to holders of Allowed Claims;

(x)     exercise such other powers as may be vested in the Liquidation Trust under the Liquidation Trust Agreement and this Plan, or as are deemed by the Debtors or the Liquidation Trustee to be necessary and proper to implement the provisions of the Liquidation Trust Agreement and effectuate the purpose of the Liquidation Trust; and

(xi)     dissolve the Liquidation Trust in accordance with the terms of the Liquidation Trust Agreement;

(xii)     wind up the affairs of the Debtors, if and to the extent necessary, including taking any steps to dissolve, liquidate, bankrupt or take other similar action with respect to each Debtor, including by terminating the corporate or organizational existence of each such Debtor; and

(xiii)     perform all actions and execute all agreements, instruments and other documents necessary to effectuate the PBGC Settlement as provided in Section 5.3 of the Plan.

Notwithstanding anything to the contrary in this Section 5.4, the Liquidation Trust's primary purpose is liquidating the Liquidation Trust Assets, with no objective to continue or

WEIL:\97779461\12\30950.0071

engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the Liquidation Trust's liquidating purpose and reasonably necessary to conserve and protect the Liquidation Trust Assets and provide for the orderly liquidation thereof.

(b)      *Funding of and Transfer of Assets into the Liquidation Trust*. Except as otherwise provided in this Plan, the Confirmation Order, or the Confirmation Recognition Order, on the Effective Date, the Debtors shall transfer the Liquidation Trust Assets to the Liquidation Trust, and all such assets shall vest in the Liquidation Trust on such date, to be administered by the Liquidation Trustee, in accordance with this Plan and the Liquidation Trust Agreement; *provided*, that until final dissolution of BB Canada (i) the shares of BB Canada shall be owned by the Liquidation Trust, (ii) any remaining Canadian Collateral Proceeds in the possession of BB Canada pursuant to the Canadian Sale Order to support the Administration Charge and the Directors' Charge shall be retained by BB Canada until repaid to BB Parent (or paid as directed by BB Parent) in accordance with the Debtors' Stipulation and Agreement with Wells Fargo, N.A. Regarding Sale Order and Release of Liens and Claims dated August 30, 2020, and (iii) any remaining Canadian Assets shall be continued to be owned by BB Canada until recovered by the Liquidation Trust and shall be distributed by BB Canada to the Liquidation Trust in respect of such shares as part of any dissolution of BB Canada, subject to any withholding requirements in accordance with Section 5.12 of the Plan. The Liquidation Trustee shall have the authority to create additional sub-accounts in trust accounts established pursuant to Section 5.4(f) and sub-trusts within the Liquidation Trust, which may have a separate legal existence, but which shall be considered sub-accounts or sub-trusts of the Liquidation Trust. The act of transferring the Liquidation Trust Assets, as authorized by this Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Liquidation Trust as if the asset or right was still held by the applicable Debtor.

(c)      *Liquidation Trustee*. The Liquidation Trustee shall serve as the initial trustee of the Liquidation Trust. Except as otherwise provided in this Plan, the Liquidation Trustee (i) shall be the successor to and representative of the Estate of each of the Debtors within the meaning of section 1123(b)(3)(B) of the Bankruptcy Code and (ii) shall be the sole representative of, and shall act for, the Debtors, and shall assume any such outstanding responsibility of the Debtors under the Plan. The powers, rights and responsibilities of the Liquidation Trustee shall be as specified in the Liquidation Trust Agreement and Plan and shall include the authority and responsibility to fulfill the items identified in this Section 5.4 of the Plan. Other rights and duties of the Liquidation Trustee and the Liquidation Trust Beneficiaries shall be as set forth in the Liquidation Trust Agreement.

(d)      *Functions of the Liquidation Trustee*. On and after the Effective Date, the Liquidation Trustee and/or the Liquidation Trust, as applicable, shall carry out the functions set forth in this Section 5.4 and may take such actions without supervision or approval by the Bankruptcy Court or the Canadian Court and free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, CCAA or BIA, other than any restrictions expressly imposed by the Plan, the Confirmation Order or the Liquidation Trust Agreement. Such functions shall include any and all powers and authority to:

(i)    effectuate the Plan, including the prosecution and any other disposition of all litigation related to any appeals in respect to the approval and/or implementation of the Plan;

(ii)    wind up the affairs of the Debtors, if and to the extent necessary, including taking any steps to dissolve, liquidate, bankrupt, or take other similar action with respect to each Debtor, including by terminating the corporate or organizational existence of each such Debtor;

(iii)    serve as the initial director or manager, as applicable, and sole officer of each Debtor after the Effective Date until such time as such Debtor is merged into BB Parent or dissolved, as applicable, and take any actions necessary to effectuate the terms of the Plan and the Liquidation Trust Agreement in such capacities;

(iv)    serve on the board of directors of any subsidiary of the Liquidation Trust, provided the subsidiary's objective is consistent with that of the Liquidation Trust (*i.e.*, to sell its assets and distribute the proceeds in liquidation);

(v)    take any actions necessary to (A) resolve all matters related to the Liquidation Trust Assets and (B) vest such assets in the Liquidation Trust;

(vi)    fund the Wind-Down Reserve;

(vii)    pay all (A) Allowed Administrative Expense Claims (including payment of Professional Fee Claims as set forth in Section 2.2 of the Plan), (B) Allowed Priority Tax Claims, (C) Allowed Other Priority Claims, and (D) Allowed Secured Claims pursuant to the Plan;

(viii)    prepare and file appropriate Tax returns and other reports on behalf of the Debtors and pay Taxes or other obligations owed by the Debtors (including, without limitation, any Allowed Administrative Expense Claims and Allowed Priority Tax Claims asserted by taxing authorities);

(ix)    provide reporting to the Litigation Trust Oversight Board, as set forth in the Liquidation Trust Agreement and Litigation Trust Agreement;

(x)    file, prosecute, settle or dispose of any and all objections to asserted (A) Administrative Expense Claims, (B) Priority Tax Claims, (C) Other Priority Claims, (D) Secured Claims, and (E) General Unsecured Claims;

(xi)    enter into and consummate any transactions for the purpose of dissolving the Debtors;

27

(xii)    make Distributions of the Liquidation Trust Assets and any proceeds thereof, in excess of any amounts necessary to pay Liquidation Trust Expenses, to holders of Allowed Unsecured Claims;

(xiii)    take such actions as are necessary or appropriate to close any of the Debtors' Chapter 11 Cases; or the Recognition Proceedings ;

(xiv)    retain, compensate and employ professionals to represent the Liquidation Trust or the Liquidation Trustee, as applicable;

(xv)    pay the reasonable fees and disbursements of the Information Officer and its counsel upon the submission of invoices on a monthly basis to the Liquidation Trustee, subject to the approval of the Canadian Court in the Recognition Proceedings;

(xvi)    maintain the books and records and accounts of the Debtors;

(xvii)    transfer any additional Litigation Trust Assets to the Litigation Trust after the Effective Date;

(xviii)    consult with the Information Officer in respect of any matters set forth in Section 5.4 as such matters also relate to Canada, including by responding to any reasonable information requests of the Information Officer;  and

(xix)    take any other actions not inconsistent with the provisions hereof that the Liquidation Trustee deems reasonably necessary or desirable in connection with the foregoing functions.

After the Effective Date, the Liquidation Trustee shall file with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the Debtors or the Liquidation Trustee during the applicable period, attested to by the Liquidation Trustee. Quarterly reports, including a separate schedule of disbursements, shall also be provided to the Information Officer and the Litigation Trust Oversight Board as soon as practicable following their preparation and upon filing.

(e)    *Liquidation Trust Agreement*.  Prior to the Effective Date, the Debtors shall execute and deliver the Liquidation Trust Agreement.  The Liquidation Trust Agreement may include reasonable and customary indemnification provisions for the benefit of the Liquidation Trustee.  Any such indemnification shall be the sole responsibility of the Liquidation Trust and payable solely from the Liquidation Trust Assets.

(f)    *Fees and Expenses of the Liquidation Trust*.  From and after the Effective Date, Liquidation Trust Expenses shall be paid from the Liquidation Trust Assets in the ordinary course of business, in accordance with the Plan and the Liquidation Trust Agreement. Without any further notice to any party or action, order or approval of the Bankruptcy Court, the

Liquidation Trustee, on behalf of the Liquidation Trust, may employ and pay in the ordinary course of business, the reasonable fees of any professional (including professionals previously employed by the Debtors) for services rendered or expenses incurred on and after the Effective Date that, in the discretion of the Liquidation Trustee, are necessary to assist the Liquidation Trustee in the performance of the Liquidation Trustee's duties under the Plan and the Liquidation Trust Agreement, subject to any limitations and procedures established by the Liquidation Trust Agreement.

