**<u>Exhibit C</u>**

**Liquidation Analysis**

**LIQUIDATION ANALYSIS FOR BBGI US, INC.,** *et al.*

## I.    INTRODUCTION

BBGI US, Inc. and its subsidiaries (collectively, the "**Debtors**"), with the assistance of their restructuring, legal, and financial advisors, have prepared this hypothetical liquidation analysis (the "**Liquidation Analysis**") in connection with the *Joint Chapter 11 Plan of Liquidation of BBGI US, Inc. and its Affiliated Debtors* (as amended, supplemented, or modified from time to time, the "**Plan**") and related disclosure statement (as amended, supplemented, or modified from time to time, the "**Disclosure Statement**") pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").[1]

Under the "best interests" of creditors test set forth in section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a chapter 11 plan unless the plan provides each holder of an impaired Claim against or Interest in the Debtors either (i) has accepted the Plan or (ii) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Person would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  To demonstrate that the proposed Plan satisfies the "best interests" of creditors test under section 1129(a)(7) of the Bankruptcy Code, the Debtors, with the assistance of their advisors, have prepared the following Liquidation Analysis, which is based upon certain assumptions discussed in the Disclosure Statement and in the accompanying notes to the Liquidation Analysis.

**Statement of Limitations**

The determination of the costs of, and proceeds from, the hypothetical liquidation of the Debtors' assets in a chapter 7 case is an uncertain process involving the extensive use of significant estimates and assumptions that, although considered reasonable by the Debtors based upon their business judgment and input from their advisors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtors, their management and their advisors.  Inevitably, some assumptions in the Liquidation Analysis would not materialize in a chapter 7 liquidation, and unanticipated events and circumstances could materially affect the ultimate results in an actual chapter 7 liquidation.  The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the proceeds that would be generated if the Debtors' assets were liquidated in accordance with chapter 7 of the Bankruptcy Code.  The Liquidation Analysis is not intended and should not be used for any other purpose.  The underlying financial information in the Liquidation Analysis was not compiled or examined by independent accountants in accordance with standards promulgated by the American Institute of Certified Public Accountants.

NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS.  ACTUAL RESULTS COULD VARY MATERIALLY.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Disclosure Statement or Plan, as applicable.

THE LIQUIDATION ANALYSIS IS A HYPOTHETICAL EXERCISE THAT HAS BEEN PREPARED FOR THE SOLE PURPOSE OF PRESENTING A REASONABLE GOOD FAITH ESTIMATE OF THE PROCEEDS THAT WOULD BE REALIZED IF THE DEBTORS WERE LIQUIDATED IN ACCORDANCE WITH CHAPTER 7 OF THE BANKRUPTCY CODE AS OF THE PLAN EFFECTIVE DATE. THE LIQUIDATION ANALYSIS IS NOT INTENDED AND SHOULD NOT BE USED FOR ANY OTHER PURPOSE. THE LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE DEBTORS' ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THE LIQUIDATION ANALYSIS AND THE VALUES THAT MAY BE REALIZED OR CLAIMS GENERATED IN AN ACTUAL LIQUIDATION.

NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE, OR CONSTITUTES, A CONCESSION, ADMISSION, OR ALLOWANCE OF ANY CLAIM AGAINST THE DEBTORS. THE ACTUAL AMOUNT OR PRIORITY OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH AND USED IN THE LIQUIDATION ANALYSIS. THE DEBTORS RESERVE ALL RIGHTS TO SUPPLEMENT, MODIFY, OR AMEND THE ANALYSIS SET FORTH HEREIN.

**Basis of Presentation**

The Liquidation Analysis is based on estimated asset and liability values as of March 31, 2021 (except as otherwise indicated). As noted above, the actual assets available to the Debtors' estates and claims arising in the event of an actual liquidation may differ from the assets assumed to be available pursuant to the Liquidation Analysis.

The Debtors have neither fully evaluated all claims filed against the Debtors or adjudicated such claims before the Bankruptcy Court. Accordingly, the amount of the final Allowed Claims against the Debtors' estates may differ from the claim amounts used in the Liquidation Analysis.

