**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| **BBGI US, INC., *et al.*,** | ) | **Case No. 20-11785 (CSS)** |
| **Debtors.**[1] | ) | **(Jointly Administered)** |

**CERTIFICATE OF PUBLICATION**

I, Zachary Steinberg, depose and say that I am employed by Prime Clerk LLC ("***Prime Clerk***"), the claims and noticing agent for the Debtors in the above-captioned chapter 11 cases.

This Certificate of Publication includes a sworn statement verifying that the *Notice of (I) Approval of Disclosure Statement, (II) Establishment of Record Date, (III) Hearing on Confirmation of the Plan, (IV) Procedures for Objecting to the Confirmation of the Plan, and (V) Procedures and Deadline for Voting on the Plan,* conformed for publication, was published (1) on February 4, 2021, in the business edition of *The New York Times* as described on **Exhibit A** attached hereto and (2) on February 4, 2021, in the business edition of *The Globe and Mail* as described on **Exhibit B** attached hereto.

[*Remainder of Page Intentionally Left Blank*]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are BBGI US, Inc. (f/k/a Brooks Brothers Group, Inc.) (8883); Brooks Brothers Far East Limited (N/A); BBD Holding 1, LLC (N/A); BBD Holding 2, LLC (N/A); BBDI, LLC (N/A); BBGI International, LLC (f/k/a Brooks Brothers International, LLC) (N/A); BBGI Restaurant, LLC (f/k/a Brooks Brothers Restaurant, LLC) (3846); Deconic Group LLC (0969); Golden Fleece Manufacturing Group, LLC (5649); RBA Wholesale, LLC (0986); Retail Brand Alliance Gift Card Services, LLC (1916); Retail Brand Alliance of Puerto Rico, Inc. (2147); 696 White Plains Road, LLC (7265); and BBGI Canada Ltd. (f/k/a Brooks Brothers Canada Ltd.) (4709). The Debtors' corporate headquarters and service address is 100 Phoenix Ave., Enfield, CT 06082.

Dated: February 5, 2021

/s/ Zachary Steinberg
Zachary Steinberg

State of New York
County of New York

Subscribed and sworn to (or affirmed) before me on February 5, 2021, by Zachary Steinberg proved to me on the basis of satisfactory evidence to be the person who executed this affidavit.

/s/ Liz Santodomingo
Notary Public, State of New York
No. 01SA6301250
Qualified in New York County
Commission Expires April 14, 2022

**Exhibit A**



The New York Times
620 8TH AVENUE • NEW YORK, NY 10018

# PROOF OF PUBLICATION

Feb-04, 2021

I, Edgar Noblesala, in my capacity as a Principal Clerk of the Publisher of The New York Times a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on

Feb 4, 2021, NYT & Natl, pg B3

[signature]

Sworn to me this 4th day of February, 2021

Notary Public

Ellen Herb
Notary Public, State of New York
No. 01HE6163785
Qualified in New York County
Commission Expires April 2, 2023

**INTERNATIONAL | INVESTING**

CHRIS WATTIE/REUTERS

Canada's privacy commissioner, Daniel Therrien.

# *Facial Recognition App Ruled Illegal in Canada*

By KASHMIR HILL

The facial recognition app Clearview AI is not welcome in Canada and the company that developed it should delete Canadians' faces from its database, the country's privacy commissioner said on Wednesday.

"What Clearview does is mass surveillance, and it is illegal," Commissioner Daniel Therrien said at a news conference. He forcefully denounced the company as putting all of society "continually in a police lineup." Though the Canadian government does not have legal authority to enforce photo removal, the position — the strongest one an individual country has taken against the company — was clear: "This is completely unacceptable."

Clearview scraped more than three billion photos from social media networks and other public websites in order to build a facial recognition app that is now used by over 2,400 U.S. law enforcement agencies, according to the company. When an officer runs a search, the app provides links to sites on the web where the person's face has appeared. The scope of the company's reach and law enforcement application was first reported by The New York Times in January 2020.

Mr. Therrien, along with three regional privacy commissioners in Canada, began an investigation into Clearview a year ago, after the article on the company was published. Privacy laws in Canada require getting people's consent to use their personal data, giving the government grounds to pursue an inquiry. Authorities in Australia and the United Kingdom are jointly pursuing an inquiry of their own.

Dozens of law enforcement agencies and organizations across Canada used the app, according to the commissioners, including the national Royal Canadian Mounted Police. One Canadian law enforcement officer told The Times last year that it was "the biggest breakthrough in the last decade" for investigating child sexual abuse crimes. "Thousands of searches" were conducted, a report from the commissioners said, but only one agency was paying for the app, mainly because a number of groups used it through a free trial.

According to the commissioners' report, Clearview said that it did not need consent from Canadians to use facial biometric information, because that information came from photos that were on the public internet. There is an exception in the privacy law for publicly available information. The commission disagreed.

"Information collected from public websites, such as social media or professional profiles, and then used for an unrelated purpose, does not fall under the 'publicly available' exception," according to the report. The commissioners objected to the images being used in a way that the posters of the photos hadn't intended and in a way that could "create the risk of significant harm to those individuals."

Clearview AI said that it planned to challenge the determination in court. "Clearview AI only collects public information from the Internet which is explicitly permitted," Doug Mitchell, a lawyer for Clearview AI, said in a statement. "Clearview AI is a search engine that collects public data just as much larger companies do, including Google, which is permitted to operate in Canada."

The commissioners, who noted that they don't have the power to fine companies or make orders, sent a "letter of intention" to Clearview AI telling it to cease offering its facial recognition services in Canada, cease the scraping of Canadians' faces, and to delete images already collected.

That is a difficult order: It's not possible to tell someone's nationality or where they live from their face alone.

Hoan Ton-That, the chief executive of Clearview AI, said Wednesday that because of the inquiry, the company stopped operating in Canada last July, but had no plans to proactively delete Canadians from its database.

The company has previously taken pains to delete faces after running afoul of local privacy laws. Last year, Clearview was sued in Illinois for violating that state's Biometric Information Privacy Act, which says that companies must get people's consent before using images of their faces. Clearview tried to delete Illinois residents' faces by, for example, looking at photo metadata and geographical information. It also allows state residents to request removal by uploading photos of themselves via an "opt-out form."

Mr. Ton-That said Clearview allows Canadians to opt out of the database the same way.

Mr. Therrien was not satisfied with that solution. "You realize the irony of the remedy, requiring individuals to provide further personal information about themselves," he said.

Mr. Ton-That said he was eager to fight the finding in court. "This is a simple issue of public information and who has access to it and why," he said. "We don't want a world where it's just Google and a few other tech companies accessing public information."

# *Pension Funds Are Mixed on More Cash for Apollo*

By MATTHEW GOLDSTEIN

When investors in Apollo Global Management learned last week that the firm's chief executive had paid $158 million to the registered sex offender Jeffrey Epstein, they hardly blinked.

After the private equity firm announced the figure, revealed by an outside investigation, its stock rose nearly 7 percent. That was a far different response from three months ago, when shares plunged over concerns about the financial ties between Mr. Epstein and the chief executive, Leon Black.

Apollo soothed investors' nerves with its announcement that Mr. Black, one of its founders, will step down as chief executive and that the firm will expand its board. Mr. Black will remain chairman.

A more important test could come the next time Apollo seeks to raise money from the 1,500 pension plans, foundations, sovereign wealth funds and other institutions that invest with it. These limited partners fuel its ability to carry out corporate buyouts, extend loans to companies and make other investments.

So far, their response has been mixed. One of the biggest public pension plans in the United States — the California Public Employees' Retirement System, or CalPERS — offered only cautious support.

"While we are encouraged by the independent investigation and steps Apollo has taken, the recent disclosures remain concerning, and we will take these matters into consideration as part of our extensive due diligence of any potential future investments," said Marcie Frost, the chief executive of CalPERS, which invests in nine Apollo funds.

But the Florida State Board of Administration, which makes investment decisions for the state's retirement system, was satisfied.

"The actions the firm has taken with regards to succession and governance underscores Apollo's commitment to following best practices," said Ashbel Williams, the board's chief executive.

Other limited partners have stayed quiet. A half-dozen state pensions either declined to comment or did not respond to requests after the firm announced the results of the outside review. The Pennsylvania Public School Employees' Retirement System, which had said that it would not invest additional money with Apollo until the review was complete, declined further comment.

On a conference call with analysts after Apollo released quarterly earnings on Wednesday, Marc Rowan, the co-founder who will take over as chief executive, said the "vast majority" of investors were satisfied after a "busy week of communication" to discuss the review and governance changes.

"They appreciated the seriousness with which we took the process," he said. Some, he acknowledged, may need more time to assess the firm's response.

DEMETRIUS FREEMAN/BLOOMBERG

**Leon Black, shown in 2019, said last week that he would step down as chief of Apollo Global Management by this summer but stay on as chair after it was learned that he paid $158 million to Jeffrey Epstein for advisory services.**

Any lingering unease could be squelched by Apollo's solid performance. Its assets under management rose $22 billion in the last quarter to $455 billion, an indication of the increased value of the companies and other assets. Apollo posted net income of $434 million, or $1.80 per share, up sharply from $166 million, or 68 cents a share, a year earlier.

Mr. Black asked for the review in October, after The New York Times reported that he had paid at least $50 million to Mr. Epstein, who died in a Manhattan jail cell in 2019 while facing federal sex trafficking charges.

The review found no wrongdoing by Mr. Black, saying the money was for "bona fide" services including tax and estate advice. It also said Mr. Black was not aware of Mr. Epstein's predatory conduct and believed his 2008 guilty plea in a case involving a teenage girl had been an isolated incident.

Corporate governance experts said it was natural for there to be lingering questions about why a billionaire deal maker like Mr. Black had paid so much money to a man with Mr. Epstein's history.

***Future efforts to raise capital may be hurt by past ties to a wealthy sex offender.***

"The bread and butter of a firm like Apollo is its ability to do unmatched due diligence on investments, and it is clear that Leon Black did not do that with regards to his own billions of dollars," said Dennis Kelleher, president of Better Markets, a nonprofit group that supports stringent financial regulation.

Apollo's decision to add four independent board seats was a signal that it was trying to change how it operates, said Usha Rodrigues, who teaches corporate law and business ethics at the University of Georgia School of Law.

But Mr. Black, 69, will still hold great sway over Apollo.

"I am surprised he is going to stay on as chair, but he is a founder," Ms. Rodrigues said.

There is another reason for the firm not to distance itself, she said: "His prowess is what has made Apollo such a success."

Mary Walsh contributed reporting.

