# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------- x

In re : Chapter 11

BBGI US, INC., *et al.*, : Case No. 20–11785 (CSS)

Debtors.[1] : (Jointly Administered)

-------------------------------------------------------- x   Re: D.I. 957

## ORDER CONFIRMING AMENDED JOINT CHAPTER 11 PLAN
## OF LIQUIDATION FOR BBGI US, INC. AND ITS AFFILIATED DEBTORS

Upon the filing by BBGI US, Inc. (f/k/a Brooks Brothers Group, Inc.) and its affiliated debtors, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**")[2] of the *Amended Joint Chapter 11 Plan of Liquidation for BBGI US, Inc. and Its Affiliated Debtors* [D.I. 957] (as amended or modified in accordance with its terms, the "**Plan**") which is attached hereto as **Exhibit A**; and the Court previously having approved the Disclosure Statement and the solicitation procedures related to the Disclosure Statement and the solicitation of acceptances and rejections of the Plan, in each case pursuant to the Disclosure Statement Order; and the Debtors having served the Disclosure Statement on the holders of Claims and Interests pursuant to the *Order (I) Approving Disclosure Statement and Form and Manner of*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are BBGI US, Inc. (f/k/a Brooks Brothers Group, Inc.) (8883); Brooks Brothers Far East Limited (N/A); BBD Holding 1, LLC (N/A); BBD Holding 2, LLC (N/A); BBDI, LLC (N/A), BBGI International, LLC (f/k/a Brooks Brothers International, LLC) (N/A); BBGI Restaurant, LLC (f/k/a Brooks Brothers Restaurant, LLC) (3846); Deconic Group LLC (0969); Golden Fleece Manufacturing Group, LLC (5649); RBA Wholesale, LLC (0986); Retail Brand Alliance Gift Card Services, LLC (1916); Retail Brand Alliance of Puerto Rico, Inc. (2147); 696 White Plains Road, LLC (7265); and BBGI Canada Ltd. (f/k/a Brooks Brothers Canada Ltd.) (4709). The Debtors' corporate headquarters and service address is 100 Phoenix Ave., Enfield, CT 06082.

[2] Capitalized terms used in this Confirmation Order but not otherwise defined shall have the same meaning as in the Plan, unless the context otherwise requires.

*Notice of Disclosure Statement Hearing, (II) Establishing Solicitation, Voting, and Related Procedures, (III) Scheduling Confirmation Hearing, (IV) Establishing Notice and Objection Procedures for Confirmation of Plan, and (V) Granting Related Relief* [D.I. 954] (the "**Disclosure Statement Order**"), *see Affidavit of Service of Solicitation Materials* [D.I. 1005] (the "**Solicitation Affidavit**"); and the Debtors having filed the documents comprising the Plan Supplement on February 19, 2021 and March 3, 2021 [D.I. 1046 and 1086] (collectively, and as may be further amended or supplemented, the "**Plan Supplement**"); and the Court having considered the *Declaration of Adrian Frankum in Support of Confirmation of Amended Joint Chapter 11 Plan of Liquidation For BBGI US, Inc. and Its Affiliated Debtors*; and the Court having considered the record in these chapter 11 cases, the stakeholder support for the Plan evidenced on the record and in the *Declaration of Craig E. Johnson of Prime Clerk, LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Amended Joint Chapter 11 Plan of Liquidation for BBGI US, Inc. and Its Affiliated Debtors*, filed on March 3, 2021 [D.I. 1085] (the "**Voting Certification**"), the compromises and settlements embodied in and contemplated by the Plan, the briefs and arguments regarding confirmation of the Plan, the evidence regarding confirmation of the Plan, and the hearing on confirmation of the Plan having been held on March 5, 2021 (the "**Confirmation Hearing**"); and after due deliberation:

### THE COURT HEREBY FINDS:

I.      The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2

II.      The Debtors are eligible debtors under section 109 of the Bankruptcy Code, and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to entry of a final order by the Court in accordance with the terms set forth herein to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

III.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto.