(g)     *Creation and Maintenance of Trust Accounts*.  On or prior to the Effective Date, appropriate trust accounts will be established and maintained in one or more federally insured domestic banks in the name of the Liquidation Trust.  Cash deposited in the trust accounts will be invested, held and used solely as provided in the Liquidation Trust Agreement. The Liquidation Trustee is authorized to establish additional trust accounts after the Effective Date, consistent with the terms of the Liquidation Trust Agreement, as applicable.  After the funding of the trust accounts on the Effective Date, the trust accounts will be funded, as applicable, by Cash proceeds obtained through litigation or the disposition of Liquidation Trust Assets or the proceeds of the Litigation Trust.   Upon obtaining an order of the Bankruptcy Court authorizing final Distribution or closure of the Debtors' Chapter 11 Cases, any funds remaining in the trust accounts shall be distributed in accordance with this Plan and the Liquidation Trust Agreement, and the trust accounts may be closed.

(h)     *Limitation of Liability*.  Neither the Liquidation Trustee, nor its firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, disbursing agents or agents, and any of such Person's successors and assigns, shall incur any liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with the Plan or Liquidation Trust Agreement, other than for specific actions or omissions resulting from its willful misconduct, gross negligence or fraud found by a Final Order (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage or expense suffered by the Liquidation Trust.  The Liquidation Trustee shall enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee or any other analogous trustee, except with respect to the DV Claims, Claims of the DV Entities or any of the Former D&Os or Shareholders, Former D&O and Shareholder Causes of Action, and any other Causes of Action that are Litigation Trust Assets.  The Liquidation Trustee may, in connection with the performance of his, her or its functions, in the Liquidation Trustee's sole and absolute discretion, consult with his, her or its attorneys, accountants, advisors and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are in writing. Notwithstanding such authority, the Liquidation Trustee shall be under no obligation to consult with any such attorneys, accountants, advisors or agents, and any determination not to do so shall not result in the imposition of liability on the Liquidation Trustee or its members unless such determination is based on willful misconduct, gross negligence or fraud.  Persons dealing with the Liquidation Trustee shall look only to the Liquidation Trust Assets to satisfy any liability incurred by the Liquidation Trustee to such person in carrying out the terms of the Plan or the Liquidation Trust Agreement, and the Liquidation Trustee shall have no personal obligation to satisfy such liability.

WEIL:\97779461\12\30950.0071

(i)        *Indemnification*.  The Liquidation Trust shall indemnify the Liquidation Trustee for, and shall hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost or expense (including the reasonable fees and expenses of their respective professionals) incurred without fraud, gross negligence or willful misconduct on the part of the Liquidation Trustee (which fraud, gross negligence or willful misconduct, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered or omitted to be taken by the Liquidation Trustee in connection with the acceptance, administration, exercise and performance of their duties under the Plan or the Liquidation Trust Agreement, as applicable.  An act or omission taken with the approval of the Bankruptcy Court or the Canadian Court, and not inconsistent therewith, will be conclusively deemed not to constitute fraud, gross negligence or willful misconduct.  In addition, the Liquidation Trust shall, to the fullest extent permitted by law, indemnify and hold harmless the Liquidation Trustee, from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidation Trust or the implementation or administration of the Plan if the Liquidation Trustee acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Liquidation Trust.  To the extent the Liquidation Trust indemnifies and holds the Liquidation Trustee harmless as provided above, the reasonable legal fees and related costs incurred by counsel to the Liquidation Trustee in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as Liquidation Trust Expenses.  The costs and expenses incurred in enforcing the right of indemnification in this Section 5.4(i) shall be paid by the Liquidation Trust.  This provision shall survive the termination of the Liquidation Trust Agreement and the death, dissolution, liquidation, resignation, replacement or removal of the Liquidation Trustee.

(j)        *Insurance*.  The Liquidation Trustee shall be authorized, but not required, to obtain any reasonably necessary insurance coverage, at the Liquidation Trust's sole expense, for itself and its respective agents, including coverage with respect to the liabilities, duties and obligations of the Liquidation Trustee, which insurance coverage may, at the sole option of the Liquidation Trustee, be extended for a reasonable period after the termination of the Liquidation Trust Agreement.

(k)        *Dissolution of the Liquidation Trust*.  In no event shall the Liquidation Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Liquidation Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Liquidation Trust Assets.

(l)        *Records*.  The Liquidation Trustee shall be provided with originals or copies of or access to all documents and business records of the Debtors necessary for the disposition of Liquidation Trust Assets and objections to Disputed Claims.

WEIL:\97779461\12\30950.0071

(m)     *Non-Transferability of Liquidation Trust Interests*.   The Liquidation Trust Beneficial Interests shall be non-transferable other than if transferred by will, intestate succession or otherwise by operation of law.

5.5     *Litigation Trust*.

(a)     *Litigation Trust Generally*.   The Litigation Trust shall be established on the Effective Date, in accordance with the terms of the Plan and the Litigation Trust Agreement and shall be governed by the terms of the Litigation Trust Agreement and shall liquidate the Litigation Trust Assets, including by, among other things, prosecuting, settling, compromising, abandoning, or otherwise assessing and, if possible, realizing the value of the DV Claims, Former D&O and Shareholder Causes of Action, and any other Causes of Action assigned to the Litigation Trust in accordance with the terms of the Plan, from time to time in accordance with the terms of the Plan for the benefit of the Litigation Trust Beneficiaries.   At such time as the Litigation Trustee determines the Litigation Trust has, pursuant to Section 5.5 of the Plan and the Litigation Trust Agreement, (i) resolved, settled, compromised, or otherwise liquidated the DV Claims, Former D&O and Shareholder Causes of Action, and all other Causes of Action assigned to the Litigation Trust from time to time in accordance with the terms of the Plan and the Litigation Trust Agreement, and (ii) paid all Litigation Trust Expenses, the Litigation Trustee shall transfer any and all remaining Litigation Trust Assets to the Liquidation Trust; provided that, if the Liquidation Trust has been dissolved pursuant to the terms of the Plan and the Liquidation Trust Agreement before such time as the Litigation Trustee has acted in accordance with the foregoing clauses (i) and (ii), the Litigation Trustee shall make a Distribution of the remaining Litigation Trust Assets to the Litigation Trust Beneficiaries in accordance with the terms of the Plan.   From time to time, and after paying or appropriately reserving for Litigation Trust Expenses, the Litigation Trust may distribute proceeds of the Litigation Trust Assets to the Liquidation Trust for Distribution to Litigation Trust Beneficiaries.

(b)     Subject to and to the extent set forth in this Plan, the Confirmation Order, the Liquidation Trust Agreement or any other order of the Bankruptcy Court entered in connection therewith, the Litigation Trust and the Litigation Trustee shall be empowered to:

(i)     conduct investigations of the DV Claims, the Former D&O and Shareholder Causes of Action and other Causes of Action that are Litigation Trust Assets pursuant to Bankruptcy Rule 2004;

(ii)     perform all actions and execute all agreements, instruments and other documents necessary to effectuate the purpose of the Litigation Trust;

(iii)     establish, maintain and administer trust accounts, which shall be segregated to the extent appropriate in accordance with this Plan;

(iv)     manage, liquidate, supervise, prosecute, and protect, as applicable, the Litigation Trust Assets;

WEIL:\97779461\12\30950.0071

(v)    settle Claims that are Litigation Trust Assets, including the DV Claims, the Former D&O and Shareholder Causes of Action, and Claims of the Former D&Os and Shareholders, without further order of the Bankruptcy Court;

(vi)    control and effectuate the Claims reconciliation process for Claims of any of the DV Entities or any of the Former D&Os or Shareholders, including to object to, seek to subordinate, recharacterize, compromise or settle any and all such Claims, pursuant to the procedures prescribed in this Plan;

(vii)    pursue, prosecute, abandon or otherwise resolve the DV Claims, the Former D&O and Shareholder Causes of Action, and other Causes of Action that are Litigation Trust Assets;

(viii)    retain, compensate and employ professionals to represent the Litigation Trust;

(ix)    prepare and file appropriate tax returns and other reports on behalf of the Litigation Trust and pay taxes or other obligations owed by the Litigation Trust;

(x)    exercise such other powers as may be vested in the Litigation Trust under the Litigation Trust Agreement and this Plan, or as are deemed by the Litigation Trustee to be necessary and proper to implement the provisions of the Litigation Trust Agreement and effectuate the purpose of the Litigation Trust; and

(xi)    dissolve the Litigation Trust in accordance with the terms of the Litigation Trust Agreement.

Notwithstanding anything to the contrary in this Section 5, the Litigation Trust's primary purpose is liquidating the Litigation Trust Assets, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the Litigation Trust's liquidating purpose and reasonably necessary to conserve and protect the Litigation Trust Assets and provide for the orderly liquidation thereof.