In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of books and records and a review of claims asserted against the Debtors to account for estimated liabilities. In addition, the Liquidation Analysis includes estimates for Claims not currently asserted in the chapter 11 cases, but which could be asserted and allowed in a chapter 7 liquidation, including unpaid chapter 11 administrative expense claims and chapter 7 administrative expense claims, such as wind-down costs, trustee fees, and tax liabilities. To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims incorporated into this Liquidation Analysis. Therefore, the Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims under the Plan.

**Conversion Date and Appointment of Chapter 7 Trustee**

The Liquidation Analysis has been prepared assuming that the Debtors' chapter 11 cases are converted to chapter 7 cases on or about March 31, 2021 (the "**Chapter 7 Conversion Date**"). Except as otherwise noted herein, the Liquidation Analysis is based upon the forecasted unaudited balance sheets of the Debtors as of March 31, 2021. It is assumed that, on the Chapter 7 Conversion Date, the Bankruptcy Court would appoint a chapter 7 trustee (the "**Trustee**") who would oversee the liquidation of the Debtors' estates, during which time all of the Debtors' remaining assets would be sold, and all of the Debtors' cash proceeds, net of any liquidation-related costs and other administrative expenses and priority claims, would be distributed in

order to satisfy Allowed Claims and Interests in accordance with the priority scheme set forth in the Bankruptcy Code.

There can be no assurance that the liquidation would be completed in a limited time frame, nor is there any assurance that the recoveries assigned to the assets would in fact be realized. Under section 704 of the Bankruptcy Code, a trustee must, among other duties, collect and convert the property of the estate as expeditiously (generally at distressed prices) as is compatible with the best interests of parties in interest. In addition, there is a significant likelihood, and therefore it is assumed, that each of the Debtors' direct and/or indirect foreign non-Debtor Subsidiaries would commence wind-downs or insolvency proceedings under their respective local foreign jurisdictions because of the wind-down of the Debtors.

**Substantively Consolidated Liquidation**

The Liquidation Analysis assumes that the Debtors would be liquidated in a jointly administered and substantively consolidated proceeding. Therefore, the Liquidation Analysis assumes no Distributions are made on account of Intercompany Claims. Consistent with the Plan, the Liquidation Analysis provides that the PBGC would receive a recovery percentage based on a 2.25x multiple of the recovery percentage available to all holders of Allowed Unsecured Claims pursuant to the PBGC Settlement.

**Values**

Both the Plan and a chapter 7 proceeding would result in the complete liquidation of the Debtors. As such, unless otherwise stated, the Liquidation Analysis is based on estimated recoveries under the Plan, as adjusted for the impact of liquidating under a chapter 7 process.

The Debtors believe that a chapter 7 liquidation would in general result in lower recoveries on the remaining asset monetizations due to a number of factors, including but not limited to, a compressed timeline relative to a chapter 11 process, the lower likelihood of retaining individuals in a chapter 7 process with knowledge critical to maximizing recoveries on certain assets and to the evaluation of claims, and Trustee fees, offset in part by lower professional fees and wind-down costs due to the compressed timeline.

**Additional Global Notes and Assumptions**

The Liquidation Analysis should be read in conjunction with the following notes and assumptions:

1. *Significant dependence on unaudited financial statements and cashflow projections.* The Liquidation Analysis contains numerous estimates. Proceeds available for distribution are based upon the unaudited financial statements of the Debtors (as projected as of the Chapter 7 Conversion Date), unless otherwise noted herein.

2. *Chapter 7 liquidation costs and length of liquidation process.* The Debtors have assumed that liquidation would occur over approximately 12 months in order to pursue an orderly monetization of substantially all remaining assets, as well as to arrange distributions and otherwise administer and close the Estates. In an actual chapter 7 liquidation, the wind-down process and time-period could vary significantly, thereby impacting recoveries. For example, it is possible that it may require a longer period of time to monetize certain assets at the levels included in the Liquidation Analysis, and it is possible that certain priority, contingent, and other claims, litigation, and delays in the final determination of Allowed Claims could substantially impact both the timing and amount of the distribution of the asset proceeds to creditors. Accordingly, there can be no assurance that the values reflected in the Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such a liquidation.