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION**

**In re: SABLE PERMIAN RESOURCES, LLC, *et al.*, Debtors.[1]** § **Chapter 11** § **Case No. 20-33193 (MI)** § **(Jointly Administered)**

**NOTICE OF ENTRY OF CONFIRMATION ORDER AND EFFECTIVE DATE OF THIRD AMENDED JOINT PLAN OF REORGANIZATION AND LIQUIDATION FOR SABLE PERMIAN RESOURCES, LLC AND ITS AFFILIATE DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**TO ALL CREDITORS, INTEREST HOLDERS, AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on January 29, 2021, the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") entered an order (the "Confirmation Order") [Docket No. 844] confirming the *Third Amended Joint Plan of Reorganization and Liquidation for Sable Permian Resources, LLC and its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 819] (as modified or amended, the "Plan") in the chapter 11 cases of the above-captioned debtors (collectively, the "Debtors"). Unless otherwise defined in this Notice, capitalized terms and phrases used herein have the meanings given to them in the Plan and the Confirmation Order. This Notice is intended solely to provide notice of the entry of the Confirmation Order and occurrence of the Effective Date under the Plan and it does not, and shall not be construed to, limit, modify or interpret any of the provisions of the Confirmation Order. The following paragraphs identify some of the provisions of the Confirmation Order for the convenience of parties in interest; however, parties in interest should refer to the full text of the Confirmation Order and should not rely upon the summary provided below.

**PLEASE TAKE FURTHER NOTICE** that on February 1, 2021, the Effective Date under the Plan occurred.

**PLEASE TAKE FURTHER NOTICE** that the terms of the Plan and the Plan Supplement are effective and enforceable and deemed binding upon the Debtors, any and all Holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests accepted or were deemed to have accepted the Plan), all Entities that received a Notice of Non-Voting Status, all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan and the agreements and other documents that comprise the Plan Supplement.

**PLEASE TAKE FURTHER NOTICE** that the Court has approved certain bar dates for filing of certain Claims against the Debtors.

a. *Administrative Claims*. Except as otherwise provided in the Plan and section 503(b)(1)(D) of the Bankruptcy Code, unless previously Filed or paid, requests for payment of Administrative Claims must be Filed and served on the Debtors, the Plan Administrator, and Reorganized Sable Land in accordance with the service instructions below **no later than March 3, 2021**; provided, however, that nothing in the foregoing shall limit, alter, or impair the terms and conditions of the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Notice of Bar Dates*, entered by the Bankruptcy Court on August 24, 2020 [Docket No. 345], with respect to the bar date for filing administrative expense claims arising under section 503(b)(9) of the Bankruptcy Code.

b. *Rejection Damages Claims*. Unless otherwise provided by a Bankruptcy Court order, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty days after service of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. For Executory Contracts and Unexpired Leases rejected pursuant to the Confirmation Order, claims for rejection damages must be filed **no later than March 1, 2021.**

c. *Service Instructions for Reorganized Sable Land.* Service on Reorganized Sable Land should be completed at the following addresses: Reorganized Sable Land: Bighorn Asset Company, LLC, Attn: Mr. James Mayfield, 5221 N. O'Connor Blvd., 11th Floor, Irving, TX 75093, jmayfield@fdlenergy.com; with a copy to: Simpson Thacher & Bartlett LLP, Attn: Christopher R. May and Brad Honeycutt, 600 Travis Street, Suite 5400, Houston, TX 77002, cmay@stblaw.com; brad.honeycutt@stblaw.com.

d. *Service Instructions for Plan Administrator.* Service on the Plan Administrator should be completed at the following addresses: Plan Administrator: Conway MacKenzie, LLC, Attn: Paul Jansen, 909 Fannin Street, Suite #4000, Houston, Texas 77002, Paul.Jansen@conwaymackenzie.com; with a copy to: Hunton Andrews Kurth LLP, Attn: Ashley Harper, 600 Travis Street, Suite 4200, Houston, Texas 77002, ashleyharper@HuntonAK.com.

e. *Service Instructions for Liquidating Trustee.* Service on the Liquidating Trustee should be completed at the following addresses: Liquidating Trustee: Conway MacKenzie, LLC, Attn: Paul Jansen, 909 Fannin Street, Suite #4000, Houston, Texas 77002, Paul.Jansen@conwaymackenzie.com; with a copy to: Hunton Andrews Kurth LLP, Attn: Ashley Harper, 600 Travis Street, Suite 4200, Houston, Texas 77002, ashleyharper@HuntonAK.com.

**PLEASE TAKE FURTHER NOTICE** that each Administrative Claim and Rejection Damages Claim referenced above must be Filed, including supporting documentation so as to be ***actually received*** by the Balloting Agent on or before the applicable bar date as follows: electronically through the interface available at http://cases.primeclerk.com/spr, or if submitted through non-electronic means, by U.S. Mail or other hand delivery system at the following address: Sable Permian Resources, LLC Claims Processing Center, c/o Prime Clerk LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232.

**PLEASE TAKE FURTHER NOTICE** that the Confirmation Order, Disclosure Statement, Plan, and related documents and materials filed in these Chapter 11 Cases may be obtained at no charge from Prime Clerk LLC, the Balloting Agent retained by the Debtors in these Chapter 11 Cases, by: (i) calling the Debtors' restructuring hotline at (844) 627-8453 or, for international callers, (929) 602-1722; and/or (ii) visiting the Debtors' restructuring website at: https://cases.primeclerk.com/spr. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: https://ecf.txsb.uscourts.gov/.

Dated: February 1, 2021, Houston, Texas, Respectfully submitted, */s/ Timothy A. ("Tad") Davidson II* , Timothy A. ("Tad") Davidson II, (TX Bar No. 24012503), Joseph P. Rovira (TX Bar No. 24066008), Ashley L. Harper (TX Bar No. 24065272), **HUNTON ANDREWS KURTH LLP,** 600 Travis Street, Suite 4200, Houston, Texas 77002, Tel: (713) 220-4200, Fax: (713) 220-4285, Email: taddavidson@huntonak.com, josephrovira@huntonak.com, ashleyharper@huntonak.com, *Co-Counsel for the Debtors and Debtors in Possession* -and- George A. Davis (*pro hac vice*), **LATHAM & WATKINS LLP,** 885 Third Avenue, New York, NY 10022, Telephone: (212) 906-1200, Facsimile: (212) 751-4864, Email: george.davis@lw.com -and- Caroline A. Reckler (*pro hac vice*), Jeramy D. Webb (*pro hac vice*), Brett V. Newman (*pro hac vice*), Jonathan C. Gordon (*pro hac vice*), **LATHAM & WATKINS LLP,** 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Telephone: (312) 876-7700, Facsimile: (312) 993-9667, Email: caroline.reckler@lw.com, jeramy.webb@lw.com, brett.newman@lw.com, jonathan.gordon@lw.com -and- Jeffrey E. Bjork (*pro hac vice*), Christina M. Craige (*pro hac vice*), **LATHAM & WATKINS LLP,** 355 South Grand Avenue, Suite 100, Los Angeles, CA 90071, Telephone: (213) 485-1234, Facsimile: (213) 891-8763, Email: jeff.bjork@lw.com, chris.craige@lw.com, *Co-Counsel for the Debtors and Debtors in Possession*

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Sable Permian Resources, LLC (5172); SPR Stock Holdings, LLC (2065); Sable Permian Resources Operating, LLC (3212); SPR Holdings, LLC (3611); SPRH Finance Corporation (1390); Sable Permian Resources Corporation (9049); Sable Permian Resources Finance, LLC (6841); SPR Finance Corporation (0359); and Sable Land Company, LLC (7101). The location of the Debtors' main corporate headquarters and the Debtors' service address is: 700 Milam Street, Suite 3100, Houston, TX 77002.

**If You Are or Were a Delivery Driver for NPC International, Inc.'s Pizza Hut Business, You May Be Entitled To Compensation as Part of a Settlement**

Go to https://dm.epiq11.com/NPC for more information, including the Second Amended Joint Chapter 11 Plan of NPC International, Inc., which contains a description of the relevant settlement.

The settlement class includes the following individuals:

All delivery drivers who were employed by the Debtors in the Pizza Hut Business after (i) January 1, 2014, through the date that the Debtors' Second Amended Joint Chapter 11 Plan, which was filed in the Bankruptcy Court on January 26, 2021 (the "**Plan**") becomes effective (the "**Effective Date**") or (ii) January 1, 2007 solely in the States of Illinois, Kentucky, Oklahoma, Oregon, or Florida, through the Effective Date.

The settlement relates to claims brought in the chapter 11 case of NPC that NPC delivery drivers were under-reimbursed for out-of-pocket costs associated with using their vehicles to deliver pizzas on behalf of NPC, and, as a result, that this under-reimbursement led to delivery drivers receiving less than minimum wage in violation of the Fair Labor Standards Act and various state minimum wage laws. These claims largely adopt the allegations of a lawsuit filed by certain of these same delivery drivers in an action entitled *Collins v. NPC International, Inc.*, No. 17-cv-312 (the "***Collins* Action**") which is pending in the Southern District of Illinois.

The Debtors have denied, and continue to deny, that these claims have any merit and have vigorously defended against them. Nothing contained in this notice should be construed as suggesting the Court's view as to the merits of these allegations.

On January 29, 2021, the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Bankruptcy Court**") approved a settlement, in which the Debtors have agreed to pay or give delivery drivers an allowed claim in the bankruptcy, as more fully described in the Plan. This amount will be based on (i) what time period each delivery driver was employed by NPC; (ii) how many miles driven while delivering pizza for NPC; (iii) whether each delivery driver already submitted a timely proof of claim in the chapter 11 cases; and (iv) the total number of delivery drivers who decide to return a form which would allow them to participate in the settlement.

Complete information about the settlement can be found in the Second Amended Joint Chapter 11 Plan of NPC International, Inc., available at https://dm.epiq11.com/NPC. Pursuant to the Plan, any person, including a delivery driver, who has not filed a timely proof of claim asserting a claim arising prior to July 1, 2020 against the debtors or who does not file a postpetition administrative expense claim arising after July 1, 2020 by the Administrative Expense Claims Bar Date will have those claims released as set forth in the Plan. Further, as set forth in the Plan, the settlement provides that upon the Effective Date, all delivery drivers who do not submit a Settlement Election and Participation Form choosing not to participate in the settlement shall fully release the Debtors' current and former directors, officers, employees, and managing agents of the Debtors, including, for the avoidance of doubt, the named defendants in *Marshall v. Weber, et al.*, No. 4:20-cv-00757 (the "***Marshall* Action**"), and will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever to release such person from any and all claims and causes of Action whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that any driver claimant, has had or would have been legally entitled to assert arising out of or relating to, in whole or in part, the employment of such driver claimant by the Debtors, including any claims arising under or related to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*, or any related or similar state wages and labor laws, and any Claims arising under or related to the *Collins* Action and the *Marshall* Action and the underlying facts that were or could have been pled in those actions.

**What Are My Legal Rights as a Settlement Class Member?**

- **Participate in the Settlement Class, and Receive Benefits of the Settlement:** If you return a Settlement Election and Participation Form (which can be found on https://dm.epiq11.com/NPC), you may be eligible to receive consideration as a result of the settlement.
- **Decline to Participate in the Settlement Class:** To exclude yourself from the settlement, you must submit a written Settlement Election Form to the Settlement Administrator at the following address: **If by First-Class Mail:** NPC International, Inc., Settlement Form Processing Center, c/o Epiq Corporate Restructuring, LLC, P.O. Box 4420, Beaverton, OR 97076-4420. **If by Hand Delivery or Overnight Mail:** NPC International, Inc., Settlement Form Processing Center, c/o Epiq Corporate Restructuring, LLC, 10300 SW Allen Blvd., Beaverton, OR 97005.