IV.      Each of the Debtors has met the burden of proving that the Plan satisfies the elements of 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

V.      The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.  As is evidenced by the Solicitation Affidavit, the transmittal and service of the Plan, the Disclosure Statement, and the Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law and such parties have had an opportunity to appear and be heard with respect thereto.  No other further notice is required.

VI.     The Plan has been proposed in good faith and not by any means forbidden by law.  In so finding, the Court has considered the totality of the circumstances of these cases, and found that all constituencies acted in good faith.  The Plan is the result of extensive, good faith, arm's length negotiations among the Debtors and their principal constituencies.

VII.    Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.

VIII.   The Plan does not "discriminate unfairly" and is "fair and equitable" with respect to the Classes that are impaired and are deemed to reject the Plan, because no Class senior to any rejecting Class is being paid more than in full and the Plan does not provide a recovery on account of any Claim or Interest that is junior to such rejecting Classes.

IX.     The releases contained in Section 10 of the Plan are an essential component of the Plan.  In addition, the third-party release contained therein is consensual in that all parties to be bound by such release were given due and adequate notice thereof and sufficient opportunity and instruction to elect to opt out of such release.   In addition, the releases contained in Section 10.4 of the Plan are: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by such section; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; and (e) given and made after due notice and opportunity for hearing.

X.      The exculpation provided by Section 10.6 of the Plan for the benefit of the Exculpated Parties is appropriately tailored to the circumstances of these cases.

XI.     The Plan does not discriminate unfairly among the different classes of creditors and equity security holders and does not offend the fair and equitable standard of the

4

Bankruptcy Code because grounds and justifications exist for treating the classes differently in these cases.

**FURTHER, IT IS HEREBY ORDERED THAT:**

**A.      Confirmation of the Plan**

1.      The Plan is confirmed and approved in all respects.

2.      Any and all objections to the Plan that have not been withdrawn or resolved prior to the Confirmation Hearing are hereby overruled.

3.      The documents contained in the Plan Supplement are integral to the Plan and are approved by the Court and the Debtors, the Liquidation Trustee, and the Litigation Trustee are authorized to take all actions required under the Plan and the Plan Supplement to effectuate the Plan and the transactions contemplated therein.

4.      The terms of the Plan, including the Plan Supplement and the exhibits thereto are incorporated herein by reference and are an integral part of this Confirmation Order. The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents executed or to be executed in connection with the transactions contemplated by the Plan shall be effective and binding as of the Effective Date.  Subject to the terms of the Plan, including the consent rights incorporated therein, the Debtors reserve the right to alter, amend, update or modify the Plan Supplement before the Effective Date.  The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Confirmation Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

5.      This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be

RLF1 24886597V.1

necessary or appropriate for the implementation or consummation of the Plan.  Pursuant to the applicable provisions of the General Corporation Law of the State of Delaware, other applicable non-bankruptcy law, and section 1142(b) of the Bankruptcy Code, no action of the respective directors or stockholders of the Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with implementation of the Plan.

6.      Each federal, state, commonwealth, local, foreign or other governmental agency is authorized to accept for filing and/or recording any and all documents, mortgages and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

7.      On or after the Effective Date, at the Liquidation Trustee's direction: any of the Debtor Affiliates may be merged into BB Parent and the Liquidation Trustee may complete the winding up of such Debtor Affiliates without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or its shareholders or any payments to be made in connection therewith (including the payment of any franchise taxes), other than the filing of a certificate of dissolution, cancellation, and/or merger with the appropriate governmental authorities, and any such certificate of dissolution, cancellation, and/or merger may be filed by the Liquidation Trustee without need for any authorization, signature or other act of any Person or Entity, including without limitation any holder of any Claim or Interest. On or after the Effective Date, as determined by the Liquidation Trustee, BB Canada shall be dissolved in accordance with the Confirmation Recognition Order and applicable Canadian Law.  After the Effective Date, the Liquidation Trustee or his designee is authorized to and shall, subject to applicable non-bankruptcy

RLF1 24886597V.1

law and consistent with the implementation of this Plan, dissolve, liquidate, or take such other similar action with respect BB Parent and complete the winding up of BB Parent as expeditiously as practicable without the necessity for any other or further actions to be taken by or on behalf of BB parent or its shareholders or members, as applicable, or any payments to be made in connection therewith (including the payment of any franchise taxes), other than the filing of a certificate of dissolution with the appropriate governmental authorities.