(c)    *Litigation Trust Funding.* The Litigation Trust shall be funded with the Litigation Trust Minimum Funding on the Effective Date of the Plan and as a condition to the Effective Date of the Plan (subject to waiver in accordance with Section 9.2). The Litigation Fees Amount will be funded after the Debtors or the Liquidation Trustee, as applicable, have paid or reserved for any amounts necessary to fund the Wind-Down Reserve and to pay all Administrative Expense Claims, Fee Claims, Secured Claims, Priority Tax Claims and Other Priority Claims after consulting with the Litigation Trustee as to any amounts to be reserved. The total amount of the Litigation Trust Funding shall be subject to the adjustments set forth in this Section 5.5(c) of the Plan, but in any event shall not be less than the Litigation Trust Minimum Funding (subject to waiver in accordance with Section 9.2). To the extent the Debtors or the Liquidation Trustee, as applicable, determine in a good faith exercise of their business judgment

WEIL:\97779461\12\30950.0071

consistent with their fiduciary duties that not funding all or a portion of the Litigation Fees Amount is necessary to allow the Debtors to fund or administer their chapter 11 cases (including to fund the Wind-Down Reserve and satisfy Administrative Expense Claims (including Fee Claims), Secured Claims, Priority Tax Claims and Other Priority Claims), the Debtors or the Liquidation Trustee, as applicable, are authorized to make such adjustment after consultation with the Litigation Trustee; *provided* that (i) in no event shall the Debtors or the Liquidation Trustee fund the Litigation Trust with an amount less than the Litigation Trust Minimum Funding, and (ii)(A) to the extent that the Debtors or the Liquidation Trustee, as applicable, make any such adjustment to the amount of the Litigation Fees Amount, and (B) the Debtors or the Liquidation Trustee, as applicable, is satisfied at a later date that the Debtors, or the Liquidation Trust, as applicable, have sufficient funds to satisfy all Allowed Administrative Expense Claims (including Fee Claims), Secured Claims, and Priority Tax Claims and Other Priority Claims, and be able to transfer some or all of such withheld amounts to the Litigation Trust, the Debtors or the Liquidation Trustee, as applicable, shall do so in accordance with the terms of the Plan.

(d)    *Transfer of Assets Into the Litigation Trust.*    Upon the Effective Date, (i) the DV Claims; (ii) Former D&O and Shareholder Causes of Action and (iii) the Litigation Trust Minimum Funding, shall vest in and be transferred to the Litigation Trust. Upon the Debtors or the Liquidation Trustee, as applicable having paid or reserved for any amounts necessary to fund the Wind-Down Reserve and pay all Administrative Expense Claims, Fee Claims, Secured Claims, Priority Tax Claims and Other Priority Claims in accordance with Section 5.4(c), the Debtors or the Liquidation Trustee, as applicable, shall transfer the Litigation Fees Amount to the Litigation Trust, and such assets shall vest in the Litigation Trust on the date of such transfer and shall be administered by the Litigation Trustee in accordance with this Plan and the Litigation Trust Agreement. The act of transferring the Litigation Trust Assets, as authorized by this Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Litigation Trust as if the asset or right was still held by the applicable Debtor.

(e)    *Litigation Trustee.*    The Litigation Trustee will serve as the initial trustee of the Litigation Trust. Except as otherwise provided in this Plan, the powers, rights and responsibilities of the Litigation Trustee shall be specified in the Litigation Trust Agreement. Other rights and duties of the Litigation Trustee and the Litigation Trust Beneficiaries shall be as set forth in the Litigation Trust Agreement.

(f)    *Functions of the Litigation Trustee.*    On and after the Effective Date, the Litigation Trustee and/or the Litigation Trust, as applicable, shall carry out the functions set forth in this Section 5.5(f) and may take such actions without supervision or approval by the Bankruptcy Court or the Canadian Court and free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, CCAA or BIA, other than any restrictions expressly imposed by the Plan, the Confirmation Order or the Litigation Trust Agreement. Such functions shall include any and all powers and authority to:

(i)    take any actions necessary to resolve all matters related to the Litigation Trust Assets;

WEIL:\97779461\12\30950.0071

(ii)    retain, compensate and employ professionals to represent the Litigation Trust or the Litigation Trustee, as applicable;

(iii)    transfer all Cash proceeds of the DV Claims, the Former D&O and Shareholder Causes of Action, and of other Causes of Action assigned to the Litigation Trust, after payment of the Litigation Trust Expenses to the Liquidation Trust, unless the Liquidation Trust has been dissolved;

(iv)    consult with the Information Officer in respect of any matters set forth in this Section 5.5 as such matters also relate to Canada; and

(v)    take any other actions not inconsistent with the provisions hereof that the Litigation Trustee deems reasonably necessary or desirable in connection with the foregoing functions.

(g)    *Litigation Trust Agreement*.  On or prior to the Effective Date, the Debtors shall execute and deliver the Litigation Trust Agreement, which Litigation Trust Agreement shall be, in form and substance, reasonably acceptable to the Debtors and the Creditors' Committee.

(h)    *Litigation Trust Oversight Board*.  On the Effective Date, the Litigation Trust Oversight Board shall be established. The initial Litigation Trust Oversight Board members shall consist of all the members of the Creditors' Committee. Upon its formation, the duties of the Litigation Trust Oversight Board shall be set forth in the Litigation Trust Agreement, including but not limited to: (i) overseeing the Claims reconciliation and settlement process related to the Claims of the DV Entities, Former D&Os, and Shareholders conducted by or on behalf of the Litigation Trustee; (ii) overseeing the Litigation Trustee's investigation into, and, if applicable, prosecution of, the DV Claims and Former D&O and Shareholder Causes of Action; (iii) formulating with the Litigation Trustee appropriate procedures for the settlement of DV Claims, Former D&O and Shareholder Causes of Action, and Claims of the DV Entities; (iv) overseeing the distributions to the Litigation Trust Beneficiaries as provided for under the Plan; (v) appearing before and being heard by the Bankruptcy Court and other courts of competent jurisdiction in connection with the above limited duties; and (vi) such other matters specified in the Plan or the Litigation Trust Agreement. For so long as the Claims reconciliation and investigation and/or prosecution of the DV Claims, Former D&O and Shareholder Causes of Action, and any other Causes of Action that are or become Litigation Trust Assets shall continue, the Litigation Trustee shall make regular reports to the Litigation Trust Oversight Board as and when the Litigation Trustee and the Litigation Trust Oversight Board may reasonably agree upon.

(i)    *Fees and Expenses of the Litigation Trust*.  From and after the Effective Date, Litigation Trust Expenses shall be paid from the Litigation Trust Assets in the ordinary course of business, in accordance with the Plan and the Litigation Trust Agreement. Without any further notice to any party or action, order or approval of the Bankruptcy Court, the Litigation Trustee, on behalf of the Litigation Trust, may employ and pay in the ordinary course of business, any professional for services rendered or expenses incurred on and after the Effective Date, in accordance with the terms of any agreement entered into between the Litigation Trust and such professional, in the discretion of the Litigation Trustee, that are necessary

WEIL:\97779461\12\30950.0071

to assist the Litigation Trustee in the performance of the Litigation Trustee's duties under the Plan and the Litigation Trust Agreement, subject to any limitations and procedures established by the Litigation Trust Agreement.

(j)      *Limitation of Liability*.  Neither the Litigation Trustee, nor its firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, disbursing agents or agents, and any of such Person's successors and assigns, shall incur any liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with the Litigation Trust Agreement, other than for specific actions or omissions resulting from its willful misconduct, gross negligence or fraud found by a Final Order (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage or expense suffered by the Litigation Trust.  The Litigation Trustee shall enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee or any other analogous trustee with respect to the DV Claims, Claims of the DV Entities, any of the Former D&Os or Shareholders, the Former D&O and Shareholder Causes of Action, and other Causes of Action that are Litigation Trust Assets.  The Litigation Trustee may, in connection with the performance of his, her or its functions, in the Litigation Trustee's sole and absolute discretion, consult with his, her or its attorneys, accountants, advisors and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are in writing.  Notwithstanding such authority, the Litigation Trustee shall be under no obligation to consult with any such attorneys, accountants, advisors or agents, and any determination not to do so shall not result in the imposition of liability on the Litigation Trustee or its members unless such determination is based on willful misconduct, gross negligence or fraud.  Persons dealing with the Litigation Trustee shall look only to the Litigation Trust Assets to satisfy any liability incurred by the Litigation Trustee to such person in carrying out the terms of the Litigation Trust Agreement, and the Litigation Trustee shall have no personal obligation to satisfy such liability.