Pursuant to section 726 of the Bankruptcy Code, the allowed administrative expenses incurred by the Trustee, including expenses associated with selling or otherwise monetizing the Debtors' assets, and legal and financial fees relating to professionals retained by the Trustee, would be entitled to payment in full prior to any distributions to holders of Administrative Expense Claims and Other Priority Claims. The estimates used in the Liquidation Analysis for the Trustee are pursuant to the fee guidelines in section 326(a) of the Bankruptcy Code. The estimate used in the Liquidation Analysis for these expenses include an assumed 3% payable to a chapter 7 trustee fee based upon distributed proceeds.

3. *Distribution of net proceeds.* Chapter 11 Administrative Claim amounts and Priority Claim amounts, professional fees, trustee fees, and such claims that may arise in a liquidation scenario would be paid in full from the liquidation proceeds before the balance of any proceeds will be made available to pay General Unsecured Claims. Under the absolute priority rule, no junior creditor would receive any distribution until all senior creditors are paid in full, and no equity holder would receive any distribution until all creditors are paid in full. The assumed distributions to creditors as reflected in the Liquidation Analysis are estimated in accordance with the absolute priority rule.

4. *Certain exclusions and assumptions.* This Liquidation Analysis does not include estimates for the tax consequences, both federal and state, that may be triggered upon the liquidation and sale of assets in the manner described above. Such tax consequences could be material.

## II.    CONCLUSIONS

**THE DEBTORS HAVE DETERMINED, AS SUMMARIZED IN THE FOLLOWING ANALYSIS, THAT CONFIRMATION OF THE PLAN WILL PROVIDE CREDITORS WITH A RECOVERY THAT IS NOT LESS THAN WHAT THEY WOULD OTHERWISE RECEIVE IN CONNECTION WITH A LIQUIDATION OF THE DEBTORS UNDER CHAPTER 7 OF THE BANKRUPTCY CODE, AND AS SUCH BELIEVE THAT THE PLAN SATISFIES THE REQUIREMENT OF 1129(A)(7) OF THE BANKRUPTCY CODE.**

| SUMMARY OF ESTIMATED THIRD PARTY RECOVERIES FOR CLAIMS AND INTERESTS | | | | |
|---|---|---|---|---|
| **CLAIMS** | Chapter 11 Plan | | Chapter 7 Liquidation | |
| *$ 000s* | Lower | Higher | Lower | Higher |
| **Administrative Expense Claims** | $19,659 | $19,309 | $19,659 | $19,309 |
| Recovery | 19,659 | 19,309 | 19,659 | 19,309 |
| *Recovery Percentage* | *100.0%* | *100.0%* | *100.0%* | *100.0%* |
| **Class 1 - Priority Claims** | $3,600 | $1,600 | $3,600 | $1,600 |
| Recovery | 3,600 | 1,600 | 3,600 | 1,600 |
| *Recovery Percentage* | *100.0%* | *100.0%* | *100.0%* | *100.0%* |
| **Class 2 - Secured Claims** | $15,700 | $14,700 | $15,700 | $14,700 |
| Recovery | 15,700 | 14,700 | 15,700 | 14,700 |
| *Recovery Percentage* | *100.0%* | *100.0%* | *100.0%* | *100.0%* |
| **Class 3 - PBGC Claims** | $62,000 | $62,000 | $62,000 | $62,000 |
| Recovery | 2,620 | 7,431 | 1,267 | 4,709 |
| *Recovery Percentage* | *4.2%* | *12.0%* | *2.0%* | *7.6%* |
| **Class 4 - General Unsecured Claims** | $463,000 | $338,000 | $463,000 | $338,000 |
| Recovery | 7,239 | 13,877 | 3,501 | 8,793 |
| *Recovery Percentage* | *1.6%* | *4.1%* | *0.8%* | *2.6%* |

## III.  LIQUIDATION ANALYSIS

The following presents a comparison of (i) the estimated recoveries for creditors and equity holders of the Debtors that may result from the Plan and (ii) an estimate of the recoveries that may result from a hypothetical chapter 7 liquidation.