You cannot decline to participate through the website, by telephone, or by e-mail.

**This notice provides only a summary of the settlement. For more detailed information regarding the rights and obligations of members of the certified class, visit the following website https://dm.epiq11.com/NPC, or contact the Settlement Administrator through email at NPCDriversSettlement@epiqglobal.com or at (855) 917-3563.**

**UNITED STATES BANKRUPTCY COURT, DISTRICT OF DELAWARE**

**In re BBGI US, INC., *et al.*, Debtors.[1]** ) **Chapter 11, Case No. 20-11785 (CSS)** ) **(Jointly Administered)** ) **Re: D.I. 918, 919 & 954**

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT, (II) ESTABLISHMENT OF RECORD DATE, (III) HEARING ON CONFIRMATION OF THE PLAN, (IV) PROCEDURES FOR OBJECTING TO THE CONFIRMATION OF THE PLAN, AND (V) PROCEDURES AND DEADLINE FOR VOTING ON THE PLAN**

**TO ALL PARTIES IN INTEREST PLEASE TAKE NOTICE THAT:**

1. Approval of Disclosure Statement. On January 26, 2021, the United States Bankruptcy Court for the District of Delaware (the "**Court**") held a hearing (the "**Disclosure Statement Hearing**") regarding approval of the *Disclosure Statement for Amended Joint Chapter 11 Plan of Liquidation for BBGI US, Inc. and Its Affiliated Debtors*, filed on January 22, 2021 [D.I. 919] (as may be amended, modified, or supplemented, the "**Disclosure Statement**") in the chapter 11 cases of BBGI US, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"). After the hearing, the Court entered an order [D.I. 954] (the "**Disclosure Statement Order**") approving the Disclosure Statement. The Disclosure Statement Order also authorizes the Debtors to solicit votes to accept or reject the *Amended Joint Chapter 11 Plan of Liquidation for BBGI US, Inc. and Its Affiliated Debtors*, filed on January 22, 2021 [D.I. 918] (as may be amended, modified, or supplemented in accordance with the terms therein, the "**Plan**").[2]

2. Confirmation Hearing. A hearing to consider confirmation of the Plan (the "**Confirmation Hearing**") has been scheduled before the Honorable Christopher S. Sontchi, United States Bankruptcy Judge, at the Court, 824 North Market Street, 5th Floor, Courtroom 6, Wilmington, Delaware 19801, on **March 5, 2021 at 1:00 p.m. (prevailing Eastern Time)**. The Confirmation Hearing may be held virtually or adjourned or continued from time to time by the Court or the Debtors without further notice other than as announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Court. The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing.

3. Record Date. The holders of Claims against the Debtors as of **January 19, 2021** (the "**Record Date**") in Class 3 (PBGC Claims) and Class 4 (General Unsecured Claims) of the Plan are entitled to vote on the Plan:

4. Voting Deadline. All votes to accept or reject the Plan must be **actually received** by the Debtors' voting and tabulation agent, Prime Clerk LLC ("**Prime Clerk**"), by no later than **5:00 p.m. (prevailing Eastern Time) on February 26, 2021** (the "**Voting Deadline**"). Any failure to follow the voting instructions included with your Ballot may disqualify your Ballot and your vote.

5. Parties in Interest Not Entitled to Vote. Holders of Unimpaired Claims in classes presumed to accept the Plan are not entitled to vote and will not receive a Ballot. In addition, holders of Impaired Claims in classes deemed to reject the Plan are not entitled to vote and will not receive a Ballot.

6. If you (i) disagree with the amount set forth by the Debtors for your Claim in the Schedules or (ii) if you have filed a proof of claim and disagree with either (a) the Debtors' objection to your Claim and believe that you should be entitled to vote on the Plan or (b) the Debtors' classification or request for estimation of your Claim and believe that you should be entitled to vote on the Plan in a different amount, then you must file with the Court, and serve on the parties identified in paragraph 8 below, a motion (a "**Rule 3018 Motion**") for an order pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") temporarily allowing your Claim in a different amount for purposes of voting to accept or reject the Plan. All Rule 3018 Motions must be filed on or before **4:00 p.m. (prevailing Eastern Time) on February 12, 2021, or fourteen days after the service of an objection to your Claim** (the "**Rule 3018 Motion Deadline**"). Rule 3018 Motions that are not timely filed and served in the manner set forth above on or before the Rule 3018 Motion Deadline shall not be considered. As to any creditor that timely files a Rule 3018 Motion, that creditor's Ballot will be counted as provided in the Order except as may be otherwise ordered by the Court. Creditors may contact Prime Clerk in writing at (i) BBGI US, Inc. Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, (ii) by telephone at 877-930-4317 (Domestic) or 347-899-4592 (International), or (iii) by email to brooksbrothersballots@PrimeClerk.com (referencing "BBGI US, Inc. Ballots" in the subject line) to receive an appropriate Ballot for any Claim for which a Proof of Claim and Rule 3018 Motion have been timely filed.

7. Objections to Confirmation. The deadline to object or respond to confirmation of the Plan is **4:00 p.m. (prevailing Eastern Time) on February 26, 2021** (the "**Plan Objection Deadline**").

8. Objections and responses, if any, to confirmation of the Plan, must: (a) be in writing, (b) comply with the Bankruptcy Rules and the Local Rules, (c) set forth the name of the objector and the nature and amount of any claim or interest asserted by the objector against or in the Debtors, (d) state with particularity the legal and factual bases for the objection and the specific grounds therefor, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection, (e) be filed with the Court, contemporaneously with a proof of service, by no later than the Plan Objection Deadline, and (f) be served in accordance with the Local Rules upon the following parties: (i) ***Debtors:*** BBGI US, Inc., *et al.*, 100 Phoenix Avenue, Enfield, CT 06082, Attn: Steven Goldaper; (ii) ***Office of the U.S. Trustee:*** 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Richard L. Schepacarter; (iii) ***Counsel to the Debtors:*** Weil, Gotshal & Manges LLP, Attn: Garrett A. Fail (garret.fail@weil.com), David J. Cohen (davidj.cohen@weil.com); (iv) ***Co-Counsel to the Debtors:*** Richards, Layton & Finger, P.A., Attn: Mark D. Collins (collins@rlf.com), Zachary I. Shapiro (shapiro@rlf.com); (v) ***Counsel to the Committee:*** Akin Gump Strauss Hauer & Feld LLP, Attn: Meredith A. Lahaie (mlahaie@akingump.com), Abid Qureshi (aqureshi@akingump.com), Kate Doorley (kdoorley@akingump.com); and (vi) ***Co-Counsel to the Committee:*** Troutman Pepper Hamilton Sanders LLP, Attn: David B. Stratton (david.stratton@troutman.com), David M Fournier (david.fournier@troutman.com), Evelyn J. Meltzer (evelyn.meltzer@troutman.com).

9. **IF ANY OBJECTION TO CONFIRMATION OF THE PLAN IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY SHALL BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE CONFIRMATION HEARING.**

10. Additional Information. Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement or the Plan should contact the Debtors' voting and tabulation agent, Prime Clerk, in writing: BBGI US, Inc. Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, or by email at brooksbrothersinfo@PrimeClerk.com. Interested parties may also review the Disclosure Statement and the Plan at https://cases.primeclerk.com/brooksbrothers. In addition, the Disclosure Statement, the Plan, the Disclosure Statement Order are on file with the Court and may be reviewed for a fee by accessing the Court's website: www.deb.uscourts.gov. Note that a PACER password and login are needed to access documents on the Court's website. A PACER password can be obtained at: www.pacer.psc.uscourts.gov. Copies of the Disclosure Statement and the Plan may also be examined by interested parties during normal business hours at the office of the Clerk of the Court.

**NOTICE REGARDING CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN THE PLAN**

**The Plan includes certain injunction, release, and exculpation provisions.**

**Select Defined Terms in the Plan**

***Exculpated Parties*** means collectively: (i) the Debtors; (ii) the Estates; (iii) the Creditors' Committee and the members of the Creditors' Committee; and (iv) with respect to each of the foregoing entities in clauses (i) through (iv), such entities' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, Estates, servants and nominees, in each case in their capacity as such; *provided, however,* that Exculpated Parties shall not include any Former D&Os.

***Released Parties*** means collectively: (i) the Debtors; (ii) the Creditors' Committee and the members of the Creditors' Committee solely in their capacities as such, and not individually; (iii) the DIP Lender; (iv) the DIP Agent; (v) the ABL Agent; (vi) the ABL Lenders; (vii) the Information Officer; (viii) with respect to any Person or Entity in the foregoing clauses (i) through (vii), such Person or Entity's predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees each solely in its capacity as such; *provided, however*, that the (i) DV Entities, and (ii) Former D&Os and Shareholders shall not be Released Parties; *provided, further* that any holder of a Claim that opts out of the releases set forth in Section 10.5 of the Plan or files with the Bankruptcy Court an objection to the releases set forth Section 10.5 of the Plan by the deadline established to file objections to the Plan shall not be a Released Party.

***Releasing Parties*** means collectively, and in each case, in their respective capacities as such: (i) the Released Parties; (ii) all holders of Claims and Interests that are deemed to accept the Plan; (iii) all holders of Claims who vote to accept the Plan; (iv) all holders of Claims that are entitled to vote on the Plan who abstain from voting on the Plan or who vote to reject the Plan, but in either case, do not opt out of granting the releases set forth in Section 10.5 of the Plan; (v) holders of Claims or Interests that are deemed to reject the Plan and do not timely file with the Bankruptcy Court an objection to the releases set forth in Section 10.5 of the Plan by the deadline established to file objections to the Plan; (vi) holders of Administrative Expense Claims and Priority Tax Claims that do not hold Claims or Interests in any Class and do not timely file with the Bankruptcy Court an objection to the releases set forth in Section 10.5 of the Plan by the deadline established to file objections to the Plan, and (vii) with respect to any Person or entity in the foregoing clauses (i) through (vi), such Person or Entities' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

**Select Provisions of the Plan**

**Section 10.4 of the Plan: Releases by the Debtors. As of the Effective Date, except (i) for the rights that remain in effect from and after the Effective Date to enforce the Plan; and (ii) as otherwise provided in the Plan or in the Confirmation Order, for good and valuable consideration, including their cooperation and contributions to the Chapter 11 Cases, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Debtors and the Estates, in each case, on behalf of themselves and their respective successors (including the Liquidation Trust and the Litigation Trust), assigns, and representatives, and any and all other persons that may purport to assert any Cause of Action derivatively, by, through or on behalf of the foregoing Persons and Entities, from any and all Claims and Causes of Action, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, in whole or in part, the Debtors, the Chapter 11 Cases, the Recognition Proceedings, the pre- and post-petition marketing and sale process, the Sale Transaction, the APA, the DIP Credit Agreement or any related agreements, instruments, and other documents relating thereto, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the Recognition Proceedings, the Disclosure Statement, the Plan (including the Plan Supplement), or the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided*, that nothing herein shall be construed to release any obligation of any party under the Plan, the Sale Transaction, or any document, instrument, or agreement executed to implement the Plan or the Sale Transaction; *provided, further*, that nothing in Section 10.4 of the Plan shall constitute a release of any of the DV Claims or the Former D&O and Shareholder Causes of Action.**