8.     The PBGC Settlement satisfies the requirements of Bankruptcy Rule 9019 and is approved.  The compromises and settlements set forth in the Plan, as reflected in the relative distributions and recoveries of holders of Claims under the Plan, are approved pursuant to Bankruptcy Rule 9019(a), including with respect to the PBGC Settlement, and will be effective immediately and binding on all parties in interest on the Effective Date.

9.     For the avoidance of doubt, pursuant to Bankruptcy Rule 3020(c)(1), the following provisions in the Plan are hereby approved and will be effective immediately on the Effective Date without further order or action by the Court, any of the parties to such release, or any other Entity: (a) Releases by the Debtors (Section 10.4); (b) Third-Party Releases (Section 10.5); (c) PBGC Release (Section 10.10); (d) Exculpation (Section 10.6); and (e) Injunction (Section 10.7).

10.     The Court finds that entry into the Liquidation Trust Agreement and the Litigation Trust Agreement (substantially in the forms included in the Plan Supplement) is a reasonable exercise of the Debtors' business judgment.  The entry by the Debtors into the Liquidation Trust Agreement and the Litigation Trust Agreement is approved and shall not be in conflict with any federal or state law.  Further, the following appointments are approved: (i) Adrian Frankum as Liquidation Trustee; (ii) Delaware Trust Company as Delaware resident trustee of the

Liquidation Trust; (iii) William T. Reid, IV, PPLC, as Litigation Trustee; and (iv) 39-15 Skillman Realty Co. LLC., Workers United, Trajes Mexicanos S.A. de C.V., Swiss Garments Company, and the Pension Benefits Guaranty Corporation, as members of the Litigation Trust Oversight Board.  The Debtors, the Liquidation Trustee, the Delaware resident trustee, and/or the Litigation Trustee, as applicable, are hereby authorized to take all actions, on or prior to the Effective Date, as may be necessary or appropriate to form the Liquidation Trust and/or Litigation Trust consistent with the terms of the Plan and the respective trust agreement.

11.     Except as otherwise may be set forth in the Plan or the Confirmation Order, on the Effective Date, (i) the Liquidation Trust Assets shall vest in the Liquidation Trust free and clear of any claim, Lien, encumbrance or other interest and (ii) the Litigation Trust Assets shall vest in the Litigation Trust free and clear of any claim, Lien, encumbrance or other interest.

12.     Pursuant to section 1146 of the Bankruptcy Code, (i) the issuance, transfer or exchange of any securities, instruments or documents, (ii) the creation of any lien, mortgage, deed of trust or other security interest, (iii) any sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Confirmation Date through and including the Effective Date of the Plan, including any transfers effectuated pursuant to the Plan, (iv) any assumption, assignment, or sale by the Debtors of their interests in unexpired leases of nonresidential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, and (v) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including this Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory

filing or recording fee, sales tax, use tax or other similar tax or governmental assessment. Consistent with the foregoing, each recording officer for any county, city or Governmental Unit in which any instrument hereunder is to be recorded is authorized, pursuant to this Confirmation Order, to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

13.      In furtherance of the transfer of the Liquidation Trust Assets to the Liquidation Trust on the Effective Date, the Liquidation Trust shall be entitled to all refunds, credits, rebates, abatements or other recovery for any taxes (including, for the avoidance of doubt, income taxes, value added taxes and customs duties), together with any interest due thereon or penalty rebate arising therefrom, of the Debtors (and the Liquidation Trust shall bear responsibility for all tax liabilities of the Debtors for taxable periods ended on or before the dissolution of the Debtors, to the extent not discharged by the Plan or provided for payment or otherwise satisfied in the Plan).