(k)      *Indemnification*.  The Litigation Trust shall indemnify the Litigation Trustee for, and shall hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost or expense (including the reasonable fees and expenses of their respective professionals) incurred without fraud, gross negligence or willful misconduct on the part of the Litigation Trustee (which fraud, gross negligence or willful misconduct, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered or omitted to be taken by the Litigation Trustee in connection with the acceptance, administration, exercise and performance of their duties under the Plan or the Litigation Trust Agreement, as applicable.  An act or omission taken with the approval of the Bankruptcy Court or the Canadian Court, and not inconsistent therewith, will be conclusively deemed not to constitute fraud, gross negligence or willful misconduct. In addition, the Litigation Trust shall, to the fullest extent permitted by law, indemnify and hold harmless the Litigation Trustee, from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Litigation Trust or the implementation or administration of the Plan if the Litigation Trustee acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Litigation Trust. To the extent the Litigation Trust indemnifies and holds the Litigation Trustee harmless as

35

provided above, the reasonable legal fees and related costs incurred by counsel to the Litigation Trustee in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as Litigation Trust Expenses. The costs and expenses incurred in enforcing the right of indemnification in this Section 5.5(k) shall be paid by the Litigation Trust. This provision shall survive the termination of the Litigation Trust Agreement and the death, dissolution, liquidation, resignation, replacement or removal of the Litigation Trustee.

(l)    *Insurance*. The Litigation Trustee shall be authorized, but not required, to obtain any reasonably necessary insurance coverage, at the Litigation Trust's sole expense, for itself and its respective agents, including coverage with respect to the liabilities, duties and obligations of the Litigation Trustee, which insurance coverage may, at the sole option of the Litigation Trustee, be extended for a reasonable period after the termination of the Litigation Trust Agreement.

(m)    *Dissolution of the Litigation Trust*. In no event shall the Litigation Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Litigation Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Litigation Trust Assets. Upon the dissolution of the Litigation Trust, the Litigation Trustee shall transfer any remaining Litigation Trust Assets to the Liquidation Trust, *provided* that if the Liquidation Trust is dissolved before the dissolution of the Litigation Trust, the Litigation Trustee shall distribute the Litigation Trust Assets directly to Litigation Trust Beneficiaries pursuant to the terms of the Plan.

(n)    *Records*. The Litigation Trustee shall be provided with originals or copies of or access to all documents and business records accessible to or retained by the Debtors or the Liquidation Trustee necessary for the disposition and liquidation of Litigation Trust Assets; *provided* that the Litigation Trustee or the Litigation Trust shall reimburse the Liquidation Trust and/or the Liquidation Trustee, as applicable, for any reasonable out-of-pocket fees or expenses incurred in assisting the Litigation Trustee in the procurement of records that were not retained by the Debtors after the Sale Transaction.

(o)    *Non-Transferability of Litigation Trust Interests*. The Litigation Trust Beneficial Interests shall be non-transferable other than if transferred by will, intestate succession or otherwise by operation of law.

5.6      *Plan Trusts Tax Matters*.

(a)      *Tax Treatment; No Successor in Interest*.  The Plan Trusts are intended to be treated for U.S. federal income tax purposes as liquidating trusts described in Treasury Regulation section 301.7701-4(d) and, to the extent applicable, as one or more Disputed Claims Reserves treated as disputed ownership funds described in Treasury Regulation section l.468B-9.  For U.S. federal income tax purposes, the transfer of assets by the Debtors to the Plan Trusts will be treated (i) as the transfer of assets by the Debtors to the holders of Allowed Claims entitled to distributions from the Liquidation Trust Assets or the Litigation Trust Assets, as applicable, subject to any liabilities of the Debtors or the Plan Trusts payable from the proceeds of such assets, followed by the transfer of such assets (subject to such liabilities) by such holders to the applicable Plan Trust in exchange for the beneficial interests in the Plan Trusts, and (ii) to the extent applicable, as the transfer of assets by the Debtors to one more Disputed Claims Reserves.

(b)      *Liquidation Purpose of the Plan Trusts*.  The Plan Trusts shall be established for the primary purpose of liquidating and distributing the assets transferred to it, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Plan Trusts.  Accordingly, the Plan Trustees shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidation Trust Assets and the Litigation Trust Assets, as applicable, make timely distributions to the Liquidation Trust Beneficiaries and the Litigation Trust Beneficiaries, as applicable, and not unduly prolong their duration.  The Plan Trusts shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth in this Plan, the Liquidation Trust Agreement or the Litigation Trust Agreement.  The record holders of beneficial interests shall be recorded and set forth in a register maintained by the Plan Trustees expressly for such purpose.

(c)      *Cash Investments*.  The right and power of the Plan Trustees to invest the Liquidation Trust Assets and the Litigation Trust Assets, as applicable, the proceeds thereof or any income earned by the applicable Plan Trust, shall be limited to the right and power that a liquidating trust, within the meaning of section 301.7701-4(d) of the Treasury Regulations, is permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, including Revenue Procedure 94-45, whether set forth in IRS rulings or other IRS pronouncements, and to the investment guidelines of section 345 of the Bankruptcy Code.  The Plan Trustees may expend the Cash of the Plan Trusts (i) as reasonably necessary to meet contingent liabilities and to maintain the value of the respective assets of the Plan Trusts during liquidation, (ii) to pay the respective reasonable administrative expenses (including, but not limited to, any taxes imposed on the Plan Trusts) and (iii) to satisfy other respective liabilities incurred by the Plan Trusts in accordance with this Plan and the Liquidation Trust Agreement or the Litigation Trust Agreement, as applicable (including, without limitation, the payment of any taxes).

(d)      *Liquidation Trust as Grantor Trust*.  The Liquidation Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes with the Liquidation Trust Beneficiaries treated as grantors and owners of the Liquidation Trust.  For all U.S. federal income tax purposes, all parties (including the Debtors, the Liquidation Trustee and the Liquidation Trust Beneficiaries) shall treat the transfer of the Liquidation Trust Assets by the Debtors to the Liquidation Trust, as set forth in the Liquidation Trust Agreement, as a transfer of

37

such assets by the Debtors to the holders of Allowed Claims entitled to distributions from the Liquidation Trust Assets, followed by a transfer by such holders to the Liquidation Trust. Thus, the Liquidation Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for U.S. federal income tax purposes.

(e)      *Litigation Trust as Grantor Trust*. The Litigation Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes with the Litigation Trust Beneficiaries treated as grantors and owners of the Litigation Trust. For all U.S. federal income tax purposes, all parties (including the Debtors, the Litigation Trustee and the Litigation Trust Beneficiaries) shall treat the transfer of the Litigation Trust Assets by the Debtors to the Litigation Trust, as set forth in the Litigation Trust Agreement, as a transfer of such assets by the Debtors to the holders of Allowed Claims entitled to distributions from the Litigation Trust Assets, followed by a transfer by such holders to the Litigation Trust. Thus, the Litigation Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for U.S. federal income tax purposes.

As soon as practicable after the Effective Date, the Plan Trustees shall make a good faith determination of the fair market value of the Liquidation Trust Assets and the Litigation Trust Assets, as applicable, as of the Effective Date. This valuation shall be used consistently by all parties for all U.S. federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the assets of the Plan Trusts.

(f)      *Tax Reporting and Tax Payments*.

(i)      The Plan Trustees shall file tax returns for the Plan Trusts treating the Plan Trusts as a grantor trusts pursuant to Treas. Reg. § 1.671-4(a) and in accordance with this Section 5.5(f). The Plan Trustees also shall annually send to each holder of a Liquidation Trust Beneficial Interest and Litigation Trust Beneficial Interest, as applicable, a separate statement regarding the receipts and expenditures of the applicable Plan Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holders' underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.

(ii)      As soon as practicable after the Effective Date, the Plan Trustees shall make a good faith determination of the fair market value of the Liquidation Trust Assets and the Litigation Trust Assets, as applicable, as of the Effective Date. This valuation shall be used consistently by all parties for all U.S. federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the assets of the Plan Trusts.

(iii)      The Plan Trustees may elect to treat any such Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections consistent with such tax treatment). The Plan Trustees shall be the administrators of any

such applicable Disputed Claims Reserves within the meaning of Treasury Regulation section 1.468B-9(b)(2) and shall be responsible for all tax reporting and withholding required by any such Disputed Claims Reserve.

(iv)     The Plan Trusts shall be responsible for payment, out of Liquidation Trust Assets and the Litigation Trust Assets, of any taxes imposed on the Plan Trusts (including any Disputed Claims Reserve) or the Liquidation Trust Assets and the Litigation Trust Assets. More particularly, any taxes imposed on any Disputed Claims Reserve or its assets (including, for this purpose, any Liquidating Trust Assets allocable to Disputed Claims even if not held in the Disputed Claims Reserve) will be paid out of the assets of the Disputed Claims Reserve, and netted against any subsequent distributions in respect of the allowance or disallowance of such Claims. In the event, and to the extent, any Cash in any Disputed Claims Reserve is insufficient to pay the portion of any taxes attributable to taxable income arising from assets of the Disputed Claims Reserve (including any income that may arise upon an actual or constructive distribution of the assets of the reserve in respect of the resolution of Disputed Claims), assets of the Disputed Claims Reserve (including those otherwise distributable) may be sold to pay such taxes.