| LIQUIDATION ANALYSIS | | | | |
|---|---|---|---|---|
| **ASSETS/CLAIMS** | **Chapter 11 Plan** | | **Chapter 7 Liquidation** | |
| *$ 000s* | **Lower** | **Higher** | **Lower** | **Higher** |
| **Assets at Emergence** | | | | |
| Cash | $43,530 | $47,630 | $43,530 | $47,630 |
| Restricted Cash | 2,476 | 5,576 | 1,729 | 2,724 |
| Accounts Receivable | 712 | 712 | 234 | 234 |
| Other Current Assets | - | 500 | - | 250 |
| Other Assets | 7,600 | 8,000 | 3,710 | 3,910 |
| Total | $54,318 | $62,418 | $49,204 | $54,749 |
| Less: Post Emergence Administrative Costs (Ch 11 / Ch 7) | (5,500) | (5,500) | (5,476) | (5,637) |
| **Net Proceeds Available For Distribution** | **$48,818** | **$56,918** | **$43,728** | **$49,112** |
| **Less: Non-GUC Claims** | | | | |
| Administrative Claims | ($19,659) | ($19,309) | ($19,659) | ($19,309) |
| Class 1 - Priority Claims | (3,600) | (1,600) | (3,600) | (1,600) |
| Class 2 - Secured Claims | (15,700) | (14,700) | (15,700) | (14,700) |
| Total | **($38,959)** | **($35,609)** | **($38,959)** | **($35,609)** |
| **Net Proceeds Available for Distribution to Unsecured** | **$9,859** | **$21,309** | **$4,769** | **$13,502** |
| **Unsecured Claim Recoveries** | | | | |
| **Class 3 - PBGC Claims** | | | | |
| Claims | $62,000 | $62,000 | $62,000 | $62,000 |
| Recovery | 2,620 | 7,431 | 1,267 | 4,709 |
| *Recovery Percentage* | *4.2%* | *12.0%* | *2.0%* | *7.6%* |
| **Class 4 - General Unsecured Claims** | | | | |
| Claims | $463,000 | $338,000 | $463,000 | $338,000 |
| Recovery | 7,239 | 13,877 | 3,501 | 8,793 |
| *Recovery %* | *1.6%* | *4.1%* | *0.8%* | *2.6%* |

IV. **GENERAL ASSUMPTIONS AND NOTES FOR PROCEEDS AVAILABLE FOR DISTRIBUTION**

**ASSET RECOVERIES:**

1. **Cash and Cash Equivalents**

   The Liquidation Analysis utilizes the Debtors' projected range of cash balances as of the Chapter 7 Conversion Date of $43.5 to $47.6 million, based on its lower recovery scenario (the "**Lower Scenario**") and higher recovery scenario (the "**Higher Scenario**"), respectively.

2. **Restricted Cash**

   Estimated proceeds from restricted cash balances, which consist primarily of cash collateralized letters of credit, adequate assurance utility deposits, the administrative and directors' and officers' charge holdback ("**CCAA Holdback**") required in the Debtors' proceeding under the *Canada Companies' Arrangement Act* (the "**CCAA Proceeding**") and other similar items, as of the Chapter 7 Conversion Date, are assumed to be recoverable at between 49% and 70% of the proceeds projected to be recovered under the Higher Scenario and Lower Scenario, respectively.

   These assumed recovery rates are based largely on the Debtors' ability to collect on letters of credit and other potential financial contractual rights. These assumed recovery rates take into consideration that a chapter 7 trustee may (i) lack the knowledge or relationships to recover on these items in full, or (ii) may conclude that it is in the best interests of parties in interest to accept a reduced recovery for an expeditious outcome within a twelve-month timeframe. Additionally, a chapter 7 liquidation would likely increase the costs of the CCAA Proceeding, which would reduce the amount of the Canadian Holdback to be recovered.

3. **Accounts Receivable**

   Estimated proceeds from accounts receivable balances (exclusive of Intercompany Claims) are comprised of royalty receivables as of the Chapter 7 Conversion Date, are assumed to be recoverable at 33% of the proceeds projected to be recovered under the Plan.