**Section 10.5 of the Plan: Releases by Holders of Claims and Interests (the "Third Party Release"). As of the Effective Date, except (i) for the right to enforce the Plan; and (ii) as otherwise expressly provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably and forever, released, and discharged by the Releasing Parties in each case, from any and all Claims and Causes of Action, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, in law or equity, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such entity would have been legally entitled to assert in their own right (whether individually, derivatively, or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising prior to the Effective Date, from, in whole or in part, the Debtors, the Chapter 11 Cases, the Recognition Proceedings, the pre-and post-petition marketing and sale process, the Sale Transaction, the APA, the DIP Credit Agreement or any related agreements, instruments, and other documents relating thereto, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the Recognition Proceedings, the Disclosure Statement, the Plan (including any Plan Supplement), or the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided*, that nothing herein shall be construed to release any obligation of any party under the Plan, the Sale Transaction, or any document, instrument, or agreement executed to implement the Plan or Sale Transaction. The Releasing Parties shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under Section 10.5 of the Plan against each of the Released Parties.**

**Section 10.6 of the Plan: Exculpation.** To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each of the Exculpated Parties are hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any claim arising on or after the Petition Date in connection with or arising out of the filing or administration of the Chapter 11 Cases, the administration of the Recognition Proceedings, the postpetition marketing and sale process, the postpetition purchase, sale, or rescission of the purchase or sale of any security or asset of the Debtors; the negotiation and pursuit of the Disclosure Statement, the APA, the Sale Transaction, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the DIP Credit Agreement; the post-Effective Date administration of the Plan or the property to be distributed under the Plan; or the transactions in furtherance of any of the foregoing; except for fraud, gross negligence, or willful misconduct, as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth herein does not release any post-Effective Date obligation or liability of any Entity under the Plan, the Sale Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Sale Transaction.

**Section 10.7 of the Plan: Injunction**

**(a) Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan.**

**(b) Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether or not proof of such Claims or Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Liquidation Trust, and the Litigation Trust, or the property of any of the Debtors, the Liquidation Trust, the Litigation Trust; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, and the Liquidation Trust; or the property of any of the Debtors, the Liquidation Trust, and the Litigation Trust; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Liquidation Trust, and the Litigation Trust or the property of any of the Debtors, the Liquidation Trust, and the Litigation Trust; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors, the Liquidation Trust, and the Litigation Trust, or against property or interests in property of any of the Debtors, the Liquidation Trust, and the Litigation Trust except as contemplated or allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

**(c) By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in Section 10.7 of the Plan.**

**(d) The injunctions in Section 10.7 of the Plan shall extend to any successors of the Debtors, the Liquidation Trust, and the Litigation Trust and their respective property and interests in property.**

**Section 10.8 of the Plan: Waiver of Statutory Limitation on Releases.** EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THE PLAN (INCLUDING UNDER SECTION 10 OF THE PLAN) EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, IT HAS CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542. THE RELEASES CONTAINED IN SECTION 10 OF THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

**Section 10.10 of the Plan: PBGC Release. As of the Effective Date, to the maximum extent permitted by applicable law, other than the Debtors with respect to the Allowed PBGC Claims, the Released Parties, for good and valuable consideration, shall be deemed to be released and discharged by the PBGC and the Pension Plans from any Causes of Action based on or relating to the Pension Plans; provided, however, that nothing in the Plan, the Confirmation Order, or any other document filed in the Debtors' Chapter 11 Cases without notice to the PBGC shall be construed to release (i) non-Debtor members of the controlled group of the Pension Plans' sponsors (within the meaning of Section 4001 of ERISA or Section 414 of the Internal Revenue Code of 1986, as amended) as of the Pension Plan Termination Date from Causes of Action or any other obligations based on or relating to the Pension Plans, or (ii) any fiduciary breaches or prohibited transactions (in each case within the meaning of ERISA or Section 4975 of the Internal Revenue Code of 1986, as amended) relating to the Pension Plans. The Debtors shall use commercially reasonable efforts to provide notice to the PBGC of any pleading filed in the Debtors' Chapter 11 Cases seeking relief that is contradictory to Section 10.10 of the Plan.**

**PLEASE BE ADVISED THAT IF:**

**A. YOU VOTE TO ACCEPT THE PLAN;**

**B. YOUR CLAIM IS UNIMPAIRED UNDER THE PLAN;**

**C. YOU ARE ENTITLED TO VOTE UNDER THE PLAN BUT DO NOT VOTE TO ACCEPT OR TO REJECT THE PLAN, AND DO NOT OPT OUT OF GRANTING THE RELEASES IN SECTION 10.5 OF THE PLAN;**

**D. YOU VOTE TO REJECT THE PLAN AND DO NOT OPT OUT OF GRANTING THE RELEASES IN SECTION 10.5 OF THE PLAN;**

**E. YOU ARE DEEMED TO REJECT THE PLAN AND DO NOT FILE AN OBJECTION TO THE RELEASES BY THE PLAN OBJECTION DEADLINE;**

**F. YOU HOLD AN ADMINISTRATIVE EXPENSE CLAIM OR PRIORITY TAX CLAIM, AND DO NOT HOLD A CLAIM OR INTEREST IN ANY CLASS, AND DO NOT FILE AN OBJECTION TO THE RELEASES BY THE PLAN OBJECTION DEADLINE; OR**

**G. YOU ARE A RELEASED PARTY**

**IN EACH CASE, YOU WILL BE DEEMED TO HAVE GRANTED THE RELEASES CONTAINED IN SECTION 10.5 OF THE PLAN.**

11. The Plan also contains other related provisions that may affect your rights against the Debtors.

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

Dated: January 27, 2021, Wilmington, Delaware

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are BBGI US, Inc. (f/k/a Brooks Brothers Group, Inc.) (8883); Brooks Brothers Far East Limited (N/A); BBD Holding 1, LLC (N/A); BBD Holding 2, LLC (N/A); BBDI, LLC (N/A); BBGI International, LLC (f/k/a Brooks Brothers International, LLC) (N/A); BBGI Restaurant, LLC (f/k/a Brooks Brothers Restaurant, LLC) (3846); Deconic Group LLC (0969); Golden Fleece Manufacturing Group, LLC (5649); RBA Wholesale, LLC (0986); Retail Brand Alliance Gift Card Services, LLC (1916); Retail Brand Alliance of Puerto Rico, Inc. (2147); 696 White Plains Road, LLC (7265); and BBGI Canada Ltd. (f/k/a Brooks Brothers Canada Ltd.) (4709). The Debtors' corporate headquarters and service address is 100 Phoenix Ave., Enfield, CT 06082.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable.

**Exhibit B**

**AFFIDAVIT OF PUBLICATION**
**Re: BBGI US, INC. BANKRUPTCY**

I, Patricia Tabone, of the City of Toronto, in the Province of Ontario, AFFIRM THAT:

1. I am employed by The Globe and Mail Inc. and my current job title is Advertising Service representative

2. The Globe and Mail is a media organization with its head office in Toronto, Ontario. The Globe and Mail publishes and distributes a print edition newspaper from Monday to Saturday which is simultaneously printed in the cities of Montreal, Toronto, Estevan, Calgary, and Vancouver, and is generally distributed and circulated in the Provinces of Quebec, Ontario, Manitoba, Alberta and British Columbia.

3. The advertisement attached to my affidavit as Exhibit "A" is a true and correct copy and was published in the form attached to my affidavit in print editions of The Globe and Mail newspaper published on the following date(s): February 4, 2021

PATTY TABONE

Patricia Tabone

Affirmed before me at the City of Toronto, in the Province of Ontario on February 4, 2021

Commissioner for Taking Affidavits

Fatima Brito Wilson, a
Commissioner, etc., Province of Ontario.
for The Globe and Mail Newspaper.
Expires September 23. 2022

This is Exhibit "A" to the
Affidavit of Patricia Tabone, affirmed before me
in the City of Toronto, in the Province of Ontario,
on February 4, 2021

_____
Commissioner for Taking Affidavits

Fatima Brito Wilson, a
Commissioner, etc., Province of Ontario,
for The Globe and Mail Newspaper
Expires September 23, 2022

---

**UNITED STATES BANKRUPTCY COURT, DISTRICT OF DELAWARE**

In re: BBGI US, INC., et al., Debtors.[1]
Chapter 11, Case No. 20-11785 (CSS)
(Jointly Administered)
Re: D.I. 918, 919 & 954

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT, (II) ESTABLISHMENT OF RECORD DATE, (III) HEARING ON CONFIRMATION OF THE PLAN, (IV) PROCEDURES FOR OBJECTING TO THE CONFIRMATION OF THE PLAN, AND (V) PROCEDURES AND DEADLINE FOR VOTING ON THE PLAN**

**TO ALL PARTIES IN INTEREST PLEASE TAKE NOTICE THAT:**

1. **Approval of Disclosure Statement.** On January 26, 2021, the United States Bankruptcy Court for the District of Delaware (the "**Court**") held a hearing (the "**Disclosure Statement Hearing**") regarding approval of the *Disclosure Statement for Amended Joint Chapter 11 Plan of Liquidation for BBGI US, Inc. and Its Affiliated Debtors*, filed on January 22, 2021 [D.I. 919] (as may be amended, modified, or supplemented, the "**Disclosure Statement**") in the chapter 11 cases of BBGI US, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"). After the hearing, the Court entered an order [D.I. 954] (the "**Disclosure Statement Order**") approving the Disclosure Statement. The Disclosure Statement Order also authorizes the Debtors to solicit votes to accept or reject the *Amended Joint Chapter 11 Plan of Liquidation for BBGI US, Inc. and Its Affiliated Debtors*, filed on January 22, 2021 [D.I. 918] (as may be amended, modified, or supplemented in accordance with the terms therein, the "**Plan**").[2]

2. **Confirmation Hearing.** A hearing to consider confirmation of the Plan (the "**Confirmation Hearing**") has been scheduled before the Honorable Christopher S. Sontchi, United States Bankruptcy Judge, at the Court, 824 North Market Street, 5th Floor, Courtroom 6, Wilmington, Delaware 19801, on **March 5, 2021 at 1:00 p.m. (prevailing Eastern Time)**. The Confirmation Hearing may be held virtually or adjourned or continued from time to time by the Court or the Debtors without further notice other than as announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Court. The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing.