14.      Following the entry of this Confirmation Order and/or the Effective Date, the Court shall have jurisdiction to authorize and approve (i) any sale of the Debtors' assets or Liquidation Trust Assets to the extent that the Debtors or Liquidation Trust, as applicable, seek to approve such sale pursuant to section 363 of the Bankruptcy Code; (ii) the abandonment of any of the Debtors' assets or the Liquidation Trust Assets to the extent that the Debtors or the Liquidation Trust, as applicable, seek to abandon such property under section 554 of the Bankruptcy Code; and (iii) any modifications of retiree benefits (as defined in section 1114(a) of the Bankruptcy Code) to the extent that the Debtors or Liquidation Trust, as applicable, seek to modify such benefits pursuant to section 1114 of the Bankruptcy Code.

15.     The Debtors shall cause to be served a notice of the entry of this Confirmation Order (the "**Confirmation Date Notice**"), upon (a) all parties listed in the creditor matrix maintained by Prime Clerk, LLC, and (b) such additional persons and entities as deemed appropriate by the Debtors, no later than five (5) business days after the Confirmation Date.  Within seven (7) business days after the Confirmation Date, or as soon as reasonably practicable thereafter, the Debtors shall cause the Confirmation Date Notice to be published in the (a) the national editions of one of *USA Today* or *The New York Times*, (b) the national edition of *The Globe and Mail* in Canada, and (c) other national, local, or foreign newspapers, trade journals, or publications, if any, as the Debtors, after consultation with the Committee, deem appropriate.

16.     The Debtors shall cause to be served a notice of the Effective Date, upon (a) all parties listed in the creditor matrix maintained by Prime Clerk, LLC, and (b) such additional persons and entities as deemed appropriate by the Debtors, no later than five (5) business days after the Effective Date.

**B.     Administrative Expense Claims Bar Date**

17.     Except as otherwise provided in the Bar Date Orders or the Plan, requests for payment of Administrative Expense Claims incurred on and after September 1, 2020 and prior to the Effective Date, other than Fee Claims of Professionals, must be filed with the Bankruptcy Court and served on the Debtors or the Liquidation Trust, as applicable, Prime Clerk, LLC in their capacity as the Debtors' claims and noticing agent, and the U.S. Trustee within thirty (30) days from the date of service of the Confirmation Date Notice.  Such proof of Administrative Expense Claim must include at a minimum: (i) the name of the applicable Debtor that is purported to be liable for the Administrative Expense Claim and if the Administrative Expense Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (ii) the name of the holder of the Administrative Expense Claim; (iii) the asserted amount of the

Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim. FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED AND DISCHARGED. IF FOR ANY REASON ANY SUCH ADMINISTRATIVE EXPENSE CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.

**C.      Additional Matters**

18.      Notwithstanding anything provided in the Plan or this Confirmation Order to the contrary, pursuant to the terms of the *Stipulation and Agreement Between UniCredit S.p.A – New York Branch and BBGI US, Inc. Regarding the Secured Claim of UniCredit S.p.A – New York Branch* (the "**UniCredit Stipulation**") between UniCredit S.p.A. ("**UniCredit**") and the Debtors, which was approved by the Court on February 3, 2021 [D.I. 983], UniCredit and its predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and such persons' respective heirs, executors, estates, servants and nominees shall be a "Released Party" for the purposes of sections 10.4, 10.5 and 10.8 of the Plan; *provided*, *that*, notwithstanding anything in the Plan, this Confirmation Order, or the UniCredit Stipulation, nothing shall relieve the Debtors or UniCredit of their obligations under the UniCredit Stipulation or any agreement entered into contemporaneously therewith.