(v)     Each Plan Trustee may request an expedited determination of taxes of its Plan Trust, including any Disputed Claims Reserve, and, in the case of the Liquidation Trustee, of the Debtors, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, such Plan Trust or the Debtors for all taxable periods through the dissolution of such Plan Trust.

5.7     *Merger of Debtors.*

On or after the Effective Date, at the Liquidation Trustee's direction: (i) any of the Debtor Affiliates may be merged into BB Parent and the Liquidation Trustee may complete the winding up of such Debtor Affiliates without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or its shareholders or any payments to be made in connection therewith, other than the filing of a certificate of dissolution and/or merger with the appropriate governmental authorities, and any such certificate of dissolution and/or merger may be filed by the Liquidation Trustee without need for any authorization, signature or other act of any Person or Entity, including without limitation any holder of any Claim or Interest; and (ii) all Claims filed or scheduled in the Affiliated Debtors' cases shall be deemed to have been filed in the Chapter 11 Case of BB Parent.  In the discretion of the Debtors or the Liquidation Trustee, as applicable, after the Effective Date, BB Parent and the Liquidation Trustee may engage in any other transaction in furtherance of the Plan.  Any such transactions may be effective as of the Effective Date without any further action by the stockholders, members, general or limited partners, or directors of any of the Debtors.  On or after the Effective Date, as determined by the Liquidation Trustee, BB Canada shall be dissolved in accordance with the Confirmation Recognition Order and applicable Canadian Law.

WEIL:\97779461\12\30950.0071

5.8    *Elimination of Duplicate Claims*.

Any Proof of Claim filed against one or more of the Debtors shall be deemed to be a single Claim, and all duplicate Proofs of Claim for the same Claim filed against more than one Debtor shall be deemed disallowed and expunged.

5.9    *Dissolution of BB Parent*.

After the Effective Date, the Liquidation Trustee or his designee shall, subject to applicable non-bankruptcy law and consistent with the implementation of this Plan, dissolve, liquidate, or take such other similar action with respect BB Parent  and complete the winding up of BB Parent as expeditiously as practicable without the necessity for any other or further actions to be taken by or on behalf of BB parent or its shareholders or members, as applicable, or any payments to be made in connection therewith, other than the filing of a certificate of dissolution with the appropriate governmental authorities.

5.10    *Corporate Action*.

Upon the Effective Date all actions contemplated by the Plan (including any action to be undertaken by the Liquidation Trustee or the Debtors) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, or any other Entity or Person.  All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Debtors' Estates.

5.11    *Directors, Officers, Managers, Members and Authorized Persons of the Debtor*.

On the Effective Date, the authority, power and incumbency of the persons then acting as directors, officers, managers, members and other authorized persons of the Debtors shall be terminated and such persons shall be deemed to have resigned.  The Liquidation Trustee (or his designee) shall serve as the initial director or manager, as applicable, and sole officer of each Debtor after the Effective Date until such time as such Debtor is merged into BB Parent or dissolved, as applicable.

5.12    *Withholding and Reporting Requirements*.

(a)    *Withholding Rights*.  In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, provincial or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution.  Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the

WEIL:\97779461\12\30950.0071

obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(b)        *Forms*.    Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to, as applicable, the Liquidation Trustee, the Litigation Trustee, or such other Person designated by the Liquidation Trustee or the Litigation Trustee (which entity shall subsequently deliver to the applicable Trustee any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or (if the payee is a foreign Person) Form W-8, unless such Person is exempt under the Tax Code and so notifies the Liquidation Trustee or the Litigation Trustee, as applicable.    If such request is made by the Liquidation Trustee, the Litigation Trustee or such other Person designated by the applicable Trustee and the holder fails to comply before the date that is 150 days after the request is made, the amount of such distribution shall irrevocably revert to the Liquidation Trust or Litigation Trust, as applicable, and any Claim in respect of such Distribution shall be discharged and forever barred from assertion against any Debtor and its respective property.

### 5.13    *Exemption From Certain Transfer Taxes*.

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by any Debtor, or any transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (i) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (ii) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code or similar filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate federal, state, provincial or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 5.14    *Effectuating Documents; Further Transactions*.

On and after the Effective Date, the Liquidation Trustee and the Debtors are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

### 5.15    *Preservation of Rights of Action*.

Other than Causes of Action against an Entity that are waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtors reserve any and all Causes of Action.    On and after the Effective Date, the Litigation Trustee, under the

41

supervision of the Litigation Trust Oversight Board, shall have sole and exclusive discretion to pursue and dispose of the DV Claims, Former D&O and Shareholder Causes of Action, and any other Causes of Action that are or become Litigation Trust Assets, and the Liquidation Trustee shall have sole and exclusive discretion to pursue or dispose of any and all other Causes of Action. All Causes of Action that are or become Litigation Trust Assets shall vest in the Litigation Trust as provided for herein and the Litigation Trustee may pursue any Causes of Action that are or become Litigation Trust Assets in its sole discretion.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors, the Liquidation Trustee or the Litigation Trustee will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  Prior to the Effective Date, the Debtors (and on and after the Effective Date, the Liquidation Trustee or the Litigation Trustee under the supervision of the Litigation Trust Oversight Board, as applicable) shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party (except for, on and after the Effective Date, the Liquidation Trustee or the Litigation Trustee under the supervision of the Litigation Trust Oversight Board, as applicable) or further notice to or action, order, or approval of the Bankruptcy Court.

5.16    *Stock Restrictions*.

The restrictions imposed by the *Final Order Establishing Notification Procedures and Approving Restrictions on Certain Transfers of Interests in the Debtors, Claims Against the Debtor, and Claiming a Worthless Stock Deduction*, entered on August 7, 2020 [D.I. 331], as the same may be amended from time to time, shall remain effective and binding through the closing of all of the Chapter 11 Cases.

5.17    *Closing of the Chapter 11 Cases*.

The Liquidation Trustee shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## SECTION 6.    DISTRIBUTIONS.

6.1    *Distributions Generally*.

(a)    Except as otherwise provided herein, the Debtors or the Liquidation Trustee, as applicable, shall direct the Initial Distribution (including the Distribution of the Liquidation Trust Beneficial Interests and Litigation Trust Beneficial Interests as set forth in Sections 4.3(b) and 4.4(b)) to holders of Allowed Claims no later than the Initial Distribution Date.  After the Initial Distribution Date, the Liquidation Trustee or the Litigation Trustee, as applicable, shall, from time to time, determine the subsequent Distribution Dates.

(b)    Upon any Distribution Date after the Initial Distribution Date, the Liquidation Trustee, or the Litigation Trustee, as applicable, shall pay, in Cash, (i) a Pro

Rata portion of the Allowed General Unsecured Claims Distribution Amount to holders of Allowed General Unsecured Claims, and (ii) the PBGC Claims Distribution Amount to holders of the Allowed PBGC Claims.

### 6.2     *Distribution Record Date*.

The Debtors and the Liquidation Trustee shall have no obligation to recognize any transfer of the Claims or Interests (i) occurring on or after the Effective Date, or (ii) that does not comply with Bankruptcy Rule 3001(e) or otherwise does not comply with the Bankruptcy Code or Bankruptcy Rules.

### 6.3     *Delivery of Distributions*.

In the event that any Distribution to any holder is returned as undeliverable, no Distribution to such holder shall be made unless and until the Debtors or the Liquidation Trustee, as applicable, has determined the then current address of such holder, at which time such Distribution shall be made to such holder without interest; *provided*, *however*, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date such Distribution was made.  After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidation Trust automatically and without need for a further order by the Bankruptcy Court for Distribution in accordance with the Plan and the Claim of any such holder to such property or interest in property shall be released, settled, compromised, and forever barred.

### 6.4     *Disputed Administrative Claims Holdback*.

From and after the Effective Date, and until such time as all Disputed Administrative Claims have been compromised and settled or determined by Final Order, the Debtors or the Liquidation Trustee, as applicable, shall, consistent with and subject to section 1123(a)(4) of the Bankruptcy Code, retain Cash in an aggregate amount equal to the Pro Rata share of the Distributions that would have been made to each holder of a Disputed Administrative Expense Claim if such Disputed Administrative Expense Claim were an Allowed Claim against such Debtor in an amount equal to the lesser of (i) the filed amount of such Disputed Administrative Expense Claim, (ii) the amount determined, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules, by the Bankruptcy Court for purposes of fixing the amount to be retained for such Disputed Administrative Expense Claim, and (iii) such other amount as may be agreed upon by the holder of such Disputed Administrative Expense Claim and the Debtors or the Liquidation Trustee, as applicable; *provided*, that the Debtors (or the Liquidation Trustee, as the case may be) may, in their sole discretion, choose to not reserve amounts necessary to satisfy Administrative Expense Claims that SPARC is irrevocably liable or obligated to pay under the terms of the APA or the Sale Order; *provided, further* that, prior to the Effective Date, the Debtors shall consult with the Creditors' Committee in establishing the initial amount of the Disputed Administrative Claims holdback.  On the first Business Day after the date that is thirty (30) calendar days (or such fewer days as may be agreed between the Debtor or the Liquidation Trustee, as applicable, and the holder of the applicable Disputed Administrative Expense Claim) after the date on which a Disputed Administrative Expense Claim becomes an Allowed Claim

against a Debtor, the Liquidation Trustee shall remit to the holder of such Administrative Expense Claim Cash equal to the amount that would have been distributed from the Effective Date through and including the date of such Distribution on account of such Allowed Claim had such Claim been Allowed as of the Effective Date.  To the extent that a Disputed Administrative Expense Claim against a Debtor is disallowed by Final Order or becomes an Allowed Claim in an amount less than the amount retained with respect to such Claim pursuant to this provision, the amount that would have been distributed on account of such Disputed Administrative Expense Claim, or the excess of the amount of Cash that would have been distributed on account of such Disputed Administrative Expense Claim over the amount of Cash actually distributed on account of such Disputed Administrative Expense Claim, shall become available Cash for Distributions to the holders of Allowed Claims by the Liquidation Trust.