   This assumed recovery rate is based on the Debtors' ability to collect on accounts receivable, taking into consideration ongoing negotiations with respect to receivables due from certain non-Debtor affiliates. This assumed recovery rate takes into consideration that such negotiations may be more difficult for a chapter 7 trustee to conclude due to (i) a lack of knowledge and relationship with the counterparties, and (ii) certain concessions a chapter 7 trustee might agree to in order to facilitate expeditious recovery of accounts receivable from the non-Debtor affiliates.

4. **Other Current Assets**

   Other current assets as of the Chapter 7 Conversion Date (exclusive of Intercompany Claims) include workers compensation refunds and insurance premium returns that are assumed to be recoverable at 50% of the proceeds projected to be recovered under the Plan.

   This assumed recovery rate takes into consideration that a chapter 7 trustee may (i) lack the knowledge or relationships to recover on these other current assets in full, and/or (ii) agree to a lower recovery to accelerate the receipt of these proceeds.

5. **Other Assets**

Other assets includes duty drawbacks, value-added tax ("**VAT**") returns and custom bond recoveries, as of the Chapter 7 Conversion Date, and are assumed to be recoverable at a rate of 49% of the proceeds projected to be recovered under the Plan.

This assumed recovery rate takes into consideration that a chapter 7 trustee (i) may lack the knowledge and resources to recover on duty drawbacks and VAT returns in full within the assumed twelve-month timeframe of the chapter 7 liquidation, and (ii) may lack the knowledge and/or information to defend any challenges brought by customs and border protection, which might impact collection of custom bonds in full.

6. **Litigation**

For purposes of the Liquidation Analysis, no values have been ascribed to any potential litigation. No recoveries are included from the Litigation Trust.

## CHAPTER 7 COSTS:

Costs specifically related to the liquidation of individual assets and all other costs associated with the liquidation are included chapter 7 Post Emergence Administrative Costs. These chapter 7 costs include the following:

7. **Trustee Fees**

Trustee fees include all fees paid to the Trustee by the Debtors, consistent with the fee structure set forth in the Bankruptcy Code. The Trustee fee is estimated at 3% of all distributions to creditors from gross asset proceeds (including cash), inclusive of payments of chapter 7 and chapter 11 administrative claims and all prepetition claims. *See* 11 U.S.C. § 326(a).

8. **Professional Fees**

Professional fees include estimated costs for a financial advisor, an attorney and a claims agent retained by the Trustee in connection with the wind-down of the estates (e.g., liquidation and recovery of assets, claims reconciliation and other processes, etc.). Professional fees are estimated at approximately $2.6 million for the liquidation period, based on average estimated fees of approximately $215,000 per month during the wind-down period. This estimate compares to approximately $150,000 per month estimated for the post emergence liquidation period following the effectiveness of the Plan, which fees include professional fee costs and U.S. Trustee fees for a projected 24-month period.

9. **Operating Wind-Down Costs**

Operating Wind-Down Costs include the cost to retain Debtor personnel needed to assist the Trustee with claims reconciliation, asset recoveries and other wind-down activities, as well as other accounting and administrative costs associated with the wind-down. Total operating wind-down disbursements are estimated at $1.5 million for the liquidation period. This estimate compares to approximately $2 million estimated for the post-emergence liquidation period under the Plan, which disbursements include operating costs over a projected 24-month period under the Plan.

**CLAIMS:**

10. **Secured Claims**

Secured Claims consist of the Debtors' estimate of outstanding prepetition secured claims (including principal and unpaid prepetition interest).

11. **Chapter 11 Administrative Claims**

Administrative Expense Claims are estimated based on, among other things, projected professional fees incurred in these chapter 11 cases, as well as estimated amounts related to Administrative Expense Claims that have been asserted against the Debtors.

12. **Priority Claims**

Priority claims consist of the Debtors' estimate of outstanding recapture of a corporate excise tax credit, additional priority tax claims, and general contingencies for Priority Claims.

13. **Unsecured Claims**

Unsecured Claims consist of:

- **PBGC Claims:** The PBGC Claim is estimated in the amount of $[62] million, the Allowed amount of the PBGC Claim under the Plan settlement.

- **General Unsecured Claims**: As of the Chapter 7 Conversion Date, the Debtors estimate that General Unsecured Claims will be Allowed in an amount between [$338 and $463] million.