3. **Record Date.** The holders of Claims against the Debtors as of **January 19, 2021** (the "**Record Date**") in Class 3 (PBGC Claims) and Class 4 (General Unsecured Claims) of the Plan are entitled to vote on the Plan:

4. **Voting Deadline.** All votes to accept or reject the Plan must be **actually received** by the Debtors' voting and tabulation agent, Prime Clerk LLC ("**Prime Clerk**"), by no later than **5:00 p.m. (prevailing Eastern Time) on February 26, 2021** (the "**Voting Deadline**"). Any failure to follow the voting instructions included with your Ballot may disqualify your Ballot and your vote.

5. **Parties in Interest Not Entitled to Vote.** Holders of Unimpaired Claims in classes presumed to accept the Plan are not entitled to vote and will not receive a Ballot. In addition, holders of Impaired Claims in classes deemed to reject the Plan are not entitled to vote and will not receive a Ballot.

6. If you (i) disagree with the amount set forth by the Debtors for your Claim in the Schedules or (ii) if you have filed a proof of claim and disagree with either (a) the Debtors' objection to your Claim and believe that you should be entitled to vote on the Plan or (b) the Debtors' classification or request for estimation of your Claim and believe that you should be entitled to vote on the Plan in a different amount, then you must file with the Court, and serve on the parties identified in paragraph 8 below, a motion (a "**Rule 3018 Motion**") for an order pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") temporarily allowing your Claim in a different amount for purposes of voting to accept or reject the Plan. All Rule 3018 Motions must be filed on or before **4:00 p.m. (prevailing Eastern Time) on February 12, 2021, or fourteen days after the service of an objection to your Claim** (the "**Rule 3018 Motion Deadline**"). Rule 3018 Motions that are not timely filed and served in the manner set forth above on or before the Rule 3018 Motion Deadline shall not be considered. As to any creditor that timely files a Rule 3018 Motion, that creditor's Ballot will be counted as provided in the Order except as may be otherwise ordered by the Court. Creditors may contact Prime Clerk in writing at (i) BBGI US, Inc. Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, (ii) by telephone at 877-930-4317 (Domestic) or 347-899-4592 (International), or (iii) by email to brooksbrothersballots@PrimeClerk.com (referencing "BBGI US, Inc. Ballots" in the subject line) to receive an appropriate Ballot for any Claim for which a Proof of Claim and Rule 3018 Motion have been timely filed.

7. **Objections to Confirmation.** The deadline to object or respond to confirmation of the Plan is **4:00 p.m. (prevailing Eastern Time) on February 26, 2021** (the "**Plan Objection Deadline**").

8. Objections and responses, if any, to confirmation of the Plan, must: (a) be in writing, (b) comply with the Bankruptcy Rules and the Local Rules, (c) set forth the name of the objector and the nature and amount of any claim or interest asserted by the objector against or in the Debtors, (d) state with particularity the legal and factual bases for the objection and the specific grounds therefor, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection, (e) be filed with the Court, contemporaneously with a proof of service, by no later than the Plan Objection Deadline, and (f) be served in accordance with the Local Rules upon the following parties: (i) *Debtors:* BBGI US, Inc., et al., 100 Phoenix Avenue, Enfield, CT 06082, Attn: Steven Goldaper; (ii) *Office of the U.S. Trustee:* 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Richard L. Schepacarter; (iii) *Counsel to the Debtors:* Weil, Gotshal & Manges LLP, Attn: Garrett A. Fail (garret.fail@weil.com), David J. Cohen (davidj.cohen@weil.com); (iv) *Co-Counsel to the Debtors:* Richards, Layton & Finger, P.A., Attn: Mark D. Collins (collins@rlf.com), Zachary I. Shapiro (shapiro@rlf.com); (v) *Counsel to the Committee:* Akin Gump Strauss Hauer & Feld LLP, Attn: Meredith A. Lahaie (mlahaie@akingump.com), Abid Qureshi (aqureshi@akingump.com), Kate Doorley (kdoorley@akingump.com); and (vi) *Co-Counsel to the Committee:* Troutman Pepper Hamilton Sanders LLP, Attn: David B. Stratton (david.stratton@troutman.com), David M Fournier (david.fournier@troutman.com), Evelyn J. Meltzer (evelyn.meltzer@troutman.com).

9. **IF ANY OBJECTION TO CONFIRMATION OF THE PLAN IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY SHALL BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE CONFIRMATION HEARING.**

10. **Additional Information.** Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement or the Plan should contact the Debtors' voting and tabulation agent, Prime Clerk, in writing: BBGI US, Inc. Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, or by email at brooksbrothersinfo@PrimeClerk.com. Interested parties may also review the Disclosure Statement and the Plan at https://cases.primeclerk.com/brooksbrothers. In addition, the Disclosure Statement, the Plan, the Disclosure Statement Order are on file with the Court and may be reviewed for a fee by accessing the Court's website: www.deb.uscourts.gov. Note that a PACER password and login are needed to access documents on the Court's website. A PACER password can be obtained at: www.pacer.psc.uscourts.gov. Copies of the Disclosure Statement and the Plan may also be examined by interested parties during normal business hours at the office of the Clerk of the Court.

**NOTICE REGARDING CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN THE PLAN**

The Plan includes certain injunction, release, and exculpation provisions.

**Select Defined Terms in the Plan**

*Exculpated Parties* means collectively: (i) the Debtors; (ii) the Estates; (iii) the Creditors' Committee and the members of the Creditors' Committee; and (iv) with respect to each of the foregoing entities in clauses (i) through (iv), such entities' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, Estates, servants and nominees, in each case in their capacity as such; *provided, however,* that Exculpated Parties shall not include any Former D&Os.

*Released Parties* means collectively: (i) the Debtors; (ii) the Creditors' Committee and the members of the Creditors' Committee solely in their capacities as such, and not individually; (iii) the DIP Lender; (iv) the DIP Agent; (v) the ABL Agent; (vi) the ABL Lenders; (vii) the Information Officer; (viii) with respect to any Person or Entity in the foregoing clauses (i) through (vii), such Person or Entity's predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees each solely in its capacity as such; *provided, however,* that the (i) DV Entities, and (ii) Former D&Os and Shareholders shall not be Released Parties; *provided, further* that any holder of a Claim that opts out of the releases set forth in Section 10.5 of the Plan or files with the Bankruptcy Court an objection to the releases set forth Section 10.5 of the Plan by the deadline established to file objections to the Plan shall not be a Released Party.

*Releasing Parties* means collectively, and in each case, in their respective capacities as such: (i) the Released Parties; (ii) all holders of Claims and Interests that are deemed to accept the Plan; (iii) all holders of Claims who vote to accept the Plan; (iv) all holders of Claims that are entitled to vote on the Plan who abstain from voting on the Plan or who vote to reject the Plan, but in either case, do not opt out of granting the releases set forth in Section 10.5 of the Plan; (v) holders of Claims or Interests that are deemed to reject the Plan and do not timely file with the Bankruptcy Court an objection to the releases set forth in Section 10.5 of the Plan by the deadline established to file objections to the Plan; (vi) holders of Administrative Expense Claims and Priority Tax Claims that do not hold Claims or Interests in any Class and do not timely file with the Bankruptcy Court an objection to the releases set forth in Section 10.5 of the Plan by the deadline established to file objections to the Plan, and (vii) with respect to any Person or entity in the foregoing clauses (i) through (vi), such Person or Entities' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

**Select Provisions of the Plan**

**Section 10.4 of the Plan: Releases by the Debtors.** As of the Effective Date, except (i) for the rights that remain in effect from and after the Effective Date to enforce the Plan; and (ii) as otherwise provided in the Plan or in the Confirmation Order, for good and valuable consideration, including their cooperation and contributions to the Chapter 11 Cases, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Debtors and the Estates, in each case, on behalf of themselves and their respective successors (including the Liquidation Trust and the Litigation Trust), assigns, and representatives, and any and all other persons that may purport to assert any Cause of Action derivatively, by, through or on behalf of the foregoing Persons and Entities, from any and all Claims and Causes of Action, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, in whole or in part, the Debtors, the Chapter 11 Cases, the Recognition Proceedings, the pre- and post-petition marketing and sale process, the Sale Transaction, the APA, the DIP Credit Agreement or any related agreements, instruments, and other documents relating thereto, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the Recognition Proceedings, the Disclosure Statement, the Plan (including the Plan Supplement), or the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided,* that nothing herein shall be construed to release any obligation of any party under the Plan, the Sale Transaction, or any document, instrument, or agreement executed to implement the Plan or the Sale Transaction; *provided, further,* that nothing in Section 10.4 of the Plan shall constitute a release of any of the DV Claims or the Former D&O and Shareholder Causes of Action.

**Section 10.5 of the Plan: Releases by Holders of Claims and Interests (the "Third Party Release").** As of the Effective Date, except (i) for the right to enforce the Plan; and (ii) as otherwise expressly provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by the Releasing Parties in each case, from any and all Claims and Causes of Action, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, in law or equity, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such entity would have been legally entitled to assert in their own right (whether individually, derivatively, or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising prior to the Effective Date, from, in whole or in part, the Debtors, the Chapter 11 Cases, the Recognition Proceedings, the pre- and post-petition marketing and sale process, the Sale Transaction, the APA, the DIP Credit Agreement or any related agreements, instruments, and other documents relating thereto, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the Recognition Proceedings, the Disclosure Statement, the Plan (including any Plan Supplement), or the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided,* that nothing herein shall be construed to release any obligation of any party under the Plan, the Sale Transaction, or any document, instrument, or agreement executed to implement the Plan or Sale Transaction. The Releasing Parties shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under Section 10.5 of the Plan against each of the Released Parties.

**Section 10.6 of the Plan: Exculpation.** To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each of the Exculpated Parties are hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any claim arising on or after the Petition Date in connection with or arising out of the filing or administration of the Chapter 11 Cases, the administration of the Recognition Proceedings, the postpetition marketing and sale process, the postpetition purchase, sale, or rescission of the purchase or sale of any security or asset of the Debtors; the negotiation and pursuit of the Disclosure Statement, the APA, the Sale Transaction, the Plan, or the solicitation of votes for, or confirmation of the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the DIP Credit Agreement; the post-Effective Date administration of the Plan or the property to be distributed under the Plan; or the transactions in furtherance of any of the foregoing; except for fraud, gross negligence, or willful misconduct, as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth herein does not release any post-Effective Date obligation or liability of any Entity under the Plan, the Sale Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Sale Transaction.

**Section 10.7 of the Plan: Injunction**

(a) Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan.

(b) Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether or not proof of such Claims or Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Liquidation Trust, and the Litigation Trust, or the property of any of the Debtors, the Liquidation Trust, the Litigation Trust; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, and the Liquidation Trust, and the Litigation Trust, or the property of any of the Debtors, the Liquidation Trust, and the Litigation Trust; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Liquidation Trust, and the Litigation Trust or the property of any of the Debtors, the Liquidation Trust, and the Litigation Trust; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors, the Liquidation Trust, and the Litigation Trust, or against property or interests in property of any of the Debtors, the Liquidation Trust, and the Litigation Trust except as contemplated or allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

(c) By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in Section 10.7 of the Plan.