19.      Nothing in this Confirmation Order and/or the Plan (including, without limitation, Sections 1.A.1.122, 1.A.1.123, 10.4, 10.5, 10.6, 10.7 and 10.8 thereof), shall release,

RLF1 24886597V.1

enjoin, impair or otherwise affect the claims, if any, of the Board of Trustees of the National Retirement Fund, the National Retirement Fund, the Legacy Plan of the National Retirement Fund (f/k/a the Pension Plan of the National Retirement Fund), the Board of Trustees of the Amalgamated Retail Retirement Fund, the Amalgamated Retail Retirement Fund, the Board of Trustees of the Retirement Plan of the Amalgamated Insurance Fund, the Amalgamated Insurance Fund and the Retirement Plan of the Amalgamated Insurance Fund (collectively, the "**Benefit Plans**") against non-Debtors that are part of the Debtors' "controlled group" (as set forth in 26 U.S.C. § 414 and Section 4001(b) of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), 29 U.S.C. § 1301(b), and the regulations implementing those provisions) (collectively, the "**Non-Debtor Controlled Group**") for asserted withdrawal liability and mass withdrawal liability, as applicable, under ERISA.  For the avoidance of doubt, the Benefit Plans' rights to pursue withdrawal liability and mass withdrawal liability claims, as applicable, against individuals and/or non-Debtor entities the Benefit Plans assert are part of the Non-Debtor Controlled Group, are not impaired by this Confirmation Order and/or the Plan.

20.    Notwithstanding Section 6.4 of the Plan, the Debtors shall reserve and set aside for Winner Way Industrial Limited ("**WW**") the amount of Three Million Four Hundred Fifty Seven Thousand One Hundred Thirty Three Dollars and Ninety Six Cents ($3,457,133.96) (as set forth in Administrative Expense Claims filed (in parts) at numbers 1367, 1368, 1370, 1371, 1382, and 1383).  Notwithstanding any provision in the Plan or this Confirmation Order, WW reserves all rights to assert that the Debtors shall be permitted to set-off any alleged Avoidance Action or other Causes of Action against any Allowed Claim (whether an Administrative Expense Claim or other Claim) of WW only to the extent that the Debtors have obtained a final judgment liquidating such Avoidance Action or other Causes of Action, and the Debtors reserve all rights to

assert that an alleged Avoidance Action or other Cause of Action may otherwise be set-off against any Allowed Claim of WW.   Notwithstanding anything in the Plan, Confirmation Order, Disclosure Statement or Ballots to the contrary, WW shall not be deemed to be a Releasing Party (as defined in Section 1.123 of the Plan) and, for the avoidance of doubt, WW shall not be deemed to give any releases to non-Debtors under the Plan.   WW (a) shall not be deemed to give any releases to non-Debtors under the Plan and (b) reserves its rights to distributions on its claims (whether Administrative Expense Claims or General Unsecured Claims) under the Plan and this Confirmation Order and the Debtors reserve all of their defenses to WW's claims (whether Administrative Expense Claims or General Unsecured Claims) and all of the Debtors' claims and other rights against WW.

21.    Notwithstanding anything in the Plan or this Confirmation Order to the contrary, including without limitation Sections 5.5, 10.2, 10.5, and 10.8 of the Plan, none of the DV Entities (including in their capacities as former directors and officers) or Shareholders shall be deemed to (i) be a Releasing Party (as defined in Section 1.123 of the Plan) or a Released Party (as defined in Section 1.122 of the Plan), whether as a holder of a Claim, Interest, Administrative Expense Claim or otherwise, and without needing to submit or file an "opt out" ballot as a member of a voting class or an objection or reservation of rights as a member of a non-voting class; (ii) grant a release, waiver or discharge of any kind or nature under Sections 10.5 or 10.8 of the Plan; or (iii) waive any rights under Bankruptcy Rule 2004 or Delaware Local Bankruptcy Rule 2004-1, including without limitation the right to object to, move to quash, or seek any other relief with respect to any Bankruptcy Rule 2004 investigation, examination, or discovery sought by the Litigation Trustee with respect to the DV Claims, the D&O and Shareholder Causes of Action and other Causes of Action that are Litigation Trust Assets.   Notwithstanding anything in the Plan or