6.5      *Manner of Payment Under Plan.*

At the option of the Debtors or the Liquidation Trustee, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer.  Any wire transfer fees incurred by the Debtors or the Liquidation Trust (as applicable) in connection with the transmission of a wire transfer shall be deducted from the amount of the recipient holder's Distribution.  The Debtors or the Liquidation Trustee, as applicable, will, to the extent practicable, make aggregate Distributions on account of all the Allowed Claims held by a particular holder.

6.6      *Minimum Cash Distributions.*

The Debtors and the Liquidation Trust shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Date of Cash less than $100; *provided, however*, that if any Distribution is not made pursuant to this Section 6.6, such Distribution shall be added to any subsequent Distribution to be made on behalf of the holder's Allowed Claim.  The Debtors and the Liquidation Trust shall not be required to make any final Distributions of Cash less than $50 to any holder of an Allowed Claim.

6.7      *Setoffs.*

The Debtors, the Liquidation Trustee, and the Litigation Trustee may, but shall not be required to, set off against any Claim, any Claims of any nature whatsoever that the Debtors, the Liquidation Trustee, or the Litigation Trustee may have against the holder of such Claim; *provided* that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Liquidation Trustee, or the Litigation Trustee of any such Claim the Debtors, the Liquidation Trustee, or the Litigation Trustee may have against the holder of such Claim.

6.8      *Distributions After Effective Date.*

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

6.9     *Allocation of Distributions Between Principal and Interest.*

Except as otherwise provided in this Plan, to the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

6.10    *No Postpetition Interest on Claims.*

Except as otherwise provided in the Plan, the Confirmation Order, or another order of the Bankruptcy Court, or required by the Bankruptcy Code, postpetition interest shall not accrue or be paid on any Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date.

6.11    *No Distribution in Excess of Amount of Allowed Claim.*

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim.

6.12    *Securities Registration Exemption.*

The Debtors intend that the Litigation Trust Beneficial Interests and the Liquidation Trust Beneficial Interests shall not be "securities" under applicable laws and believe the Litigation Trust Beneficial Interests and Liquidation Trust Beneficial Interests should not be deemed to be "securities," but to the extent such units are deemed to be "securities," the Debtors believe the issuance of such units under the Plan is exempt, pursuant to section 1145 of the Bankruptcy Code (except with respect to an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code).

## SECTION 7.    PROCEDURES FOR DISPUTED CLAIMS.

7.1     *Objections to Claims.*

As of the Effective Date, objections to, and requests for estimation of Claims against the Debtors may only be interposed and prosecuted by the Liquidation Trustee; *provided* that the Litigation Trustee shall have the exclusive authority to object to, recharacterize, seek to subordinate or request estimation of Claims of any of the DV Entities or any of the Former D&Os or Shareholders and to prosecute the DV Claims and Former D&O and Shareholder Causes of Action.  Such objections and requests for estimation shall be served and filed on or before the Claims Objection Bar Date.

7.2     *Allowance of Claims.*

After the Effective Date, the Liquidation Trust and the Litigation Trust, as applicable, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim against a Debtor, except with respect to any Claim deemed Allowed under this Plan.  As of the Effective Date of the Plan, all Claims of the DV Entities, Former D&Os and

Shareholders are Disputed.  Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

7.3 *Estimation of Claims*.

The (i) Debtors (after consulting with the Creditors' Committee if prior to the Effective Date) or the Liquidation Trustee, as applicable, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim, other than the Claims of any of the DV Entities or any of the Former D&Os or Shareholders, and (ii) the Litigation Trustee may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim of any of the DV Entities or any of the Former D&Os or Shareholders, pursuant to section 502(c) of the Bankruptcy Code regardless of whether any party in interest previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or the maximum limit of such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidation Trustee or the Litigation Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

7.4 *No Distributions Pending Allowance*.

No payment or Distribution provided under the Plan shall be made on account of a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

7.5 *Reserve on Account of Disputed Claims*.

From and after the Effective Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Bankruptcy Court in an amount constituting the Allowed amount, or Allowed or Disallowed by Final Order, the Liquidation Trustee or the Litigation Trustee, as applicable, shall establish, for the benefit of each holder of a Disputed Claim, a Disputed Claims Reserve consisting of Cash and any dividends, gains or income attributable to the Liquidation Trust Assets or Litigation Trust Assets, as applicable, in an amount equal to the Pro Rata share of Distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed Proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claim has been estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code as constituting and representing the maximum amount in which such Claim may ultimately become an Allowed Claim or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Liquidation Trustee or the Litigation Trustee, as applicable.  Prior to the

46

Effective Date, the Debtors shall consult with the Creditors' Committee in establishing the initial amount of the Liquidation Trust's Disputed Claims Reserve. For the avoidance of doubt, any Cash retained and held for the benefit of a holder of a Disputed Claim as part of a Disputed Claims Reserve shall be treated as a payment and reduction on account of such Disputed Claim for purposes of computing any additional amounts to be paid in Cash in the event the Disputed Claim ultimately becomes an Allowed Claim. Cash held in a Disputed Claims Reserve (including any earnings that have accrued thereon, net of any expenses, allocable to the Disputed Claims Reserve, including any taxes imposed with respect to Liquidating Trust Assets retained on account of, or otherwise allocable to, Disputed Claims) shall be retained by the Liquidation Trust or the Litigation Trust, as applicable for the benefit of holders of Disputed Claims pending determination of their entitlement thereto under the terms of the Plan. Any Cash and proceeds of the Liquidation Trust Assets or the Litigation Trust Assets shall be either (x) held by the Liquidation Trust or the Litigation Trust, as applicable, in an interest-bearing account or (y) invested in interest-bearing obligations issued by the United States government and guaranteed by the United States government, and having (in either case) a maturity of not more than 30 days. No payments or Distributions shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof by Final Order. For the avoidance of doubt, Cash held in a Disputed Claims Reserve will (i) be deposited in an interest-bearing account and held in trust, pending distribution by the Liquidation Trustee, or the Litigation Trustee, as applicable, for the benefit of holders of Allowed Claims, (ii) be accounted for separately and (iii) not constitute property of the Liquidation Trust or the Litigation Trust; *provided* that the Disputed Claims Reserve shall be responsible for any expenses allocable to the Disputed Claims Reserve, including any taxes imposed with respect to Liquidating Trust Assets retained on account of, or otherwise allocable to, Disputed Claims. *See* Section 5.6(f) hereof regarding the tax treatment of the Disputed Claims Reserve.

If a Disputed Claim is Disallowed, in whole or in part, the Liquidation Trustee or Litigation Trustee, as applicable shall distribute any amounts that were reserved for such Disallowed Disputed Claims to the holders of the Liquidation Trust Beneficial Interests or the Litigation Trust Beneficial Interests, as applicable and as provided for under the terms of this Plan.

7.6     *Resolution of Claims*.

Except as otherwise provided herein (including the release provisions hereof) or in the Confirmation Order, or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, on and after the Effective Date, the Liquidation Trustee may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Liquidation Trust may hold against any Person, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith; *provided*, *however*, that on and after the Effective Date the Litigation Trustee shall have the sole authority to enforce, sue on, settle, or compromise (or decline to do any of the foregoing) the DV Claims, the Claims of any DV Entities, Former D&O and Shareholder Causes of Action, the Claims of any of the Former D&Os or Shareholders and any other Causes of Action that are or become Litigation Trust Assets.

WEIL:\97779461\12\30950.0071

7.7     *Late Filed Claims.*

Except as otherwise provided herein or as agreed to by the Debtors (with the consent of the Creditors' Committee if prior to the Effective Date) or Liquidation Trustee, any Proof of Claim filed after the Bar Date with respect to such Claim shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any Distributions on account of such Claims, unless such late Proof of Claim has been deemed timely filed by a Final Order.