(d) The injunctions in Section 10.7 of the Plan shall extend to any successors of the Debtors, the Liquidation Trust, and the Litigation Trust and their respective property and interests in property.

**Section 10.8 of the Plan: Waiver of Statutory Limitation on Releases.** EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THE PLAN (INCLUDING UNDER SECTION 10 OF THE PLAN) EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, IT HAS CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542. THE RELEASES CONTAINED IN SECTION 10 OF THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

**Section 10.10 of the Plan: PBGC Release.** As of the Effective Date, to the maximum extent permitted by applicable law, other than the Debtors with respect to the Allowed PBGC Claims, the Released Parties, for good and valuable consideration, shall be deemed to be released and discharged by the PBGC and the Pension Plans from any Causes of Action based on or relating to the Pension Plans; *provided, however,* that nothing in the Plan, the Confirmation Order, or any other document filed in the Debtors' Chapter 11 Cases without notice to the PBGC shall be construed to release (i) non-Debtor members of the controlled group of the Pension Plans' sponsors (within the meaning of Section 4001 of ERISA or Section 414 of the Internal Revenue Code of 1986, as amended) as of the Pension Plan Termination Date from Causes of Action or any other obligations based on or relating to the Pension Plans, or (ii) any fiduciary breaches or prohibited transactions (in each case within the meaning of ERISA or Section 4975 of the Internal Revenue Code of 1986, as amended) relating to the Pension Plans. The Debtors shall use commercially reasonable efforts to provide notice to the PBGC of any pleading filed in the Debtors' Chapter 11 Cases seeking relief that is contradictory to Section 10.10 of the Plan.

**PLEASE BE ADVISED THAT IF:**

A. YOU VOTE TO ACCEPT THE PLAN;
B. YOUR CLAIM IS UNIMPAIRED UNDER THE PLAN;
C. YOU ARE ENTITLED TO VOTE UNDER THE PLAN BUT DO NOT VOTE TO ACCEPT OR TO REJECT THE PLAN, AND DO NOT OPT OUT OF GRANTING THE RELEASES IN SECTION 10.5 OF THE PLAN;
D. YOU VOTE TO REJECT THE PLAN AND DO NOT OPT OUT OF GRANTING THE RELEASES IN SECTION 10.5 OF THE PLAN;
E. YOU ARE DEEMED TO REJECT THE PLAN AND DO NOT FILE AN OBJECTION TO THE RELEASES BY THE PLAN OBJECTION DEADLINE;
F. YOU HOLD AN ADMINISTRATIVE EXPENSE CLAIM OR PRIORITY TAX CLAIM, AND DO NOT HOLD A CLAIM OR INTEREST IN ANY CLASS, AND DO NOT FILE AN OBJECTION TO THE RELEASES BY THE PLAN OBJECTION DEADLINE; OR
G. YOU ARE A RELEASED PARTY

IN EACH CASE, YOU WILL BE DEEMED TO HAVE GRANTED THE RELEASES CONTAINED IN SECTION 10.5 OF THE PLAN.

11. The Plan also contains other related provisions that may affect your rights against the Debtors.

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

Dated: January 27, 2021, Wilmington, Delaware

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: BBGI US, Inc. (f/k/a Brooks Brothers Group, Inc.) (8883); Brooks Brothers Far East Limited (N/A); BBD Holding 1, LLC (N/A); BBD Holding 2, LLC (N/A); BBDI, LLC (N/A); BBGI International, LLC (f/k/a Brooks Brothers International, LLC) (N/A); BBGI Restaurant, LLC (f/k/a Brooks Brothers Restaurant, LLC) (3846); Deconic Group LLC (0969); Golden Fleece Manufacturing Group, LLC (5649); RBA Wholesale, LLC (0986); Retail Brand Alliance Gift Card Services, LLC (1916); Retail Brand Alliance of Puerto Rico, Inc. (2147); 696 White Plains Road, LLC (7265); and BBGI Canada Ltd. (f/k/a Brooks Brothers Canada Ltd.) (4709). The Debtors' corporate headquarters and service address is 100 Phoenix Ave., Enfield, CT 06082.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable.

# Ant Group reaches restructuring deal with regulators

## Plan calls for putting all of fintech giant's businesses into financial holding company, Bloomberg report says

JULIE ZHU
BRENDA GOH

**Ant Group Co.** has agreed to a restructuring plan with Chinese regulators under which the fintech giant will be turned into a financial holding company, Bloomberg News reported, potentially a major step toward easing founder Jack Ma's regulatory woes.

The plan calls for putting all of Ant's businesses into the financial holding company, including its technology offerings in areas such as blockchain and food delivery, according to the report, which cited people familiar with the matter.

An announcement about the restructuring, which will result in the company being subject to capital requirements similar to those for banks, could come before the start of China's Lunar New Year holiday on Feb. 11, the Bloomberg report said.

An agreement on the restructuring of Ant, an affiliate of e-commerce giant Alibaba Group, would ease investor concerns about a regulatory crackdown on Mr. Ma's business empire.

The catalyst for Mr. Ma's current woes was an Oct. 24 speech in which he blasted China's regulatory system, leading to the suspension of Ant's US$37-billion initial public offering just days before its dual-listing in Hong Kong and Shanghai.

> Bloomberg's report said Ant was still exploring opportunities to revive its stock market listing, citing one person familiar with the matter.

Regulators have since launched an antitrust probe into the tech sector with Alibaba taking much of the heat, besides pushing Ant to revamp its business structure to bring it under tighter regulatory supervision.

Mr. Ma, who is not known for shying away from the limelight, subsequently disappeared from the public eye for about three months, triggering frenzied speculation about his whereabouts. He re-emerged last month with a 50-second video appearance.

Despite the agreement with the regulator on revamping Ant, whose businesses include payment processing, consumer lending and insurance products distribution, the antitrust probe into Alibaba would continue to cloud the outlook for Mr. Ma's empire.

Bloomberg's report said Ant was still exploring opportunities to revive its stock market listing, citing one person familiar with the matter. It said it was unclear how long authorities would need to sign off on a listing.

Ant's financial holding structure is expected to weigh on its valuation, as the fintech firm was valued as a technology firm in its previous fundraising rounds. Typically, valuations are much higher on technology firms than on financial companies.

Ant declined to comment on the Bloomberg report. China's central bank did not immediately respond to a faxed request for comment.

Alibaba's Hong Kong-listed shares closed 0.4 per cent higher on Wednesday. They had tumbled early in the session after the company reported third-quarter results and warned it faced a near-term challenge from changing regulations.

It also warned that Ant's business prospects and IPO plans "are subject to substantial uncertainties."

REUTERS

## BAYER REACHES $2-BILLION DEAL OVER FUTURE ROUNDUP CLAIMS

**Bayer AG** struck a US$2-billion deal to resolve future legal claims that its widely used weedkiller Roundup causes cancer, the German company said on Wednesday.

Bayer has been struggling to finalize the settlement of claims that Roundup and other glyphosate-based herbicides cause non-Hodgkin's lymphoma, a type of cancer. Bayer inherited the business and the litigation as part of a US$63-billion acquisition of Monsanto in 2018.

The company has said that decades of studies have shown Roundup and glyphosate are safe for human use. Wednesday's settlement would cover future claims brought by individuals who have been diagnosed with non-Hodgkin's lymphoma and were exposed to Roundup before their diagnosis. The settlement also includes benefits for people who were exposed to Roundup and develop the cancer in the future.

Roundup, which Monsanto first brought to the market in 1974, is widely used by farmers across the United States and Brazil, alongside crops that are genetically engineered to withstand its herbicidal effect. Glyphosate will remain on the market.

Under the proposed plan, Bayer will provide US$2-billion for a four-year period as compensation and to cover outreach and diagnostic assistance. Future claimants could receive up to US$200,000 under the deal. The parties can agree to extend the settlement period.

The agreement must be approved by U.S. District Court Judge Vince Chhabria in San Francisco. Justice Chhabria in June questioned the legality of a prior settlement plan that Bayer proposed, which envisioned creating a panel of scientists who would rule on the viability of claims.

Under the revised deal, anyone who does not make a claim during the four-year period would then be able to sue in court, according to Elizabeth Cabraser, a lawyer for the proposed class. REUTERS

## LEGALS

**UNITED STATES BANKRUPTCY COURT, DISTRICT OF DELAWARE**

| | |
|---|---|
| **In re** | **Chapter 11, Case No. 20-11785 (CSS)** |
| **BBGI US, INC., *et al.*,** | **(Jointly Administered)** |
| **Debtors.[1]** | **Re: D.I. 918, 919 & 954** |

**NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT, (II) ESTABLISHMENT OF RECORD DATE, (III) HEARING ON CONFIRMATION OF THE PLAN, (IV) PROCEDURES FOR OBJECTING TO THE CONFIRMATION OF THE PLAN, AND (V) PROCEDURES AND DEADLINE FOR VOTING ON THE PLAN**

**TO ALL PARTIES IN INTEREST PLEASE TAKE NOTICE THAT:**

1. Approval of Disclosure Statement. On January 26, 2021, the United States Bankruptcy Court for the District of Delaware (the "**Court**") held a hearing (the "**Disclosure Statement Hearing**") regarding approval of the *Disclosure Statement for Amended Joint Chapter 11 Plan of Liquidation for BBGI US, Inc. and Its Affiliated Debtors*, filed on January 22, 2021 [D.I. 919] (as may be amended, modified, or supplemented, the "**Disclosure Statement**") in the chapter 11 cases of BBGI US, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"). After the hearing, the Court entered an order [D.I. 954] (the "**Disclosure Statement Order**") approving the Disclosure Statement. The Disclosure Statement Order also authorizes the Debtors to solicit votes to accept or reject the *Amended Joint Chapter 11 Plan of Liquidation for BBGI US, Inc. and Its Affiliated Debtors*, filed on January 22, 2021 [D.I. 918] (as may be amended, modified, or supplemented in accordance with the terms therein, the "**Plan**").[2]

2. Confirmation Hearing. A hearing to consider confirmation of the Plan (the "**Confirmation Hearing**") has been scheduled before the Honorable Christopher S. Sontchi, United States Bankruptcy Judge, at the Court, 824 North Market Street, 5th Floor, Courtroom 6, Wilmington, Delaware 19801, on **March 5, 2021 at 1:00 p.m. (prevailing Eastern Time)**. The Confirmation Hearing may be held virtually or adjourned or continued from time to time by the Court or the Debtors without further notice other than as announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Court. The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing.

3. Record Date. The holders of Claims against the Debtors as of **January 19, 2021** (the "**Record Date**") in Class 3 (PBGC Claims) and Class 4 (General Unsecured Claims) of the Plan are entitled to vote on the Plan:

4. Voting Deadline. All votes to accept or reject the Plan must be **actually received** by the Debtors' voting and tabulation agent, Prime Clerk LLC ("**Prime Clerk**"), by no later than **5:00 p.m. (prevailing Eastern Time) on February 26, 2021** (the "**Voting Deadline**"). Any failure to follow the voting instructions included with your Ballot may disqualify your Ballot and your vote.