this Confirmation Order to the contrary, including without limitation Sections 10.5 and 10.7 of the Plan, any and all setoff and recoupment rights and defenses of each of the DV Entities (including in their capacities as former directors and officers) and Shareholders are expressly preserved and shall not be enjoined, waived, released, modified, discharged or impaired, nor shall they be expanded, enhanced, or enlarged, in any manner by the Plan or this Confirmation Order.  None of the DV Entities (including in their capacities as former directors and officers) or Shareholders shall be deemed to be enjoined in any manner by Sections 10.5 or 10.7 of the Plan from asserting or prosecuting defenses of any kind or nature, including without limitation affirmative defenses and defenses in the nature of setoff or recoupment (including with respect to any claims, counterclaims, cross-claims, or third-party claims), in any litigation commenced against them, nor shall the Litigation Trustee be restricted in any manner from contesting those defenses.   Notwithstanding Section 12.14 of the Plan, the CDV Parties (as defined in their notice of appearance filed at D.I. 19) and Delfin SARL (which filed its notice of appearance at D.I. 241), shall not be required to file renewed Bankruptcy Rule 2002 requests in order to continue to receive documents after the Effective Date.  Notwithstanding Section 6.4 of the Plan, the Debtors shall reserve the full amount of the Administrative Expense Claim asserted by 346 Madison Avenue LLC (assigned proof of claim number 1223), or such other amount as may be ordered by the Court prior to the Effective Date after notice to 346 Madison Avenue LLC and an opportunity for hearing.

22.    Notwithstanding anything in the Plan to the contrary, including Sections 10.2, 10.5, and 10.8, as a result of the Plan, TAL Global Alliances and Castle Apparel Limited shall not be deemed to (i) be a Releasing Party, whether as a holder of a Claim or Interest or otherwise, and without needing to submit or file an "opt out" ballot as a member of a voting class, or an objection or reservation of rights as a member of a non-voting class; (ii) be granted a release

14

or discharge under Section 10.5 of the Plan; (iii) be enjoined by Section 10.5 of the Plan; (iv) compromise or release any claim against a non-Debtor party or waive rights related thereto; or (v) be bound by Section 10.8 of the Plan. Notwithstanding Section 12.14 of the Plan, TAL Global Alliances and Castle Apparel Limited (as defined in their notice of appearance filed at D.I. 282) shall not be required to file renewed Bankruptcy Rule 2002 requests in order to continue to receive documents after the Effective Date.

23.    Notwithstanding anything to the contrary in the Plan, the Plan Supplement or Confirmation Order or any other documents related to any of the foregoing, nothing shall modify the rights, if any, of any party (including any landlord under a rejected Unexpired Lease) to an Unexpired Lease of non-residential real property which the Debtors have not assumed to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law (including the express assertion of such setoff or recoupment through a timely filed Proof of Claim), including, but not limited to: (i) the ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their Unexpired Lease(s) with the Debtors; (ii) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation; or (iii) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtors or any representative or successors to the Debtors, including the Plan Trusts and Plan Trustees, as applicable. The Debtors' rights with respect thereto are expressly reserved.

24.    Notwithstanding anything to the contrary in the Plan, or in any notice related thereto, the ASO Agreement (as defined in the *Objection of Cigna to Notice of Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale Transaction* [D.I. 385]) through which Cigna Health and Life Insurance Company provides insurance-related services for Debtors' self-insured employee dental benefits

15

plan, shall be assumed and assigned to the Liquidation Trust under the Plan, and, in lieu of cure, all obligations due and unpaid under the ASO Agreement accruing prior to the Effective Date shall be unimpaired and reinstated, and nothing in this Confirmation Order or 11 U.S.C. § 365 shall affect such obligations.