7.8     *Amendments to Claims.*

A Claim may not be filed, amended, or supplemented without the prior written authorization of the Bankruptcy Court or the Liquidation Trustee, and any such new, amended, or supplemented Claim filed without such written authorization shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

7.9     *Insured Claims.*

If any portion of an Allowed Claim is an Insured Claim, no distributions under the Plan shall be made on account of such Allowed Claim until the holder of such Allowed Claim has exhausted all remedies with respect to any applicable insurance policies. To the extent that the Debtors' insurers agree to satisfy a Claim in whole or in part, then immediately upon such agreement, the portion of such Claim so satisfied may be expunged without an objection to such Claim having to be filed and without any further notice to or action, order or approval of the Court.

**SECTION 8.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**

8.1     *Assumption and Assignment of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) as of the Effective Date is subject to a pending motion to assume such Unexpired Lease or Executory Contract; (ii) is a contract, release, or other agreement or document entered into in connection with the Plan; (iii) is a D&O Policy or an insurance policy; or (iv) is identified for assumption on the Assumption Schedule included in the Plan Supplement.

8.2     *Indemnification Obligations.*

Notwithstanding anything in the Plan to the contrary, each Indemnification Obligation shall be assumed by the applicable Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code or otherwise. Each Indemnification Obligation shall remain in full force and effect, shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose.

48

8.3     *Claims Based on Rejection of Executory Contracts and Unexpired Leases*.

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be filed with Bankruptcy Court and served on the Liquidation Trustee no later than thirty (30) days after the earlier of the Effective Date or the effective date of rejection of such Executory Contract or Unexpired Lease.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Liquidation Trust, the Litigation Trust, the Debtors' Estates, or the property for any of the foregoing without the need for any objection by the Liquidation Trustee or the Litigation Trustee or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' prepetition Executory Contracts or prepetition Unexpired Leases shall be classified as General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

8.4     *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*.

Any Cure Obligation due under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment in Cash on the Effective Date (or as soon as reasonably practicable thereafter), subject to the limitation described below, by the Debtors or the Liquidation Trust, as applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

In the event of a dispute regarding (i) the amount of the Cure Obligation, (ii) the ability of the Liquidation Trust or any other applicable assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease, or (iii) any other matter pertaining to assumption or assumption and assignment (as applicable), the obligations of section 365 of the Bankruptcy Code shall be deemed satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption or assumption and assignment (as applicable); *provided*, that the Debtors or the Liquidation Trust (as applicable) may settle any dispute regarding the amount of any Cure Obligation without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any defaults, subject to satisfaction of the Cure Obligations, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition

49

or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the Effective Date of assumption and/or assignment. Any prepetition default amount set forth in the Schedules and/or any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

8.5     *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

8.6     *Reservation of Rights.*

Neither the exclusion nor inclusion of any contract or lease in the Assumption Schedule or the Sale Order, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors' Estates have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Liquidation Trustee, as applicable, shall have sixty 60 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

**SECTION 9.    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE.**

9.1     *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a)     the Bankruptcy Court shall have entered the Confirmation Order, the Confirmation Date shall have occurred and the Confirmation Order shall not be subject to any stay, modification, vacation on appeal, and shall have become a Final Order;

(b)     all funding, actions, documents and agreements necessary to implement and consummate the Plan and the transactions and other matters contemplated thereby,

50

shall have been effected or executed, including the funding of (i) the Wind-Down Reserve, and (ii) the Litigation Trust Minimum Funding as provided for in Section 5.5(c) of this Plan; and

(c)    all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

### 9.2    *Waiver of Conditions Precedent.*

Each of the conditions precedent in Section 9.1 other than the condition set forth in Section 9.1(a) may be waived in writing by the Debtors with the consent of the Creditors' Committee, which shall not be unreasonably withheld.  Any such waivers may be effected at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action.

### 9.3    *Substantial Consummation.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 9.4    *Effect of Vacatur of Confirmation Order.*

If the Confirmation Order is vacated, (i) no distributions under the Plan shall be made, (ii) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, and (iii) all the Debtors' obligations with respect to the Claims and the Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtors or otherwise.

## SECTION 10.    SETTLEMENT, RELEASES, INJUNCTIONS, AND RELATED PROVISIONS.

### 10.1    *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Debtors.

### 10.2    *Binding Effect.*

(a)    Confirmation of the Plan does not provide the Debtors with a discharge under section 1141 of the Bankruptcy Code because the Plan is a liquidating chapter 11 plan.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Plan

WEIL:\97779461\12\30950.0071

shall bind any holder of a Claim against, or Interest in, the Debtors, and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

(b)　　　By participating in the Plan by voting (as contemplated in Section 4 above) or by accepting Distributions pursuant to the Plan (in whatever sum), each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan shall be deemed to have affirmatively and specifically consented to and accepted the terms of the Plan, and each such holder acknowledges and accepts that the Plan is a binding compromise of an Allowed Claim or an Interest extinguished and releases all rights in respect of such Allowed Claim or Interest extinguished such that such holders of Claims agree to waive any right (if any) to object to or otherwise challenge the Plan and its effect on Claims or any other matter whatsoever in the Courts of the Special Administrative Region of Hong Kong or any other tribunal, whether in Hong Kong or elsewhere, and that such release and waiver shall be effective irrespective of which law governs the rights of the said holder as against a Debtor.

10.3　　　*Term of Injunctions or Stays.*

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the closing of all of the Debtors' Chapter 11 Cases and the date indicated in the order providing for such injunction or stay.

10.4　　　*Releases by the Debtors.*

**As of the Effective Date, except (i) for the rights that remain in effect from and after the Effective Date to enforce the Plan; and (ii) as otherwise provided in the Plan or in the Confirmation Order, for good and valuable consideration, including their cooperation and contributions to the Chapter 11 Cases, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Debtors and the Estates, in each case, on behalf of themselves and their respective successors (including the Liquidation Trust and the Litigation Trust), assigns, and representatives, and any and all other persons that may purport to assert any Cause of Action derivatively, by, through or on behalf of the foregoing Persons and Entities, from any and all Claims and Causes of Action, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, in whole or in part, the Debtors, the Chapter 11 Cases, the Recognition Proceedings, the pre- and post-petition marketing and sale process, the Sale Transaction, the APA, the DIP Credit Agreement or any related agreements, instruments, and other documents relating thereto, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests**

before or during the Chapter 11 Cases, the Recognition Proceedings, the Disclosure Statement, the Plan (including the Plan Supplement), or the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided*, that nothing herein shall be construed to release any obligation of any party under the Plan, the Sale Transaction, or any document, instrument, or agreement executed to implement the Plan or the Sale Transaction; *provided*, *further*, that nothing in this Section 10.4 shall constitute a release of any of the DV Claims or the Former D&O and Shareholder Causes of Action.

        10.5       *Releases By Holders of Claims and Interests.*

        As of the Effective Date, except (i) for the right to enforce the Plan; and (ii) as otherwise expressly provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably and forever, released, and discharged by the Releasing Parties in each case, from any and all Claims and Causes of Action, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, in law or equity, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such entity would have been legally entitled to assert in their own right (whether individually, derivatively, or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising prior to the Effective Date, from, in whole or in part, the Debtors, the Chapter 11 Cases, the Recognition Proceedings, the pre-and post-petition marketing and sale process, the Sale Transaction, the APA, the DIP Credit Agreement or any related agreements, instruments, and other documents relating thereto, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the Recognition Proceedings, the Disclosure Statement, the Plan (including any Plan Supplement), or the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided*, that nothing herein shall be construed to release any obligation of any party under the Plan, the Sale Transaction, or any document, instrument, or agreement executed to implement the Plan or Sale Transaction.  The Releasing Parties shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under this Section 10.5 against each of the Released Parties.

WEIL:\97779461\12\30950.0071

10.6     *Exculpation.*

To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each of the Exculpated Parties are hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any claim arising on or after the Petition Date in connection with or arising out of the filing or administration of the Chapter 11 Cases, the administration of the Recognition Proceedings, the postpetition marketing and sale process, the postpetition purchase, sale, or rescission of the purchase or sale of any security or  asset of the Debtors; the negotiation and pursuit of the Disclosure Statement, the APA, the Sale Transaction, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the DIP Credit Agreement; the post-Effective Date administration of the Plan or the property to be distributed under the Plan; or the transactions in furtherance of any of the foregoing; except for fraud, gross negligence, or willful misconduct, as determined by a Final Order.   This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth herein does not release any post-Effective Date obligation or liability of any Entity under the Plan, the Sale Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Sale Transaction.