5. Parties in Interest Not Entitled to Vote. Holders of Unimpaired Claims in classes presumed to accept the Plan are not entitled to vote and will not receive a Ballot. In addition, holders of Impaired Claims in classes deemed to reject the Plan are not entitled to vote and will not receive a Ballot.

6. If you (i) disagree with the amount set forth by the Debtors for your Claim in the Schedules or (ii) if you have filed a proof of claim and disagree with either (a) the Debtors' objection to your Claim and believe that you should be entitled to vote on the Plan or (b) the Debtors' classification or request for estimation of your Claim and believe that you should be entitled to vote on the Plan in a different amount, then you must file with the Court, and serve on the parties identified in paragraph 8 below, a motion (a "**Rule 3018 Motion**") for an order pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") temporarily allowing your Claim in a different amount for purposes of voting to accept or reject the Plan. All Rule 3018 Motions must be filed on or before **4:00 p.m. (prevailing Eastern Time) on February 12, 2021, or fourteen days after the service of an objection to your Claim** (the "**Rule 3018 Motion Deadline**"). Rule 3018 Motions that are not timely filed and served in the manner set forth above on or before the Rule 3018 Motion Deadline shall not be considered. As to any creditor that timely files a Rule 3018 Motion, that creditor's Ballot will be counted as provided in the Order except as may be otherwise ordered by the Court. Creditors may contact Prime Clerk in writing at (i) BBGI US, Inc. Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, (ii) by telephone at 877-930-4317 (Domestic) or 347-899-4592 (International), or (iii) by email to brooksbrothersballots@PrimeClerk.com (referencing "BBGI US, Inc. Ballots" in the subject line) to receive an appropriate Ballot for any Claim for which a Proof of Claim and Rule 3018 Motion have been timely filed.

7. Objections to Confirmation. The deadline to object or respond to confirmation of the Plan is **4:00 p.m. (prevailing Eastern Time) on February 26, 2021** (the "**Plan Objection Deadline**").

8. Objections and responses, if any, to confirmation of the Plan, must: (a) be in writing, (b) comply with the Bankruptcy Rules and the Local Rules, (c) set forth the name of the objector and the nature and amount of any claim or interest asserted by the objector against or in the Debtors, (d) state with particularity the legal and factual bases for the objection and the specific grounds therefor, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection, (e) be filed with the Court, contemporaneously with a proof of service, by no later than the Plan Objection Deadline, and (f) be served in accordance with the Local Rules upon the following parties: (i) ***Debtors:*** BBGI US, Inc., *et al.*, 100 Phoenix Avenue, Enfield, CT 06082, Attn: Steven Goldaper; (ii) ***Office of the U.S. Trustee:*** 844 King Street, Suite 2207, Wilmington, DE 19801, Attn: Richard L. Schepacarter; (iii) ***Counsel to the Debtors:*** Weil, Gotshal & Manges LLP, Attn: Garrett A. Fail (garret.fail@weil.com), David J. Cohen (davidj.cohen@weil.com); (iv) ***Co-Counsel to the Debtors:*** Richards, Layton & Finger, P.A., Attn: Mark D. Collins (collins@rlf.com), Zachary I. Shapiro (shapiro@rlf.com); (v) ***Counsel to the Committee:*** Akin Gump Strauss Hauer & Feld LLP, Attn: Meredith A. Lahaie (mlahaie@akingump.com), Abid Qureshi (aqureshi@akingump.com), Kate Doorley (kdoorley@akingump.com); and (vi) ***Co-Counsel to the Committee:*** Troutman Pepper Hamilton Sanders LLP, Attn: David B. Stratton (david.stratton@troutman.com), David M Fournier (david.fournier@troutman.com), Evelyn J. Meltzer (evelyn.meltzer@troutman.com).

9. **IF ANY OBJECTION TO CONFIRMATION OF THE PLAN IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY SHALL BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN AND MAY NOT BE HEARD AT THE CONFIRMATION HEARING.**

10. Additional Information. Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement or the Plan should contact the Debtors' voting and tabulation agent, Prime Clerk, in writing: BBGI US, Inc. Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, or by email at brooksbrothersinfo@PrimeClerk.com. Interested parties may also review the Disclosure Statement and the Plan at https://cases.primeclerk.com/brooksbrothers. In addition, the Disclosure Statement, the Plan, the Disclosure Statement Order are on file with the Court and may be reviewed for a fee by accessing the Court's website: www.deb.uscourts.gov. Note that a PACER password and login are needed to access documents on the Court's website. A PACER password can be obtained at: www.pacer.psc.uscourts.gov. Copies of the Disclosure Statement and the Plan may also be examined by interested parties during normal business hours at the office of the Clerk of the Court.

**NOTICE REGARDING CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN THE PLAN**

**The Plan includes certain injunction, release, and exculpation provisions.**

**Select Defined Terms in the Plan**

***Exculpated Parties*** means collectively: (i) the Debtors; (ii) the Estates; (iii) the Creditors' Committee and the members of the Creditors' Committee; and (iv) with respect to each of the foregoing entities in clauses (i) through (iv), such entities' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, Estates, servants and nominees, in each case in their capacity as such; *provided, however,* that Exculpated Parties shall not include any Former D&Os.

***Released Parties*** means collectively: (i) the Debtors; (ii) the Creditors' Committee and the members of the Creditors' Committee solely in their capacities as such, and not individually; (iii) the DIP Lender; (iv) the DIP Agent; (v) the ABL Agent; (vi) the ABL Lenders; (vii) the Information Officer; (viii) with respect to any Person or Entity in the foregoing clauses (i) through (vii), such Person or Entity's predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees each solely in its capacity as such; *provided*, *however*, that the (i) DV Entities, and (ii) Former D&Os and Shareholders shall not be Released Parties; *provided, further* that any holder of a Claim that opts out of the releases set forth in Section 10.5 of the Plan or files with the Bankruptcy Court an objection to the releases set forth Section 10.5 of the Plan by the deadline established to file objections to the Plan shall not be a Released Party.

***Releasing Parties*** means collectively, and in each case, in their respective capacities as such: (i) the Released Parties; (ii) all holders of Claims and Interests that are deemed to accept the Plan; (iii) all holders of Claims who vote to accept the Plan; (iv) all holders of Claims that are entitled to vote on the Plan who abstain from voting on the Plan or who vote to reject the Plan, but in either case, do not opt out of granting the releases set forth in Section 10.5 of the Plan; (v) holders of Claims or Interests that are deemed to reject the Plan and do not timely file with the Bankruptcy Court an objection to the releases set forth in Section 10.5 of the Plan by the deadline established to file objections to the Plan; (vi) holders of Administrative Expense Claims and Priority Tax Claims that do not hold Claims or Interests in any Class and do not timely file with the Bankruptcy Court an objection to the releases set forth in Section 10.5 of the Plan by the deadline established to file objections to the Plan, and (vii) with respect to any Person or entity in the foregoing clauses (i) through (vi), such Person or Entities' predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees, in their respective capacities as such.

**Select Provisions of the Plan**

**Section 10.4 of the Plan: Releases by the Debtors. As of the Effective Date, except (i) for the rights that remain in effect from and after the Effective Date to enforce the Plan; and (ii) as otherwise provided in the Plan or in the Confirmation Order, for good and valuable consideration, including their cooperation and contributions to the Chapter 11 Cases, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Debtors and the Estates, in each case, on behalf of themselves and their respective successors (including the Liquidation Trust and the Litigation Trust), assigns, and representatives, and any and all other persons that may purport to assert any Cause of Action derivatively, by, through or on behalf of the foregoing Persons and Entities, from any and all Claims and Causes of Action, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, in whole or in part, the Debtors, the Chapter 11 Cases, the Recognition Proceedings, the pre- and post-petition marketing and sale process, the Sale Transaction, the APA, the DIP Credit Agreement or any related agreements, instruments, and other documents relating thereto, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the Recognition Proceedings, the Disclosure Statement, the Plan (including the Plan Supplement), or the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided*, that nothing herein shall be construed to release any obligation of any party under the Plan, the Sale Transaction, or any document, instrument, or agreement executed to implement the Plan or the Sale Transaction; *provided, further*, that nothing in Section 10.4 of the Plan shall constitute a release of any of the DV Claims or the Former D&O and Shareholder Causes of Action.**

**Section 10.5 of the Plan: Releases by Holders of Claims and Interests (the "Third Party Release"). As of the Effective Date, except (i) for the right to enforce the Plan; and (ii) as otherwise expressly provided in the Plan or in the Confirmation Order, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably and forever, released, and discharged by the Releasing Parties in each case, from any and all Claims and Causes of Action, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, in law or equity, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such entity would have been legally entitled to assert in their own right (whether individually, derivatively, or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising prior to the Effective Date, from, in whole or in part, the Debtors, the Chapter 11 Cases, the Recognition Proceedings, the pre-and post-petition marketing and sale process, the Sale Transaction, the APA, the DIP Credit Agreement or any related agreements, instruments, and other documents relating thereto, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the Recognition Proceedings, the Disclosure Statement, the Plan (including any Plan Supplement), or the solicitation of votes with respect to the Plan, or any other act or omission, in all cases based upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; *provided*, that nothing herein shall be construed to release any obligation of any party under the Plan, the Sale Transaction, or any document, instrument, or agreement executed to implement the Plan or Sale Transaction. The Releasing Parties shall be permanently enjoined from prosecuting any of the foregoing Claims or Causes of Action released under Section 10.5 of the Plan against each of the Released Parties.**

**Section 10.6 of the Plan: Exculpation.** To the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each of the Exculpated Parties are hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any claim arising on or after the Petition Date in connection with or arising out of the filing or administration of the Chapter 11 Cases, the administration of the Recognition Proceedings, the postpetition marketing and sale process, the postpetition purchase, sale, or rescission of the purchase or sale of any security or asset of the Debtors; the negotiation and pursuit of the Disclosure Statement, the APA, the Sale Transaction, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the occurrence of the Effective Date; the DIP Credit Agreement; the post-Effective Date administration of the Plan or the property to be distributed under the Plan; or the transactions in furtherance of any of the foregoing; except for fraud, gross negligence, or willful misconduct, as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth herein does not release any post-Effective Date obligation or liability of any Entity under the Plan, the Sale Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Sale Transaction.