25.     Notwithstanding anything in the Plan, Confirmation Order, or Disclosure Statement to the contrary, each of (i) Oracle America, Inc., successor in interest to MICROS Systems, Inc., and (ii) Proofpoint, Inc. shall not be deemed to be a Releasing Party (as defined in Section 1.123 of the Plan).

26.     On or within sixty (60) days after the Effective Date, the Debtors and/or Liquidation Trust, as applicable, shall file with the Texas Comptroller of Public Accounts (the "**Texas Comptroller**") all of the unclaimed property reports due to be filed on or before the Effective Date and identify the known unclaimed property (the "**Texas Unclaimed Property**") being held under Texas Property Code, Title 6, Chapters 72-76 and other applicable Texas laws (the "**Texas Unclaimed Property Laws**").  With respect to any such Texas Unclaimed Property timely remitted following the filing of the reports, the Texas Comptroller will not seek payment of any interest or penalty by the Debtors or the Liquidation Trust.  Notwithstanding section 362 of the Bankruptcy Code and any injunction contained in the Plan, the Texas Comptroller and its agents may commence an audit of the Debtors in accordance with the Texas Unclaimed Property Laws (the "**Texas Unclaimed Property Audit**").  For the avoidance of doubt, to the extent any Texas Unclaimed Property does not constitute property of the Estates, nothing in this Confirmation Order or the Plan precludes the Texas Comptroller from pursuing recovery of such amounts.  The Texas Comptroller may amend any Proofs of Claim in these Chapter 11 Cases following the Effective Date as a result of the filing of any property reports; provided, however, that the Debtors

or Liquidation Trust, as applicable, reserve all rights to object to such proofs of Claim on any and all grounds.  This provision is not an admission by any party that (i) such liability exists, (ii) any such liability is or is not a non-priority Claim arising prior to the Petition Date and/or (iii) any interest and/or penalties are subject to assessment.  Nothing herein precludes Debtors and Liquidation Trust from compliance with continued obligations pursuant to Texas Unclaimed Property Laws.  The Debtors', Liquidation Trust's, and Texas Comptroller's rights and defenses with respect to any allegations and claims asserted against the Debtors arising from or relating to Texas Unclaimed Property Laws, including but not limited to the Texas Unclaimed Property Audit, are hereby reserved.

27.     Notwithstanding any provision to the contrary in the Plan, the Plan Supplement, this Confirmation Order or any implementing Plan documents (collectively, "**Documents**"):

i.     Nothing in the Documents shall: (1) discharge, release, enjoin, impair or otherwise preclude (a) any liability to the United States that is not a Claim, (b) any Claim of the United States arising after the Confirmation Date, or (c) any liability of any Entity or Person under police or regulatory statutes or regulations to any Governmental Unit as the owner, lessor, lessee or operator of property or rights to property that such entity owns, operates or leases after the Confirmation Date; (2) release, nullify, preclude or enjoin the enforcement of any police or regulatory power; (3) modify the scope of Section 505 of the Bankruptcy Code; (4) pursuant to Section 6.8 of the Plan, cause a Claim of the United States to be deemed as allowed on the Effective Date unless such Claim is actually allowed on the Effective Date; (5) pursuant to Section 7.8 of the Plan, Claims of the United States filed or amended on or after the Effective Date will not be automatically deemed disallowed and expunged but will be treated in accordance with the

17

Bankruptcy Code and applicable law; (6) release, exculpate, enjoin, impair or discharge any non-Debtor from any claim, liability, suit, right or Cause of Action of the United States nor shall the United States be enjoined from bringing any claim, suit, Cause of Action or other proceeding against any non-Debtor for any liability whatsoever; (7) affect any setoff or recoupment rights of the United States (and such rights and all of the Debtors' non-bankruptcy defenses are preserved); (8) require the United States to file an administrative claim in order to receive payment for any liability described in Section 503(b)(1)(B) and (C) (in accordance with Section 503(b)(1)(D) of the Bankruptcy Code); (9) be deemed an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (10) be construed as a compromise or settlement of any liability, Claim, Cause of Action or interest of the United States.  Without limiting the foregoing but for the avoidance of doubt, (i) the United States reserves, and the Documents are without prejudice to, any and all rights or Causes of Action the United States has or may have against any surety under any bond, and nothing shall release, discharge, or exculpate any surety from its obligations or liabilities pursuant to non-bankruptcy law, including any obligation or liability of any surety of the Debtors with respect to any bond, and (ii) the Debtors reserve any and all defenses with respect thereto.