10.7     *Injunction.*

(a)     **Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan.**

(b)     **Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether or not proof of such Claims or Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Liquidation Trust, and the Litigation Trust, or the property of any of the Debtors, the Liquidation Trust, the Litigation Trust; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, and the Liquidation Trust; or the property of any of the Debtors, the Liquidation**

**Trust, and the Litigation Trust; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Liquidation Trust, and the Litigation Trust or the property of any of the Debtors, the Liquidation Trust, and the Litigation Trust; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors, the Liquidation Trust, and the Litigation Trust, or against property or interests in property of any of the Debtors, the Liquidation Trust, and the Litigation Trust except as contemplated or allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

**(c)      By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this <u>Section 10.7</u>.**

**(d)      The injunctions in this <u>Section 10.7</u> shall extend to any successors of the Debtors, the Liquidation Trust, and the Litigation Trust and their respective property and interests in property.**

10.8      *Waiver of Statutory Limitation on Releases.*

EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THE PLAN (INCLUDING UNDER <u>SECTION 10</u> OF THE PLAN) EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, IT HAS CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS.  WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542. THE RELEASES CONTAINED IN <u>SECTION 10</u> OF THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

10.9      *Solicitation of the Plan.*

Pursuant to the terms of the Plan, the only holders of Claims or Interests who are entitled to vote are Class 3 PBGC Claims and Class 4 General Unsecured Claims.  As of and subject to the occurrence of the Confirmation Date: (i) the Debtors shall be deemed to have previously solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code,

and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation, and (ii) the Debtors and each of their respective directors, officers, employees, Affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore, are not, and on account of such offer, issuance and solicitation will not be, liable at any time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

10.10    *PBGC Release.*

**As of the Effective Date, to the maximum extent permitted by applicable law, other than the Debtors with respect to the Allowed PBGC Claims, the Released Parties, for good and valuable consideration, shall be deemed to be released and discharged by the PBGC and the Pension Plans from any Causes of Action based on or relating to the Pension Plans; provided, however, that nothing in the Plan, the Confirmation Order, or any other document filed in the Debtors' Chapter 11 Cases without notice to the PBGC shall be construed to release (i) non-Debtor members of the controlled group of the Pension Plans' sponsors (within the meaning of Section 4001 of ERISA or Section 414 of the Internal Revenue Code of 1986, as amended) as of the Pension Plan Termination Date from Causes of Action or any other obligations based on or relating to the Pension Plans, or (ii) any fiduciary breaches or prohibited transactions (in each case within the meaning of ERISA or Section 4975 of the Internal Revenue Code of 1986, as amended) relating to the Pension Plans. The Debtors shall use commercially reasonable efforts to provide notice to the PBGC of any pleading filed in the Debtors' Chapter 11 Cases seeking relief that is contradictory to this Section 10.10.**

**SECTION 11.     RETENTION OF JURISDICTION.**

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)     to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance, classification, priority, compromise, estimation or payment of Claims resulting therefrom;

(b)     to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date, including any such motions, adversary proceeding, application, contested matter or other litigated matter brought by the Litigation Trustee;

(c)     to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)     to consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

(e)      to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(f)      to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the Consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)      to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)      to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date;

(i)      to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the APA, the Sale Order, the Liquidation Trust Agreement, the Litigation Trust Agreement, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)      to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following Consummation;

(k)      to hear any disputes arising out of, and to enforce, any order approving alternative dispute resolution procedures to resolve personal injury, employment litigation and similar Claims pursuant to section 105(a) of the Bankruptcy Code;

(l)      to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)      to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)      to adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(o)      to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(p)      to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

WEIL:\97779461\12\30950.0071

<ol type="a" start="17">
</ol>

(q)      to enter one or more final decrees closing the Chapter 11 Cases;

(r)      to enforce all orders previously entered by the Bankruptcy Court;

(s)      to recover all assets of the Debtors and property of the Debtors' Estates, wherever located; and

(t)      to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

## SECTION 12.    MISCELLANEOUS PROVISIONS.

### 12.1    *No Revesting of Assets.*

To the extent not otherwise distributed in accordance with this Plan, the property of the Debtors' Estates shall not revest in the Debtors on or after the Effective Date but shall instead vest in the Liquidation Trust or the Litigation Trust, as applicable, to be administered by the Liquidation Trustee or the Litigation Trustee in accordance with this Plan, the Liquidation Trust Agreement and the Litigation Trust Agreement. For the avoidance of doubt, the Litigation Trust Funding shall be subject to the adjustments set forth in Section 5.5(c) of the Plan.

### 12.2    *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right for the Liquidation Trustee (or the Litigation Trustee solely with respect to any Claims of any of the DV Entities or the Former D&Os or Shareholders) to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### 12.3    *Payment of Statutory Fees.*

All fees due and payable pursuant to 28 U.S.C. § 1930(a) prior to the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date or as soon as is reasonably practicable thereafter. On and after the Effective Date, the Debtors (or the Liquidation Trustee) shall pay any and all such fees in full in Cash when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor (or the Liquidation Trustee) shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

58

12.4     *Dissolution of Creditors' Committee.*

On the Effective Date, the Creditors' Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; *provided, however,* that after the Effective Date, the Creditors' Committee shall continue to exist solely to prosecute applications filed pursuant to sections 330 and 331 of the Bankruptcy Code or to prosecute any appeals ongoing as of the Effective Date or for which the appeal period has not yet run as of the Effective Date.

12.5     *Amendments.*

(a)     *Plan Modifications.*  The Plan may be amended, modified or supplemented by the Debtors, with the consent of the Creditors Committee (not to be unreasonably withheld) prior to the Effective Date, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code; *provided* that such amendments, modifications or supplements shall be reasonably satisfactory in all respects to the Debtors and the Creditors' Committee.  In addition, after the Confirmation Date, the Debtors may, after consulting with the Creditors' Committee, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

(b)     *Other Amendments.*  Before the Effective Date, the Debtors may, with the consent of the Creditors' Committee (not to be unreasonably withheld), make appropriate technical adjustments and modifications to the Plan and any of the documents prepared in connection herewith without further order or approval of the Bankruptcy Court.

12.6     *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right, after consulting with the Creditors' Committee, to revoke or withdraw the Plan, including the right to revoke or withdraw the Plan for any Debtor or all Debtors, prior to the Confirmation Date.  If the Debtors, after consulting with the Creditors' Committee, revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall: (A) constitute a waiver or release of any Claims or Interests; (B) prejudice in any manner the rights of the Debtors, the Debtors' Estates, or any other Entity; or (C) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Debtors' Estates, or any other Entity.

12.7     *Severability of Plan Provisions upon Confirmation.*

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, after consulting with the Creditors' Committee, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable,

consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Liquidation Trustee (as the case may be); and (iii) nonseverable and mutually dependent.

### 12.8        *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

### 12.9        *Time*.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 12.10        *Additional Documents*.

On or before the Effective Date, the Debtors may, after consulting with the Creditors' Committee, file with the Bankruptcy Court or the Canadian Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 12.11        *Immediate Binding Effect*.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns, including, without limitation, the Liquidation Trustee.

WEIL:\97779461\12\30950.0071

12.12    *Successor and Assigns.*

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

12.13    *Entire Agreement.*

On the Effective Date, the Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

12.14    *Notices.*

All notices, requests and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

    (i) if to the Debtors or the Liquidation Trustee:

Ankura Consulting Group, LLC
485 Lexington Avenue 10th Floor
New York, NY 10017
Attn:    Adrian Frankum
Telephone:  (646) 968-3655
Facsimile: (212) 818-1551

– and –

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn:    Garrett A. Fail
        David J. Cohen
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

– with copies to –

Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Attn:    Mark D. Collins
        Zachary I. Shapiro
        Christopher M. De Lillo
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

WEIL:\97779461\12\30950.0071

– and, if it relates to BB Canada or the Recognition Proceedings –

Osler, Hoskin & Harcourt LLP
100 King Street West
1 First Canadian Place
Suite 6200, P.O. Box 50
Toronto ON M5X 1B8
Attn:    Tracy Sandler
         Martino Calvaruso
Telephone:  (416) 362-2111
Facsimile:  (416) 862-6666

(ii) if to the Creditors' Committee:

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, NY 10036
Attn:    Meredith A. Lahaie
         Abid Qureshi
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

– and –

2001 K Street NW
Washington, DC 20006
Attn:    Kate Doorley
         Julie Thompson
Telephone:  (202) 877-4000
Facsimile:  (202) 872-4288

– and –

Troutman Pepper Hamilton Sanders LLP
Hercules Plaza, Suite 5100
1313 N. Market Street, P.O. Box 1709
Wilmington, DE 19899
Attn:    David B. Stratton
David M. Fournier
Evelyn J. Meltzer
Marcy J. McLaughlin Smith
Telephone:  (302) 777-6500
Facsimile:  (302) 421-8390

62

After the Effective Date, the Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Liquidation Trust is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

Dated:  January 22, 2021
         Wilmington, Delaware

                                   Respectfully submitted,


                              By:   _____
                                    Name: Stephen Marotta
                                    Title: Chief Restructuring Officer

WEIL:\97779461\12\30950.0071