**Section 10.7 of the Plan: Injunction**

**(a) Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan in relation to any Claim extinguished, discharged, or released pursuant to the Plan.**

**(b) Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether or not proof of such Claims or Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are permanently enjoined, on and after the Effective Date, solely with respect to any Claims, Interests, and Causes of Action that will be or are extinguished, discharged, or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Liquidation Trust, and the Litigation Trust, or the property of any of the Debtors, the Liquidation Trust, the Litigation Trust; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors, and the Liquidation Trust; or the property of any of the Debtors, the Liquidation Trust, and the Litigation Trust; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Liquidation Trust, and the Litigation Trust or the property of any of the Debtors, the Liquidation Trust, and the Litigation Trust; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors, the Liquidation Trust, and the Litigation Trust, or against property or interests in property of any of the Debtors, the Liquidation Trust, and the Litigation Trust except as contemplated or allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

**(c) By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in Section 10.7 of the Plan.**

**(d) The injunctions in Section 10.7 of the Plan shall extend to any successors of the Debtors, the Liquidation Trust, and the Litigation Trust and their respective property and interests in property.**

**Section 10.8 of the Plan: Waiver of Statutory Limitation on Releases.** EACH RELEASING PARTY IN EACH OF THE RELEASES CONTAINED IN THE PLAN (INCLUDING UNDER SECTION 10 OF THE PLAN) EXPRESSLY ACKNOWLEDGES THAT ALTHOUGH ORDINARILY A GENERAL RELEASE MAY NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE PARTY RELEASED, IT HAS CAREFULLY CONSIDERED AND TAKEN INTO ACCOUNT IN DETERMINING TO ENTER INTO THE ABOVE RELEASES THE POSSIBLE EXISTENCE OF SUCH UNKNOWN LOSSES OR CLAIMS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EACH RELEASING PARTY EXPRESSLY WAIVES ANY AND ALL RIGHTS CONFERRED UPON IT BY ANY STATUTE OR RULE OF LAW WHICH PROVIDES THAT A RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CLAIMANT DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY IT MAY HAVE MATERIALLY AFFECTED ITS SETTLEMENT WITH THE RELEASED PARTY, INCLUDING THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542. THE RELEASES CONTAINED IN SECTION 10 OF THE PLAN ARE EFFECTIVE REGARDLESS OF WHETHER THOSE RELEASED MATTERS ARE PRESENTLY KNOWN, UNKNOWN, SUSPECTED OR UNSUSPECTED, FORESEEN OR UNFORESEEN.

**Section 10.10 of the Plan: PBGC Release. As of the Effective Date, to the maximum extent permitted by applicable law, other than the Debtors with respect to the Allowed PBGC Claims, the Released Parties, for good and valuable consideration, shall be deemed to be released and discharged by the PBGC and the Pension Plans from any Causes of Action based on or relating to the Pension Plans; provided, however, that nothing in the Plan, the Confirmation Order, or any other document filed in the Debtors' Chapter 11 Cases without notice to the PBGC shall be construed to release (i) non-Debtor members of the controlled group of the Pension Plans' sponsors (within the meaning of Section 4001 of ERISA or Section 414 of the Internal Revenue Code of 1986, as amended) as of the Pension Plan Termination Date from Causes of Action or any other obligations based on or relating to the Pension Plans, or (ii) any fiduciary breaches or prohibited transactions (in each case within the meaning of ERISA or Section 4975 of the Internal Revenue Code of 1986, as amended) relating to the Pension Plans. The Debtors shall use commercially reasonable efforts to provide notice to the PBGC of any pleading filed in the Debtors' Chapter 11 Cases seeking relief that is contradictory to Section 10.10 of the Plan.**

**PLEASE BE ADVISED THAT IF:**

**A. YOU VOTE TO ACCEPT THE PLAN;**

**B. YOUR CLAIM IS UNIMPAIRED UNDER THE PLAN;**

**C. YOU ARE ENTITLED TO VOTE UNDER THE PLAN BUT DO NOT VOTE TO ACCEPT OR TO REJECT THE PLAN, AND DO NOT OPT OUT OF GRANTING THE RELEASES IN SECTION 10.5 OF THE PLAN;**

**D. YOU VOTE TO REJECT THE PLAN AND DO NOT OPT OUT OF GRANTING THE RELEASES IN SECTION 10.5 OF THE PLAN;**

**E. YOU ARE DEEMED TO REJECT THE PLAN AND DO NOT FILE AN OBJECTION TO THE RELEASES BY THE PLAN OBJECTION DEADLINE;**

**F. YOU HOLD AN ADMINISTRATIVE EXPENSE CLAIM OR PRIORITY TAX CLAIM, AND DO NOT HOLD A CLAIM OR INTEREST IN ANY CLASS, AND DO NOT FILE AN OBJECTION TO THE RELEASES BY THE PLAN OBJECTION DEADLINE; OR**

**G. YOU ARE A RELEASED PARTY**

**IN EACH CASE, YOU WILL BE DEEMED TO HAVE GRANTED THE RELEASES CONTAINED IN SECTION 10.5 OF THE PLAN.**

11. The Plan also contains other related provisions that may affect your rights against the Debtors.

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

Dated: January 27, 2021, Wilmington, Delaware

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are BBGI US, Inc. (f/k/a Brooks Brothers Group, Inc.) (8883); Brooks Brothers Far East Limited (N/A); BBD Holding 1, LLC (N/A); BBD Holding 2, LLC (N/A); BBDI, LLC (N/A); BBGI International, LLC (f/k/a Brooks Brothers International, LLC) (N/A); BBGI Restaurant, LLC (f/k/a Brooks Brothers Restaurant, LLC) (3846); Deconic Group LLC (0969); Golden Fleece Manufacturing Group, LLC (5649); RBA Wholesale, LLC (0986); Retail Brand Alliance Gift Card Services, LLC (1916); Retail Brand Alliance of Puerto Rico, Inc. (2147); 696 White Plains Road, LLC (7265); and BBGI Canada Ltd. (f/k/a Brooks Brothers Canada Ltd.) (4709). The Debtors' corporate headquarters and service address is 100 Phoenix Ave., Enfield, CT 06082.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable.

Court File No. CV-21-656040-00CL

**IN THE ONTARIO SUPERIOR COURT OF JUSTICE (COMMERCIAL LIST)
IN THE MATTER OF *THE COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C.1985, c. C-36, AS AMENDED (the "CCAA") AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF LAURENTIAN UNIVERSITY OF SUDBURY (herein referred to as the "Applicant" or "Laurentian University")**

**PLEASE TAKE NOTICE** that on February 1, 2021, the Applicant commenced court-supervised restructuring proceedings (the "**CCAA Proceedings**") under the CCAA. Ernst & Young Inc. was appointed as monitor of the Applicant ("**Monitor**") pursuant to the Order of the Ontario Superior Court of Justice (Commercial List) (the "**Court**") dated February 1, 2021 (the "**Initial Order**").

Copies of the Initial Order and other related documents in connection with these CCAA proceedings have been posted on the Monitor's website at: www.ey.com/ca/Laurentian.

The Initial Order grants, among other things, a stay of proceedings up to and including February 11, 2021 (the "**Stay Period**") which Stay Period may be extended by further order of the Court from time-to-time.

During the Stay Period, all persons are prohibited from commencing or continuing any legal proceedings against or in respect of Laurentian University, and all rights and remedies of all persons against or in respect of Laurentian University, its assets, business or current officers and directors are stayed and suspended, except with the written consent of the Applicant and the Monitor or with leave of the Court.

Except as permitted in the Initial Order, the Initial Order directs Laurentian University to make no payments of principal, interest or otherwise on account of amounts owing by the Applicant to its creditors as of February 1, 2021.

No claims procedure has yet been submitted to or approved by the Court and creditors are therefore not required to file proofs of claim at this time.

All parties requiring further information should refer to Laurentian University's website available at https://Laurentianu.info. This website includes information for students, faculty and employees and other stakeholders.

The Monitor's contact details for information specific to the CCAA Proceedings and not found on the Monitor's website are:

**Ernst & Young Inc. - The Court Appointed Monitor of Laurentian University of Sudbury**
100 Adelaide Street West, P.O. Box 1
Toronto, ON, M5H 0B3
Canada
Telephone: 1-888-338-1766 / 1-416-943-3057
Email: LaurentianUniversity.monitor@ca.ey.com

EY

© 2021 Ernst & Young Inc. All rights reserved.

Numéro de dossier : CV-21-656040-00CL

**COUR SUPÉRIEURE DE JUSTICE DE L'ONTARIO (RÔLE COMMERCIAL)
DANS L'AFFAIRE DE LA *LOI SUR LES ARRANGEMENTS AVEC LES CRÉANCIERS DES COMPAGNIES*, L.R.C. (1985), ch. C-36, DANS SA VERSION MODIFIÉE (la « LACC ») ET DANS L'AFFAIRE D'UN PLAN DE TRANSACTION OU D'ARRANGEMENT DE L'UNIVERSITÉ LAURENTIENNE DE SUDBURY (ci-après désignée la « Demanderesse » ou l'« Université Laurentienne »)**

**AVIS EST PAR LA PRÉSENTE DONNÉ** que le 1er février 2021, la Demanderesse a amorcé une procédure de restructuration sous supervision judiciaire en vertu de la LACC (la « **Procédure en vertu de la LACC** »). Ernst & Young Inc. a été nommée contrôleur de la Demanderesse (le « **Contrôleur** ») aux termes de l'ordonnance prononcée par la Cour supérieure de justice de l'Ontario (rôle commercial) (le « **Tribunal** ») le 1er février 2021 (l'« **Ordonnance Initiale** »).

Une copie de l'Ordonnance Initiale et des autres documents relatifs à ladite Procédure en vertu de la LACC est publiée sur le site Web du Contrôleur à l'adresse www.ey.com/ca/Laurentian.

L'Ordonnance Initiale accorde notamment une suspension des procédures jusqu'au 11 février 2021 inclusivement (la « **Période de suspension** »), la Période de suspension pouvant être prorogée sur ordonnance ultérieure du Tribunal.

Au cours de la Période de suspension, personne n'a le droit d'intenter ou de continuer une procédure judiciaire contre l'Université Laurentienne ou à son égard, et l'ensemble des droits et recours de toute personne à l'égard de l'Université Laurentienne, de ses actifs, de son entreprise ou de ses dirigeants et administrateurs sont suspendus, sauf sur autorisation écrite de la Demanderesse et du Contrôleur ou sur permission du Tribunal.

Sauf de la manière permise dans l'Ordonnance Initiale, celle-ci interdit à l'Université Laurentienne d'effectuer quelque paiement que ce soit au titre du capital, des intérêts ou à quelque autre titre relativement aux sommes dues à ses créanciers en date du 1er février 2021.

Aucune procédure de réclamation n'ayant encore été soumise au Tribunal ni approuvée par ce dernier, les créanciers ne sont pas tenus de déposer de preuves de réclamation pour le moment.

Pour en savoir davantage, les parties devraient consulter le site Web de l'Université Laurentienne à l'adresse https://Ulaurentienne.info, où se trouvent des renseignements à l'intention des étudiants, du corps professoral, des employés et des autres parties prenantes.

Voici les coordonnées du Contrôleur pour obtenir des renseignements concernant la Procédure en vertu de la LACC qui ne sont pas publiés sur son site Web :

**Ernst & Young Inc. - Contrôleur nommé par le Tribunal de l'Université Laurentienne de Sudbury**
100 Adelaide Street West, P.O. Box 1
Toronto, ON, M5H 0B3
Canada
Téléphone : 1 888 338 1766 / 1 416 943 3057
Courriel : LaurentianUniversity.monitor@ca.ey.com

EY

© 2021 Ernst & Young Inc. Tous droits réservés.