ii.     Liens securing Claims of the United States that are allowed pursuant to the Plan or the Bankruptcy Code (if any) shall be retained until Claim, with interest (to the extent such interest is allowed pursuant to the Bankruptcy Code and applicable law), is paid in full.  Administrative Expense Claims of the United States that are allowed pursuant to the Plan or the Bankruptcy Code shall accrue interest and penalties as provided by non-bankruptcy law until paid in full.  Priority Tax Claims of the United States that are allowed pursuant to the Plan or the Bankruptcy Code will be paid in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent allowed

Priority Tax Claims (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code) are not paid in full in cash on the Effective Date, then such Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate set forth in Section 511 of the Bankruptcy Code.  Moreover, nothing shall effect a release, injunction or otherwise preclude any Claim whatsoever against any Debtor or any of the Estates by or on behalf of the United States for any liability arising (i) out of pre-petition or post-petition tax periods for which a return has not been filed or (ii) as a result of a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period.  Further, nothing shall enjoin the United States from amending any Claim against any Debtor or any of the Estates with respect to any tax liability (i) arising out of pre-petition or post-petition tax periods for which a tax return has not been filed or (ii) from a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period.  Any liability arising (i) out of pre-petition or post-petition tax periods for which a return has not been filed or (ii) as a result of a pending audit or audit which may be performed with respect to any pre-petition or post-petition tax period shall be paid in accordance with section 1129(a)(9)(A) and (C) of the Bankruptcy Code.  Without limiting the foregoing but for the avoidance of doubt, nothing contained in the Documents shall be deemed to bind the United States to any characterization of any transaction for tax purposes or to determine the tax liability of any Person or Entity, including, but not limited to, the Debtors and the Estates, nor shall the Documents be deemed to have determined the federal tax treatment of any item, distribution, or Entity, including the federal tax consequences of the Plan, nor shall anything in the Documents be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under Section 505 of the Bankruptcy Code.

19

28.     Upon the later of the Effective Date and the formation of the Litigation Trust, any attorney-client privilege, work-product protection, or other privilege, protection, or immunity held by the Creditors' Committee ("**Privilege**") is hereby transferred, assigned, given over to, and shall vest in the Litigation Trust, and the Litigation Trust shall have the exclusive authority and sole discretion to maintain or waive any such Privilege or other protection.  The disclosure and/or provision of any Privilege from the Creditors' Committee to the Litigation Trust is not intended to and shall not void or waive any applicable Privilege.

## D.    Miscellaneous

29.     The Plan shall not become effective unless and until all conditions set forth in Section 9.1 of the Plan have been satisfied or waived pursuant to Section 9.2 of the Plan.

30.     Notwithstanding Bankruptcy Rule 3020(e), the terms and conditions of this Confirmation Order will be effective and enforceable immediately upon its entry.

31.     Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this order are hereafter reversed, modified, vacated or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors, the Liquidation Trust and/or the Litigation Trust, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, the Plan Supplement, or any amendments or modifications to the foregoing.

20

32.     The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

33.     To the extent of any inconsistency between this Confirmation Order and the Plan, this Confirmation Order shall govern.

34.     Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in these cases after the Effective Date shall be limited to the following parties: (i) the Debtors and their counsel, (ii) the U.S. Trustee, (iii) the Liquidation Trustee, (iv) the Litigation Trustee and (v) any party known to be directly affected by the relief sought.

**Dated: March 5th, 2021**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**

RLF1 24886597V.1